IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLEE R. CARVER, DIANE ESLINGER, LISA JENKINS, ARLENE MARTINEZ, and SUSAN L. PHILLIPS, on behalf of themselves, individually, on behalf of all others similarly situated, and on behalf of the Resurrection Health Care Defined Benefit Plan and the Provena Health Employees' Pension Plan, <br><br> Plaintiffs, <br><br> v. <br><br> PRESENCE HEALTH NETWORK, an Illinois not-for-profit corporation; PRESENCE CHICAGO HOSPITALS NETWORK, formerly known as PRESENCE RHC CORPORATION, an Illinois not-for-profit corporation; PRESENCE PRV HEALTH, an Illinois not-for-profit corporation; THE PRESENCE HEALTH NETWORK BOARD OF DIRECTORS; HAVEN COCKERHAM; BRUCE HAMORY; MARK HANSON; THOMAS R. HUBERTY; PATRICIA ANN KOSCHALKE; MARSHA LADENBURGER; LAURIE LAFONTAINE; TERRY MALTBY; SUSAN MCDONOUGH; VICTOR ORLER; KENT RUSSELL; JOSE SANTIAGO; THOMAS SETTLES; MARY SHINNICK; GUY WIEBKING; EVELYN VARBONCOEUR; JAMES WINIKATES; CLARA FRANCES KUSEK; SANDRA BRUCE; MICHAEL ENGELHART; THE PRESENCE RHC CORPORATION BOARD OF DIRECTORS; THE PRESENCE PRV HEALTH BOARD OF DIRECTORS; THE CHURCH PLAN ADMINISTRATIVE COMMITTEE FOR THE PROVENA HEALTH EMPLOYEES' PENSION PLAN; THE INVESTMENT COMMITTEE FOR THE PROVENA HEALTH EMPLOYEES' PENSION PLAN; THE PLAN ADMINISTRATOR OF THE RESURRECTION HEALTH CARE RETIREMENT PLAN; THE PRESENCE HEALTH FINANCE COMMITTEE; JOHN AND JANE DOES 1-20, <br><br> Defendants. | Case No.: 1:15-cv-02905 <br><br> Judge Harry D. Leinenweber <br><br> Magistrate Judge M. David Weisman |

**AGREEMENT TO BE BOUND BY STIPULATED
PROTOCOL FOR PRODUCTION OF ELECTRONICALLY
STORED INFORMATION AND HARD COPY DOCUMENTS**

This Stipulation Regarding the Protocol for the Production of Electronically Stored Information and Hard Copy Documents (hereinafter "Protocol") shall govern the parties in the above-captioned case and all actions that are later consolidated with that case (collectively, the "Litigation") and shall govern the production of any documents produced in the Litigation.

**I.      GENERAL PROVISIONS**

   A.   Scope:

      1.   This Protocol governs the discovery of all types of responsive documents, whether maintained as hard copy documents or as electronically stored information ("ESI"), both of which shall be produced electronically in the Litigation (collectively referred to as "Documents").

      2.   Nothing herein shall alter the parties' respective responsibilities to comply with the applicable Federal Rules of Civil Procedure, Local Rules of Court, and the Guidelines of the United States District Court for the Northern District of Illinois.

      3.   Nothing herein establishes any agreement regarding the scope of the discovery in the Litigation, or as to the relevance or admissibility of any Documents.

   B.   Cooperation:  The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

   C.   Preservation:  The parties will discuss their preservation obligations and will continue to meet and confer to ensure that preservation of potentially relevant ESI and hard copy paper documents will be reasonable and proportionate.

   D.   Phasing of Production:  When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties may agree to meet and confer to discuss whether phasing production of documents is appropriate.  If the parties subsequently agree that production shall be phased, the parties shall also agree on the custodians and sources for the initial production of documents and will continue to prioritize the order of subsequent productions.  Nothing herein shall obligate any party to agree to phased discovery.

