## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESLEE R. CARVER, DIANE ESLINGER, LISA JENKINS, and SUSAN L. PHILLIPS, on behalf of themselves, individually, on behalf of all others similarly situated, and on behalf of the Resurrection Health Care Retirement Plan and the Provena Health Employees' Pension Plan, | Case No. 1:15-cv-02905 |
| | **THIRD AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **CLAIM OF UNCONSTITUTIONALITY** |
| PRESENCE HEALTH NETWORK, an Illinois not-for-profit corporation; PRESENCE CHICAGO HOSPITALS NETWORK, formerly known as PRESENCE RHC CORPORATION, an Illinois not-for-profit corporation; PRESENCE PRV HEALTH, an Illinois not-for-profit corporation; THE PRESENCE HEALTH NETWORK BOARD OF DIRECTORS; THE PRESENCE RHC CORPORATION BOARD OF DIRECTORS; THE PRESENCE PRV HEALTH BOARD OF DIRECTORS; THE CHURCH PLAN ADMINISTRATIVE COMMITTEE FOR THE PROVENA HEALTH EMPLOYEES' PENSION PLAN; THE INVESTMENT COMMITTEE FOR THE PROVENA HEALTH EMPLOYEES' PENSION PLAN; THE PLAN ADMINISTRATOR OF THE RESURRECTION HEALTH CARE RETIREMENT PLAN; THE PRESENCE HEALTH FINANCE COMMITTEE; JOHN AND JANE DOES 1-20, | Judge Harry D. Leinenweber<br><br>Magistrate Judge M. David Weisman |
| Defendants. | |

## TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ...................................................................................................... 1

II.  JURISDICTION AND VENUE ................................................................................. 5

III.  PARTIES .................................................................................................................... 5

    A.  Plaintiffs ........................................................................................................... 5

    B.  Defendants ........................................................................................................ 7

IV.  THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ............................ 12

    A.  The Adoption of ERISA ................................................................................... 12

    B.  The Scope of the Church Plan Exemption in 1974 .......................................... 13

    C.  The Changes to the Church Plan Exemption in 1980 ...................................... 14

V.  PRESENCE HEALTH NETWORK .......................................................................... 18

    A.  Presence's Operations ...................................................................................... 18

    B.  The Presence Plans .......................................................................................... 25

        1.  Defendants Claim the RHC Plan Is a Church Plan ............................... 25

        2.  The RHC Plan Meets the Definition of an ERISA Defined
            Benefit Plan and Is a Cash Balance Plan .................................. 27

        3.  Defendants Claim the PRV Plan Is a Church Plan ................................ 28

        4.  The PRV Plan Meets the Definition of an ERISA Defined
            Benefit Plan ................................................................................. 29

        5.  Presence Maintains Other Plans that Purport to Follow
            ERISA .......................................................................................... 30

    C.  All Defendants are Plan Adminstrators and/or Fiduciaries ............................. 30

        1.  Nature of Plan Administrator and Fiduciary Status ............................. 30

2.       Defendants Are Each Plan Administrators and/or ERISA Fiduciaries ................................................................ 32

D.       The Presence Plans Are Not Church Plans ........................................ 36

1.       A Church Plan Must Be Established by a Church, and Presence, RHC, Resurrection, PRV, and Provena Are Not Churches. .................................................................. 36

2.       Only Two Types of Entities May Maintain Church Plans, and Presence, RHC, and PRV Are Neither Type. ...................................... 38

3.       A Church Plan Must Be Maintained For the Employees of a Church or a Convention or Association of Churches. ............................ 40

4.       Even if the Plans Could Otherwise Qualify as Church Plans Under ERISA Section 3(33)(A) or (C)(i), They Are Excluded from Church Plan Status Under ERISA Section 3(33)(B)(ii). .............................................................. 42

5.       Even if the Plans Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Presence, RHC, and PRV, Violates the Establishment Clause of the First Amendment to the U.S. Constitution, and is Therefore Void and Ineffective. ................................... 43

VI.      CLASS ACTION ALLEGATIONS ..................................................................... 44

A.       Numerosity ............................................................................................ 44

B.       Commonality .......................................................................................... 45

C.       Typicality ............................................................................................... 45

D.       Adequacy ............................................................................................... 46

E.       Rule 23(b)(1) Requirements ................................................................. 46

F.       Rule 23(b)(2) Requirements ................................................................. 47

G.       Rule 23(b)(3) Requirements ................................................................. 47

VII.     CAUSES OF ACTION .......................................................................................... 48

COUNT I .................................................................................................................. 48

(Claim for Equitable Relief Pursuant to ERISA Section 502(a)(3)
     Against All Defendants) ........................................................................ 48

COUNT II ............................................................................................................. 49

(Claim for Violation of Reporting and Disclosure Provisions
     Against Presence, RHC, PRV, and the Plan Administrator
     Defendants) ........................................................................................... 49

COUNT III ........................................................................................................... 53

(Claim for Failure to Provide Minimum Funding, Including by
     Failing to Comply with ERISA Funding Rules, Against
     Defendants Presence, RHC and PRV) ................................................... 53

COUNT IV ........................................................................................................... 54

(Claim for Failure to Establish the Plans Pursuant to a Written
     Instrument Meeting the Requirements of ERISA Section
     402, and Failure to Maintain the Plans Pursuant to a
     Written Instrument Meeting the Requirements of ERISA
     Section 402, Against Defendants Presence, RHC, and PRV) ................. 54

COUNT V ............................................................................................................. 55

(Claim for Failure to Establish a Trust Meeting the Requirements
     of ERISA Section 403 Against Defendants Presence, RHC,
     and PRV) ............................................................................................... 55

COUNT VI ........................................................................................................... 56

(Claim for Civil Money Penalty Pursuant to ERISA Section
     502(a)(1)(A) Against Presence, RHC, PRV, and the Plan
     Administrator Defendants) .................................................................... 56

COUNT VII .......................................................................................................... 57

(Claim for Breach of Fiduciary Duty Against All Defendants) ......................... 57

COUNT VIII ......................................................................................................... 61

(Claim for Breach of Fiduciary Duty to Monitor Performance of
     Other Fiduciaries Against the Monitoring Defendants) ........................ 61

COUNT IX ............................................................................................................ 63

(Claim for Co-Fiduciary Liability Against All Defendants) ............................. 63

COUNT X ................................................................................................................. 66

(Claim for Declaratory Relief that the Church Plan Exemption
Violates the Establishment Clause of the First Amendment
to the U.S. Constitution, and is Therefore Void and
Ineffective Against Defendants Presence, RHC, and PRV) ................... 66

VIII.   PRAYER FOR RELIEF .............................................................................. 69

## I.    INTRODUCTION

Plaintiffs Leslee R. Carver, Diane Eslinger, Lisa Jenkins, and Susan L. Phillips, individually, on behalf of all others similarly situated, and on behalf of the RHC Plan and the PRV Plan (as they are defined herein), and pursuant to the authority of Federal Rule of Civil Procedure 15(a)(1)(B) to amend the complaint as of right, by and through their attorneys, for their First Amended Complaint hereby allege as follows:

1.    Defendant Presence Health Network ("***Presence***") began operating a chain of hospital and healthcare facilities in Illinois in 2011 upon the merger of, or Presence's affiliation with, two not-for-profit healthcare networks:

A.    Resurrection Health Care Corporation ("***Resurrection***"), subsequently known as Presence RHC Corporation, and now known as Presence Chicago Hospitals Network ("***RHC***"); and

B.    Provena Health ("***Provena***"), now known as Presence PRV Health ("***PRV***").

2.    This case is about whether Presence, directly and through RHC and PRV, properly sponsors, operates, and maintains its defined benefit pension plans pursuant to the requirements of the Employee Retirement Income Security Act of 1974 ("***ERISA***"), codified as amended at 29 U.S.C. §§ 1001-1461.  As demonstrated herein, Presence fails to do so, depriving its more than 21,000 employees of critical procedural and substantive protections designed to ensure their security in retirement.

3.    As its name implies, ERISA was crafted to protect employee retirement funds.  A comprehensive history of ERISA describes its underlying rationale this way:

> Employees should not participate in a pension plan for many years only to lose their pension …because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting

1

and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James A. Wooten, *The Employee Retirement Income Security Act of 1974* 3 (2004).

4.      This class action is brought on behalf of all participants and beneficiaries of two defined benefit plans that are sponsored by Presence: (i) the Resurrection Health Care Retirement Plan (the "***RHC Plan***"), which was previously sponsored by Resurrection or one or more of its predecessor hospitals, and has subsequently been sponsored by RHC and, as of January 1, 2016, Presence; (ii) and the Provena Health Employees' Pension Plan (the "***PRV Plan***"), which was previously sponsored by Provena, and has subsequently been sponsored by PRV and, as of January 1, 2016, Presence.  The RHC Plan and the PRV Plan are claimed to be "church plans" under ERISA.  On information and belief, they are administered by Presence, together with RHC (as to the RHC Plan) and PRV (as to the PRV Plan), and by certain committees and individuals described below.  Hereinafter, the RHC Plan and the PRV Plan are referred to as the "***Presence Plans***" or simply the "***Plans***."

5.      Presence, RHC, PRV, and the other Defendants are violating numerous provisions of ERISA—including, upon information and belief, failing to properly fund the Plans and depriving the Plans' participants of pension insurance—while erroneously claiming that the Plans are exempt from ERISA's protections as "church plans."  The Plans are not "church plans" for at least the four reasons set forth below, any one of which, standing alone, prevents the Plans from being exempted from ERISA.

6.      *First*, ERISA requires that a church plan be *established* by a church or a convention or association of churches.  The RHC Plan was established by a hospital or healthcare system, not any church or convention or association of churches.  Similarly, the PRV Plan was established by a hospital or healthcare system, not any church or convention or

association of churches. This should end the inquiry under ERISA, resulting in a clear finding that the Presence Plans are not church plans.

7.     *Second*, ERISA requires that a church plan, once established, be *maintained* by either a church (or a convention or association of churches) or an entity controlled by or associated with a church whose *principal purpose or function* is the administration or funding of a retirement plan.  Presence and RHC (as to the RHC Plan), and Presence and PRV (as to the PRV Plan) maintain the Plans.  Presence, RHC, and PRV are not churches (or conventions or associations of churches). The principal purpose or function of Presence, RHC and PRV is providing healthcare, not administering or funding retirement benefits.  Indeed, Presence (along with its consitutents RHC and PRV) is a nonprofit healthcare conglomerate, not unlike other nonprofit and for-profit healthcare conglomerates with which Presence competes in its commercial healthcare activities.

8.     *Third*, ERISA requires that, even if a plan had been established by a church, and even if it was maintained by a church or an entity controlled by or associated with a church whose principal purpose or function is the administration or funding of a retirement plan, a plan still cannot be a church plan unless substantially all of the individuals covered by the plan are employees (or their beneficiaries) of a church or a not-for-profit entity that is controlled by or associated with a church or a convention or association of churches.  Because all, or substantially all, of the individuals covered by the Plans are or were employees (or their beneficiaries) of Presence, RHC, and PRV, the Plans do not satisfy this requirement.  Presence, RHC, and PRV are not churches (or conventions or associations of churches) and are not controlled by or associated with any church within the meaning of ERISA.  They are not owned or operated by a church and do not receive funding from a church.  No church plays an active role in the

governance of Presence, RHC, or PRV.  No denominational requirement exists for Presence, RHC, and PRV employees.

