# EXHIBIT 1

*Carver v. Presence Health Network*
Settlement Agreement
December 12, 2017

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LESLEE R. CARVER, et al., | | |
| | Plaintiffs, | Case No. 1:15-cv-02905 |
| v. | | |
| | | Judge Harry D. Leinenweber |
| PRESENCE HEALTH NETWORK, et al., | | |
| | Defendants. | Magistrate Judge M. David Weisman |

**CLASS ACTION SETTLEMENT AGREEMENT**

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs, as defined in § 1.18 below; Defendants, as defined in § 1.11 below; and (to the extent provided herein) Ascension Health, as defined in § 1.3, below. Plaintiffs, Defendants and Ascension Health are referred to collectively in this Settlement Agreement as the "Parties." Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1.  DEFINITIONS

1.1. *"Accrued Benefit"* shall mean: the amount of the normal form of benefit determined in accordance with the terms and conditions of the Plan in effect as of the Effective Date of the Settlement Agreement, and shall not include, among other things, optional forms of benefits or procedural provisions of the Plan.

1.2. *"Action"* shall mean: the class action *Carver v. Presence Health Network.*, No. 1:15-cv-02905, pending in the United States District Court for the Northern District of Illinois.

1.3. *"Ascension Health"* shall mean: Ascension Health, a Missouri non-profit corporation.

1.4. *"Ascension Health Alliance"* shall mean: Ascension Health Alliance, a Missouri non-profit corporation.

1.5. *"Church Plan"* shall mean: a plan which meets the definition of a "Church Plan" under ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus exempt from the provisions of Title I and Title IV of ERISA.

1.6. *"Class Counsel"* shall mean: Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC.

1.7. *"Class Notice"* shall have the meaning provided in § 3.2.1.

1.8. *"Class Settlement Amount"* shall have the meaning set forth in § 8.1.1.

1.9. *"Complaint"* shall mean: the Third Amended Class Action Complaint filed in the Action on October 7, 2016.

1.10. *"Court"* shall mean: The United States District Court for the Northern District of Illinois.

1.11. *"Defendants"* shall mean: Presence Health Network, an Illinois not-for-profit corporation; Presence Chicago Hospitals Network, formerly known as Presence RHC Corporation, an Illinois not-for-profit corporation; Presence PRV Health, an Illinois not-for-profit corporation; the Presence Health Network Board of Directors; the Presence RHC Corporation Board of Directors; the Presence PRV Health Board of Directors; the Church Plan Administrative Committee for the Provena Health Employees' Pension Plan; the Investment Committee for the Provena Health Employees' Pension Plan; the Plan Administrator of the Resurrection Health Care Retirement Plan; the Presence Health Finance Committee; Haven Cockerham, Bruce Hamory, Mark Hanson, Thomas R. Huberty, Patricia Ann Koschalke, Marsha Ladenburger, Laurie Lafontaine, Terry Maltby, Susan McDonough, Victor Orler, Kent Russell, Jose Santiago, Thomas Settles, Mary Shinnick, Guy Wiebking, Evelyn Varboncoeur, James Winikates, Clara Frances Kusek, Sandra Bruce, Michael Engelhart; and John and Jane Does 1-20.

1.12. *"Effective Date of Settlement"* shall mean: the date on which all of the conditions to settlement set forth in § 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.13. *"ERISA"* shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.14. *"Final"* shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.15. *"Final Approval Order"* shall have the meaning set forth in § 3.2.5(a), below.

1.16. *"Incentive Awards"* shall mean: any monetary amounts awarded by the Court in recognition of the assistance of any Plaintiff(s) and/or Named Plaintiff(s) in the prosecution of the Action and payable pursuant to § 8.1.5, below.

1.17. *"Person"* shall mean: an individual, partnership, corporation, or any other form of organization.

1.18. *"Plaintiffs"* and *"Named Plaintiffs"* shall mean: Leslee Carver, Diane Eslinger, Lisa Jenkins and Susan Phillips.

1.19. *"Plaintiffs' Counsel"* shall mean: collectively, Class Counsel and Stephan Zouras, LLP.

1.20. *"Plan Benefits Guarantee"* has the meaning set out in 8.1, below.

