**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LESLEE R. CARVER, *et al.*,

                             Plaintiffs,

      v.

PRESENCE HEALTH NETWORK, *et al.*,

                           Defendants.

Case No. 1:15-cv-02905

Judge Harry D. Leinenweber

Magistrate Judge M. David Weisman

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND**
**CERTIFICATION OF SETTLEMENT CLASS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................... 4

    A. Procedural History and Settlement Negotiations. ................................................ 4

    B. Overview of the Settlement Agreement. .............................................................. 9

        1. Settlement Consideration. ........................................................................ 9

        2. Additional Non-Monetary Equitable Consideration. ............................. 10

        3. Certification of a Rule 23 Class. ............................................................ 11

        4. Released Claims. .................................................................................... 11

        5. Notice. .................................................................................................... 11

        6. Attorneys' Fees, Expenses, and Incentive Awards. .............................. 12

    C. Reasons for the Settlement. ................................................................................ 13

III. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ..................... 13

    A. The Settlement was Reached after Arm's-Length Negotiations with the Assistance of an Experienced Mediator and is Procedurally Fair. .............................................................................................. 14

    B. Application of the *Synfuel* Factors Supports Approval of the Settlement as Fair, Reasonable, and Adequate. ................................................. 15

        1. The Strength of Plaintiffs' Case Compared to the Amount of Settlement, As Well As the Complexity, Expense, and Likely Duration of the Litigation, Support Approval of the Settlement. ............................................................................................ 16

        2. An Evaluation of the Amount of Opposition to the Settlement among Affected Parties Supports Approval of the Settlement. ........................................................................................ 18

i

3. The Stage of the Proceedings Supports Approval of the Settlement, and the Opinion of Class Counsel Is That the Settlement Is Fair and Reasonable. ...................................................... 21

IV. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ................................................................. 23

V. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE SETTLEMENT CLASS SHOULD BE CERTIFIED ....................... 24

A. The Settlement Class Meets the Requirements of Rule 23(a). .......................... 25

B. The Settlement Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2). ..................................................................................... 27

1. Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members. ........................................................................... 27

2. Defendants Have Acted on Grounds Generally Applicable to the Settlement Class, and Relief for the Settlement Class as a Whole Is Appropriate .................................................... 28

C. Class Counsel Meets the Requirements of Rule 23(g) ..................................... 29

VI. CONCLUSION ......................................................................................... 29

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re: Allstate Ins. Co.*,
    400 F.3d 505 (7th Cir. 2005) ................................................28

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................26

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305, 313 (7th Cir. 1980)). ...................................14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011)...................................16

*Baker v. Kingsley*,
    No. 03-1750, 2007 WL 1597654 (N.D. Ill. May 31, 2007) ................................27

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
    338 F.3d 755 (7th Cir. 2003) ...................................28, 29

*Brieger v. Tellabs, Inc.*,
    245 F.R.D. 345 (N.D. Ill. 2007).............................................27

*Cannon v. Burge*,
    752 F.3d 1079 (7th Cir. 2014) ..............................................14

*CE Design v. Beaty Constr., Inc.*,
    No. 07-3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ...................................24

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) .................................................13

*Gaspar v. Linvatec Corp.*,
    167 F.R.D. 51 (N.D. Ill. 1996)................................................25

*George v. Kraft Foods Glob., Inc.*,
    251 F.R.D. 338 (N.D. Ill. 2008).............................................29

*Hispanics United v. Vill. of Addison*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ......................................14

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ........................... 13, 16, 21, 24

*Jackson v. Sheriff of Cook Cty.*,
    No. 06-0493, 2006 WL 3718041 (N.D. Ill. Dec. 14, 2006) ...............................................25

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) .............................................................................................25

*Loomis v. Exelon Corp.*,
    No. 06-4900, 2007 WL 2060799 (N.D. Ill. June 26, 2007) .............................................27

*Lukas v. Advocate Health Care Network & Subsidiaries*,
    No. 14-2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015).............................................25

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .........................................................................................................28

*Medina v. Catholic Health Initiatives*,
    877 F.3d 1213 (10th Cir. 2017)………………………………………………………………7

*Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Adcock*,
    176 F.R.D. 539 (N.D. Ill. 1997) ......................................................................................14

*In re Mex. Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000).................................................................. 20, 21, 23

*Miksis v. Evanston Twp. High Sch. Dist. # 202*,
    235 F. Supp. 3d 960 (N.D. Ill. 2017)...............................................................................14

*Mirfasihi v. Fleet Mortg. Corp.*,
    450 F.3d 745, 748 (7th Cir. 2006)). ................................................................................15

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) ...........................................................................................26

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011) ................................................................................ 27, 29

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) .....................................................................................21

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ...........................................................................................26

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................................25

*In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
    No. 06-7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)...............................................14

*Smith v. Aon Corp.*,
    238 F.R.D. 609 (N.D. Ill. 2006) ............................................................. 27, 28, 29

*Stapleton v. Advocate Health Care Network & Subsidiaries*,
    137 S. Ct. 1652 (2017) ................................................................................ passim

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ......................................................................... 15, 16

*Tucker v. Walgreen Co.*,
    Nos. 05-440, 07-172, 2007 WL 2915578 (S.D. Ill. Oct. 5, 2007) .......................... 24

*Williams v. Quinn*,
    748 F. Supp. 2d 892 (N.D. Ill. 2010) ................................................................... 15

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .............................................................................. 13

**Statutes**

29 U.S.C. § 1132(a)(2), (3) ........................................................................................... 28

**Other Authorities**

Fed. R. Civ. P. 23(b)(1) .......................................................................................... 27, 29

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 27, 28

Fed. R. Civ. P. 23(c)(2) .......................................................................................... 23, 24

Fed. R. Civ. P. 23(e) ......................................................................................... 13, 15, 23

Fed. R. Civ. P. 23(g) .................................................................................................... 29

5 James Wm. Moore, *Moore's Federal Practice*,
    23.164[4] (3d ed. 2018) ..................................................................................... 23

Plaintiffs Leslee R. Carver, Diane Eslinger, Lisa Jenkins, and Susan L. Phillips ("Plaintiffs" or "Named Plaintiffs"), by and through their attorneys, respectfully submit this Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (the "Final Approval Motion").[1]  While Defendants do not oppose the relief sought in the Final Approval Motion, they do not agree with all averments stated in the Final Approval Motion or this Memorandum.

## I.     INTRODUCTION

This Settlement[2] resolves the claims of Plaintiffs in this case against all Defendants on favorable terms that provide material benefits to the Settlement Class.  The Third Amended Class Action Complaint ("Complaint" or "Compl."), ECF No. 75-1, alleges that the non-profit healthcare system Presence Health Network denied ERISA[3] protections to the participants and beneficiaries of two defined benefit pension plans that Presence Health Network sponsored, the RHC Plan and the Provena Plan (collectively, the "Plans") by claiming that the Plans qualify as ERISA-exempt "church plans."  *See* Compl. ¶¶ 128-70; *see also* 29 U.S.C. § 1002(33). Defendants deny these claims.