   E.   Documents Protected from Discovery:  Pursuant to Fed. R. Evid. 502(d), the

production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

      F.      Format for Production:

      1.      When producing Documents, the producing party must produce the Documents consistent with Part II (Hard Copy Documents), Part III (Processing of ESI), and Part VI (Native Files) of this stipulation.  If particular documents warrant a different production format, the parties will cooperate to arrange for the mutually acceptable production of such documents.  The parties agree not to degrade the searchability of documents as part of the document production process.

      2.      Hard Copy Paper Documents:  All hard copy documents shall be scanned and produced in Tagged Image File Format ("TIFF") in accordance with the specifications contained herein.

      3.      Native Files:  A producing party may elect to produce ESI in its native format in accordance with the specifications contained herein ("Native Files").

      4.      TIFF:  Excluding certain Native File types as outlined in Section IV.B., a producing party may elect to convert ESI to TIFF for production in accordance with the specifications contained herein.  TIFF files shall be compressed and processed no less than 300 DPI, however, if the imaged record contains color necessary to interpret the record it shall be imaged in color and produced as a JPEG file.  The parties agree that the costs associated with conversion of a Native File to TIFF shall not be considered a taxable cost for any purposes.

      5.      Text:  The parties shall provide searchable OCR text of any hard copy documents that are scanned into TIFF image files, documents that are maintained as static images in the ordinary course of business or documents that are otherwise produced as TIFF images in accordance with the terms of this Protocol.  OCR text files shall indicate page breaks

where possible. For Documents that are maintained as Native Files, the text shall be extracted directly from the Native File.

6. Redacted Documents: The parties shall provide searchable OCR text for any redacted TIFF files.

7. Foreign Language Text: The parties shall make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Document – including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

8. Parent-Child Relationships: When converting Native Files with embedded Documents to TIFF images for production – e.g., an email with attachments – the parent-child relationship must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant Document metadata and coding fields specified in Appendix 2. For example, if an e-mail with embedded attachments is converted to a TIFF image, non-privileged relevant attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the TIFF image of the parent e-mail.

G. Bates Numbering:

1. All Documents produced under this Protocol shall be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of nine digits (including alpha and 0- padding) across the entire production, (3) be sequential from beginning to the end of the producing party's production, and; (4) be set forth in the metadata field entitled "as produced file name" for the corresponding Document.

4

    2. The producing party shall identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party shall identify and note the gap in the cover letter or production log accompanying the production.

    3. The producing party shall brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The producing party shall take reasonable care to ensure that the Bates number does not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number shall be placed as near to that position as possible while preserving the underlying image.

  H. Load Files: All productions shall be provided with data load files and image load files as detailed in App. 1. Each deliverable volume shall limit directory contents to approximately 5000 files per folder.

  I. Confidentiality Designations:

    1. TIFF Images: For Documents produced as TIFF images, the appropriate legend for any confidentiality designation in accordance with the Protective Order entered in this Litigation shall be stamped in the lower left-hand corner of each page of the Document. The confidentiality designation shall also be reflected in the "Confidentiality" field specified in App. 2.

    2. Native Files: Native Files will be produced together with a placeholder TIFF image which shall contain language that the Document is produced as a Native File, and shall contain the Bates number corresponding to the file, and the appropriate confidentiality designation, if any. The confidentiality designation shall also be reflected in the "Confidentiality" field, and the assigned Bates no. in the "as produced filename," as specified in App. 2.

J. ESI Liaison: Each party agrees to designate an ESI Liaison. Each ESI Liaison shall be prepared to participate in the resolution of ESI discovery issues; know the party's ESI discovery efforts; and have access to those who are familiar with the party's electronic systems and capabilities in order to, as appropriate, answer relevant questions. Each party shall designate its ESI Liaison within ten days after entry of this Production Stipulation and Order. Any party is free to change its designated ESI Liaison by providing written notice to the other parties.

K. Media Used for Production and Mode of Delivery: Documents shall be exchanged via encrypted DVD-ROMs, CD-ROMs, portable hard drives or through secure file transfer protocol ("FTP") or similar secure electronic transmission. All parties reserve the right to request that a production be made on a mutually acceptable alternative form of media should the form of media selected by the producing party be inoperable or incompatible with the receiving party's systems. Documents that contain "non-public personal information" (as defined in the Gramm-Leach-Bliley Act) shall be produced in encrypted form, regardless of the type of media, as specified in the Protective Order. The password for any encrypted production media must be communicated separately from the production media.