9.      *Fourth*, even if the Plans did fall within the scope of the church plan exemption, the church plan exemption would then be, as applied to Presence, RHC, and PRV, an unconstitutional accommodation under the Establishment Clause of the First Amendment to the U.S. Constitution.  In choosing to recruit and hire from the population at large, Presence, RHC, and PRV must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests. But Presence, RHC, and PRV contend, in effect, that the participants in the Plans must lose their ERISA protections, and Presence, RHC, and PRV must be relieved of their ERISA financial obligations, because Presence, RHC, and PRV claim certain religious beliefs.  The Establishment Clause does not allow such an economic preference for Presence, RHC, and PRV, and the resulting burden-shifting to their employees.  Extension of the church plan exemption to Presence, RHC, and PRV would be unconstitutional under Supreme Court law because: (a) it is not necessary to further the stated purposes of the exemption; (b) it harms Presence, RHC, and PRV workers; (c) it puts competitors of Presence, RHC, and PRV at an economic disadvantage; (d) it relieves Presence, RHC, and PRV of no genuine religious burden created by ERISA; and (e) it creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

10.      Presence's, RHC's, and PRV's claims of church plan status for their defined benefit pension plans fail under both ERISA and the First Amendment.  Plaintiffs seek an order requiring Presence, RHC, and PRV, and other fiduciaries of the Plans, to comply with ERISA and afford the Class all the protections of ERISA with respect to the Plans.

## II.    JURISDICTION AND VENUE

11.    **Subject Matter Jurisdiction.**  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

12.    **Personal Jurisdiction.**  This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process.  29 U.S.C. § 1132(e)(2).  All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them.  The Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to the jurisdiction of a court of general jurisdiction in Illinois as a result of Presence, RHC, and PRV being headquartered in, transacting business in, and/or having significant contacts with this District.

13.    **Venue**. Venue is proper in this district because (a) the Plans are administered in this district, (b) some or all of the violations of ERISA took place in this district, and/or (c) Defendants Presence, RHC and PRV may be found in this district. 29 U.S.C. § 1132(e)(2). Venue is also proper in this district because Presence, RHC, and PRV are headquartered here and systematically and continually do business here, and because a substantial part of the events or omissions giving rise to the claims in this case occured in this district.

## III.    PARTIES

**A.    Plaintiffs**

14.    **Plaintiff Leslee R. Carver** is a retired employee of Presence and RHC.  She was employed as a Clinical Nutrition Manager by Resurrection when it acquired Saint Joseph Hospital in 2001, and she continued that employment after Presence took over Resurrection.  She

was a participant in the RHC Plan until her retirement in December 2013, and is receiving pension benefits. She is entitled to maintain an action with respect to the Presence Plans pursuant to ERISA sections 502(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3); 29 U.S.C. § 1132(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3).

15. **Plaintiff Diane Eslinger** is a retired employee of Provena. She was employed by Saint Joseph's Hospital, subsequently known as Saint Joseph's Medical Center, beginning in 1978, was a participant in the An Association of Franciscan Sisters of the Sacred Heart Employees' Pension Plan (the "An Association Plan"), and subsequently was grandfathered into the PRV Plan when the An Association Plan was merged into the PRV Plan. In 1998, Ms. Eslinger began working for Morris Hospital, which entered into a joint operating agreement with Provena Saint Joseph Hospital, and subsequently worked for Provena Service Corporation and then Med 3000, during which time she participated in the PRV Plan independently from her participation as a grandfathered participant. Ms. Eslinger separated from employment with Provena in 2003. In 2010, Ms. Eslinger took a lump-sum distribution from the PRV Plan on account of benefits accrued during her service between 1998 and 2003, but did not take any distribution on account of benefits accrued on account of her status as a grandfathered participant. In 2014, Ms. Eslinger began receiving, and continues to receive, monthly pension benefits from the PRV Plan. She is entitled to maintain an action with respect to the Presence Plans pursuant to ERISA sections 502(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3); 29 U.S.C. § 1132(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3).

16. **Plaintiff Lisa Jenkins** was employed by Lakeview Medical Center, subsequently known as United Samaritan Medical Center and then Provena United Samaritan Medical Center, beginning June 1, 1987. Ms. Jenkins separated from employment with Provena on December 22,

2004, and is a participant in the PRV Plan. Ms. Jenkins has not yet reached retirement age. She is entitled to maintain an action with respect to the Presence Plans pursuant to ERISA sections 502(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3); 29 U.S.C. § 1132(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3).

17. **[Intentionally left blank.]**

18. **Plaintiff Susan L. Phillips** is a retired employee of Presence. She was employed by Saint Joseph's Hospital, subsequently known as Saint Joseph's Medical Center, then Provena Saint Joseph Medical Center, and then Presence Saint Joseph Medical Center, beginning in 1994. She was a participant in the An Association Plan, and subsequently was grandfathered into the PRV Plan when the An Association Plan was merged into the PRV Plan. Ms. Phillips retired from her employment with Presence and PRV in October 2015 and began receiving, and continues to receive, monthly pension benefits from the PRV Plan. She is entitled to maintain an action with respect to the Presence Plans pursuant to ERISA sections 502(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3); 29 U.S.C. § 1132(a)(1)(A), (a)(2), (a)(3), (c)(1), and (c)(3).

**B.      Defendants**

19. As discussed below, all the Defendants are ERISA fiduciaries.

20. **Presence.** Defendant Presence is a 501(c)(3) nonprofit corporation headquartered in Frankfort, Illinois, organized under and governed by Illinois law. Presence acts by and through its Board of Directors. Presence became the parent corporation of RHC and PRV on or about November 1, 2011. Since that date, Presence has been a sponsor of the Plans within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B). On information and belief, Presence appoints the trustees of the Plans' trusts; has the right to amend or terminate the Plans at any time; and communicates with participants or beneficiaries concerning the Plans. Presence is both a plan sponsor Defendant and a fiduciary Defendant. Furthermore, under ERISA section

3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii), in the absence of an administrator specifically designated in or pursuant to any instrument governing the Plan, the sponsor of the plan is the plan administrator.  Accordingly, in the alternative to any individuals or entities identified below as Plan administrators, Plaintiffs name Presence as a Plan Administrator Defendant within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).

21.    **RHC.**  Defendant RHC is a 501(c)(3) nonprofit corporation headquartered in Chicago, Illinois, organized under and governed by Illinois law.  RHC acts by and through its Board of Directors, which is comprised of the same persons who sit on Presence's and PRV's boards of directors.  RHC was the sponsor of the RHC Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B) until at least on or about November 1, 2011.  After that date, on information and belief, to the extent these duties are not performed by Presence, RHC appoints the trustees of the RHC Plan's trust; has the right to amend or terminate the RHC Plan at any time; and communicates with participants or beneficiaries concerning the RHC Plan. Like Presence, RHC is both a plan sponsor Defendant and a fiduciary Defendant.  Furthermore, under ERISA section 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii), in the absence of an administrator specifically designated in or pursuant to any instrument governing the Plan, the sponsor of the plan is the plan administrator.  Accordingly, in the alternative to any individuals or entities identified herein as Plan administrators, Plaintiffs name RHC as a Plan Administrator Defendant within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).

22.    **PRV.**  Defendant PRV is a 501(c)(3) nonprofit corporation headquartered in Frankfort, Illinois, organized under and governed by Illinois law.  PRV acts by and through its Board of Directors, which is comprised of the same persons who sit on Presence's and RHC's boards of directors.  PRV was the sponsor of the PRV Plan within the meaning of ERISA section

3(16)(B), 29 U.S.C. § 1002(16)(B) until at least on or about November 1, 2011. After that date, on information and belief, to the extent these duties are not performed by Presence, PRV appoints the trustees of the PRV Plan's trust; has the right to amend or terminate the PRV Plan at any time; and communicates with participants or beneficiaries concerning the PRV Plan. Like Presence and RHC, PRV is both a plan sponsor Defendant and a fiduciary Defendant. Furthermore, under ERISA section 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii), in the absence of an administrator specifically designated in or pursuant to any instrument governing the Plan, the sponsor of the plan is the plan administrator. Accordingly, in the alternative to any individuals or entities identified herein as Plan administrators, Plaintiffs name PRV as a Plan Administrator Defendant within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).

23.    **Presence Board of Directors.**  On information and belief, the Board of Directors of Presence ("***Presence Board of Directors***") exercises general governance and control over the mission and business affairs of Presence and has and exercises all powers which may be exercised or performed by Presence under the laws of the state of Illinois. The Presence Board of Directors acts by resolution by majority vote of all members in attendance at a meeting where a quorum is present or by unanimous consent. Among other things, Defendant Presence Board of Directors has and exercises the authority and responsibility to administer or supervise the administration of the Plans; to manage the Plans and the disposition of their assets; to control the Plans' operations in accordance with their terms; to delegate and allocate specific responsibilities, obligations, and duties imposed by the Plans to other persons; and otherwise has and exercises discretionary authority and discretionary responsibility in the administration of the RHC Plan, the PRV Plan, or both. Defendant Presence Board of Directors is a Plan

Administrator Defendant within the meaning of ERISA section 3(16)(A), 29 U.S.C. §

1002(16)(A), and a fiduciary for the Plans.

24.     **RHC Board of Directors.**  On information and belief, the Board of Directors of

RHC ("***RHC Board of Directors***") exercises general governance and control over the mission

and business affairs of RHC, and has and exercises all powers which may be exercised or

performed by RHC under the laws of the state of Illinois, except to the extent Presence, as parent

corporation of RHC, has been given such authority.  The RHC Board of Directors acts by

resolution by majority vote of all members in attendance at a meeting where a quorum is present

or by unanimous consent.  Among other things, except to the extent the Presence Board of

Directors may have been given such authority, Defendant RHC Board of Directors has and

exercises the authority and responsibility to administer or supervise the administration of the

RHC Plan; to manage the RHC Plan and the disposition of its assets; to control the RHC Plan's

operations in accordance with its terms; to delegate and allocate specific responsibilities,

obligations, and duties imposed by the RHC Plan to other persons; and otherwise has and

exercises discretionary authority and discretionary responsibility in the administration of the

RHC Plan. Defendant RHC Board of Directors is a Plan Administrator Defendant within the

meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary for the RHC

Plan.

25.     **PRV Board of Directors.**  On information and belief, the Board of Directors of

Presence PRV Health ("***PRV Board of Directors***") exercises general governance and control

over the mission and business affairs of PRV, and has and exercises all powers which may be

exercised or performed by PRV under the laws of the state of Illinois, except to the extent

Presence, as parent corporation of PRV, has been given such authority.  The PRV Board of

Directors acts by resolution by majority vote of all members in attendance at a meeting where a quorum is present or by unanimous consent. Among other things, except to the extent the Presence Board of Directors may have been given such authority, Defendant PRV Board of Directors has and exercises the authority and responsibility to administer or supervise the administration of the PRV Plan; to manage the PRV Plan and the disposition of its assets; to control the PRV Plan's operations in accordance with its terms; to delegate and allocate specific responsibilities, obligations, and duties imposed by the PRV Plan to other persons; and otherwise has and exercises discretionary authority and discretionary responsibility in the administration of the PRV Plan. Defendant PRV Board of Directors is a Plan Administrator Defendant within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary for the PRV Plan.

26. The individuals serving on the Presence Board of Directors are identical to the individuals serving on the RHC Board of Directors and the PRV Board of Directors.

27. The **Church Plan Administrative Committee for the Provena Health Employees' Pension Plan** (the "***PRV Administrative Commitee***") is a committee appointed by the PRV Board or the Presence Board, or a committee thereof, to administer the PRV Plan and act as the Plan Administrator.

28. The **Investment Committee for the Provena Health Employees' Pension Plan** (the "***PRV Investment Committee***") is a committee appointed by the PRV Board or the Presence Board, or a committee thereof, to oversee and review the investment of assets of the PRV Plan, including but not limited to appointing a Trustee and supervising the performance of fiduciary duties by the Trustee and others.

29.     The **Plan Administrator for the Resurrection Health Care Retirement Plan** (the "***RHC Plan Administrator***") is a person or entity appointed by the RHC Board or the Presence Board, or a committee thereof, to administer the RHC Plan.