1.21. *"Plans"* shall mean: the RHC Plan and the Provena Plan (each of which may be referred to separately as a *"Plan"*).

1.22. *"Plan Trusts"* shall mean: the RHC Plan Trust and the Provena Plan Trust (each of which may be referred to separately as a *"Trust"*).

1.23. *"Presence"* shall mean: Defendant Presence Health Network, an Illinois not-for-profit corporation.

1.24. *"Proposed Transaction"* shall mean: the prospective acquisition of Presence by Ascension Health described in §2.1, below.

1.25. *"Provena Plan"* shall mean: the Provena Health Employees' Pension Plan.

1.26. *"Provena Plan Trust"* shall mean: the trust that holds and distributes the assets of the Provena Plan.

1.27. *"Released Claims"* shall have the meaning provided in § 4.1.

1.28. *"Releasees"* shall mean: All Defendants, any and all entities that are a part of and/or affiliated with Presence Health Network, and, from and after consummation of the Proposed Transaction, Ascension Health and Ascension Health Alliance (including but not limited to any current or former direct or indirect parent or subsidiary corporations of Presence or Ascension Health), and/or each of their employees, agents, directors, members, sponsors, and insurers, including the individual defendants.

1.29. *"RHC Plan"* shall mean: the Resurrection Health Care Retirement Plan.

1.30. *"RHC Plan Trust"* shall mean: the trust that holds and distributes the assets of the RHC Plan.

1.31. *"Settlement"* shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.32. *"Settlement Class"* and/or *"Settlement Class Members"* shall mean: All persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.

1.33. *"Successor-In-Interest"* or *"Successor"* shall mean: a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

1.34. *"Term Sheet"* shall mean: the document entitled "Presence Health Network Settlement Term Sheet" dated November 10, 2017, and executed by Defendants' counsel, Class Counsel, and counsel for Ascension Health on November 10, 2017.

2. PROSPECTIVE ACQUISITION OF PRESENCE BY ASCENSION HEALTH

2.1. *The Proposed Transaction.* In August 2017, Presence and Ascension Health signed a Letter of Intent that provides for Ascension Health to acquire Presence and its affiliates.

2.2. *Consummation of the Proposed Transaction.* The Proposed Transaction has not yet been consummated and is not expected to close until after February 1, 2018.

2.3. *Effect of Abandonment of the Proposed Transaction.* In anticipation of the closing of the Proposed Transaction, and in consideration of the benefit of the Settlement to all Parties, Ascension Health is also a signatory hereto and upon closing of the Proposed Transaction will be bound by and perform the obligations under the Settlement Agreement. Notwithstanding any other provision of this Settlement Agreement, Ascension Health shall not be bound by the terms of this Settlement Agreement, will have no obligations under this Settlement Agreement, and will not be a Releasee, until the consummation or closing of the Proposed Transaction.

3. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT

3.1. *Effectiveness of This Settlement Agreement.* This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 3.2 through 3.7 shall have been satisfied.

3.2. *Court Approval.* The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 3.2. The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

    3.2.1 *Motion for Preliminary Approval of Settlement and of Notices.* The Court shall have approved the preliminary motion to be filed by Plaintiffs on or before January 5, 2018 ("Preliminary Motion") by issuing an order in substantially the same form as that attached hereto as Exhibit 1 (the "Preliminary Approval Order"), including the class notice approved by the Court (the "Class Notice"):

        (a)    Preliminarily approving this Settlement Agreement;

        (b)    Directing the time and manner of the Class Notice; and

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

(c) Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

3.2.2 *Class Certification.*

(a) The Court shall have certified the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Keller Rohrback, L.L.P., and Cohen Milstein Sellers & Toll, PLLC as Class Counsel, and with the "Settlement Class" as defined above.

(b) As a condition of settlement, the Parties agree to stipulate to certification of the Action as a non-opt out class action, and the Class as a non-opt-out class, for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of the day immediately prior to the date on which the Term Sheet was executed.

3.2.3 *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, Defendants will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the Preliminary Approval Order attached hereto as Exhibit 1 shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plan's current record-keeper will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. Presence Health will pay the cost of notice to the Settlement Class.

3.2.4 *Internet/Publication of Class Notice.* Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on their firms' websites.