In addition to Plaintiffs and Defendants, Ascension Health, an unrelated large health system that was in the process of acquiring the Presence Health Network health system,

---

[1] Along with their Final Approval Motion, Plaintiffs are contemporaneously filing Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and for Incentive Awards to Named Plaintiffs.

[2] *See* Revised and Final Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), Feb. 21, 2018, attached hereto as Exhibit A.  Capitalized terms not otherwise defined in this Memorandum shall have the same meaning ascribed to them in the Settlement Agreement.

participated in mediation and settlement negotiations.[4]  The acquisition closed on March 1, 2018, after the Settlement had been executed.[5]

    This Settlement was reached by the parties and Ascension Health after vigorous arm's-length negotiations with the assistance of a third-party mediator who has had significant experience mediating ERISA and church plan cases.  The Settlement represents a good result for the proposed Settlement Class of participants and beneficiaries of the Plans.

    In summary, under the Settlement, Ascension Health guarantees payment of the first $20,000,000 of benefits that are distributable from either or both of the Plans' Trusts to Settlement Class Members if either of the Plans is unable to pay such benefits (the "Plan Benefits Guarantee").[6]  Exhibit A § 8.1.2.  The Plan Benefits Guarantee will continue for as long as the Plans are sponsored by any of the Releasees identified in the Settlement Agreement, and should a corporate transaction occur where the Plans' assets and liabilities covering Settlement Class Members transfer to a Successor, Ascension Health will cause the Successor to honor this commitment. *Id.* §§ 8.1.2, 8.1.3.  For a period of seven and one-half years, the Plans'

---

[4] *See* Joint Declaration of Lynn Lincoln Sarko and Mary J. Bortscheller in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement and Certification of Settlement Class; and (2) Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and for Incentive Awards to Named Plaintiffs ¶ 28, attached hereto as Exhibit E.

[5] Under the final structure of the acquisition, Ascension Health did not acquire the entity "Presence Health Network" and its subsidiary, "Resurrection University."  It acquired Presence Care Transformation Corporation, which is the statutory employer of Presence Health's employees and is the sole corporate member of the Presence Health hospital corporations and other business interests.  Declaration of Howard Shapiro ("Presence Declaration") ¶¶ 4-6, attached hereto as Exhibit D.  On March 1, 2018, Alexian Brothers Health System, doing business as Presence Alexian Brothers Health System, a subsidiary of Ascension Health, became the sole corporate member of Presence Care Transformation Corporation and replaced Presence Health Network as the sponsor of the Plans.  Exhibit D ¶ 6.  Certain provisions of the Settlement Agreement that provided alternative treatment in the event the acquisition did not close are no longer relevant, *e.g.*, Exhibit A § 8.1.4.2 (alternative guarantee obligation of Presence Health Network if the Ascension Health acquisition did not close).

[6] The Plan Benefit Guarantee may be satisfied earlier by making contributions that aggregate $15,000,000.  Exhibit A § 8.1.4.1.

participants' Accrued Benefits will not be reduced on account of merger, consolidation, amendment, or termination of the Plans. *Id.* §§ 9.1, 9.2.

The Settlement also enhances the retirement security of the Settlement Class Members through a commitment during that seven and one-half year period to provide information to Settlement Class Members, providing, among other things, that the Plans' participants will receive annual notices concerning the Plans' funded status and their accrued retirement benefits. *Id.* §§ 9.3.3, 9.3.4. The notices will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, and summary information about the Plans' total income. *Id.* § 9.3.3. The Plans will designate a named fiduciary; provide a procedure for establishing and carrying out the current funding policy and method; describe a procedure for allocation of administrative responsibilities; provide a procedure for Plan amendments and identify persons with authority to make such amendments; specify the basis on which payments are made to and from the Plans; provide a joint and survivor annuity, if this form of benefit is provided currently by the relevant Plan; and provide a claims review procedure. *Id.* §§ 9.3.1, 9.3.6. These protections are comparable to some of ERISA's key provisions and will ensure the Plans' participants and beneficiaries receive important notices and disclosures concerning the Plans and their benefits.

The parties have complied with the terms of the March 8, 2018, Order Preliminarily Approving the Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hearing ("Preliminary Approval Order" or "Prelim. Approval Order"), ECF No. 118, including mailing the Class Notice to the Settlement Class[7] and mailing the Class

---

[7] *See* Affidavit of Jose C. Fraga ("GCG Declaration") ¶¶ 8-9, attached hereto as Exhibit B.

Action Fairness Act ("CAFA") notices to the requisite officials pursuant to the CAFA statute.[8] 28 U.S.C. § 1715. Under the governing standards for evaluating class action settlements in this Circuit and pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(2), this Settlement is fair, reasonable, and adequate, and Plaintiffs respectfully request that the Court approve it.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Procedural History and Settlement Negotiations.

Plaintiffs' counsel Keller Rohrback L.L.P. ("Keller Rohrback") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") (collectively, "Class Counsel"), discovered and developed this area of the law and dedicated several years to developing the legal theory challenging whether non-church entities could properly maintain their pension plans as "church plans" which are exempt from ERISA. *See* Exhibit E ¶¶ 11-16. They devoted many hours to researching the definition of a "church plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33); 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the United States Code, the legislative history of the statute, and agency and court interpretations of the statute. *Id.* ¶ 12. Ultimately, Class Counsel began challenging the exemption claimed by a number of hospitals around the country that maintained pension plans which the hospitals claimed were exempt from ERISA. *Id.* ¶¶ 13-16. This Action arose from that investigation.

Prior to filing this Action, Class Counsel, reviewed Presence Health's corporate filings; delved into the business activities of Presence Health and its subsidiaries; scoured news articles and publicly-available information for insight into the company and its treatment of its church plan; reviewed regulatory filings concerning Presence Health; pored over financial statements

---

[8] *See* Declaration of Howard Shapiro ("Shapiro Declaration") ¶¶ 3, 7, attached hereto as Exhibit C.

and bond offerings for information relating to the Plans; reviewed the Plans' documents; researched the role and responsibilities of Defendants and committees who were alleged to be fiduciaries and to have responsibilities concerning the Plans; and examined documents provided by Named Plaintiff Carver. *Id.* ¶ 17.

On April 2, 2015, Plaintiff Carver, a participant in the RHC Plan, filed a putative class action complaint in this Court against Presence and various other corporate and individual defendants, alleging violations of ERISA. Compl. – Class Action ("Initial Complaint" or "Initial Compl."), ECF No. 1. The Initial Complaint alleged that Defendants denied ERISA protections to the participants and beneficiaries of the Plans, which are defined benefit pension plans sponsored by Presence, by claiming that the Plans qualify as ERISA-exempt "church plans." The Initial Complaint further alleged that asserting this exemption caused Defendants to deny the Plans' participants the protections of ERISA. These include, among other alleged violations: inadequately funding the Plans; failing to furnish Plaintiff or any member of the class with Pension Benefit Statements, Summary Annual Reports, Notification of Failure to Meet Minimum Funding, or Funding Notices in compliance with ERISA; failing to provide for funding benefits under the Plans in case the Plans were terminated without adequate funding; and, in the case of the RHC Plan, requiring participants to complete excessive years of service before participants became vested in their accrued benefits. Initial Compl. ¶¶ 233-69.