II. **PRODUCTION OF HARD COPY DOCUMENTS:** Section II shall apply to all hard copy documents that are scanned for production as static images.

A. Coding Fields: All applicable coding information defined in App. 2 shall be provided for hard copy paper documents that are scanned and converted to static images.

B. Unitization of Paper Documents: All hard copy paper documents shall be logically unitized prior to scanning for production. Therefore, when scanning or producing paper documents, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The parties shall

6

make their reasonable best efforts to unitize documents correctly.

      C.      File/Binder Structures (Parent-Child Unitization): Where multiple documents are organized into groups, such as folders, clipped bundles and binders, each distinct document within that group shall be unitized as described in Section II.B. above, but maintained together in a parent-child relationship as specified in Section I.F. The parties shall make their reasonable best efforts to unitize parent-children groups correctly.

      D.      Identification: Where a document or a document group such as folder, clipped bundle, or binder has an identification spine, "post-it note," tab, divider or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping. In addition, documents with notes affixed shall be scanned with the notes, and also scanned with the notes removed so that all text is visible.

      E.      Custodian Identification: The parties shall utilize reasonable best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates number stamp order. Where an individual custodian cannot be assigned, reasonable best efforts to assign a department level custodian or source location for records shall be made.

**III.    PROCESSING OF ELECTRONICALLY STORED INFORMATION**

      A.      System Files: Document productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology.

      B.      Metadata Fields and Processing:

          1.      ESI shall be processed in a manner that preserves the source native file and all metadata without modification (excepting processing to UTC and time zone

normalization to GMT), including their existing time, date and time-zone metadata consistent with the requirements provided in this Production Stipulation and Order.

   2. Auto date/time stamps: ESI shall be processed so as to preserve and display the date/time shown in the document as it was last saved by the custodian or end user, not the date of collection or processing. If this is not technically possible, the producing party shall use its reasonable best efforts to display the field code in the document.

   3. Hidden text: ESI shall be processed in a manner that preserves and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

   4. ESI items shall be produced with all of the metadata and coding fields set forth in App. 2. Notwithstanding any language to the contrary, this Protocol does not give rise to an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or do not exist as part of the original metadata, provided, however, that the producing party shall populate the following fields for all Documents produced: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) as produced filename; (f) Custodian; (g) Duplicate Custodian(s); (h) SourceParty; (i) NativeFileLink; (j) Redacted (if applicable); (k) TextPath; (l) Confidentiality (if applicable); (m) Start Folder (if applicable); (n) End Folder (if applicable); and (o) HC Folder/Binder Envelope Name (if applicable).

  C. Each Document within a file or subfile containing one or more responsive Documents shall be produced unless subject to de-duplication per the terms of this stipulation.

  D. De-duplication:

   1. The producing party may perform a global de-duplication during ESI processing, and may de-duplicate both vertically and horizontally using industry standard MD5

or SHA-1 algorithms only to create and compare hash values for exact matches, provided that searchable custodial metadata is preserved, extracted and furnished in the "Duplicate Custodian" field sufficient for the receiving party to identify each custodian of a particular document that was eliminated through de-duplication. The resulting hash value for each item shall be reflected in the Hash Value field specified in App. 2. The producing party need only produce a single copy of a particular Document.

        2.      Any other methodology for identification of duplicates must be discussed with the requesting party and approved in writing before implementation.

**IV.**      **PRODUCTION OF NATIVE FILES**

    A.      The parties agree that they may exercise the option to produce Documents in their Native File Format or to convert to TIFF. Native Files shall be produced together with a placeholder TIFF image. Each TIFF placeholder will contain language indicating that the Document is produced as a Native File, and shall contain the Bates number and confidentiality legend, if any, that corresponds to the Native File.