30.     The **Presence Health Finance Committee** (the "***Presence Finance Committee***") is a committee appointed by the Presence Board, or a committee thereof, to approve the investment policies for the RHC and PRV Plans and monitor those investments and the independent advisors who manage them.

31.     **John and Jane Does 1-20**. Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to one or both of the Plans, and are fiduciaries within the meaning of ERISA.  These individuals will be added by name as Defendants in this action upon motion (if necessary) by Plaintiffs at an appropriate time.

32.     Defendants Presence Board of Directors, RHC Board of Directors, and PRV Board of Directors are collectively referred to herein as the "***Board Defendants***."

33.     Defendants Presence, RHC, PRV, Board Defendants, PRV Administrative Committee, and RHC Plan Administrator are collectively referred to herein as the "***Plan Administrator Defendants***."

34.     Defendants Presence, RHC, PRV, Board Defendants, PRV Investment Committee, and Presence Finance Committee are collectively referred to herein as the "***Monitoring Defendants***."

## IV.     THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.     The Adoption of ERISA

35.     Following years of study and debate, and with broad bipartisan support, Congress passed ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of

that year.  ERISA was inspired, in part, by the widely publicized failures of defined benefit

pension plans, especially the plan for employees of Studebaker Corporation, an automobile

manufacturing company that defaulted on its pension obligations in 1965.  *See generally* John H.

Langbein, *et al., Pension and Employee Benefit Law* 78-83 (5th ed. 2010) ("The Studebaker

Incident").

      36.    ERISA protects the retirement savings of pension plan participants.

ERISA mandates that defined benefit plans be currently funded and actuarially sound; that

participants' accruing benefits vest pursuant to defined schedules; that plan administrators report

to participants and to government regulators; that fiduciary duties such as prudence,

diversification, and loyalty bind plan managers; and that the benefits promised by the plans be

guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation ("***PBGC***").  *See,*

*e.g.*, ERISA sections 303, 203, 101-106, 404-406, 409, 4007, 4022; 29 U.S.C. §§ 1083, 1053,

1021-1026, 1104-1106, 1109, 1307, 1322.

      37.    ERISA also binds defined contribution pension plans (such as 401(k) plans) and

welfare plans, which provide health care, disability, severance and related non-retirement

benefits. ERISA § 3(1), (34); 29 U.S.C. § 1002(1), (34).

**B.    The Scope of the Church Plan Exemption in 1974**

      38.    As adopted in 1974, ERISA provided an exemption from compliance for certain

plans, in particular governmental plans and church plans.  Plans that met the statutory definitions

were exempt from all of ERISA's substantive protections for participants.  ERISA section

4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA section 4021(b)(3),

29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

39.     ERISA defined a church plan as a plan "established and maintained for its employees by a church or by a convention or association of churches."[1]

40.     Under the 1974 legislation, although a church plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982.  Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, § 3(33)(C) (1974).  Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a church plan. *Id.*

## C.     The Changes to the Church Plan Exemption in 1980

41.     Church groups had two major concerns about the definition of "church plans" in ERISA as adopted in 1974.  The first, and far more important, concern was that church plans after 1982 could not include the lay employees of agencies of a church.  The second concern was more technical.  Under the 1974 statute, all church plans had to be "established and maintained" by a church or a convention or association of churches.  This ignored the role of the churches' financial services organizations in the management of the pension plans.  In other words, although church plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

42.     These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change clarifying the definition of "church plan." Multiemployer Pension Plan Amendments Act of 1980, Pub. L. No. 96-364 (1980).  The clarified definition is current law.

---

[1] ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A). ERISA is codified in both the labor and tax provisions of the United States Code (Title 29 and Title 26, respectively). Many ERISA provisions appear in both titles. For example, the essentially identical definition of church plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

43.     As to the first concern (regarding lay employees of agencies of a church),

Congress included a new definition of "employee" in subsection (33)(C)(ii)(II) of section 3 of

ERISA.  29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C.

§ 1002(33)(C)(ii)(II)).  Under the amendment, an "employee" of a church or a convention or

association of churches includes an employee of an organization "which is controlled by or

associated with a church or a convention or association of churches."  *Id.*  The phrase "associated

with" is then defined in ERISA section 3(33)(C)(iv) to include only those organizations that

"share[] common religious bonds and convictions with that church or convention or association

of churches."  29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. §

1002(33)(C)(iv)).  Although this new definition of "employee" permitted a "church plan" to

include among its participants employees of organizations controlled by or associated with the

church, convention, or association of churches, it remains the case that a plan covering such

"employees" cannot qualify as a "church plan" unless it was "established by" the church,

convention, or association of churches.  ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A).

44.     As to the second concern (regarding plans "maintained by" a separate church

pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a
> church or by a convention or association of churches includes a plan maintained
> by an organization, whether a civil law corporation or otherwise, *the principal
> purpose or function of which is the administration or funding of a plan or
> program for the provision of retirement benefits or welfare benefits*, or both, for
> the employees of a church or a convention or association of churches, if such
> organization is controlled by or associated with a church or a convention or
> association of churches.

ERISA section 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current

version at 29 U.S.C. § 1002(33)(C)(i)).  Accordingly, under this provision, a plan "established"

by a church or by a convention or association of churches could retain its "church plan" status

15

even if the plan was "maintained by" a distinct organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits"; and (2) the organization is "controlled by or associated with" the church or a convention or association of churches. *Id.*

45.     This church "pension board" clarification has no bearing on plans that were not "established" by a church or by a convention or association of churches. Thus, a plan "established" by an organization "controlled by or associated with" a church would not be a "church plan" because it was not "established" by a church or by a convention or association of churches.  *See* ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

46.     Further, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board.  Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "church plan" if the principal purpose of the organization was other than the administration or funding of the plan.  In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity.  It is not maintained by a church pension board: no "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan.  *Cf.* ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i)).

47.     The requirements for church plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear. There is no tension between

the legislative history of the 1980 amendment and the amendment itself: Congress enacted exactly what it said it wanted to enact.

- Neither an "agency" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a church plan.

- The employees of an organization controlled by or associated with a church could be *included* in a church plan, but if such an organization sponsored its own plan, that was not a church plan.

- With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to maintain the church plans they had established.

48.     Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework.  The author incorrectly relied on the "pension board" clarification to conclude that an entity that was *not* a church could sponsor its own "church plan" as long as the plan was managed by some "organization" that was controlled by or associated with a church. This, of course, is not what the statute says, nor what Congress intended.[2]  This mistake was then

---

[2] An ERISA scholar, Norman Stein, analyzed the IRS General Counsel Memorandum in a recent article and concurred:

The IRS position is almost certainly wrong. The position is based on a barely credible construction of the statutory language and the statutory structure, rendering the primary definition of church plan superfluous. Moreover, the IRS position implements a major policy decision—exempting non-church plans from ERISA—that Congress never considered.

Norman Stein, *An Article of Faith: The Gratuity Theory of Pensions and Faux Church Plans,* Emp. Benefits Comm. Newsletter (ABA Section of Labor & f Law, Ill.), Summer 2014, *available at* http://www.americanbar.org/content/newsletter/groups/labor_law/ebc_newsletter/14_sum_ebc_news/faith.html.

repeated, often copied word-for-word from the erroneous IRS General Counsel Memorandum, in subsequent IRS determinations and, after 1990, in Department of Labor ("*DOL*") determinations. Under the relevant law, these private rulings are not binding on this Court.

## V. PRESENCE HEALTH NETWORK

### A. Presence's Operations

49.     Presence is a large health care system operating in Illinois. Presence has more than 21,000 employees; it operates 12 hospitals, 28 long-term care and senior residential facilities, more than 50 primary and specialty care clinics, and six home health agencies.  The combined health system has hospital operations throughout Chicago, as well as in Des Plaines, Evanston, Aurora, Elgin, Joliet, Kankakee, Urbana, and Danville.

50.     The Presence Health Network took on its current form on November 1, 2011, when RHC (then known as Resurrection Health Care Corporation) and PRV (then known as Provena Health) merged their health care systems or otherwise became affiliated with Presence. As of November 1, 2011, Presence was the parent corporation over, and the sole member of, RHC and PRV, and upon information and belief, became the employer of the former employees of RHC and PRV.

51.     To the extent RHC and PRV continue to operate their health care systems, they do so at the direction of Presence.  The officers and directors of Presence are identical to the officers and directors of both RHC and PRV.

52.     Presence, RHC, and PRV are not-for-profit corporations organized under and operated pursuant to the laws of Illinois.

_____

53.     As of December 31, 2013, Presence had in excess of one billion dollars in net assets, and annual operating revenue of approximately $2.6 billion, with a net operating loss for 2013 of approximately $54 million.

54.     As of December 31, 2015, Presence had net assets of approximately $753,150,000, and annual operating revenue of approximately $2.6 billion, with a net operating loss for 2015 of approximately $185.5 million.

55.     Presence is not, and has never been, a church or a convention or association of churches.

56.     Resurrection was never a church or a convention or association of churches.

57.     RHC is not, and has never been, a church or a convention or association of churches.

58.     Provena was never a church or a convention or association of churches.

59.     PRV is not, and has never been, a church or a convention or association of churches.

60.     Presence does not claim, and has never claimed, to be a church or a convention or association of churches.

61.     Resurrection never claimed to be a church or a convention or association of churches.

62.     RHC does not claim, and has never claimed, to be a church or a convention or association of churches.

63.     Provena never claimed to be a church or a convention or association of churches.

64.     PRV does not claim, and has never claimed, to be a church or a convention or association of churches.

65.     For example, Presence, Resurrection, RHC, Provena, and PRV each annually file or filed with the IRS a Form 990 or 990-EZ, Return of Organization Exempt from Income Tax. These forms were submitted to the IRS under penalty of perjury.

66.     Schedule A to Form 990 and Form 990-EZ requires the filing organization to declare the reason for its public charity status.  The first option for claiming public charity status is that the organization is "[a] church, convention of churches, or association of churches . . . ."

67.     Year after year, including in their most recent Form 990 filings, Presence, Resurrection, RHC, Provena, and PRV did *not* check the box on Schedule A to claim status as "[a] church, convention of churches, or association of churches . . . ."

68.     Presence is not owned by a church.

69.     Resurrection was not owned by a church.

70.     RHC is not owned by a church.

71.     Provena was not owned by a church.

72.     PRV is not owned by a church.

73.     Presence does not receive funding from a church.

74.     Resurrection did not receive funding from a church.

75.     RHC does not receive funding from a church.

76.     Provena did not receive funding from a church.

77.     PRV does not receive funding from a church.

78.     Presence does not claim that any church has any liability for Presence's debts or obligations.

79.     Resurrection did not claim that any church had liability for Resurrection's debts or obligations.

80.  RHC does not claim that any church has any liability for RHC's debts or obligations.

81.  Provena did not claim that any church had liability for Provena's debts or obligations.

82.  PRV does not claim that any church has any liability for PRV's debts or obligations.

83.  No church dictates how Presence allocates its resources.

84.  No church dictated how Resurrection allocated its resources.

85.  No church dictates how RHC allocates its resources.

86.  No church dictated how Provena allocated its resources.

87.  No church dictates how PRV allocates its resources.

88.  No church approves Presence's financial transactions.

89.  No church approved Resurrection's financial transactions.

90.  No church approves RHC's financial transactions.

91.  No church approved Provena's financial transactions.

92.  No church approves PRV's financial transactions.

93.  No church has any role in the governance of Presence.

94.  No church had any role in the governance of Resurrection.

95.  No church has any role in the governance of RHC.

96.  No church had any role in the governance of Provena.

97.  No church has any role in the governance of PRV.

98.  Presence acts by and through its Board of Directors.

99.  Resurrection acted by and through its Board of Directors.

100.    RHC acts by and through its Board of Directors.

101.    Provena acted by and through its Board of Directors.

102.    PRV acts by and through its Board of Directors.

103.    No church elects the members of Presence's Board of Directors, or the Board of Directors of RHC and PRV, and no church elected the members of the Board of Directors of Resurrection or Provena.