3.2.5 *The Fairness Hearing.*

(a) On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will determine by order (the "Final Approval Order") whether: (i) this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment approving this

Page 5

Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award Incentive Award(s) and if so, the amount; and (vii) to award attorneys' fees and further expenses and, if so, the amounts.

(b) The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

3.2.6 *Motion for Final Approval of Class Action Settlement.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

3.3. *Finality of Final Approval Order.* The Final Approval Order shall have become Final, as defined in § 1.14 of this Settlement Agreement.

3.4. *Compliance with the Class Action Fairness Act.* The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

3.5. *Dismissal of Action.* The Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

3.6. *No Termination.* The Settlement shall not have terminated pursuant to § 10, below.

3.7. *Establishment of Effective Date of Settlement.* If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 3 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert M. Meyer, the Parties' mediator, who shall make a final determination regarding the Effective Date of the Settlement and whether all the conditions set forth in § 3 have been satisfied. No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute, pending the mediator's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

4. RELEASES AND COVENANT NOT TO SUE

4.1. *Released Claims.* Released Claims shall mean any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs under federal or state laws arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "church plan" status of the Plans, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise.

    4.1.1 For Settlement Class members only, Released Claims are not intended to include the release of any of the following:

        (a) Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

        (b) Individual claims for relief brought under state law seeking benefits under the terms of the Plan documents of the applicable Plan;

        (c) Claims related to any other plan that is merged or consolidated with the Plans, or either of them, after the execution date of this Term Sheet;

        (d) Any claim arising under ERISA with respect to any event occurring after: the Internal Revenue Service issues a written ruling that the Plans, or either of them, do not qualify as a church plan; pursuant to IRC § 410(d), an election is made on behalf of the Plans, or either of them, resulting in such Plan's coverage by the ERISA provisions specified in IRC § 410(d); the Roman Catholic Church claims no association with the Plans' Sponsor; or an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the church plan exemption.

        (e) The claims brought by the plaintiffs in the Class Action Complaint filed November 16, 2017, titled *Lauren Bence, et al. v. Presence Health Network Corporation, et al.*, U.S. District Court for the Northern District of Illinois case no. 1:17-cv-08315.

4.2. *Release by Named Plaintiffs and Settlement Class.* Subject to § 10 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class have. The Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on, related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

4.3. *Waiver of California Civil Code § 1542.* Plaintiffs, on behalf of themselves and on behalf of the Settlement Class, hereby expressly waive and relinquish, to the fullest extent

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

permitted by law and equity, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4.4. *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Plaintiffs' Counsel.* Subject to § 10 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Plaintiffs' Counsel from any and all claims relating to the institution or prosecution of the Action.

4.5. *Releasees' Release of Other Releasees.* Subject to § 9 below, upon the Effective Date of Settlement, each of the Releasees also releases each of the other Releasees from any and all claims which were asserted in the Complaint or any pleading which would have been required to be filed in the Action or that would be barred by principles of res judicata or collateral estoppel had the claims asserted in the Complaint or any such other pleading in the Action been fully litigated and resulted in a Final judgment or order.

5. COVENANTS

Named Plaintiffs, on their own behalf and on behalf of the members of the Settlement Class, Defendants, and Ascension Health hereby covenant as follows:

5.1. *Non-Disparagement.* The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the subject matter of this Litigation, the Settlement Agreement, Plaintiffs, Plaintiffs' Counsel, any Releasee, Defendants, the Plan, and/or Defendants' Counsel.

5.2. *Plan Status.* Nothing herein shall be construed as an agreement that the Plans are not properly treated as church plans or that the Plans are subject to ERISA. Similarly, nothing herein shall be construed as an agreement that the Plans are properly treated as church plans or that the plans are not subject to ERISA.

5.3. *Survival of Covenants.* The covenants stated in this Section 5 shall survive as to all Parties should the Prospective Transaction be abandoned; however, should the Prospective Transaction be abandoned, the covenants specified in Section 5 shall not apply to Ascension Health.

6. REPRESENTATIONS AND WARRANTIES

6.1. *Parties' Representations and Warranties.*

6.1.1 Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

Page 8

6.1.2  Named Plaintiffs represent and warrant, on behalf of themselves and the Settlement Class, that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims against them.