Defendants initially moved to dismiss the Initial Complaint, Defs.' Rule 12(b)(1) Partial Mot. to Dismiss the Provena Defs., ECF No. 50, and on July 14, 2016, the Initial Complaint was amended to add additional plaintiffs who were participants in the Provena Plan. First Am. Class Action Compl. ("First Amended Complaint"), ECF No. 56. The First Amended Complaint was later amended further, and now names as additional plaintiffs Diane Eslinger, Lisa Jenkins, and

Susan L. Phillips, all participants in the Provena Plan. Compl. ¶¶ 15-16, 18. Named Plaintiffs are represented by Class Counsel and local counsel, Stephan Zouras LLP (collectively, "Plaintiffs' Counsel").

Defendants answered the Complaint, denying that Plaintiffs were entitled to relief based on Defendants' contention that the Plans were properly treated as church plans. Answer in Resp. to Pls.' Third Am. Compl. ("Answer"), ECF No. 79. Following an earlier status hearing on May 5, 2016, ECF No. 44, the parties each served and responded to discovery requests on targeted liability issues. Exhibit E ¶ 23. On May 27, 2016, Plaintiffs issued their First Requests for the Production of Documents to Defendants, Nos. 1-20. Defendants responded and objected, and subsequently made nine productions of documents in 2016 to Plaintiffs, producing 690 documents, or 10,158 pages. Defendants issued their First Request for Production of Documents to Plaintiffs on July 13, 2016. Plaintiffs responded and produced 94 documents that totaled 308 pages. On July 13, 2016 and September 9, 2016, Defendants also issued their First and Second Set of Interrogatories to Plaintiffs. Plaintiffs submitted their objections and responses on August 22, 2016 and October 17, 2016. On August 22, 2016 and September 22, 2016, Plaintiffs issued their First and Second Set of Interrogatories to Defendants. On September 26, 2016 and November 3, 2016, Defendants submitted their Answers and Objections to Plaintiffs' Interrogatories. Exhibit E ¶ 23.

On October 13, 2016, however, pursuant to an agreement of the parties, the Court stayed further proceedings (with the exception of completion of pending document discovery) while the United States Supreme Court considered whether to grant *certiorari* in three other "church plan" cases involving one of the same issues present in this case, ECF No. 78. Exhibit E ¶ 24. The Court subsequently stayed all proceedings after certiorari was granted, ECF No. 87. *Id.* That

appeal addressed whether, as Plaintiffs alleged here, a church plan must be established by a church in order to qualify as an ERISA-exempt church plan. The Supreme Court held argument in that case on March 27, 2017, and issued its decision on June 5, 2017, holding that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans, though they still had to satisfy other conditions. *Advocate Health Care Network v. Stapleton* ("*Advocate*"), 137 S. Ct. 1652 (2017). The Supreme Court did not decide Plaintiffs' other theories of liability. While Plaintiffs advance other strong arguments and theories not decided by the Supreme Court's opinion, Plaintiffs' case was arguably negatively impacted by that decision.[9]

Following the *Advocate* decision, as the parties prepared to resume active litigation, they agreed to attempt to settle the case with the assistance of an experienced JAMS mediator, and the Court granted their Joint Motion to Continue Status Hearing in Light of Pending Mediation, ECF No. 93; ECF No. 95.

On August 29, 2017, the parties attended a face-to-face mediation session in Chicago, Illinois, with the assistance of an experienced JAMS mediator, Robert Meyer, Esp., in hopes of resolving the case. Exhibit E ¶ 27.

Shortly before the August 29, 2017 mediation, Presence Health and Ascension Health publicly announced the signing of a non-binding letter of intent for Ascension Health to acquire Presence Health, *id.* ¶ 28, and although the acquisition had not then been finalized, Ascension Health was present at and participated in the mediation. *Id.*; *see also* Exhibit A § 2.1.

---

[9] In addition, late last year the Tenth Circuit Court of Appeals decided *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017), which rejected several other theories of ERISA liability in a different "church plan" case. *Medina* was decided on different facts than those before this Court; Plaintiffs believe its legal analysis was flawed; and in any event it is not binding on this Court in this case. It does, however, illustrate the litigation risk that this Settlement avoids.

Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the church plan exemption. Exhibit E ¶ 27; *see also* Exhibit A §§ 3.7, 11.1.1. Although the matter was not resolved at the August 29, 2017 mediation, the parties made progress and agreed to continue pursuing a settlement agreement. Exhibit E ¶ 29. The Court granted the parties' request to postpone an upcoming status conference, ECF No. 98, so that the parties could attempt to bring the matter to a final resolution. *Id.*

Throughout the course of the litigation and the parties' negotiation, Class Counsel worked with the Named Plaintiffs to investigate the facts, circumstances, and legal issues associated with the allegations and defenses in the Action. *Id.* ¶ 44. Class Counsel's investigation and work in this matter included, *inter alia*, (a) inspecting, reviewing, and analyzing financial statements, corporate records, bond offerings and other documents publicly available and/or produced by Defendants or otherwise relating to Defendants, the Plans, and the administration and funding of the Plans; (b) attending hearings relating to case management and settlement issues; (c) drafting and propounding document requests and interrogatories; (d) reviewing documents produced by Defendants; (e) reviewing interrogatory responses prepared by Defendants; (f) researching and analyzing the applicable law with respect to the claims asserted in this case and the possible defenses thereto; and (g) exploring potential remedies. *Id.* ¶ 45.

At Mr. Meyer's urging the parties continued to negotiate over several months, with Mr. Meyer's continued assistance, and the parties finally accepted a mediator's proposal and reached an agreement in principle to settle the Action. *Id.* ¶ 30. On November 10, 2017, the parties signed a Term Sheet containing the preliminary terms resolving this matter. *Id.* The original

Settlement Agreement based on that Term Sheet was executed by all parties on December 12, 2017. Class Action Settlement Agreement, ECF No. 106-2. Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement Agreement on January 5, 2018, ECF No. 104, and this Court granted preliminary approval of the settlement on January 16, 2018, ECF No. 110.

Thereafter, in February 2018, Defendants advised Plaintiffs that the structure of the acquisition of Presence by Ascension Health had changed. Ascension Health, Presence Health Network and Presence agreed that Ascension Health would not acquire Presence Health Network and Resurrection University. Exhibit E ¶ 34; Exhibit D ¶ 5. Defendants further advised Plaintiffs that the Plans would become sponsored by Ascension Health or its subsidiary. Presence Alexian Brothers Health System replaced Presence Health as the sponsor of the Plans after the closing of the acquisition transaction. Exhibit E ¶ 35; Exhibit D ¶ 6. The original Settlement Agreement was jointly amended and modified to reflect the changes to the Proposed Transaction, resulting in the Revised and Final Class Action Settlement Agreement that is the subject of this Final Approval Motion. Exhibit A. Ascension Health is a party to the Term Sheet and the Settlement Agreement and, in light of the closing of its acquisition of Presence, is bound by the Settlement Agreement. *Id.* § 2.3.