    B.      Notwithstanding the preceding, the parties further agree that certain Native File types do not lend themselves to conversion to TIFF, and shall be produced as Native Files, including spreadsheet-application files (e.g., MS Excel and CSV), database files (e.g., MS Access) and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi). The corresponding load file shall include a NativeFile link for each Native File that is produced, this NativeFile link is the general directory and file path to the produced native file within the production.

    C.      When producing data from any personal, proprietary, or enterprise database application, the producing party, to the extent reasonably practicable, shall also provide any data

9

dictionary, key, or other information necessary to understanding the contents of the database and its intended use and operation.

  D. The parties agree to meet and confer in good faith with regards to the form and extent of production of enterprise database-application files (e.g., SQL and SAP) and/or a proprietary database. Prior to the meet and confer, the producing party shall provide exemplar copies of reports that are generated from the database with an explanation of their use, together with the information specified in Section IV.B., above. If a response to a discovery request requires production of a database that contains nonresponsive data in part, the parties shall also meet and confer to agree on the format and content of the production.

  E. If a response to discovery request requires production of audio files, video files, files in a non-standard format or unusually large files, the parties shall meet and confer to determine the optimal production format and mode of production.

  F. When TIFF images of certain Documents are not readable due to processing constraints, the producing party may propose to produce the Document as a Native File or in some other format. The parties shall thereafter meet and confer within a reasonable time to agree on a mutually acceptable format for the production of the Document at issue.

  G. Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all preserved and collected Native Files in a manner that does not materially alter or modify the file or the metadata.

  H. Requests for Native Files: A requesting party may informally request in writing that the producing party produce the Native File corresponding to a static image (unless that image is redacted), and the producing party shall comply with any such reasonable requests. The request for a specific native file(s) shall include the Bates numbers assigned to the TIFF

document to identify the corresponding Native File. Any subsequent production of the Native File shall include the Bates number of the first page of the Bates range that corresponds to the previously produced TIFF image.

    I.    Redaction:

        1.    The parties agree that Documents shall be redacted for privilege and personal identifying information as prescribed under Federal Rule of Civil Procedure 5.2 (*e.g.*, social security number, birth date, financial account numbers, and the names of individuals known to be minors). The parties also agree that medical history will be redacted. If a requesting party has need for particular non-privileged redacted data, the parties shall meet and confer to agree upon the most secure method for the production and use of such data.

        2.    Documents that are redacted shall be produced solely in TIFF. The words "Redacted" shall appear over the redacted portion or portions on each page of the Document.

        3.    The parties shall provide searchable OCR text for any redacted TIFF files. All other applicable unaffected metadata fields specified in Appendix 2 shall be provided.

        4.    If the items redacted and partially withheld from production are PowerPoint- type presentation decks or Excel-type spreadsheets, the entire Document must be produced in TIFF format, including all non-privileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any comments or speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing party shall also make reasonable efforts to

ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths shall be formatted so that the numbers in the column will display rather than "##########." To the extent that any spreadsheet will not properly format so as be legible when converted to TIFF for redaction of privileged content, upon request of the requesting parties, the parties shall meet and confer to determine the most reasonable form of production.

        5.      If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the non-privileged portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the non-privileged portion of the content.

    J.    Exception Logs: To the extent any ESI items are excluded from review or production because they are password-protected, encrypted, or subject to other forms of document protection that the producing party cannot reasonably break, the producing party shall produce a log containing any metadata and file contents that can be extracted for such items. The producing party shall provide a copy of a log of such documents for each of its custodians when the party believes it has substantially completed production of documents from a custodian, and shall provide a final copy of the log upon completion of document production. If the requesting party requests production of any files listed on the exception log, the parties shall meet and confer on whether a reasonable and cost-effective means exists for attempting to provide the requested files.

## V. MISCELLANEOUS PROVISIONS

    A.    Objections Preserved: Nothing in this Protocol shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as

provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents.

B. Modifications: This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

C. Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreement: Except as stated above, each party agrees to bear its own costs of discovery, without prejudice to any application for costs pursuant to 15 U.S.C. § 15, 15a, or 15c, or subsequent agreement. The parties expressly reserve the rights to seek costs under the Federal Rules of Civil Procedure in connection with disputes unaddressed by this stipulation and with respect to proposed variances therefrom.