104.    No church elects the members of the boards of directors of Presence's facilities.

105.    Members of the Board of Directors of Presence, RHC, and PRV are not required to be members of a particular religion or church.

106.    Members of the governing boards of Presence's facilities, including those of RHC and PRV, are not required to be members of a particular religion or church.

107.    The management of Presence, including the management of RHC and PRV, is comprised primarily of lay people, and executive officers of Presence receive compensation in line with executive officers of other healthcare systems.  For example, in 2013, the CEO of Presence received total annual compensation in excess of $1.5 million; the Treasurer received total annual compensation in excess of $1 million; and the Secretary received total annual compensation in excess of $700,000.

108.    Presence's facilities, including those of RHC and PRV, admit patients of all religions and faiths.

109.    Patients of Presence's, RHC's, and PRV's various healthcare facilities are not turned away because of their religious affiliations.

110.    Presence, RHC, and PRV do not focus on the needs of, market to, or target a particular religious population.

111.    Presence, RHC, and PRV do not have a mission to serve patients of a particular religion.

112.    Presence's facilities, including those of RHC and PRV, hire employees and medical staff who are of all religions and faiths.

113.    Presence does not impose any denominational requirement on its employees.

114.    Prior to the November, 2011 merger (and subsequent thereto to the extent RHC and PRV continue to have employees), Resurrection, RHC, Provena, and PRV did not, and do not now, impose any denominational requirement on their respective employees.

115.    In hiring employees and medical staff, Presence does not give preference to applicants of a particular religion.

116.    In hiring employees and medical staff, Resurrection, RHC, Provena, and PRV did not, and (to the extent RHC and PRV continue to have employees) do not now, give preference to applicants of a particular religion.

117.    Employees and medical staff of Presence facilities, including those currently or formerly owned or operated by Resurrection, RHC, Provena, and PRV, are not required to sign or abide by a statement of faith or religious beliefs.

118.    In 2013, Presence reported to the IRS that it has eight *taxable* corporations under its umbrella, including two insurance companies located in the Cayman Islands.

119.    Presence purports to disclose, and not keep confidential, its own highly complex financial records, which are consolidated with those of RHC and PRV.  For example, Presence is required and in some cases has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including those required to obtain payments from Medicare and Medicaid.  In addition, Presence makes public its consolidated financial

statements, which describe Presence's representations as to its own highly complex operations and financial affairs.

120. Presence's financial information, including that of RHC and PRV, is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

121. Prior to November, 2011, Resurrection's, RHC's, Provena's, and PRV's financial information was regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds were issued.

122. On information and belief, Presence, for itself and together with RHC and/or PRV, claims the church plan exemption in order to obtain competitive advantages, such as to improve Presence's credit ratings and obtain more favorable financing terms. Presence can make such improvements more easily than its for-profit competitors that offer retirement plans, because Presence is not paying insurance premiums to the PBGC nor making contributions necessary to meet its ERISA funding obligations.

123. Prior to November, 2011, Resurrection, RHC, Provena, and PRV also claimed the church plan exemption in order to obtain competitive advantages as alleged in the preceding paragraph.

124. Other nonprofit hospital systems which issue debt instruments, but which comply with ERISA for their pension plans, do not have the benefit of this flexibility in funding their employees' retirement plans because they must meet ERISA's minimum funding requirements. Additionally, they must currently fund their plan and pay for federal pension insurance to ensure that their employees' pensions are protected, or face tax penalties for their failure to do so.

125. The participants in the Presence Plans are harmed by the failures of Presence, RHC, and PRV to comply with ERISA's neutral regulations. For example, participants do not

receive ERISA-required notices and disclosures; they are not protected by ERISA's minimum-funding requirements; and they do not benefit from the protections of PBGC insurance.

126.    The principal purpose or function of Presence, RHC, and PRV is *not* the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both.

127.    The principal purpose of Presence, RHC, and PRV is the provision of healthcare through owning, leasing, or operating health care facilities and service providers in Illinois.

**B.    The Presence Plans**

**1.    Defendants Claim the RHC Plan Is a Church Plan**

128.    The RHC Plan is a defined benefit, cash balance pension plan that covered substantially all of RHC's employees as of the date the RHC Plan was frozen.

129.    Alternatively, the RHC Plan is a defined benefit, cash balance pension plan that covered substantially all of those Presence employees who worked at facilities operated by RHC as of the date the RHC Plan was frozen.

130.    Presence and RHC claim the RHC Plan is exempt from ERISA as a church plan.

131.    However, the RHC Plan was not established by any church or convention or association of churches.  No church (or convention or association of churches) committed to provide benefits through the RHC Plan and no church (or convention or association of churches) designed, adopted, enacted, or otherwise took the legal or logistical steps necessary to bring the RHC Plan into existence.

132.    On information and belief, the RHC Plan was established by Resurrection (then named Resurrection Hospital Association), effective July 1, 1965, as the Resurrection Hospital Association Retirement Plan.  On that date, Resurrection committed to provide benefits through the RHC Plan and designed, adopted, enacted, and otherwise took the legal and logistical steps

necessary to bring the RHC Plan into existence. On information and belief, on January 1, 1996, Resurrection (then named Resurrection Health Care) amended and restated the RHC Plan and renamed it the Resurrection Health Care Retirement Plan.

133. Alternatively, the RHC Plan was established by Presence effective January 1, 2016, when the RHC Plan was restated and Presence became the sponsor of the RHC Plan.

134. No church or convention or association of churches maintains the RHC Plan. No church (or convention or association of churches) sponsors, funds, or possesses the authority to amend or terminate the RHC Plan.

135. No church or convention or association of churches administers the RHC Plan.

136. RHC maintained the RHC Plan at least until November 1, 2011.

137. Presence maintains the RHC Plan, either itself or together with RHC.

138. Presence has the power to continue the RHC Plan, either itself or together with RHC.

139. Presence has the power to amend the RHC Plan, either itself or together with RHC.

140. Presence has the power to terminate the RHC Plan, either itself or together with RHC.

141. Presence sponsors the RHC Plan, either itself or together with RHC.

142. Presence is responsible for funding the RHC Plan, either itself or together with RHC.

143. Presence is the employer in relation to the RHC Plan, either itself or together with RHC.

144. The RHC Plan is now frozen.

145.    According to audited financial statements released by Presence, as of December 31, 2013, the RHC Plan was funded at 63.4% of its obligations.  It had projected benefit obligations of $354,000,000, and assets of $224,761,000, leaving a shortfall of $129,539,000.

146.    According to audited financial statements released by Presence, as of December 31, 2015, the RHC Plan was funded at 69% of its obligations.  It had projected benefit obligations of $331,758,000, and assets of $228,746,000, leaving a shortfall of $102,512,000.

**2.    The RHC Plan Meets the Definition of an ERISA Defined Benefit Plan and Is a Cash Balance Plan**

147.    The RHC Plan is a plan, fund, or program that was established or maintained by RHC, and is currently maintained by Presence, either itself or together with RHC, and which by its express terms and surrounding circumstances provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond. As such, the RHC Plan meets the definition of "employee pension benefit plans" in ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A). The RHC Plan does not provide for an individual account for each participant and does not provide benefits based solely upon the amount contributed to a participant's account.  As such, the RHC Plan is a defined benefit plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or a "defined contribution plan" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

148.    The RHC Plan is a cash balance plan because it computes accrued benefits by reference to hypothetical account balances or equivalent amounts and is therefore required to comply with the special rules for cash balance plans, including but not limited to ERISA section 203(f)(2), 29 U.S.C. § 1053(f)(2), which requires that any employee who has completed at least 3 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit

derived from employer contributions. In other words, the maximum vesting period allowable for a cash balance plan is 3 years.

149.     The RHC Plan requires participants in the plan to complete 5 years of service to be vested.

### 3.     Defendants Claim the PRV Plan Is a Church Plan

150.     The PRV Plan is a defined benefit pension plan that covered substantially all of PRV's employees as of the date it was frozen.

151.     Presence and PRV claim the PRV Plan is exempt from ERISA as a church plan.

152.     However, the PRV Plan was not established by any church or convention or association of churches.  No church (or convention or association of churches) committed to provide benefits through the PRV Plan and no church (or convention or association of churches) designed, adopted, enacted, or otherwise took the legal or logistical steps necessary to bring the PRV Plan into existence.

153.     On information and belief, the PRV Plan was established by Provena.  Effective January 1, 1999, Provena committed to provide benefits through the PRV Plan, merged the plans of certain predecessor healthcare systems to form the PRV Plan, and designed, adopted, enacted, and otherwise took the legal and logistical steps necessary to bring the PRV Plan into existence.

154.     Alternatively, the PRV Plan was established by Presence effective January 1, 2016, when the PRV Plan was restated and Presence became the sponsor of the PRV Plan.

155.     No church or convention or association of churches maintains the PRV Plan.  No church (or convention or association of churches) sponsors, funds, or possesses the authority to amend or terminate the PRV Plan.

156.     No church or convention or association of churches administers the PRV Plan.

157.     Presence maintains the PRV Plan, either itself or together with PRV.

28

158. Presence has the power to continue the PRV Plan, either itself or together with PRV.

159. Presence has the power to amend the PRV Plan, either itself or together with PRV.

160. Presence has the power to terminate the PRV Plan, either itself or together with PRV.

161. Presence sponsors the PRV Plan, either itself or together with PRV.

162. Presence is responsible for funding the PRV Plan, either itself or together with PRV.

163. Presence is the employer in relation to the PRV Plan.

164. The PRV Plan is now frozen.

165. According to audited financial statements released by Presence, as of December 31, 2013, the PRV Plan was funded at 84.8% of its obligations. It had projected benefit obligations of $489,569,000, and assets of $414,924,000, leaving a shortfall of $74,645,000.

**4.      The PRV Plan Meets the Definition of an ERISA Defined Benefit Plan**

166. The PRV Plan is a plan, fund, or program that was established or maintained by PRV, and is currently maintained by Presence, either itself or together with PRV, and which by its express terms and surrounding circumstances provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond. As such, the PRV Plan meets the definition of "employee pension benefit plans" in ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A). The PRV Plan does not provide for an individual account for each participant and does not provide benefits based solely upon the amount contributed to a participant's account. As such, the PRV Plan is a defined benefit plan within the

meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or a "defined contribution plan" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

### 5.    Presence Maintains Other Plans that Purport to Follow ERISA

167.    Although Presence contends that the Presence Plans are exempt from ERISA as church plans, it claims ERISA status for many of its other employee benefit plans.

168.    For example, Presence purports to comply with ERISA for various defined contribution and welfare plans.

169.    Furthermore, Presence, either itself or together with RHC, maintains as an ERISA plan a defined benefit pension plan (the West Suburban Health Care Retirement Income Plan ("**WSMC Plan**")) for the benefit of former employees of West Suburban Medical Center ("**WSMC**").  Some time prior to the 2011 merger, RHC took control of WSMC and began maintaining the WSMC Plan; in 2010, RHC sold the assets of WSMC to a third party, but continued to maintain the WSMC Plan.  Presence has since begun to maintain the WSMC Plan, as well.  The WSMC Plan has always been treated as an ERISA plan, both before and after RHC and Presence began to maintain it.

170.    Compliance with ERISA creates no undue, genuine burden on any religious practice of Presence, as evidenced by Presence's claimed compliance with ERISA for its defined contribution plans, its welfare plans, and the WSMC Plan.