6.1.3  The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

6.1.4  The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

6.2.  *Signatories' Representations and Warranties.*  Each individual executing this Settlement Agreement on behalf of any other Person hereby personally represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that such individual represents or purports to represent.

7.  NO ADMISSION OF LIABILITY

Defendants deny any and all allegations of wrongdoing made in the Complaint. Defendants aver that the Plans have been and continue to be properly administered as church plans, as defined in Internal Revenue Code Section 414(e) and ERISA § 3(33).  This Settlement is not evidence of liability of any type.

8.  SETTLEMENT CONSIDERATION

8.1.  *The Class Settlement Amount*

8.1.1  The *"Class Settlement Amount"* shall consist of the $20,000,000 Plan Benefits Guarantee, as defined in § 8.1.2 through § 8.1.4.

8.1.2  *Assurance of Payment of $20 Million in Benefits if Plan Assets Become Insufficient.*  Subject only to §§ 2.3 and 8.1.3 hereof, for as long as either of the Plans is sponsored by any of the Releasees, Presence, or Ascension Health (if and when Ascension Health's obligations under this Settlement Agreement become effective upon the closing of the Proposed Transaction), hereby guarantees the payment of the aggregate amount of the first $20,000,000 of benefits that are distributable from either or both of the Plans to Settlement Class

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

Members in the event trust assets attributable to either of the Plans become insufficient to pay such benefits.

      8.1.3   *Obligations Upon Transfer of Plan Assets and Liabilities to Successor.* Should a corporate transaction occur where the assets and liabilities of the Plans, or either of them, covering Settlement Class Members, transfer to a successor, Presence or Ascension Health (subject to Section 2.3), as the case may be, will cause the successor to honor the commitment of Presence and/or Ascension Health, as the case may be, under the Plan Benefit Guarantee.

      8.1.4   *Accelerated Satisfaction of the Obligation Under Plan Benefit Guarantee.*

      8.1.4.1 If the Proposed Transaction is consummated, any of the Releasees, in their sole discretion, may satisfy Ascension Health's obligation under the Plan Benefit Guarantee, at any time after the Effective Date of the Settlement, by making contributions to the Plan Trust that in the aggregate total Fifteen Million Dollars ($15,000,000). For the avoidance of doubt, nothing in this paragraph prevents Ascension Health or any of the Releasees from making additional contributions to the Plan at any time.

      *8.1.4.2* If the Proposed Transaction is not consummated, within three (3) years of the date Presence publicly states that the Proposed Transaction has been abandoned, Presence will make contributions to one or both Plan Trusts in the aggregate total of Fifteen Million Dollars ($15,000,000). During this three-year period, Presence reserves the discretion to determine when contributions will be made and what amounts will be contributed to the Plan Trusts in the aggregate total of $15,000,000. Upon the Plan Trusts' timely receipt of the aggregate total of $15,000,000, any obligation stated in §§ 8.1.1 or 8.1.2 will be extinguished.

      8.1.5   *Payment to Plaintiffs' Counsel.* Defendants will not oppose Plaintiffs' application to the Court for an award of reasonable attorney fees, out of pocket expenses, and Incentive Award(s) (together, the "Fee Award"). The Fee Award requested by Plaintiffs and awarded by the Court shall not exceed One Million, Five Hundred and Fifty Thousand Dollars ($1,550,000.00) (the "Maximum Total Fee"). Any such Fee Award will be at the sole discretion of the Court. Presence or Ascension Health will cause the Fee Award to be paid in addition to the consideration described in §§ 8.1.1 through 8.1.4 of this Settlement Agreement. Defendants will pay, or cause to be paid, to Plaintiffs' Counsel the Maximum Total Fee or any lesser amount as ordered by the Court in its discretion within four weeks after the Court's entry of the Order and after the Final Judgment becomes Final as defined in section 1.1.4 of this Settlement Agreement.

      8.1.6   *Application for Fees, Expenses, and an Incentive Award for Plaintiffs.* Class Counsel shall petition the Court for the Fee Award on the date set by the Court in its Preliminary Approval Order. Releasees expressly agree not to contest or take any position with respect to any application for the Fee Award that does not exceed the Maximum Total Fee, and acknowledge that these matters are left to the sound discretion of the Court. The procedure for and the allowance or disallowance of any application for the Fee Award that does not exceed the

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

Maximum Total Fee are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee Award, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

8.2. *Cost of Notice.* Presence or Ascension Health will pay the cost of notice to the Settlement Class.