The Court preliminarily approved the Settlement, as revised, on March 8, 2018.

**B.  Overview of the Settlement Agreement.**

The following summarizes the principal terms of the Settlement.

**1.  Settlement Consideration.**

Under the Settlement Agreement, now that Ascension Health has acquired Presence, pursuant to the Plan Benefit Guarantee, Ascension Health guarantees the payment of the first $20,000,000 of benefits that are distributable from either or both of the Plans to Settlement Class Members in the event trust assets attributable to either of the Plans become insufficient to pay

such benefits. Exhibit A § 8.1.2. The Plans are now sponsored by Alexian Brothers Health System, doing business as Presence Alexian Brothers Health System, a subsidiary of Ascension Health. Exhibit D ¶ 6. The obligation of Ascension Health under the Plan Benefit Guarantee shall continue for as long as the Plans are sponsored by any of the Releasees.[10] Exhibit A § 8.1.2. Should a corporate transaction occur where the Plans' assets and liabilities covering Settlement Class Members transfer to a Successor, Ascension Health shall cause the Successor to honor Ascension Health's commitments under the Plan Benefit Guarantee. *Id.* § 8.1.3. Any of the Releasees may satisfy the Plan Benefit Guarantee obligation by making contributions to the Plans' Trusts that in the aggregate total $15,000,000. *Id.* § 8.1.4.1. However, any of the Releasees may make additional contributions to the Plans at any time. *Id.*

## 2. Additional Non-Monetary Equitable Consideration.

The Settlement establishes equitable provisions that are comparable to certain provisions of ERISA concerning plan administration, summary plan descriptions, notices, and the Plans' claim review procedure. *Id.* §§ 9.3–9.3.4, 9.3.6. As a result of these provisions, for seven and one-half years after the Effective Date of Settlement, the Plans' participants will receive notice on an annual basis about the funded status of the Plans and the retirement benefits that they have accrued. *Id.* §§ 9.3.3, 9.3.4. This annual notice will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, information about the increase and/or decrease in net Plan assets for the year, and summary information about the Plans' total incomes. *Id.* § 9.3.3.

Ascension Health also guarantees that, for a period of seven and one-half years after the Effective Date, if the Plans are merged or consolidated with another plan, participants and

---

[10] The "Releasees," as defined in the Settlement Agreement, include Ascension Health and its affiliates. Exhibit A § 2.3.

beneficiaries who are Settlement Class members will be entitled to the same or a greater Accrued Benefit post-merger or after a consolidation event as they enjoyed before the merger or consolidation. Exhibit A § 9.1. Likewise, for the next seven and one-half years, the Plans' sponsor guarantees that no amendment or termination of the Plans will result in a reduction of a Settlement Class Member's Accrued Benefit. *Id.* § 9.2.

**3.  Certification of a Rule 23 Class.**

The Settlement contemplates that the Court will certify a non-opt-out class under Rule 23(b)(1) or (b)(2). *Id.* § 3.2.2. The Settlement Class is defined as: "All persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries." *Id.* § 1.32.

**4.  Released Claims.**

The Settlement Agreement provides for releases by and among Plaintiffs, Defendants, and certain other non-parties related to the litigation, including Ascension Health. *Id.* §§ 4, 2.3. The persons to be released by Plaintiffs are defined as the "Releasees" and are enumerated at section 1.28 of the Settlement Agreement. *Id.* § 1.28. The Releasees will be released from the "Released Claims," which generally include all claims that could have been asserted by Plaintiffs, arising under federal or state law, related to the sponsorship, funding, maintenance, operation or termination of, or distributions from, the Plans. *Id.* § 4.1. Plaintiffs, the Settlement Class, and Plaintiffs' Counsel will be released from claims relating to the institution and prosecution of the Action. *Id.* § 4.4.

**5.  Notice.**

The Settlement Agreement and the Preliminary Approval Order provide for the following notices to be given no later than April 9, 2018: (a) a mailed Class Notice, to be mailed to the last known address of members of the Settlement Class; and (b) internet publication of the Settlement

Agreement and Class Notice at http://www.kellersettlements.com and

www.cohenmilstein.com/Presence-settlement.  Exhibit A §§ 3.2.3, 3.2.4; Prelim. Approval Order

6.  Ascension Health is responsible for payment of the cost of mailing the Class Notice to the

Settlement Class.[11]  On March 23, 2018, Garden City Group, LLC ("GCG") mailed 50,410 Class

Notices to the Settlement Class Members.  *See* Exhibit B ¶ 8; *see also* Exhibit A § 3.2.3.[12]  As of

May 22, 2018, GCG has mailed a total of 52,918 Class Notices.  Exhibit B ¶ 9 (this includes

2,508 Class Notices that were re-mailed upon receipt of an updated address).  Class Counsel

published the Settlement Agreement and the Class Notice to the two websites listed in the Class

Notice by March 26, 2018.  Exhibit E ¶¶ 50-51.

      **6.**    **Attorneys' Fees, Expenses, and Incentive Awards.**

      By separate application, Class Counsel seek an award of reasonable out-of-pocket

expenses and attorneys' fees for Plaintiffs' Counsel, as well as Incentive Awards to Named

Plaintiffs.  The Settlement Class was notified of these details in the Class Notice.  *See* Exhibit K.

Any award of attorneys' fees, expenses, and Incentive Awards will be paid by Ascension Health

***in addition to*** the other monetary terms set forth in the Settlement Agreement.  Exhibit A § 8.1.5.

Additional support for these requests is set forth in the attached time and expense reports from

Plaintiffs' Counsel and Named Plaintiffs.  *See* Keller Rohrback's fees and expenses, attached

hereto as Exhibit E-3; Cohen Milstein's fees and expenses, attached hereto as Exhibit E-4;

Declaration of James B. Zouras in Support of Plaintiffs' Motion for Award of Attorneys' Fees

and Reimbursement of Expenses, attached hereto as Exhibit E-5; Declaration of Leslee R. Carver

in Support of Class Action Settlement ¶¶ 11-14, attached hereto as Exhibit G; Declaration of

---

[11] A copy of the Class Notice is attached as Exhibit A to the GCG Declaration, and is also
attached hereto as Exhibit K.

[12] GCG, after extensive efforts, obtained mailing addresses for 50,410 of the 50,710 identified
Class Members.  Ex. B ¶¶ 6-7.

Diane M. Eslinger in Support of Approval of Class Action Settlement ¶¶ 12-15, attached hereto as Exhibit H; Declaration of Lisa A. Jenkins in Support of Approval of Class Action Settlement ¶¶ 12-15, attached hereto as Exhibit I; and the Declaration of Susan Phillips in Support of Class Action Settlement ¶¶ 12-15, attached hereto as Exhibit J.