## VI. RESOLUTION OF DISPUTES

A. The parties agree to meet and confer in good faith regarding matters related to the production of Documents not specifically set forth in this Protocol, related to the interpretation of this Protocol, or related to the parties' obligations hereunder. The parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol. If a producing party cannot comply with any material aspect of this Protocol, such party shall inform the requesting party in writing at or before the time of production as to why compliance with the Protocol is unreasonable or not possible.

B. If the parties are unable to reach resolution regarding any dispute concerning the interpretation of this Protocol or compliance with same, such disputes shall be presented to the Court for adjudication. No party may seek relief from the Court concerning this Protocol unless it has conferred with other affected parties to this Litigation.

*So Ordered.*

Dated:

_____
U.S. District Judge

**WE SO MOVE
and agree to abide by the
terms of this Order**

**WE SO MOVE
and agree to abide by the
terms of this Order**

    */s/ Christopher Graver*
Signature

Christopher Graver
Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
cgraver@kellerrohrback.com
rkilgard@kellerrohrback.com

Lynn L. Sarko
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
lgerber@kellerrohrback.com

Michelle C. Yau
Kira L. Hettinger
COHEN MILSTEIN SELLERS
  & TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
khettinger@cohenmilstein.com

James B. Zouras
Ryan F. Stephan
Teresa M. Becvar

    */s/ Howard Shapiro*

Howard Shapiro (*admitted pro hac vice*)
Robert W. Rachal (*admitted pro hac vice*)
Stacey C.S. Cerrone (*admitted pro hac vice*)
PROSKAUER ROSE, LLP
650 Poydras St., Suite 1800
New Orleans, LA 70130-6416
Phone: (504) 310-4088
Fax: (504) 310-2022
howshapiro@proskauer.com
rrachal@proskauer.com
scerrone@proskauer.com

Nigel F. Telman
Edward C. Young
PROSKAUER ROSE, LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
Phone: (312) 962-3550
Fax: (312) 962-3551
ntelman@proskauer.com
eyoung@proskauer.com

*Counsel for Defendants*


Dated: July 25, 2016

STEPHAN ZOURAS, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Tel.: (312) 233-1550
Fax: (312) 233-1560
Email:  jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com

*Counsel for Plaintiffs*


Dated: July 25, 2016

**Appendix 1: Production Delivery Requirements**

General Instructions

- A cover letter shall be included with each production, listing each piece of media (hard drive, thumb drive, DVD or CD) and the Bates range of the production.

- Data can be produced on CD, DVD or hard drive.

- Label all media with the following:
    - Case number
    - Production date
    - Bates range
    - Disk number (1 of X, 2 of X, etc.), if applicable.

- Each deliverable volume shall limit directory contents to approximately 5000 files per folder.

Image Load Files

- Image load (cross-reference) files shall be produced in Opticon format.

- The name of the image load file shall mirror the name of the delivery volume, and shall have the appropriate extension (e.g., ABC001.OPT).

- The volume names shall be consecutive (e.g., ABC001, ABC002, et seq.).

- There shall be one row in the load file for every TIFF image in the production.

- Every image in the delivery volume shall be cross-referenced in the image load file.

- The imageID key shall be named the same as the Bates number of the page.

- Load files shall not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

- Files that are the first page of a logical document shall include a "Y" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) shall include a blank in the appropriate position.

- Sample Image (Opticon) Load File :

    MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
    MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,,
    MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,,
    MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
    MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,,

Data Load Files:

- Data load files shall be produced in .DAT format.

- The data load file shall use standard delimiters:
    - Comma - ¶ (ASCII:020);

- o Quote - þ (ASCII:254);
- o Newline - ® (ASCII:174);
- o Multi-value – ; (ASCII:059);
- o Nested Value - \(ASCII:092).

- The first line of the .DAT file shall contain the field names arranged in the same order as the data is arranged in subsequent lines.

- All date fields shall be produced in mm/dd/yyyy format, if possible. If a date value cannot be provide in the specified format, the field shall be null.