### C.    All Defendants are Plan Adminstrators and/or Fiduciaries

### 1.    Nature of Plan Administrator and Fiduciary Status

171.    **Plan Administrator.**  A plan "administrator" is one who is designated as such by the terms of the instrument under which the plan is operated.  ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i).  If an administrator is not so designated, the administrator is the plan sponsor. ERISA § 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii).

172.  **Named Fiduciaries**. Every ERISA plan must have one or more "named fiduciaries." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a named fiduciary and, in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

173.  **De Facto Fiduciaries**. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under section 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

174.  Each of the Defendants was a fiduciary with respect to either the RHC Plan, the PRV Plan, or both, and owed fiduciary duties to the Plans and their participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plans' documents and/or through their conduct.

175.  As fiduciaries, Defendants were required by ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans and the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

176.     Plaintiffs do not allege that each Defendant was necessarily a fiduciary with respect to all aspects of the Plans' management and administration.  Rather, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, to the extent discovery in this matter establishes that such discretion and authority were limited, the claims against each Defendant are based on such specific discretion and authority.

177.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

### 2.     Defendants Are Each Plan Administrators and/or ERISA Fiduciaries

178.     **Defendant Presence**. Presence, together with RHC as to the RHC Plan, and together with PRV as to the PRV Plan, is the employer responsible for maintaining the Plans and is, therefore, the plan sponsor of the Plans within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

179.     **Defendant RHC.**  Defendant RHC was the employer who established the RHC Plan, and had and continues to have responsibility for maintaining the RHC Plan, and is, therefore, the plan sponsor of the RHC Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

180.     **Defendant PRV.**  Defendant PRV was the employer who established the PRV Plan, and had and continues to have responsibility for maintaining the PRV Plan, and is, therefore, the plan sponsor of the PRV Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

181.    In the absence of a Plan administrator specifically designated in or pursuant to an instrument governing the Plans, the plan sponsor of the Presence Plans is the Plan administrator under ERISA section 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii).  Thus, in the alternative to the individuals or entities identified herein as Plan administrators, (a) Presence is a Plan Administrator Defendant within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), as well as a named fiduciary within the meaning of ERISA section 402, 29 U.S.C. § 1102; (b) RHC is a Plan Administrator Defendant as to the RHC Plan within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), as well as a named fiduciary within the meaning of ERISA section 402, 29 U.S.C. § 1102; and (c) PRV is a Plan Administrator Defendant as to the PRV Plan within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), as well as a named fiduciary within the meaning of ERISA section 402, 29 U.S.C. § 1102.

182.    Defendant Presence's responsibilities include fiduciary oversight of the Plans.  Upon information and belief, Defendant Presence has the power to appoint, and hence to monitor and remove, the trustees of the Plans' trusts.  Presence also communicates with Plan participants and beneficiaries concerning the Plan.

183.    Defendant RHC's responsibilities include fiduciary oversight of the RHC Plan.  Upon information and belief, Defendant RHC has the power to appoint, and hence to monitor and remove, the trustees of the RHC Plan's trust.  RHC also communicates or has communicated with RHC Plan participants and beneficiaries concerning the RHC Plan.

184.    Defendant PRV's responsibilities include fiduciary oversight of the PRV Plan.  Upon information and belief, Defendant PRV has the power to appoint, and hence to monitor

and remove, the trustees of the PRV Plan's trust. PRV also communicates or has communicated with PRV Plan participants and beneficiaries concerning the PRV Plan.

185.    Defendant Presence is a fiduciary with respect to the Plans, RHC is a fiduciary with respect to the RHC Plan, and PRV is a fiduciary with respect to the PRV Plan, all within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because each exercises discretionary authority or discretionary control respecting management of the Presence Plans, the RHC Plan, or the PRV Plan; exercises authority and control respecting management or disposition of the assets of the Presence Plans, the RHC Plan, or the PRV Plan; and/or has discretionary authority or discretionary responsibility in the administration of the RHC Plan, the PRV Plan, or both.

186.    **Board Defendants.**  Upon information and belief, the Board Defendants' responsibilities include fiduciary oversight of the Presence Plans.  The Board Defendants are fiduciaries with respect to the Presence Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Plans, exercise authority and control respecting management or disposition of the Plans' assets, and/or have discretionary authority or discretionary responsibility in the administration of the Presence Plans.

187.    **PRV Administrative Committee.**  To the extent the PRV Administrative Committee was appointed as Plan Administrator of the PRV Plan and that delegation was sufficient to meet the requirements of ERISA section 402, 29 U.S.C. § 1102, the PRV Administrative Committee is a fiduciary with respect to the PRV Plan.  As such, the PRV Administrative Committee is and has been a fiduciary with respect to the PRV Plan within the meaning of ERISA section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because the Plan

Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the plan.

188. **RHC Plan Administrator.** To the extent the RHC Plan Administrator was appointed to administer the RHC Plan and that delegation was sufficient to meet the requirements of ERISA section 402, 29 U.S.C. § 1102, the RHC Plan Administrator is a fiduciary with respect to the RHC Plan. As such, the RHC Plan Administrator is and has been a fiduciary with respect to the RHC Plan within the meaning of ERISA section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the plan.

189. **PRV Investment Committee .** The PRV Investment Committee's responsibilities include fiduciary oversight of the PRV Plan. The PRV Investment Committee is a fiduciary with respect to the Presence Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the PRV Plan, exercises authority and control respecting management or disposition of the PRV Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Presence Plans.

190. **Presence Finance Committee.** The Presence Finance Committee's responsibilities include fiduciary oversight of the PRV Plan and the RHC Plan. The Presence Finance Committee is a fiduciary with respect to the Presence Plans within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Presence Plans, exercises authority and control respecting management or disposition of the Presence Plans' assets, and/or has discretionary authority or discretionary responsibility in the administration of the Presence Plans.

191.    Plaintiffs reserve the right to amend this Complaint to name other or additional Defendants once they have had the opportunity to conduct discovery on these issues.

**D.    The Presence Plans Are Not Church Plans**

192.    Presence, as to the Presence Plans; RHC, as to the RHC Plan; and PRV, as to the PRV Plan; claim the Presence Plans are church plans under ERISA section 3(33), 29 U.S.C. § 1002(33), and the analogous section of the Internal Revenue Code ("IRC"), 26 U.S.C. § 414(e), and further claim that the Presence Plans are therefore exempt from ERISA's coverage under ERISA section 4(b)(2), 29 U.S.C. § 1003(b)(2).

**1.    A Church Plan Must Be Established by a Church, and Presence, RHC, Resurrection, PRV, and Provena Are Not Churches.**

193.    Under ERISA section 3(33)(A), a church plan is "a plan established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26."  ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).  A straightforward reading of this section is that a church plan "means," and therefore by definition must be, "a plan established . . . by a church or convention or association of churches."

194.    The Plans are not church plans because they were not established by a church or a convention or association of churches.

195.    The RHC Plan was established by Resurrection.  In the alternative, the RHC Plan was established by Presence.  Resurrection was not a church or a convention or association of churches when the RHC Plan was established, nor did it claim to be.  Presence was not a church or a convention or association of churches when it became sponsor of the RHC Plan effective January 1, 2016, nor did it claim to be.  For example, IRS Form 990 asks the filing organization to state whether it is, *inter alia*, a church, a school, a hospital, or an organization operated for the

benefit of publicly supported organizations. Year after year, neither Resurrection nor Presence identified itself on Form 990 as a church or a convention or association of churches. Thus, by Resurrection's and Presence's own sworn statements to the IRS, Resurrection and Presence are not, and were not, churches or conventions or associations of churches. Accordingly, the RHC Plan was not "established" by a church or by a convention or association of churches.

196. The PRV Plan was established by Provena. In the alternative, the PRV Plan was established by Presence. Provena was not a church or a convention or association of churches when the PRV Plan was established, nor did it claim to be. Presence was not a church or a convention or association of churches when it became sponsor of the PRV Plan effective January 1, 2016, nor did it claim to be. For example, IRS Form 990 asks the filing organization to state whether it is, *inter alia*, a church, a school, a hospital, or an organization operated for the benefit of publicly supported organizations. Year after year, neither Provena nor Presence identified itself on Form 990 as a church or a convention or association of churches. Thus, by Provena's and Presence's own sworn statements to the IRS, Provena and Presence are not, and were not, churches or conventions or associations of churches. Accordingly, the PRV Plan was not "established" by a church or by a convention or association of churches.

197. Although portions of ERISA section 3(33)(C) address, among other matters, who can be *participants* in a church plan—in other words, which employees can be in church plans, etc.—and who can *maintain* church plans, these portions of ERISA section 3(33)(C) do not change the plain requirement of section 3(33)(A) that a church plan must be established by a church.

### 2. Only Two Types of Entities May Maintain Church Plans, and Presence, RHC, and PRV Are Neither Type.

198. Two subparts of section 3(33) of ERISA, 29 U.S.C. § 1002(33), address which entities may maintain church plans:

    A.    <u>First</u>, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a church plan may be maintained *by a church or by a convention or association of churches*; and

    B.    <u>Second</u>, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a church plan may be maintained by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches.

As noted above, both types of plans must first be "established" by a church or by a convention or association of churches in order to qualify as "church plans."

199. The only two types of entities that may "maintain" church plans are those described in ERISA sections 3(33)(A) and (C)(i), 29 U.S.C. § 1002(33)(A), (C)(i). As detailed above, the Plans are maintained by Presence, either itself or together with RHC (in the case of the RHC Plan) and PRV (in the case of the PRV Plan). Accordingly, the Presence Plans are not maintained by either type of entity.

200. First, the Plans are not maintained by a church or convention or association of churches, as described in ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A). Neither Presence, nor RHC, nor PRV is a church or a convention or association of churches.

201. Second, the Plans are not maintained by an entity described in ERISA section 3(33)(C)(i). The Plans are not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or

welfare benefits, or both. 29 U.S.C. § 1002(33)(C)(i). Each of Presence, RHC, and PRV is a

nonprofit hospital conglomerate whose principal purpose is the provision of healthcare through

owning, leasing, or operating health care facilities and service providers in Illinois. This ends

any argument that the Plan could be a church plan under ERISA section 3(33)(C)(i), 29 U.S.C.

§ 1002(33)(C)(i).

202. To the extent that Presence, RHC, or PRV claims that any of the Presence Plans is

"maintained" by a committee or other entity within Presence, RHC, or PRV, the claim fails. *See*

29 U.S.C. § 1002(33)(C)(i). The only entity with the power to "maintain" the Plans, which

includes the power to continue, amend, and/or terminate the Plans, is Presence, either itself or

together with RHC (in the case of the RHC Plan) and PRV (in the case of the PRV Plan). Only

Presence, either itself or together with RHC (in the case of the RHC Plan) and PRV (in the case

of the PRV Plan), has the power to amend and continue the Plans. Only Presence, either itself or

together with RHC (in the case of the RHC Plan) and PRV (in the case of the PRV Plan), has the

power to terminate the Plans.

203. Even if Defendants claim that the Plan Administrator Defendants other than

Presence, RHC, and PRV "maintain" the Plans, the Plans still would not be maintained by an

entity meeting the requirements of ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) for

two reasons: (i) none of these other Plan Administrator Defendants is an "organization" within

the meaning of section 3(33)(C)(i); and (ii) for the reasons stated *infra*, these other Plan

Administrator Defendants are not "controlled by or associated with a church or a convention or

association of churches" within the meaning of ERISA, as required by section 3(33)(C)(i).

204. Thus, any argument that the Plans are maintained by an entity described in ERISA

section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), fails.

### 3. A Church Plan Must Be Maintained For the Employees of a Church or a Convention or Association of Churches.

205. Even if the Plans, or either of them, had been "established" by a church, and even if they were maintained by a proper entity under either section 3(33)(A) or 3(33)(C)(i), the Plans still would not qualify as church plans because they are not maintained for the *employees of any church or convention or association of churches*. 29 U.S.C. §§ 1002(33)(A), (C)(i).