9. AGREED UPON PLAN PROVISIONS.

9.1. *Plan Mergers.* For a period of seven and one-half years after the Effective Date, if the Plans, or either of them, are merged or consolidated with another plan, participants and beneficiaries who are Settlement Class members will be entitled to the same or a greater Accrued Benefit post-merger or after a consolidation event as they enjoyed before the merger or consolidation.

9.2. *Plan Amendment and Termination.* Presence, any successor plan sponsor, and/or any Released Party that has a right under the Plans' documents to do so, retain the right to amend or terminate the Plans, or either of them, at any time; provided that, for seven and one-half years after the Effective Date of the Settlement, no amendment or termination will result in a reduction of a Settlement Class member's Accrued Benefit.

9.3. *Plan Administration.* All Plan reporting and disclosure to the Plans' participants and/or beneficiaries may be accomplished via electronic distribution. Should a participant request a reporting and disclosure document described below in hard copy, Presence, or any successor Plan Sponsor, will furnish, or cause to be furnished, such a document in hard copy within a reasonable time.

9.3.1 *Plan Documents.* To the extent such provisions are not already found within the Plans' respective documents, the Plans' documents shall: (a) designate a named fiduciary; (b) provide the procedure for establishing and carrying out the current funding policy and method; (c) describe a procedure for allocation of administrative responsibilities; (d) provide a procedure for plan amendments and identify the persons with authority to make such amendments; (e) specify the basis on which payments are made to and from the Plans; and (f) provide a joint and survivor annuity, if this form of benefit is provided currently by the relevant Plan.

9.3.2 *Summary Plan Descriptions (SPDs).* A Summary Plan Description ("SPD") shall be distributed electronically within four (4) months of the date that the Final Approval Order becomes Final. The SPD will exclude any mention of ERISA or information about ERISA rights; and will include information about the Plan's church plan status, including that the Plan's benefits are not insured by the Pension Benefit Guaranty Corporation. The SPD will make it clear that the Plan is a church plan. The SPD will not comply with ERISA §102. The SPDs

shall be furnished to current participants and beneficiaries as described in § 9.3. If a participant sends a written request for an SPD, an SPD will be provided in hard copy at the expense of the participant.

9.3.3 *Annual Summaries.* For seven and one-half years after the Effective Date of the Settlement Agreement, the Plans will each distribute electronically their respective Annual Summary in the manner described in § 9.3, above, not later than the next October 1 following the end of each Plan year, containing at least the following information: (i) Plan name(s) and EIN; (ii) Plan years covered by the summary; (iii) summary of funding arrangements; (iv) summary of each Plan's expenses; (v) information as to the number of participants at year end; (vi) summary of the value of net assets at beginning and end of each year; (vii) a statement of each Plan's assets and liabilities; (viii) summary information as to the increase and/or decrease in net Plan assets annually; (ix) summary information as to each Plan's total income; and (x) a statement of assets and liabilities consistent with Presence's or Ascension Health's methodologies in effect at the time of preparation.

9.3.4 *Pension Benefit Statements.* For seven and one-half years after the Effective Date of the Settlement Agreement, Presence, or any successor Plan Sponsor, will distribute pension benefit statements in the manner described in §9.3 to all participants and beneficiaries in the form determined by each of the Plans annually.

9.3.5 *Current Benefit Values.* For seven and one-half years after the Effective Date of the Settlement Agreement, the Plans will respond to requests from participants for current benefit values information within 30 days after receiving a written request from a participant. However, the Plans may unilaterally extend their deadlines to respond by an additional 30 days, by providing written notice to the participant.

9.3.6 *Plans' Claim Review Procedure.* The Plans' claim review procedures, which shall be included as a part of the Plans' Summary Plan Descriptions, shall state: (a) the identity of the person or entity to whom a claim should be addressed; (b) the time period for filing a claim; (c) the information that must be provided in support of a claim; (d) if a claim is denied, in whole or in part, the person or entity to whom an appeal should be sent; (e) the time period for filing a claim appeal; (f) the information the claimant may provide in support of an appeal; and (g) any statute of limitations periods for filing a benefits related claim.