## C.   Reasons for the Settlement.

Plaintiffs have entered into the Settlement with an understanding of the strengths and weaknesses of their claims. This understanding is based on: (1) the dialogue in mediation sessions and other settlement discussions; (2) investigation and research; (3) document discovery and interrogatories propounded in this matter; (4) the likelihood that Plaintiffs would prevail at trial; (5) the range of possible recovery; and (6) the substantial complexity, expense, and duration of litigation necessary to prosecute this Action through trial, post-trial motions, and likely appeal, and the significant uncertainties in predicting the outcome of this complex litigation. *See* Exhibit E ¶¶ 15-16, 66, 76. Having undertaken this analysis, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate and should be presented to the Court for approval. *Id.* ¶ 92.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Under Rule 23(e), the Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citation omitted). In general, federal courts favor settlement of class action litigation. *Isby*, 75 F.3d at 1196; *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985) (citations omitted).

> In the class action context in particu-lar [sic], there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class

actions minimizes the litigation expenses of both parties and also reduces the
strain such litigation imposes upon already scarce judicial resources.

*In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06-7023, 2016 WL

772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305,

313 (7th Cir. 1980)).

As a result, "[c]ourts do not easily disturb settlement agreements[.]" *Merrill Lynch,*

*Pierce, Fenner & Smith, Inc., v. Adcock*, 176 F.R.D. 539, 544 (N.D. Ill. 1997); *see also Miksis v.*

*Evanston Twp. High Sch. Dist. # 202*, 235 F. Supp. 3d 960, 987 (N.D. Ill. 2017), *as amended*

(Feb. 2, 2017) (approving a settlement agreement and noting that "the Court also cannot ignore

the strong federal policy favoring the voluntary resolution of disputes"); *Cannon v. Burge*, 752

F.3d 1079, 1104 (7th Cir. 2014) ("Public policy in Illinois favors settlements[.]") (citation

omitted).

A.      **The Settlement was Reached after Arm's-Length Negotiations with the Assistance of
        an Experienced Mediator and is Procedurally Fair.**

"A strong initial presumption of fairness attaches to the proposed settlement when it is

shown to be the result of [an arm's-length] negotiating process." *Hispanics United v. Vill. of*

*Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) (citation omitted). The Settlement here is

entitled to this strong presumption of fairness because the settling parties in this Action are

represented by counsel experienced in litigating the ERISA "church plan" exemption; the

Settlement was the result of arm's-length negotiations before an experienced mediator; and the

settling parties understood the strengths and weakness of the claims and defenses before

settlement was reached. Exhibit E ¶¶ 15-16, 66, 76. As described above and in Exhibit E,

throughout the development of the case, Class Counsel reviewed Presence Health's corporate

filings; delved into the business activities of Presence Health and its subsidiaries; scoured news

articles and publicly-available information for insight into the company and its treatment of its

church plans; reviewed regulatory filings concerning Presence Health; pored over financial statements and bond offerings for information relating to the Plans; reviewed the Plans' documents; researched the role and responsibilities of Defendants and committees who were alleged to be fiduciaries and to have responsibilities concerning the Plans; and examined documents provided by Named Plaintiff. Exhibit E ¶ 17. Class Counsel, who were also counsel in the *Advocate* case, also researched and analyzed applicable law and potential defenses as they argued these same issues before the Supreme Court and continued to pursue several alternate arguments after the Supreme Court issued the *Advocate* decision. *Id.* ¶ 16. Class Counsel also conducted discovery on the merits of this case. *Id.* ¶ 23. Based on this analysis, Class Counsel concluded that the Settlement reached here is the best result that could be obtained under the circumstances. *Id.* ¶¶ 15-16, 66, 76.

**B.     Application of the *Synfuel*[13] Factors Supports Approval of the Settlement as Fair, Reasonable, and Adequate.**

Now that this Court has preliminarily approved the Settlement and caused the Class Notice to be issued to Settlement Class Members consistent with Rule 23(e)(1), the Court must decide whether final approval is warranted. While Seventh Circuit standards require that a court closely scrutinize class counsel's fiduciary duties to obtain the best settlement for the class, "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety, and not a product of collusion." *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (citing, *inter alia*, *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006)).

---

[13] *Synfuel Techs., Inc. v. DHL Express (USA), Inc.* ("*Synfuel*"), 463 F.3d 646, 653 (7th Cir. 2006) (citation omitted) (factors a district court must consider to evaluate whether a class action settlement meets the fairness requirement (the "*Synfuel* factors")).

Courts in the Seventh Circuit consider the following *Synfuel* factors to evaluate whether a class action settlement meets this fairness requirement:

a.  "the strength of plaintiffs' case compared to the amount of defendants' settlement offer";

b.  "as assessment of the likely complexity, length and expense of the litigation";

c.  "an evaluation of the amount of opposition to settlement among affected parties";

d.  "the opinion of competent counsel"; and

e.  "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel*, 463 F.3d at 653 (citation omitted).

In reviewing these factors, courts view the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199 (citation omitted). As discussed in detail below, each of these factors strongly favors approval of the Settlement.

**1.  The Strength of Plaintiffs' Case Compared to the Amount of Settlement, As Well As the Complexity, Expense, and Likely Duration of the Litigation, Support Approval of the Settlement.**

The "most important factor relevant to the fairness of a class action settlement" is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (citation omitted). For this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *Id.* at 959, 961-63. Plaintiffs' case is strong and they have pursued it vigorously, but the litigation is not without risk or uncertainty—particularly because the legal landscape of the "church plan" exemption has changed significantly since Plaintiffs first brought this case. In early June 2017, the Supreme Court issued its ruling in *Advocate*. That case involved an interlocutory appeal of the ruling in another case pending in this Court, *Stapleton v. Advocate Health Care Network & Subsidiaries*,

No. 14-01873 (N.D. Ill.), which had been affirmed by the Seventh Circuit Court of Appeals, consolidated with appeals from similar rulings by the Third and Ninth Circuits, all of which had determined that, in order to qualify as a "church plan" under the ERISA church plan exemption, a retirement plan needed to be established by a church. The Supreme Court reversed those holdings, finding that a retirement plan may still be able to satisfy the exemption if it was established by an entity other than a church. *Advocate*, 137 S. Ct. at 1663.

The Supreme Court's ruling did not resolve all the issues in this litigation. If the Settlement had not been reached, the parties would still need to litigate how the Supreme Court's ruling applies to the facts of this case, and the parties would still need to proceed with class certification and summary judgment briefing, trial preparation and presentation, and anticipated appeals of any judgment (whether for Plaintiffs or Defendants). Furthermore, the expense of taking this case through trial would be considerable. It would require, among other things, additional formal discovery (including document discovery and many depositions), and extensive motion practice. *See* Exhibit E ¶ 76. Trial preparation would require great effort, both by the parties and the Court. *See id.*

Though Class Counsel remain confident in the merits of Plaintiffs' claims, there is significant risk in light of the Supreme Court's decision, which arguably negatively impacted Plaintiffs' case.[14] Additionally, Defendants would undoubtedly otherwise continue to defend their actions vigorously through trial, and on appeal if necessary. This Settlement is therefore particularly favorable for the proposed class in light of this uncertain and high-stakes backdrop. It provides for funding when the trust funds are insufficient to pay benefits. The $20,000,000 Plan Benefit Guarantee and the $15,000,000 buyout option provided for in the Settlement

---

[14] *See also* note 9, *supra*, as to the Tenth Circuit's subsequent decision in *Medina*, 877 F.3d 1213.