- All attachments shall sequentially follow the parent document/email.

- Use carriage-return to indicate the start of the next record.

- Load files shall not span across media (e.g., CDs, DVDs, hard drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the data load file shall mirror the name of the delivery volume, and shall have a .DAT extension (e.g., ABC001.DAT).

- The volume names shall be consecutive (e.g., ABC001, ABC002, et seq.).

- If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with section I.C.4.

- Sample .DAT Load File:

    þBegBatesþ¶þEndBatesþ¶þBegAttachþ¶þEndAttachþ¶þCustodianþ

OCR/Extracted Text Files

- OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files.

- If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format, consistent with Section I.E.4.

Native Files.

- ESI that cannot be interpreted in an image format, or for such that may be voluminous and burdensome when printed to image files, may be produced in its native format, with its file name corresponding to its designated Bates number. Such files include Microsoft Excel, PowerPoint and Access file types, multimedia files (e.g., ".avi", "mpeg", ".wmv", ".mp3", etc.), AUTOCAD files, source code, and other files that may be requested and/or agreed upon by counsel.

- All native file documents must be named per its BEGBATES number, and a full path of the native file must be provided in the load file for the NATIVEFILE field.

- All native files produced must contain a corresponding image placeholder with appropriate endorsements, as well as extracted text.

17

**Appendix 2: Metadata and Coding Fields**

| Field Name | Populated for Email, Efile, or Paper ("All ESI Items" collectively refers to Email, Efile or Calendar; "Documents" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
| BegBates | Documents | First Bates number (production number) of an item |
| EndBates | Documents | Last Bates number (production number) of an item<br>**The EndBates field shall be populated for single-page items. |
| BegAttach | Documents | First Bates number of family group. |
| EndAttach | Documents | Last Bates number of attachment range (i.e., Bates number of the last page of the last attachment) |
| Custodian | Documents | Name of person from whose files the item is produced; or department/source locations for network shares or group file cabinets |
| Duplicate Custodian(s) | Documents | Other sources/custodians whose files contained a particular document that was eliminated through de-duplication. |
| FileExt | All ESI items | Indicates file extension of source native file |
| Hash | All ESI Items | The MD5 hash value of the file. |
| Subject | All ESI items | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item) |
| From | Email, Calendar | The name and SMTP email address of the sender of the email or calendar item |
| To | Email, Calendar | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| CC | Email, Calendar | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |

| Field Name | Populated for Email, Efile, or Paper ("All ESI Items" collectively refers to Email, Efile or Calendar; "Documents" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
| BCC | Email, Calendar | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| DateSent | Email, Calendar (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent | Email, Calendar (HH:MM AM/PM) | Time email or calendar item was sent |
| DateReceived | Email, Calendar (mm/dd/yyyy) | Date email or calendar item was received |
| TimeReceived | Email, Calendar (HH:MM AM/PM) | Time email or calendar item was received |
| Author | All ESI items | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| DateLastMod | All ESI items (mm/dd/yyyy) | Date the item was last modified |
| TimeLastMod | All ESI items (HH:MM AM/PM) | Time the item was last modified |
| DateCreated | All ESI items (mm/dd/yyyy) | Date the item was created |
| TimeCreated | All ESI items (HH:MM AM/PM) | Time the item was created |
| RecordType | Documents | Indicates item type (e.g., paper, email, edoc, image, attachment) |
| ItemType | All ESI items | Identifies whether the file is an email, attachment to an email, or loose edoc |
| FileName | All ESI items | The original filename of the source native file for an ESI item |
| FilePath | All ESI items | The original collection file path of the source native file for an ESI item |
| MessageID | Email, Calendar | The unique message identifier generated by the source email or calendar system |
| NativeFile | All ESI items (produced natively) | Path to native file as produced |

| Field Name | Populated for Email, Efile, or Paper ("All ESI Items" collectively refers to Email, Efile or Calendar; "Documents" collectively refers to ESI Items and Paper) | Field Description |
|---|---|---|
| TextPath | Documents | Full relative path to the current location of the document-level text file |