206. Many thousands of participants in the Plans work for Presence (a nonprofit hospital conglomerate), and previously were employed by RHC or PRV (also nonprofit hospital conglomerates). Neither Presence, nor RHC, nor PRV is a church or convention or association of churches. And their current and former employees are not and were not employees of a church or convention or association of churches within the meaning of ERISA.

207. Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax-exempt organization that is controlled by or associated with a church or a convention or association of churches also may be considered an employee of a church. This part of the definition merely explains which employees a church plan may cover *once a valid church plan is established.* The Presence Plans fail this part of the definition because neither Presence, nor RHC, nor PRV is controlled by or associated with a church or convention of churches within the meaning of ERISA.

208. Neither Presence, nor RHC, nor PRV is controlled by a church or convention or association of churches.

209. Neither Presence, nor RHC, nor PRV is owned or operated by a church, and none of them receives funding from a church.[3] No church dictates how Presence, RHC, or PRV

---

[3] Notably, if Presence, RHC, or PRV were "controlled by" the Roman Catholic Church, then the church would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by Presence, RHC, or PRV.

allocates its resources. The members of the Board of Directors of Presence, RHC, and PRV are not elected by a church. Neither Presence, nor RHC, nor PRV claims that any church is liable for Presence's, RHC's, or PRV's debts or obligations.

210. In addition, neither Presence, nor RHC, nor PRV is "associated with" a church or convention or association of churches within the meaning of ERISA. Under ERISA section 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." Neither Presence, RHC, nor PRV shares common religious bonds and convictions with a church or association of churches within the meaning of ERISA.

211. The only two Circuit Courts that have interpreted "association" within the meaning of ERISA have applied an objective, three-factor test, which evaluates: "1) whether the religious institution plays any official role in the governance of the organization; 2) whether the organization receives assistance from the religious institution; and 3) whether a denominational requirement exists for any employee or patient/customer of the organization." *See Lown v. Cont'l Cas. Co*, 238 F.3d 543, 548 (4th Cir. 2001); *Chronister v. Baptist Health*, 442 F.3d 648, 653 (8th Cir. 2006).

212. Presence, RHC, and PRV are not operated by any church and no church plays any official role in their governance.

213. Neither Presence, nor RHC, nor PRV receives any funding from any church.

214. Presence does not tell prospective employees that religious affiliation is a factor in the recruiting and hiring of Presence employees. Presence does not require that the members of its governing Board of Directors, or the boards of its facilities, be members of a particular

41

religion or church. Presence admits patients of all religions and faiths to its facilities. Presence does not require employees and medical staff to sign or abide by a statement of faith or religious beliefs.

215.     Prior to the 2011 merger, and subsequently to the extent RHC and PRV continue to have employees, RHC and PRV did not, and do not, tell prospective employees that religious affiliation is a factor in the recruiting and hiring of their respective employees; did not, and do not, require that the members of their respective governing Boards of Directors, or the boards of their respective facilities, be members of a particular religion or church; did, and continue to, admit patients of all religions and faiths to their respective facilities; and did not, and do not, require employees and medical staff to sign or abide by a statement of faith or religious beliefs.

### 4.     Even if the Plans Could Otherwise Qualify as Church Plans Under ERISA Section 3(33)(A) or (C)(i), They Are Excluded from Church Plan Status Under ERISA Section 3(33)(B)(ii).

216.     Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from church plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches. In this case, there are many thousands of participants in the Plans alone, and all or very nearly all of them are non-clergy healthcare workers. If the participants in the Plans do not work for an organization that is controlled by or associated with a church or a convention or association of churches, then even if the Plans could otherwise qualify as church plans under ERISA section 3(33)(A) or (C)(i), 29 U.S.C. § 1002(33)(A), (C)(i), (which they cannot), the Plans still would be foreclosed from church plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

217.     As set forth above, neither Presence, nor RHC, nor PRV is controlled by a church or a convention or association of churches, nor do they share common religious bonds and convictions with a church or association of churches within the meaning of ERISA.

**5.     Even if the Plans Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Presence, RHC, and PRV, Violates the Establishment Clause of the First Amendment to the U.S. Constitution, and is Therefore Void and Ineffective.**

218.     The church plan exemption is an accommodation for churches that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

219.     The Establishment Clause guards against the establishment of religion by the government.  The government "establishes religion" when, among other activities, it privileges those with religious beliefs (*e.g.*, exempts them from neutral regulations)—when an accommodation is not necessary to alleviate a substantial burden on religious exercise—at the expense of nonadherents and/or while imposing legal and other burdens on nonmembers. Extension of the church plan exemption to Presence, RHC, or PRV, all nonprofit hospital conglomerates, privileges Presence, RHC, and PRV for their claimed faith, even though ERISA—a neutral, generally applicable statute—does not impose any burden on any relgious exercise of Presence, RHC, or PRV.  And this privilege is provided at the expense of their employees, whose faith is not considered relevant when they are hired, yet who are then denied the benefit of insured, funded pensions, as well as many other important procedural and substantive ERISA protections, including their right to detailed information regarding their pension benefits.  Similarly, Presence, RHC, and PRV, all non-church entities, have a privileged economic advantage over their competitors in the commercial arena they have chosen, based solely on Presence's, RHC's, and PRV's claimed religious beliefs.  This too is prohibited by the Establishment Clause.  Simply put, when government provides a regulatory exemption

exclusively to religious organizations that is not required to alleviate a substantial burden on religious exercise and that burdens nonbeneficiaries, it has endorsed religion in violation of the Establishment Clause.

220.    As set forth in more detail below in Count X, the extension of the church plan accommodation to Presence, RHC, and PRV, which are not churches, violates the Establishment Clause because it is not necessary to further the stated purposes of the exemption, harms Presence, RHC, and PRV workers, puts competitors of Presence, RHC, and PRV at an economic disadvantage, relieves Presence, RHC, and PRV of no genuine religious burden created by ERISA, and creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.  Accordingly, the church plan exemption, as claimed by Presence, RHC, and PRV, is void and ineffective.

## VI.    CLASS ACTION ALLEGATIONS

221.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated: All participants in and beneficiaries of the Presence Plans.

222.    Excluded from the Class are any high-level executives at Presence, RHC and/or PRV, or any employees at Presence, RHC, and/or PRV who have responsibility or involvement in the administration of the Plans, or who are subsequently determined to be fiduciaries of the Plans.

### A.    Numerosity

223.    The exact number of Class members is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Presence, RHC, and/or PRV.  Presence currently employs approximately 21,000 individuals, and, upon information and belief, a

substantial number of these individuals are participants in or beneficiaries of the Plans. Accordingly, the Class is so numerous that joinder of all members is impracticable.

224.     Presence, RHC, and PRV operate hospitals, other healthcare facilities, and corporate offices in the State of Illinois.  Presence's, RHC's, and PRV's current and former employees and, therefore, the members of the Class, are geographically dispersed across at least Illinois.

**B.     Commonality**

225.     The issue of liability presents common questions of law and fact, with issues that are common to all members of the Class, including (1) whether the Presence Plans are exempt from ERISA as church plans, and, if not, (2) whether Defendants have failed to administer, fund, insure, and otherwise operate the Presence Plans in accordance with ERISA.

226.     The issues relating to requested relief are also common to the members of the Class, as the relief will consist of (1) a declaration that each of the Presence Plans is an ERISA-covered plan; (2) an order reforming each of the Presence Plans, and requiring that each of the Plans comply with the administration and funding requirements of ERISA; and (3) an order requiring Defendants to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

**C.     Typicality**

227.     Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice, and/or course of conduct, namely Defendants' failure to maintain the Plans in accordance with ERISA.  Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

228.     Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally.

Specifically, the equitable relief sought consists primarily of (i) a declaration that the Plans are not church plans; (ii) a declaration that the Plans are ERISA-covered plans; and (iii) declaratory, injunctive, or other appropriate relief requiring the Plans to comply with the administration and funding requirements of ERISA. In addition, to the extent Plaintiffs seek monetary relief, it is for civil fines payable to the Class in the same statutory daily amount for each member of the Class.

229.    Neither Presence, nor RHC, nor PRV has any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

**D.    Adequacy**

230.    Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class, whether they are interested in the RHC Plan or the PRV Plan, because the same relief is requested against Presence, as the parent of both RHC and PRV and sponsor of both Plans.

231.    Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

232.    Neither Presence, nor RHC, nor PRV has any unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

233.    Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.    Rule 23(b)(1) Requirements**

234.    The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

235.    The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be

dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

236.     The requirements of Fed. R. Civ. P. 23(b)(2) are also satisfied because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements**

237.     Alternatively, if the Class is not certified under Fed. R. Civ. P. 23(b)(1) or 23(b)(2), then certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plans are exempt from ERISA as church plans, and, if not, (2) whether Defendants have failed to administer, fund, and insure the Plans in accordance with ERISA; and (3) whether the church plan exemption, as claimed by Presence, RHC and PRV, violates the Establishment Clause of the First Amendment.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.      Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

B.      Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

47

C.     There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.     This litigation is properly concentrated in this forum, which is where Presence, RHC, and PRV are headquartered; and

E.     There are no difficulties managing this case as a class action.

## VII.    CAUSES OF ACTION

### COUNT I

**(Claim for Equitable Relief Pursuant to ERISA Section 502(a)(3) Against All Defendants)**

238.     Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

239.     ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief … to enforce any provisions of this subchapter or the terms of the plan." Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, Plaintiffs seek declaratory relief that the Plans are not church plans within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus are subject to the provisions of Title I and Title IV of ERISA.

240.     ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiffs seek orders directing all Defendants to bring the Plans into compliance with ERISA.

241.     As the Presence Plans are not church plans within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and meet the definition of a pension plan under ERISA section

48

3(2), 29 U.S.C. § 1002(2), the Presence Plans should be declared ERISA-covered pension plans, and all Defendants should be ordered to bring the Presence Plans into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II

**(Claim for Violation of Reporting and Disclosure Provisions Against Presence, RHC, PRV, and the Plan Administrator Defendants)**

242.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

**A.      Summary Plan Descriptions**

243.     At no time have the Plan Administrator Defendants provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to either the RHC Plan or the PRV Plan that meets the requirements of ERISA section 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

244.     The Plan Administrator Defendants, as plan administrators, have violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

**B.      Annual Reports**

245.     At no time have the Plan Administrator Defendants filed an annual report with respect to the Presence Plans with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or a Form 5500 and associated schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA section 103, 29 U.S.C. § 1023.

246.     The Plan Administrator Defendants, as plan administrators, have violated ERISA section 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Plans with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or Form

5500s and associated schedules and attachments that the Secretary has approved as an alternate method of compliance with ERISA section 103, 29 U.S.C. § 1023.

## C.     Summary Annual Reports

247.     At no time have the Plan Administrator Defendants furnished Plaintiffs or any member of the Class with a Summary Annual Report with respect to either the RHC Plan or the PRV Plan in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder. *See* 29 U.S.C. § 1024(b)(3).

248.     The Plan Administrator Defendants, as plan administrators, have violated ERISA section 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with a Summary Annual Report in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder. *See* 29 U.S.C. § 1024(b)(3).

## D.     Notification of Failure to Meet Minimum Funding

249.     At no time have Defendants Presence, RHC, or PRV furnished Plaintiffs or any member of the Class with a Notice with respect to either of the Plans pursuant to ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Presence, RHC, or PRV had failed to make the payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to either the RHC Plan or the PRV Plan.