10. TERMINATION OF THE SETTLEMENT AGREEMENT

10.1. *Automatic Termination.* This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

10.1.1 If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final; provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court; and further provided that,

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

10.1.2 If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this § 10.1.2.

10.1.3 If the Seventh Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Seventh Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Seventh Circuit order referenced in this § 10.1.3.

10.1.4 If the Supreme Court of the United States reverses or remands a Seventh Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 10.1.4.

10.1.5 If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

10.2. *Consequences of Termination of the Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

10.2.1 The Action shall for all purposes with respect to the Parties revert to its status as of November 9, 2017.

10.2.2 All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in the Actions or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

11. MISCELLANEOUS PROVISIONS

11.1. *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 11.1.

11.1.1 Robert Meyer, mediator in the Action, will act as the final arbiter of any disagreements as to language and confirmatory discovery regarding the Settlement Agreement.

11.2. *No Limitation of Remedies.* In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs or the Settlement Class breach this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

11.3. *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Illinois law will apply without regard to conflict of law principles.

11.4. *Severability.* The provisions of this Settlement Agreement are not severable.

11.5. *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by Court Order.

11.6. *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

11.7. *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

11.8. *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

---

11.8.1 *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

11.8.2 *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.

11.8.3 *Gender.* Definitions apply to the masculine, feminine, and neuter genders of each term defined.

11.8.4 *References to a Person.* References to a Person are also to the Person's permitted successors and assigns.

11.8.5 *Terms of Inclusion.* Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.9. *Further Assurances.* Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

11.10. *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

11.11. *Notices.* Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

A.    IF TO NAMED PLAINTIFFS:

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Ron Kilgard
Christopher Graver
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (602) 248-2822

Page 15

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

        Karen L. Handorf
        Michelle C. Yau
        Julie G. Reiser
        Julia Horwitz
        COHEN MILSTEIN SELLERS & TOLL, PLLC
        1100 New York Ave., NW, Suite 500 West
        Washington, DC 20005
        Fax: (202) 408-4699


B.     IF TO DEFENDANTS:

        Howard Shapiro
        Stacey C.S. Cerrone
        PROSKAUER ROSE LLP
        650 Poydras Street, Suite 1800
        New Orleans, LA 0130
        Fax: (504) 310-2022

        Robert Rachal
        HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
        6415 West End Blvd.
        New Orleans, LA 70124
        Fax.: (865) 566-0119


B.     IF TO PRESENCE HEALTH:

        Kendra Allaband
        Senior Associate General Counsel
        Presence Health
        200 S. Wacker Drive
        11th Floor
        Chicago, IL 60606

C.     IF TO ASCENSION HEALTH:

        Christine K. McCoy
        Senior Vice President, Legal Services & Deputy General Counsel
        Ascension
        4600 Edmundson Road
        St. Louis, MO 63134
        Fax: (314) 733-8013

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

With a copy to:

Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax: (504) 310-2022

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

11.12. *Entire Agreement*. This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

11.13. *Counterparts*. This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.14. *Binding Effect*. This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

*Carver v. Presence Health Network*
**Settlement Agreement**
**December 12, 2017**

---

*FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this the 12th day of December, 2017.

By: /s/ Lynn Lincoln Sarko
Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Ron Kilgard
Christopher Graver
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (602) 248-2822

Karen L. Handorf
Michelle C. Yau
Julie G. Reiser
Julia Horwitz
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

*Class Counsel*

*Carver v. Presence Health Network*
**Settlement Agreement**
December 12, 2017

*FOR ALL DEFENDANTS*

Dated this the 12th day of December, 2017.

By: /s/ Howard Shapiro
Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax: (504) 310-2022

Robert Rachal
HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
6415 West End Blvd.
New Orleans, LA 70124
Fax.: (865) 566-0119

*Attorneys for Defendants*

*FOR ASCENSION HEALTH*

Dated this the 12th day of December, 2017.

By: /s/ Howard Shapiro
Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax: (504) 310-2022

*Attorneys for Ascension Health*

Page 19

94877896v1