17

Agreement will benefit the Settlement Class Members should the Plans' trust funds be unable to pay benefits under the Plans. Exhibit A §§ 8.1.2, 8.1.4. Further, the Settlement Agreement ensures that this guarantee will survive a corporate transaction in which Plans' assets and liabilities covering Settlement Class Members transfer to a Successor, by requiring Presence and Ascension Health to cause the Successor to honor the Plan Benefit Guarantee. *Id.* § 8.1.3. This Settlement thus eliminates at least $15,000,000 of risk to participants for the life of the Plans, while mitigating the risks and uncertainty of litigation.

Moreover, the Settlement establishes equitable provisions that are comparable to certain provisions of ERISA. Exhibit A §§ 9.3–9.3.6. For instance, for a period of seven and one-half years, the Plans' participants will receive notice on an annual basis about the funding status of the Plans and the retirement benefits that they have accrued. *Id.* § 9.3.2. This annual notice will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, information about the increase or decrease in net Plan assets for the year, and summary information about the Plans' total incomes. *Id.* § 9.3.3.

## 2. An Evaluation of the Amount of Opposition to the Settlement among Affected Parties Supports Approval of the Settlement.

The reaction of Settlement Class Members to the Settlement strongly favors approval. First, the Settlement has the full support of Named Plaintiffs, all of whom provided documents during the investigation and discovery phase, kept abreast of the different phases of litigation, kept abreast of mediation and settlement negotiations, and supervised Class Counsel's decision-making throughout the litigation and settlement process. *See* Exhibit G; Exhibit H; Exhibit I; Exhibit J. After analyzing the agreement, all Named Plaintiffs came to the conclusion that this

Settlement provides the best outcome that the Settlement Class was likely to achieve. Exhibit G ¶¶ 8–10; Exhibit H ¶¶ 9–11; Exhibit I ¶¶ 9–11; Exhibit J ¶¶ 9–11.

As of May 21, 2018, Class Counsel have received over 530 inquiries about the Settlement through the dedicated phone line and email address published in the Class Notice, and have responded to all of them. Exhibit E ¶¶ 54, 58. Class Counsel believe that their responses have adequately addressed all of these inquiries, and they do not anticipate any objections on account of those inquiries. Class Counsel are aware of filings by four Settlement Class Members in the Court's file:

(1)      Letters from Tanya McDaniel filed April 5, 2018, ECF Nos. 119, 120. Although styled as a "Written Objection," it appears from Ms. McDaniel's request at the conclusion of her objection—"Please discontinue the pursuit of any involvement with me in this…."—that her goal is not to defeat the Settlement, but simply not to be involved in the lawsuit. It appears from documents she provided with her objection that Ms. McDaniel had only a very brief connection with Presence for five months in 1998. Seeking clarification of Ms. McDaniel's filing, on April 6, 2018, Class Counsel called Ms. McDaniel and left a voicemail message and callback number, offering to discuss her objection. Ms. McDaniel did not respond. Declaration of Christopher Graver ¶ 4, attached hereto as Exhibit F. On May 17, 2018, Class Counsel wrote Ms. McDaniel requesting an opportunity to discuss the Written Objection. On May 21, 2018, Class Counsel received a voicemail from Ms. McDaniel, confirming that she did not wish to be involved in the lawsuit and requesting that communications with her be discontinued. Exhibit F ¶ 4. Class Counsel believes that a fair reading of Ms. McDaniel's filing is that it does not raise an objection to the Settlement;

(2)    Letter from Michael J. Vines filed April 11, 2018, ECF No. 121.  Mr. Vines'

letter is phrased as an inquiry rather than an objection.  Class Counsel communicated with Mr.

Vines by email and telephone on several occasions between April 12, 2018 and April 17, 2018.

At the conclusion of Class Counsel's communications, Mr. Vines confirmed to Class Counsel

that he has no objection to the Settlement.  Exhibit F ¶ 5;

(3)    Letters from Halina Maria Bysiek filed April 27, 2018, ECF Nos. 122, 123.  Ms.

Bysiek's letters also appear to ask questions rather than raise objections.  The first, ECF No. 122,

appears to address a 401(K) plan that is not the subject of this Action; the second, ECF No. 123,

may contain questions that relate to the Settlement.  Class Counsel has written to Ms. Bysiek in

an attempt to clarify her position. Exhibit F ¶ 6; and

(4)    Letter from Judith Holley filed May 15, 2018, ECF No. 124.  Ms. Holley does not

object to the Settlement but requests removal from the lawsuit as she does not believe she was a

Plan participant.  Class Counsel has responded in writing to Ms. Holley.  Exhibit F ¶ 7.

Class Counsel believe that none of these filings constitute objections, but will address any

objections, or purported objections, further in a reply to be filed on July 3, 2018, *see* Prelim.

Approval Order 7, should they not be resolved consensually before then.  Exhibit E ¶ 55.

In this Circuit, where only a relatively small number of class members object, it suggests

that class members deem the settlement to be fair.  *In re Mex. Money Transfer Litig.*, 164 F.

Supp. 2d 1002, 1020-21 (N.D. Ill. 2000).  Pursuant to the Preliminary Approval Order, GCG

mailed copies of the Class Notice to Settlement Class Members on March 23, 2018.  Exhibit B ¶

8.  As of May 22, 2018, a total of 52,918 copies of the Class Notice have been disseminated.  *Id.*

¶ 9.  The Class Notice set out the terms of the Settlement and informed Settlement Class

Members where they could find all relevant preliminary approval documents.  It also explained

how to object to the Settlement. Exhibit K 2, 6-7. The deadline to object to the Settlement is June 12, 2018. Prelim. Approval Order 7; Exhibit K 2, 6-7. Here, despite targeted notice of the Settlement, no Settlement Class Member objects. Exhibit E ¶ 55; Exhibit F. This reaction of the Settlement Class to date strongly supports approval of the Settlement.

Finally, pursuant to the Settlement, Defendants' counsel served CAFA notices upon the Attorney General for each state in which a Settlement Class Member resides, and the Attorney General of the United States, on March 8, 2018, within ten days of the filing of the Settlement Agreement and more than 90 days prior to the Fairness Hearing. Exhibit C ¶ 7. No objections from any of these officials have been received in response to the CAFA notice, which further indicates the reasonableness and adequacy of the Settlement. *See id. ¶* 10; Exhibit E ¶ 55; *see also Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) (no response to CAFA notice "indicate[es] that such officials [] do not object to the Settlement. . . . Thus, this factor favors the settlement.") (citation omitted).