250.     Defendants Presence, RHC, and PRV have been the employers that established and/or maintained the Plans.

251.     At no time has Defendant Presence funded the Plans in accordance with ERISA section 302, 29 U.S.C. § 1082.

252.     At no time has Defendant RHC funded the RHC Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

Title

253.    At no time has Defendant PRV funded the PRV Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

254.    As the employer maintaining the Presence Plans, Defendant Presence has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Plans, is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by ERISA Section 502(c)(3), 29 U.S.C. § 1132(c)(3), *amended by* 29 C.F.R. § 2575.502c-3) for each day that Defendant Presence has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

255.    As the employer maintaining the RHC Plan, Defendant RHC has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the RHC Plan, is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by ERISA Section 502(c)(3), 29 U.S.C. § 1132(c)(3), *amended by* 29 C.F.R. § 2575.502c-3) for each day that Defendant RHC has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

256.    As the employer maintaining the PRV Plan, Defendant PRV has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the PRV Plan, is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by ERISA Section 502(c)(3), 29 U.S.C. § 1132(c)(3), *amended by* 29 C.F.R. § 2575.502c-3) for each day that Defendant PRV has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

### E.  Funding Notices

257.   At no time have the Plan Administrator Defendants furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the RHC Plan or the PRV Plan pursuant to ERISA section 101(f), 29 U.S.C. § 1021(f).

258.   Because the Plan Administrator Defendants have been the plan administrator of one or both of the Presence Plans at all relevant times, they have violated ERISA section 101(f) by failing to provide each participant and beneficiary of the Presence Plans with the Funding Notice required by ERISA section 101(f), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), *amended by* 29 C.F.R. § 2575.502c-1), for each day that the Plan Administrator Defendants have failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(f).  *See* 29 U.S.C. § 1021(f).

### F.  Pension Benefit Statements

259.   At no time have the Plan Administrator Defendants furnished Plaintiffs or, on information and belief, any member of the Class with a Pension Benefit Statement with respect to the RHC Plan or the PRV Plan pursuant to ERISA section 105(a)(1), 29 U.S.C. § 1025(a)(1).

260.   Because the Plan Administrator Defendants have been the plan administrator of one or both of the Presence Plans at all relevant times, they have violated ERISA section 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1), *amended by* 29 C.F.R. § 2575.502c-1), for each day that the Plan Administrator Defendants have failed to provide Plaintiffs and each Class member with the Pension Benefit Statements required by ERISA section 105(a)(1).  29 U.S.C. § 1025(a)(1).

## COUNT III

### (Claim for Failure to Provide Minimum Funding, Including by Failing to Comply with ERISA Funding Rules, Against Defendants Presence, RHC and PRV)

261.　Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

262.　ERISA section 302, 29 U.S.C. § 1082, prescribes standards for the funding of defined benefit pension plans like the Presence Plans. These minimum funding standards require each plan to hold assets equal in value to the plan's "funding target," 29 U.S.C. §§ 1082, 1083, which is a measure of the present value of plan liabilities calculated according to prescribed actuarial assumptions and methods. *Id.* § 1083(d). To ensure that plan assets remain equal to this "funding target," ERISA requires an employer to make annual plan contributions sufficient to cover the costs of benefits accrued each year plus a seven-year amortization of any funding shortfalls from previous years. *Id.* § 1083(a).

263.　Presence and RHC were responsible for making the contributions that should have been made to the RHC Plan pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

264.　Presence and PRV were responsible for making the contributions that should have been made to the PRV Plan pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

265.　Presence, RHC, and PRV have each failed to establish, implement, or enforce a funding policy consistent with the requirements of ERISA section 302 and 303, 29 U.S.C. §§ 1082 and 1083.

266.　Presence, RHC, and PRV have also failed to make contributions in satisfaction of the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082. Presence's own

accounting statements indicate that the Plans are underfunded. However, as Defendants have failed to disclose to plan participants ERISA-required information regarding the funded status of the plan—calculated according to ERISA-mandated assumptions and principles—Plaintiffs lack information regarding the full extent to which the RHC Plan and the PRV Plan are underfunded.

267. By failing to make the required contributions to the Presence Plans, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA section 302, Defendants Presence, RHC, and PRV have violated ERISA section 302. *See* 29 U.S.C. § 1082.

## COUNT IV

**(Claim for Failure to Establish the Plans Pursuant to a Written Instrument Meeting the Requirements of ERISA Section 402, and Failure to Maintain the Plans Pursuant to a Written Instrument Meeting the Requirements of ERISA Section 402, Against Defendants Presence, RHC, and PRV)**

268. Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

269. ERISA section 402, 29 U.S.C. § 1102, provides that every plan must be *established* pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

270. ERISA section 402, 29 U.S.C. § 1102, provides that every plan must be *maintained* pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and

carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

271.    Although the benefits provided by the RHC Plan and the PRV Plan were described to the employees and retirees of Presence, RHC. and PRV in various written communications, the Presence Plans have never been established pursuant to a written instrument meeting the requirements of ERISA section 402, 29 U.S.C. § 1102.

272.    Defendants Presence and RHC violated ERISA section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the RHC Plan's operations and administration. *See* 29 U.S.C. § 1102.

273.    Defendants Presence and PRV violated ERISA section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the PRV Plan's operations and administration. *See* 29 U.S.C. § 1102.

## COUNT V

**(Claim for Failure to Establish a Trust Meeting the Requirements of ERISA Section 403 Against Defendants Presence, RHC, and PRV)**

274.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

275.    ERISA section 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in ERISA section 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

276.    The RHC Plan's assets have not been held in a trust that meets the requirements of ERISA section 403, 29 U.S.C. § 1103.

277.     The PRV Plan's assets have not been held in a trust that meets the requirements of ERISA section 403, 29 U.S.C. § 1103.

278.     Defendants Presence and RHC violated section 403 by failing to put the RHC Plan's assets in trust in compliance with ERISA section 403.  *See* 29 U.S.C. § 1103.

279.     Defendants Presence and PRV violated section 403 by failing to put the PRV Plan's assets in trust in compliance with ERISA section 403.  *See* 29 U.S.C. § 1103.

## COUNT VI

### (Claim for Civil Money Penalty Pursuant to ERISA Section 502(a)(1)(A) Against Presence, RHC, PRV, and the Plan Administrator Defendants)

280.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

281.     ERISA section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA section 502(c), 29 U.S.C. § 1132(c).

282.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), *amended by* 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA section 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

283.     ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), *amended by* 29 C.F.R. § 2575.502c-1, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA section 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

284.     ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), *amended by* 29 C.F.R. § 2575.502c-1, provides that an administrator of a defined benefit pension plan who fails to

provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA section 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

285.    Presence, RHC, and PRV, as the employers, have failed to give the notices required by ERISA section 101(d), 29 U.S.C. § 1021(d), as set forth above in Count II, Subpart D.  Thus, Defendants Presence, RHC and PRV are liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

286.    As the Plan Administrator Defendants have been the Plan Administrator of the RHC Plan, the PRV Plan, or both, and have failed to give the notices required by ERISA section 101(f), 29 U.S.C. § 1021(f), and the Pension Benefit Statement required by ERISA section 105(a), 29 U.S.C. § 1025(a), as set forth above in Count II Subparts E & F, those Defendants are liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT VII

### (Claim for Breach of Fiduciary Duty Against All Defendants)

287.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

288.    Plaintiffs bring this Count VII for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

**A.      Breach of the Duty of Prudence and Loyalty – Against All Defendants**

289.     ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)     for the exclusive purpose of:

(i)     providing benefits to participants and beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims … [and]

(c)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I] and title IV [of ERISA].

290.     As fiduciaries with respect to the RHC Plan, the PRV Plan, or both Plans, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Having the authority to enforce the provisions of ERISA at those respective times, ERISA sections 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Presence Plans during the times that each was a fiduciary of the Presence Plans.

291.     Defendants have never enforced any of the provisions of ERISA set forth in Counts I-V with respect to the Presence Plans.

292.     By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants breached the fiduciary duties that they owed to Plaintiffs and the Class.

293.     The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Plans equal to the foregone funding and earnings thereon, and

profited Defendants Presence, RHC, and PRV by providing them the use of money owed to the Plans for their general business purposes.

**B.      Prohibited Transactions – Against All Defendants**

294.    ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

295.    ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest, if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

296.    ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan in his or her own interest or for his or her own account.

297.    The Plan Administrator Defendants and Board Defendants at all relevant times were parties in interest with respect to the RHC Plan, the PRV Plan, or both Plans, pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A), (C).

298.    Presence, as an employer of employees covered by the Plans, at all relevant times was a party in interest with respect to the Plans pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A), (C).

299.    RHC, as an employer of employees covered by the RHC Plan, at all relevant times was a party in interest with respect to the RHC Plan pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A), (C).

300.    PRV, as an employer of employees covered by the PRV Plan, at all relevant times was a party in interest with respect to the PRV Plan pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A), (C).

301.    By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants extended credit from the Plans to Presence, RHC, and PRV in violation of ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

302.    By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants used the Plans' assets for Presence's, RHC's, and PRV's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of the Plans' assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

303.    By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants used the Plans' assets in Presence's, RHC's, and PRV's interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1).

304.    The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Plans equal to the foregone funding and earnings thereon.

305.    The failure of Defendants to enforce the funding obligations owed to the Plans has profited Defendants Presence, RHC, and PRV by providing them the use of money owed to the Plans for their general business purposes.

## COUNT VIII

**(Claim for Breach of Fiduciary Duty to Monitor Performance of
Other Fiduciaries Against the Monitoring Defendants)**

306.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

307.    During the Class Period, the Monitoring Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence set forth in ERISA sections 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B), including the duty to monitor the performance of other fiduciaries which they had the responsibility to appoint and remove.

308.    In the case of Presence and RHC, these duties included the duty to monitor the trustees of the RHC Plan's trust, as Presence and RHC appoint these individuals.

309.    In the case of Presence and PRV, these duties included the duty to monitor the trustees of the PRV Plan's trust, as Presence and PRV appoint these individuals.

310.    With respect to the Board Defendants, their duties included the duty to monitor each other and the members of the Presence Board, the PRV Board, and the RHC Board in their administration of the Plans.

311.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, making sure a plan is adequately funded under ERISA, and providing ERISA-required notices and disclosures, and must take prompt and effective action to protect the plan and participants when they are not.

312.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries and the appointing fiduciaries whom they appoint are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a viable process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

313.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in his or her possession that he or she knows or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan, including decisions regarding plan investments and adequate funding of the plan.

314.    The Monitoring Defendants breached their fiduciary monitoring duties by, among other things: (a) failing to appoint persons who would run the Plans as ERISA plans; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of the harm to employees of not running the Plans as ERISA plans; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans; (d) failing to appoint persons who would provide ERISA-required notices and disclosures; (e) failing to appoint persons who would ensure that the Plans were adequately funded in accordance with ERISA; and (d) failing to remove appointees whose performance was inadequate in that they

continued to run the Plans as non-ERISA plans, and who breached their fiduciary duties under ERISA.

315.　　The failure of the Monitoring Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Presence Plans equal to the foregone funding and earnings thereon, and profited Defendants Presence, RHC, and PRV by providing them the use of money owed to the Presence Plans for their general business purposes.

## COUNT IX

### (Claim for Co-Fiduciary Liability Against All Defendants)

316.　　Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

317.　　This Count alleges co-fiduciary liability against all Defendants.

318.　　As alleged above, all Defendants were named fiduciaries pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

319.　　ERISA section 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Defendants breached all three provisions.

320.　　**Knowledge of a Breach and Failure to Remedy.**  ERISA section 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  Each of the Defendants knew

of the breaches by the other fiduciaries, including but not limited to the other Defendants, and made no efforts to remedy those breaches.

321.     Because Defendants knew that the Plans were not being run as ERISA plans, Defendants knew that the other fiduciaries, including but not limited to the other Defendants, were breaching their duties by not complying with ERISA.  Defendants failed to undertake any effort to remedy these breaches, and thus they are each liable for the breaches.