### 3.     The Stage of the Proceedings Supports Approval of the Settlement, and the Opinion of Class Counsel Is That the Settlement Is Fair and Reasonable.

That Class Counsel, who are primarily responsible for the development of this area of ERISA law, strongly endorse the Settlement as fair and reasonable also supports final approval. *See, e.g.*, *Isby*, 75 F.3d at 1200; *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1020. This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in the area of ERISA litigation—and, more specifically, in litigation concerning ERISA's "church plan" exemption. Exhibit E ¶¶ 56, 66–67. Class Counsel are well known for their success in complex ERISA class action litigation and have many years of experience in litigating church plan cases. *See id.* ¶ 56 (referencing firm resumes of Class Counsel, attached hereto as Exhibits E-1, E-2).

As a result of this expertise, Class Counsel were able to craft a Settlement that took into account the Plans' funding levels, the financial condition of Presence and Ascension Health, and the desire of the Plans' participants for both security and transparency with respect to their interests in the Plans. Ascension Health provides a $20,000,000 guarantee of funds to pay the level of benefits stated in the Plans (which guarantee can be satisfied earlier by the deposit of $15,000,000 in actual cash). Exhibit A §§ 8.1.2, 8.1.4. For a period of seven and one-half years, participants' Accrued Benefits cannot be reduced, *id.* § 9.2; the Plans' participants will receive important information about the Plans and their benefits, *id.* §§ 9.3.1–9.3.5; and the Plans' participants will receive additional equitable protections, *e.g. id.* §§ 9.1–9.3, 9.3.6. These provisions are comparable to ERISA requirements and are designed to assist participants in planning for retirement. Exhibit E ¶ 6. Absent these guarantees, the Plans' participants may have been unaware of the benefits they had accrued or the likelihood that there would be resources to pay them.

In negotiating the Settlement, Class Counsel was concerned with the Plans' funding levels. Exhibit E ¶ 42. Ascension Heath's guarantee provides assurance of up to $20,000,000 in funding if the Plans' funding levels drops to where the Plans would not be able to fund accrued liabilities. Exhibit A §§ 8.1.2, 8.1.4. The Plan Benefit Guarantee functions as a type of insurance that may not otherwise be available. Exhibit E ¶ 42.

These Settlement terms provide significant value to the Settlement Class because of the protection they offer that the Plans will remain sufficiently funded, and because for seven and one-half years, Accrued Benefits will not be reduced, and the Settlement Class will receive equitable protections comparable to ERISA that enhance their retirement security. In Class

22

Counsel's opinion, especially given the Supreme Court's decision in *Advocate*, this Settlement represents a particularly strong result for the Class. *Id.* ¶ 76.

Based on their extensive experience and expertise, and for all of the reasons articulated herein, Class Counsel believe the Settlement is in the best interests of the Settlement Class and recommend its approval. This opinion should be granted substantial weight, as the recommendations of experienced and qualified counsel favor approval of a settlement. *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1020 ("The court places significant weight on the unanimously strong endorsement of these settlements by Plaintiffs' well-respected attorneys."); *see also* 5 James Wm. Moore, *Moore's Federal Practice* ¶ 23.164[4] (3d ed. 2018) ("The more experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions on fairness, reasonableness, and adequacy.").

Moreover, Class Counsel's intensive investigation before filing suit, during litigation and through the negotiation process strongly favors approval of the Settlement because it demonstrates that the Settlement was derived only after Plaintiffs procured the information that Class Counsel needed to intelligently evaluate the risks and benefits of continued litigation, drawing from their extensive experience and best judgment. For all of these reasons, the Settlement is in all respects fair, reasonable, and adequate, and should be approved.

## IV.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Class Notice provided to the Settlement Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Class Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable." Fed. R. Civ. P. 23(e)(1). Notice of a settlement is reasonable if it:

[F]airly and adequately advises the class of the terms of the proposed settlement and the process available to class members to obtain monetary relief provided by the settlement, the rights of class members to object to the settlement and/or to opt-out of the monetary relief provided by the settlement, and the rights of class members to appear before the Court at the Final Fairness Hearing.

*Tucker v. Walgreen Co.*, Nos. 05-440, 07-172, 2007 WL 2915578, at *4 (S.D. Ill. Oct. 5, 2007).

Both the substance of the Class Notice and the method of its dissemination to potential Settlement Class Members satisfied these standards. Class Notice also defined the Settlement Class and the Settlement Class claims, issues, or defenses, and appointed Class Counsel, as required by Rule 23(c)(2)(B). *See* Exhibit K.

In accordance with the Preliminary Approval Order, GCG has disseminated 52,918 copies of the Class Notice to Settlement Class Members. Exhibit B ¶¶ 8–9. The combination of individual mail to all Settlement Class Members and two dedicated Settlement websites containing all of the relevant Settlement documents constitutes the least costly and "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). It therefore satisfied the requirements of due process and Rule 23. *See, e.g.*, *CE Design v. Beaty Constr., Inc.*, No. 07-3340, 2009 WL 192481, at *10 (N.D. Ill. Jan. 26, 2009) ("The Federal Rules, however, require the best notice that is 'practicable' not perfect notice.").

## V. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Named Plaintiffs also respectfully request that the Settlement Class be finally certified for purposes of settlement. The Seventh Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. "Federal courts naturally favor the settlement of class action litigation" and certification of a settlement class is a necessary part of approving a class action settlement. *Isby*, 75 F.3d at 1196 (citation omitted). Indeed, the certification of a settlement class "has been recognized throughout the country as the best, most

24

practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.3d 167, 174 (5th Cir. 1979)). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). Here, those requirements are easily met.

## A. The Settlement Class Meets the Requirements of Rule 23(a).

*Numerosity*. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants have sent the Class Notice to over 50,000 Settlement Class Members. Exhibit B ¶¶ 8–9. Thus, the element of numerosity is met. *See, e.g., Jackson v. Sheriff of Cook Cty.*, No. 06-0493, 2006 WL 3718041, at *3 (N.D. Ill. Dec. 14, 2006) ("While there is no set minimum number of plaintiffs required for class certification, Courts have generally recognized that joinder is impracticable where a class contains more than 40 members") (citation omitted); *Lukas v. Advocate Health Care Network & Subsidiaries*, No. 14-2740, 2015 WL 5006019, at *4 (N.D. Ill. Aug. 19, 2015) (certifying an ERISA class of 282 members); *cf. Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (certifying an ERISA class of 18 members).

*Commonality*. Rule 23(a)(2) requires that there be "'questions of law or fact common to the class,'" and "'[a] common nucleus of operative fact is usually enough to satisfy'" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 607 n.9 (1997); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). In the instant Action, members of the Settlement Class share multiple issues of law and fact, such as whether the Plans are exempt from ERISA as church plans, and, if not, whether the

25

fiduciaries of the Plans failed to administer and fund the Plans in accordance with ERISA. The core questions and issues are common to the Settlement Class. Commonality is thus satisfied.