322.     **Knowing Participation in a Breach.**  ERISA section 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if they participate knowingly in, or knowingly undertake to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.

323.     All Defendants knew the respective failures of the other fiduciaries, including but not limited to each other Defendants, in failing to comply with the provisions of ERISA as alleged above.  Each Defendant knew that the Plans were not being operated, maintained, or administered as ERISA Plans; that the Plans did not comply with ERISA's minimum funding requirements and were under-funded; that participants and beneficiaries in the Plans were not receiving ERISA-required notices and disclosures; that Presence, RHC, and PRV were not paying premiums to the PBGC to insure the Plans; and/or that the written instrument and trust agreement for the RHC Plan and the PRV Plan did not comply with ERISA.  Defendants knowingly participated in such actions or omissions of each other fiduciary, knowing that such acts or omissions were breaches of ERISA's requirements.

324.     **Enabling a Breach.**  ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1),

in the administration of the specific responsibilities which give rise to their status as a fiduciary, they have enabled another fiduciary to commit a breach.

325.     Each of the Defendants failed to, among other things: (1) take action to operate, maintain, and/or administer the Plans as ERISA plans; (2) ensure that ERISA-required notices and disclosures were provided, PBGC insurance premiums were paid, the written instruments governing the Plans and their associated trusts complied with ERISA, and the Plans complied with ERISA minimum-funding requirements and were not under-funded; (3) report out to the other fiduciaries that such violations of ERISA were occurring; and (4) take any remedial action to bring the Plans into compliance with ERISA.  By virtue of these failures, each fiduciary Defendant enabled the other fiduciaries to commit a breach.

326.     The failure of the Monitoring Defendants to monitor the fiduciaries to whom they had the power to delegate responsibilities, and whom they had the power to appoint and/or remove, enabled each of those fiduciaries to breach their duties.

327.     Presence's and RHC's under-funding of the RHC Plan, failure to provide notices of under-funding, and failure to demand that the Plan Administrator Defendants provide funding notices or that the RHC Plan be operated in accordance with ERISA enabled the other Defendants to commit breaches.

328.     Presence's and PRV's under-funding of the PRV Plan, failure to provide notices of under-funding, and failure to demand that the Plan Administrator Defendants provide funding notices or that the PRV Plan be operated in accordance with ERISA enabled the other Defendants to commit breaches.

329.     As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plans are currently underfunded, meaning that the RHC Plan and the

PRV Plan do not have sufficient assets to pay all accrued benefits each has promised to its participants and beneficiaries and is legally obligated to pay under ERISA.

330.     The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Presence Plans equal to the foregone funding and earnings thereon, and profited Defendants Presence, RHC, and PRV by providing them the use of money owed to the Presence Plans for their general business purposes.

331.     Pursuant to ERISA sections 409, 502(a)(2)-(3), 29 U.S.C. §§ 1109, 1132(a)(2)-(3), all Defendants are liable to restore the losses to the Plans, which are the result of their breaches of fiduciary duties alleged in this Count, and to provide other equitable relief as appropriate.

## COUNT X

**(Claim for Declaratory Relief that the Church Plan Exemption Violates the Establishment Clause of the First Amendment to the U.S. Constitution, and is Therefore Void and Ineffective Against Defendants Presence, RHC, and PRV)**

332.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

333.     The ERISA church plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

334.     The ERISA church plan exemption, as claimed by Presence, RHC, and PRV, is an attempt to extend the accommodation beyond churches and associations of churches, to Presence, RHC, and PRV—nonprofit hospital conglomerates that have chosen to compete with commercial businesses, including other nonprofit hospitals as well as for-profit hospitals, by entering the economic arena and offering services in the marketplace.  Extension of the church plan exemption to Presence, RHC, and PRV violates the Establishment Clause because it (A) does not comport with the stated purposes of the exemption; (B) harms Presence, RHC, and PRV

workers; (C) puts Presence, RHC, and PRV competitors at an economic disadvantage; (D) relieves Presence, RHC, and PRV of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

335. **Does Not Comport With Stated Purpose**. Congress enacted the church plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship . . . with regard to churches and their religious activities." S. Rep. No. 93-383 (1972), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965. This purpose has no application to Presence, RHC, or PRV, which are neither run by nor intimately connected to any church financially. And, unlike a church, Presence, RHC, and PRV have no confidential books and records to shield from government scrutiny. Presence, RHC, and PRV already purport to disclose all material financial records and relationships when they seek Medicare and Medicaid reimbursements and issue tax-exempt bonds.

336. **Harms Workers**. Employers, including Presence, RHC, and PRV, legally are not required to provide pensions. They choose to provide pensions in order to attract and retain employees in a competitive labor market. Presence, RHC, and PRV do not consider any choice of faith, or lack thereof, a factor in the recruiting and hiring of their employees. Thus, as a practical matter, and by Presence's, RHC's, and PRV's own design, their pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith. In choosing to recruit and hire from the public at large, Presence, RHC, and PRV must be willing to accept neutral regulations, such as ERISA, imposed to protect those employees' legitimate interests. To be constitutional, an accommodation such as the church plan exemption must not impose burdens on non-adherents without due consideration of their interests. The

church plan exemption, as claimed by Presence, RHC, and PRV, places many thousands of longtime employees' justified reliance on their pension benefits at great risk, including because the Plans are uninsured and underfunded. In addition, Presence, RHC, and PRV fail to provide the multitude of other ERISA protections designed to safeguard the pensions. The church plan exemption, as claimed by Presence, RHC, and PRV, provides no consideration of the harm that it causes their employees.

337. **Puts Presence's, RHC's, and PRV's Competitors at Economic Disadvantage.**
Presence's, RHC's, and PRV's commercial rivals face material disadvantages in their competition with Presence, RHC, and PRV, because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as provide the other ERISA protections. In claiming that the Plans are exempt church plans, Presence, RHC, and PRV enjoy a material competitive advantage because they are able to divert significant cash to Presence's, RHC's, and PRV's competitive growth strategies -- cash that ERISA would require Presence, RHC, and PRV to use to fund, insure (through premiums to the PBGC), and administer the Plans. To be constitutional, an accommodation such as the church plan exemption must take adequate account of harm to nonbeneficiaries. The church plan exemption, as applied by Presence, RHC, and PRV, provides no consideration of the disadvantage it creates for their competitors.

338. **Relieves No Genuine Religious Burden Imposed by ERISA**. An exemption exclusively for religion must alleviate a significant, state-imposed interference with religious exercise. The church plan exemption, as claimed by Presence, RHC, and PRV, responds to no genuine burden created by ERISA on any Presence, RHC, or PRV religious practice. ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not

significantly burden religious exercise when applied to commercial activities. Moreover, Presence, RHC, and PRV maintain multiple separate ERISA-governed retirement plans, including defined contribution plans and the legacy WSMC defined benefit plan, which is further evidence that ERISA creates no undue burden on any genuine religious practice of Presence, RHC, or PRV.

339. **<u>Creates Government Entanglement With Alleged Religious Beliefs</u>**. A Presence, RHC, or PRV exemption requires courts and agencies to examine religious "convictions" of a non-church entity to determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions. This creates government entanglement in religion. ERISA compliance, on the other hand, requires zero entanglement with religion for Presence, RHC, or PRV, because ERISA is a neutral statute that regulates pension protections, and Presence, RHC, and PRV have no relevant confidential books, records or relationships. Thus, an extension of the church plan exemption to Presence, RHC, and PRV produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

340. Plaintiffs seek a declaration by the Court that the church plan exemption, as claimed by Presence, RHC, and PRV, is an unconstitutional accommodation under the Establishment Clause of the First Amendment to the U.S. Constitution, and is therefore void and ineffective.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and request that the Court award the following relief:

A.      Declaring that the RHC Plan and the PRV Plan are employee pension benefit plans within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2); are defined benefit

pension plans within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35); and are not church plans within the definition of ERISA section 3(33), 29 U.S.C. § 1002(33).

      B.     Ordering Presence, RHC, PRV, and the other Defendants to reform the Plans to bring them into compliance with ERISA and to have the Plans comply with ERISA, including as follows:

      1.     Revising the Plans' documents to reflect that the Plans are defined benefit plans regulated by ERISA.

      2.     Requiring Presence and RHC to fund the RHC Plan, and Presence and PRV to fund the PRV Plan, in accordance with ERISA's funding requirements; disclose required information to the Plans' participants and beneficiaries; and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

      3.     Reforming the Plans to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

      4.     Requiring the adoption of an instrument governing the Plans that complies with ERISA section 402, 29 U.S.C. § 1102.

      5.     Requiring Defendants to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports, and Participant Benefit Statements, and providing Notice of the Presence Plans' funding status and deficiencies.

      6.     Requiring the establishment of trusts for the RHC Plan and the PRV Plan in compliance with ERISA section 403, 29 U.S.C. § 1103.

C.      Requiring Presence and RHC, as fiduciaries of the RHC Plan, to make the RHC Plan whole for any losses and disgorge any Presence or RHC profits accumulated as a result of fiduciary breaches.

D.      Requiring Presence and PRV, as fiduciaries of the PRV Plan, to make the PRV Plan whole for any losses and disgorge any Presence or PRV profits accumulated as a result of fiduciary breaches.

E.      Requiring Defendants, as fiduciaries and co-fiduciaries of the Plans, to make the Plans whole for any losses to the Plans and to provide other equitable relief as appropriate.

F.      Appointing an Independent Fiduciary to hold the assets of the RHC Plan and the assets of the PRV Plan in trust, to manage and administer the Plans and their assets, and to enforce the terms of ERISA.

G.      Requiring Presence, RHC, and PRV to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day they failed to inform Plaintiffs and each Class member of their failure to properly fund the Plans.

H.      Requiring Presence, RHC, PRV and/or the Plan Administrator Defendants to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day they failed to provide Plaintiffs and each Class member with a Funding Notice.

I.      Requiring Presence, RHC, PRV and/or the Plan Administrator Defendants to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day they failed to provide a benefit statement under ERISA section 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

J.     Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plans.

K.     Requiring clarification of rights to future benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B);

L.     Declaring with respect to Count X, that the church plan exemption, as claimed by Presence, RHC, and PRV, is an unconstitutional accommodation under the Establishment Clause of the First Amendment to the U.S. Constitution, and is therefore void and ineffective.

M.     Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

N.     Awarding to Plaintiffs taxable costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

O.     Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law.

P.     Awarding, declaring, or otherwise providing Plaintiffs and the Class all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED this 7th day of October, 2016.

**STEPHAN ZOURAS, LLP**

By: */s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Tel.: (312) 233-1550
Fax: (312) 233-1560
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com

**KELLER ROHRBACK L.L.P.**
Christopher Graver
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
cgraver@kellerrohrback.com
rkilgard@kellerrohrback.com

**KELLER ROHRBACK L.L.P.**
Lynn L. Sarko
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
lgerber@kellerrohrback.com

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Michelle C. Yau
Kira L. Hettinger
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
khettinger@cohenmilstein.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, James B. Zouras, attorney for Plaintiffs, hereby certify that on October 7, 2016, I

electronically filed the foregoing Third Amended Class Action Complaint with the Clerk of the

Court using the CM/ECF system, which in turn sent notice to counsel for Defendants listed

below:

Howard Shapiro
Robert W. Rachal
Stacey C.S. Cerrone
PROSKAUER ROSE, LLP
650 Poydras St., Suite 1800
New Orleans, LA 70130-6416
howshapiro@proskauer.com
rrachal@proskauer.com
scerrone@proskauer.com

Nigel F. Telman
Edward C. Young
PROSKAUER ROSE, LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
ntelman@proskauer.com
eyoung@proskauer.com

***Counsel for Defendants***

By: */s/ James B. Zouras*