*Typicality.* The typicality element broadly requires "that the claims or defenses of the representative part[y][be] typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (alterations in original) (citation omitted). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). Here, Plaintiffs' claims arise from the same course of events as the claims of the Settlement Class—Defendants' alleged failure to operate the Plans in accordance with ERISA. Typicality is satisfied.

*Adequacy.* Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," which "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 607 n.13, 625. The "adequacy" test is also easily met here. The claims and interests of the Named Plaintiffs are congruent with those of the other members of the Settlement Class; all seek to enhance their retirement security under the Plans. There can be no question that the Named Plaintiffs' interests are aligned with those of the Settlement Class and that they have retained qualified counsel with extensive experience representing plaintiffs in class litigation, including ERISA cases and church plan cases specifically. Exhibit E ¶¶ 56, 66–67; Keller Rohrback résumé, attached hereto as Exhibit E-1; Cohen Milstein résumé, attached hereto as Exhibit E-2. Accordingly, this Action satisfies all the requirements of Rule 23(a).

**B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2).**

      **1.      Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members.**

A class may be certified under Rule 23(b)(1) if, in addition to meeting the requirements of Rule 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interest of absent members.  Fed. R. Civ. P. 23(b)(1)(A), (B).

There is a clear risk of inconsistent adjudication and incompatible standards here: in the absence of certification, participants could bring identical actions and achieve different results, with one court holding that the Plans are ERISA-regulated, and the other holding that they are not.  *See, e.g.*, *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) ("ERISA class actions are commonly certified under either or both subsections of [Rule] 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan."); *see also Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007) (certifying a Rule 23(b)(1) class in an ERISA case alleging breach of fiduciary duty for imprudent investment decisions); *Loomis v. Exelon Corp.*, No. 06-4900, 2007 WL 2060799, at *2, *5 (N.D. Ill. June 26, 2007) (certifying a Rule 23(b)(1) class alleging breach of fiduciary duty for charging excessive fees and making imprudent investment decisions); *Baker v. Kingsley*, No. 03-1750, 2007 WL 1597654, at *5 (N.D. Ill. May 31, 2007) ("Because the relief sought by plaintiffs involves the recovery and distribution of plan assets, separate actions by individual plaintiffs would impair the ability of other class members to protect their interests. Plaintiffs therefore meet the requirements of Rule 23(b)[(1)]."); *Smith v. Aon Corp.*, 238 F.R.D. 609, 618

(N.D. Ill. 2006) (certifying ESOP class action under Rule 23(b)(1)).  Certification of the
proposed class under Rule 23(b)(1) is appropriate in this ERISA Action.

> **2.** **Defendants Have Acted on Grounds Generally Applicable to the Settlement
> Class, and Relief for the Settlement Class as a Whole Is Appropriate.**

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or
refused to act on grounds that apply generally to the class, so that final injunctive relief or
corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P.
23(b)(2).  Here, Plaintiffs allege that Defendants failed to comply with ERISA on Plan-wide
bases and seek declaratory relief that the Plans are not church plans, as well as injunctive relief
requiring that the Plans comply with ERISA.  The available remedies include monetary relief
and remedial equitable relief to the Plans as a whole.  ERISA § 502(a)(2), (3), 29 U.S.C. §
1132(a)(2), (3).

Remedies under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), are by definition plan-
wide—a classic example of equitable relief.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S.
134, 140-41 (1985).  While the Settlement includes consideration to the Plans, that consideration
is incidental to, and flows directly from, Plaintiffs' prayer for injunctive and declaratory relief.
"The operational meaning of 'incidental' damages in this setting is that the computation of
damages is mechanical, 'without the need for individual calculation,' so that a separate damages
suit by individual class members would be a waste of resources."  *In re: Allstate Ins. Co.*, 400
F.3d 505, 507 (7th Cir. 2005) (quoting *Manual for Complex Litigation (Fourth)* § 21.221
(2004)).  As courts in this District have found, "[m]onetary relief in a plan-wide action brought
under ERISA section 502 is incidental, and flows from relief to the plan."  *Aon Corp.*, 238
F.R.D. at 618; *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-
64 (7th Cir. 2003) (where "concrete follow-on relief" is "the direct, anticipated consequence of

the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2)").

For this reason, courts in this Circuit have frequently found that ERISA classes seeking relief for a plan as a whole, like the proposed class here, are certifiable under Rule 23(b)(2). *See, e.g.*, *Berger*, 338 F.3d at 763-64 (ERISA class certified under Rule 23(b)(2)); *Neil*, 275 F.R.D. at 267, 268-69 (ERISA class certifiable under Rule 23(b)(2)); *George v. Kraft Foods Glob., Inc.*, 251 F.R.D. 338, 352-53 (N.D. Ill. 2008) (ERISA class certifiable under Rule 23(b)(2) and certified under Rule 23(b)(1) and (b)(2)); *Aon Corp.*, 238 F.R.D. at 617-18 (ERISA class certifiable under Rule 23(a) and certified under Rule 23(b)(1) and 23(b)(2)).

## C. Class Counsel Meets the Requirements of Rule 23(g).

Rule 23(g) requires the Court to examine the capabilities and resources of Class Counsel. Class Counsel have detailed the claims brought in this Action, and the time and effort already expended in connection with this Action. *See* Section II.A., *supra*. Moreover, Class Counsel are among the leading ERISA plaintiffs' firms and possess unparalleled expertise in the specific types of church plan ERISA claims brought in this Action. Exhibit E ¶¶ 56, 66–67; Exhibit E-1; Exhibit E-2. Class Counsel thus satisfy the requirements of Rule 23(g).

A [Proposed] Order and Final Judgment is attached hereto as Exhibit L.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) grant final approval of the Settlement because it is a fair and reasonable result when viewed in the light of the governing standard; (b) grant final certification of the Settlement Class because it meets all the requirements of Rule 23; and (c) grant such other and further relief as the Court deems appropriate.

Dated: May 25, 2018                                    Respectfully submitted,

By: */s/ Christopher Graver*
Christopher Graver
Ron Kilgard
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
cgraver@kellerrohrback.com
rkilgard@kellerrohrback.com

Lynn Lincoln Sarko
Laura R. Gerber
Alison S. Gaffney
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
lgerber@kellerrohrback.com
agaffney@kellerrohrback.com

Michelle C. Yau
Mary J. Bortscheller, ARDC #6304457
Scott Lempert
**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com
slempert@cohenmilstein.com

*Class Counsel*

James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
**STEPHAN ZOURAS LLP**
205 North Michigan Avenue, Suite 2560
Chicago, IL 60601

Tel.: (312) 233-1550
Fax: (312) 233-1560
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com

*Local Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I electronically filed the above with the Clerk of the Court using the CM/ECF system, which in turn sent notice to all counsel of record.

Dated: May 25, 2018                   */s/ Christopher Graver*
                                      Christopher Graver