# EXHIBIT A

### TO

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

### (REVISED AND FINAL SETTLEMENT AGREEMENT)

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LESLEE R. CARVER, et al.,

        Plaintiffs,    Case No. 1:15-cv-02905

  v.

                Judge Harry D. Leinenweber

PRESENCE HEALTH NETWORK, et al.,
  Defendants.       Magistrate Judge M. David Weisman

### REVISED AND FINAL CLASS ACTION SETTLEMENT AGREEMENT

  This REVISED AND FINAL CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs, as defined in § 1.18 below; Defendants, as defined in § 1.11 below; and (to the extent provided herein) Ascension Health, as defined in § 1.3, below. Plaintiffs, Defendants and Ascension Health are referred to collectively in this Settlement Agreement as the "Parties." Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1.  DEFINITIONS

1.1.  *"Accrued Benefit"* shall mean: the amount of the normal form of benefit determined in accordance with the terms and conditions of the Plan in effect as of the Effective Date of the Settlement Agreement, and shall not include, among other things, optional forms of benefits or procedural provisions of the Plan.

1.2.  *"Action"* shall mean: the class action *Carver v. Presence Health Network.,* No. 1:15-cv-02905, pending in the United States District Court for the Northern District of Illinois.

1.3.  *"Ascension Health"* shall mean: Ascension Health, a Missouri non-profit corporation.

1.4.  *"Ascension Health Alliance"* shall mean: Ascension Health Alliance, a Missouri non-profit corporation.

1.5.  *"Church Plan"* shall mean: a plan which meets the definition of a "Church Plan" under ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus exempt from the provisions of Title I and Title IV of ERISA.

1.6.  *"Class Counsel"* shall mean: Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC.

1.7.  *"Class Notice"* shall have the meaning provided in § 3.2.1.

96300190v1

1.8.    "*Class Settlement Amount*" shall have the meaning set forth in § 8.1.1.

1.9.    "*Complaint*" shall mean: the Third Amended Class Action Complaint filed in the Action on October 7, 2016.

1.10.    "*Court*" shall mean: The United States District Court for the Northern District of Illinois.

1.11.    "*Defendants*" shall mean: Presence Health Network, an Illinois not-for-profit corporation; Presence Care Transformation Corporation; Presence Chicago Hospitals Network, formerly known as Presence RHC Corporation, an Illinois not-for-profit corporation; Presence PRV Health, an Illinois not-for-profit corporation; the Presence Health Network Board of Directors; the Presence RHC Corporation Board of Directors; the Presence PRV Health Board of Directors; the Church Plan Administrative Committee for the Provena Health Employees' Pension Plan; the Investment Committee for the Provena Health Employees' Pension Plan; the Plan Administrator of the Resurrection Health Care Retirement Plan; the Presence Health Finance Committee; Haven Cockerham, Bruce Hamory, Mark Hanson, Thomas R. Huberty, Patricia Ann Koschalke, Marsha Ladenburger, Laurie Lafontaine, Terry Maltby, Susan McDonough, Victor Orler, Kent Russell, Jose Santiago, Thomas Settles, Mary Shinnick, Guy Wiebking, Evelyn Varboncoeur, James Winikates, Clara Frances Kusek, Sandra Bruce, Michael Engelhart; and John and Jane Does 1-20.

1.12.    "*Effective Date of Settlement*" shall mean: the date on which all of the conditions to settlement set forth in § 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.13.    "*ERISA*" shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.14.    "*Final*" shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.15.    "*Final Approval Order*" shall have the meaning set forth in § 3.2.5(a), below.

1.16.    "*Incentive Awards*" shall mean: any monetary amounts awarded by the Court in recognition of the assistance of any Plaintiff(s) and/or Named Plaintiff(s) in the prosecution of the Action and payable pursuant to § 8.1.5, below.

1.17.    "*Person*" shall mean: an individual, partnership, corporation, or any other form of organization.

1.18.    *"Plaintiffs"* and *"Named Plaintiffs"* shall mean:  Leslee Carver, Diane Eslinger, Lisa Jenkins and Susan Phillips.

1.19.    *"Plaintiffs' Counsel"* shall mean:  collectively, Class Counsel and Stephan Zouras, LLP.

1.20.    *"Plan Benefits Guarantee"* has the meaning set out in 8.1, below.

1.21.    *"Plans"* shall mean:  the RHC Plan and the Provena Plan (each of which may be referred to separately as a *"Plan"*).

1.22.    *"Plan Trusts"* shall mean: the RHC Plan Trust and the Provena Plan Trust (each of which may be referred to separately as a *"Trust"*).

1.23.    *"Presence"* shall mean: Presence Care Transformation Corporation, an Illinois not-for-profit corporation.

1.24.    *"Proposed Transaction"* shall mean:  the prospective acquisition of Presence by Ascension Health described in §2.1, below.

1.25.    *"Provena Plan"* shall mean: the Provena Health Employees' Pension Plan.

1.26.    *"Provena Plan Trust"* shall mean: the trust that holds and distributes the assets of the Provena Plan.

1.27.    *"Released Claims"* shall have the meaning provided in § 4.1.

1.28.    *"Releasees"* shall mean:  All Defendants, any and all entities that are a part of and/or affiliated with Presence Care Transformation Corporation, Presence Health Network, and, from and after consummation of the Proposed Transaction, Ascension Health and Ascension Health Alliance (including but not limited to any current or former direct or indirect parent or subsidiary corporations of Presence or Ascension Health), and/or each of their employees, agents, directors, members, sponsors, and insurers, including the individual defendants.

1.29.    *"RHC Plan"* shall mean:  the Resurrection Health Care Retirement Plan.

1.30.    *"RHC Plan Trust"* shall mean: the trust that holds and distributes the assets of the RHC Plan.

1.31.    *"Settlement"* shall mean:  the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.32.    *"Settlement Class" and/or "Settlement Class Members"* shall mean:  All persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.

1.33.    *"Successor-In-Interest"* or *"Successor"* shall mean:  a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.34.    *"Term Sheet"* shall mean:  the document entitled "Presence Health Network Settlement Term Sheet" dated November 10, 2017, and executed by Defendants' counsel, Class Counsel, and counsel for Ascension Health on November 10, 2017.

2.    PROSPECTIVE ACQUISITION OF PRESENCE BY ASCENSION HEALTH

2.1.    *The Proposed Transaction.*  In August 2017, Presence Health Network and Ascension Health signed a Letter of Intent that provided for Ascension Health to acquire Presence Health Network and its affiliates.  In February 2018, Ascension Health, Presence Health Network and Presence agreed that Ascension Health would acquire all Presence entities, except for Presence Health Network and Resurrection University.  Further, Plaintiffs acknowledge that Defendants have informed them that Ascension Health and Presence Health Network agreed that the Plans will become sponsored by Ascension Health or a subsidiary thereof after the closing of the Proposed Transaction.

2.2.    *Consummation of the Proposed Transaction.*  The Proposed Transaction has not yet been consummated and is not expected to close until after February 1, 2018.

2.3.    *Effect of Abandonment of the Proposed Transaction.*  In anticipation of the closing of the Proposed Transaction, and in consideration of the benefit of the Settlement to all Parties, Ascension Health is also a signatory hereto and upon closing of the Proposed Transaction will be bound by and perform the obligations under the Settlement Agreement.  Notwithstanding any other provision of this Settlement Agreement, Ascension Health shall not be bound by the terms of this Settlement Agreement, will have no obligations under this Settlement Agreement, and will not be a Releasee, until the consummation or closing of the Proposed Transaction.

3.    CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT

3.1.    *Effectiveness of This Settlement Agreement.*  This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 3.2 through 3.7 shall have been satisfied.

3.2.    *Court Approval.*  The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 3.2.  The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder.  The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

3.2.1   *Motion for Preliminary Approval of Settlement and of Notices.* The Court shall have approved the preliminary motion which was filed by Plaintiffs on January 5, 2018 ("Preliminary Motion") and then shall have approved the re-filed Preliminary Motion, which will be filed on or before February 28, 2018, addressing the jointly amended and modified Settlement Agreement dated February 21, 2018, by issuing an order in substantially the same form as that attached hereto as <u>Exhibit 1</u> (the "Preliminary Approval Order"), including the class notice approved by the Court (the "Class Notice"):

        (a)     Preliminarily approving this Settlement Agreement;

        (b)     Directing the time and manner of the Class Notice; and

        (c)     Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

3.2.2   *Class Certification.*

        (a)     The Court shall have certified the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Keller Rohrback, L.L.P., and Cohen Milstein Sellers & Toll, PLLC as Class Counsel, and with the "Settlement Class" as defined above.

        (b)     As a condition of settlement, the Parties agree to stipulate to certification of the Action as a non-opt out class action, and the Class as a non-opt-out class, for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of the day immediately prior to the date on which the Term Sheet was executed.

3.2.3   *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, Defendants will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the Preliminary Approval Order attached hereto as <u>Exhibit 1</u> shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plan's current record-keeper will suffice for all purposes in connection with

Page 5

this Settlement, including, without limitation, the mailing of the Class Notice. Presence or Presence Health Network will pay the cost of notice to the Settlement Class.

3.2.4    *Internet/Publication of Class Notice.* Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on their firms' websites.

3.2.5    *The Fairness Hearing.*

(a)    On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will determine by order (the "Final Approval Order") whether: (i) this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award Incentive Award(s) and if so, the amount; and (vii) to award attorneys' fees and further expenses and, if so, the amounts.

(b)    The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

3.2.6    *Motion for Final Approval of Class Action Settlement.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

3.3.    *Finality of Final Approval Order.* The Final Approval Order shall have become Final, as defined in § 1.14 of this Settlement Agreement.

3.4.    *Compliance with the Class Action Fairness Act.* The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

3.5.    *Dismissal of Action.* The Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

3.6.    *No Termination.* The Settlement shall not have terminated pursuant to § 10, below.

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

3.7.    *Establishment of Effective Date of Settlement.* If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 3 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert M. Meyer, the Parties' mediator, who shall make a final determination regarding the Effective Date of the Settlement and whether all the conditions set forth in § 3 have been satisfied. No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute, pending the mediator's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

4.    RELEASES AND COVENANT NOT TO SUE

4.1.    *Released Claims.* Released Claims shall mean any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs under federal or state laws arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "church plan" status of the Plans, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise.

    4.1.1    For Settlement Class members only, Released Claims are not intended to include the release of any of the following:

        (a)    Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

        (b)    Individual claims for relief brought under state law seeking benefits under the terms of the Plan documents of the applicable Plan;

        (c)    Claims related to any other plan that is merged or consolidated with the Plans, or either of them, after the execution date of this Term Sheet;

        (d)    Any claim arising under ERISA with respect to any event occurring after: the Internal Revenue Service issues a written ruling that the Plans, or either of them, do not qualify as a church plan; pursuant to IRC § 410(d), an election is made on behalf of the Plans, or either of them, resulting in such Plan's coverage by the ERISA provisions specified in IRC § 410(d); the Roman Catholic Church claims no association with the Plans' Sponsor; or an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the church plan exemption.

        (e)    The claims brought by the plaintiffs in the Class Action Complaint filed November 16, 2017, titled *Lauren Bence, et al. v. Presence Health Network Corporation, et al.*, U.S. District Court for the Northern District of Illinois case no. 1:17-cv-08315.

Page 7

4.2.    *Release by Named Plaintiffs and Settlement Class.* Subject to § 10 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class have. The Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on, related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

4.3.    *Waiver of California Civil Code § 1542.* Plaintiffs, on behalf of themselves and on behalf of the Settlement Class, hereby expressly waive and relinquish, to the fullest extent permitted by law and equity, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4.4.    *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Plaintiffs' Counsel.* Subject to § 10 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Plaintiffs' Counsel from any and all claims relating to the institution or prosecution of the Action.

4.5.    *Releasees' Release of Other Releasees.* Subject to § 9 below, upon the Effective Date of Settlement, each of the Releasees also releases each of the other Releasees from any and all claims which were asserted in the Complaint or any pleading which would have been required to be filed in the Action or that would be barred by principles of res judicata or collateral estoppel had the claims asserted in the Complaint or any such other pleading in the Action been fully litigated and resulted in a Final judgment or order.

5.    COVENANTS

        Named Plaintiffs, on their own behalf and on behalf of the members of the Settlement Class, Defendants, and Ascension Health hereby covenant as follows:

5.1.    *Non-Disparagement.* The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the subject matter of this Litigation, the Settlement Agreement, Plaintiffs, Plaintiffs' Counsel, any Releasee, Defendants, the Plan, and/or Defendants' Counsel.

5.2.    *Plan Status.* Nothing herein shall be construed as an agreement that the Plans are not properly treated as church plans or that the Plans are subject to ERISA. Similarly, nothing herein shall be construed as an agreement that the Plans are properly treated as church plans or that the plans are not subject to ERISA.

5.3.    *Survival of Covenants.* The covenants stated in this Section 5 shall survive as to all Parties should the Prospective Transaction be abandoned; however, should the Prospective

Page 8

Transaction be abandoned, the covenants specified in Section 5 shall not apply to Ascension Health.

6.    REPRESENTATIONS AND WARRANTIES

6.1.    *Parties' Representations and Warranties.*

6.1.1    Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

6.1.2    Named Plaintiffs represent and warrant, on behalf of themselves and the Settlement Class, that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims against them.

6.1.3    The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

6.1.4    The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

6.2.    *Signatories' Representations and Warranties.* Each individual executing this Settlement Agreement on behalf of any other Person hereby personally represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that such individual represents or purports to represent.

7.    NO ADMISSION OF LIABILITY

Defendants deny any and all allegations of wrongdoing made in the Complaint. Defendants aver that the Plans have been and continue to be properly administered as church plans, as defined in Internal Revenue Code Section 414(e) and ERISA § 3(33). This Settlement is not evidence of liability of any type.

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

8.     SETTLEMENT CONSIDERATION

8.1.    *The Class Settlement Amount*

     8.1.1    The *"Class Settlement Amount"* shall consist of the $20,000,000 Plan Benefits Guarantee, as defined in § 8.1.2 through § 8.1.4.

     8.1.2    *Assurance of Payment of $20 Million in Benefits if Plan Assets Become Insufficient.* Subject only to §§ 2.3 and 8.1.3 hereof, for as long as either of the Plans is sponsored by any of the Releasees, Presence, or Ascension Health (if and when Ascension Health's obligations under this Settlement Agreement become effective upon the closing of the Proposed Transaction), hereby guarantees the payment of the aggregate amount of the first $20,000,000 of benefits that are distributable from either or both of the Plans to Settlement Class Members in the event trust assets attributable to either of the Plans become insufficient to pay such benefits.

     8.1.3    *Obligations Upon Transfer of Plan Assets and Liabilities to Successor.* Should a corporate transaction occur where the assets and liabilities of the Plans, or either of them, covering Settlement Class Members, transfer to a successor, Presence or Ascension Health (subject to Section 2.3), as the case may be, will cause the successor to honor the commitment of Presence and/or Ascension Health, as the case may be, under the Plan Benefit Guarantee.

     8.1.4    *Accelerated Satisfaction of the Obligation Under Plan Benefit Guarantee.*

8.1.4.1 If the Proposed Transaction is consummated, any of the Releasees, in their sole discretion, may satisfy Ascension Health's obligation under the Plan Benefit Guarantee, at any time after the Effective Date of the Settlement, by making contributions to the Plan Trust that in the aggregate total Fifteen Million Dollars ($15,000,000). For the avoidance of doubt, nothing in this paragraph prevents Ascension Health or any of the Releasees from making additional contributions to the Plan at any time.

*8.1.4.2* If the Proposed Transaction is not consummated, within three (3) years of the date Presence Health Network publicly states that the Proposed Transaction has been abandoned, Presence Health Network will make contributions to one or both Plan Trusts in the aggregate total of Fifteen Million Dollars ($15,000,000). During this three-year period, Presence Health Network reserves the discretion to determine when contributions will be made and what amounts will be contributed to the Plan Trusts in the aggregate total of $15,000,000. Upon the Plan Trusts' timely receipt of the aggregate total of $15,000,000, any obligation stated in §§ 8.1.1 or 8.1.2 will be extinguished.

     8.1.5    *Payment to Plaintiffs' Counsel.* Defendants will not oppose Plaintiffs' application to the Court for an award of reasonable attorney fees, out of pocket expenses, and Incentive Award(s) (together, the "Fee Award"). The Fee Award requested by Plaintiffs and awarded by the Court shall not exceed One Million, Five Hundred and Fifty Thousand Dollars ($1,550,000.00) (the "Maximum Total Fee"). Any such Fee Award will be at the sole discretion

96300190v1

of the Court. Presence Health Network, Presence or Ascension Health will cause the Fee Award to be paid in addition to the consideration described in §§ 8.1.1 through 8.1.4 of this Settlement Agreement. Defendants will pay, or cause to be paid, to Plaintiffs' Counsel the Maximum Total Fee or any lesser amount as ordered by the Court in its discretion within four weeks after the Court's entry of the Order and after the Final Judgment becomes Final as defined in section 1.1.4 of this Settlement Agreement.

       8.1.6  *Application for Fees, Expenses, and an Incentive Award for Plaintiffs*. Class Counsel shall petition the Court for the Fee Award on the date set by the Court in its Preliminary Approval Order. Releasees expressly agree not to contest or take any position with respect to any application for the Fee Award that does not exceed the Maximum Total Fee, and acknowledge that these matters are left to the sound discretion of the Court. The procedure for and the allowance or disallowance of any application for the Fee Award that does not exceed the Maximum Total Fee are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee Award, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

8.2.  *Cost of Notice*. Presence Health Network, Presence or Ascension Health will pay the cost of notice to the Settlement Class.

9.      AGREED UPON PLAN PROVISIONS.

9.1.  *Plan Mergers*. For a period of seven and one-half years after the Effective Date, if the Plans, or either of them, are merged or consolidated with another plan, participants and beneficiaries who are Settlement Class members will be entitled to the same or a greater Accrued Benefit post-merger or after a consolidation event as they enjoyed before the merger or consolidation.

9.2.  *Plan Amendment and Termination*. Presence Health Network, any successor plan sponsor, and/or any Released Party that has a right under the Plans' documents to do so, retain the right to amend or terminate the Plans, or either of them, at any time; provided that, for seven and one-half years after the Effective Date of the Settlement, no amendment or termination will result in a reduction of a Settlement Class member's Accrued Benefit.

9.3.  *Plan Administration*. All Plan reporting and disclosure to the Plans' participants and/or beneficiaries may be accomplished via electronic distribution. Should a participant request a reporting and disclosure document described below in hard copy, Presence Health Network, or any successor Plan Sponsor, will furnish, or cause to be furnished, such a document in hard copy within a reasonable time.

9.3.1　*Plan Documents.*　To the extent such provisions are not already found within the Plans' respective documents, the Plans' documents shall: (a) designate a named fiduciary; (b) provide the procedure for establishing and carrying out the current funding policy and method; (c) describe a procedure for allocation of administrative responsibilities; (d) provide a procedure for plan amendments and identify the persons with authority to make such amendments; (e) specify the basis on which payments are made to and from the Plans; and (f) provide a joint and survivor annuity, if this form of benefit is provided currently by the relevant Plan.

9.3.2　*Summary Plan Descriptions (SPDs).*　A Summary Plan Description ("SPD") shall be distributed electronically within four (4) months of the date that the Final Approval Order becomes Final. The SPD will exclude any mention of ERISA or information about ERISA rights; and will include information about the Plan's church plan status, including that the Plan's benefits are not insured by the Pension Benefit Guaranty Corporation. The SPD will make it clear that the Plan is a church plan. The SPD will not comply with ERISA §102. The SPDs shall be furnished to current participants and beneficiaries as described in § 9.3. If a participant sends a written request for an SPD, an SPD will be provided in hard copy at the expense of the participant.

9.3.3　*Annual Summaries.*　For seven and one-half years after the Effective Date of the Settlement Agreement, the Plans will each distribute electronically their respective Annual Summary in the manner described in § 9.3, above, not later than the next October 1 following the end of each Plan year, containing at least the following information: (i) Plan name(s) and EIN; (ii) Plan years covered by the summary; (iii) summary of funding arrangements; (iv) summary of each Plan's expenses; (v) information as to the number of participants at year end; (vi) summary of the value of net assets at beginning and end of each year; (vii) a statement of each Plan's assets and liabilities; (viii) summary information as to the increase and/or decrease in net Plan assets annually; (ix) summary information as to each Plan's total income; and (x) a statement of assets and liabilities consistent with Presence Health Network's, any successor Plan sponsor, or Ascension Health's methodologies in effect at the time of preparation.

9.3.4　*Pension Benefit Statements.*　For seven and one-half years after the Effective Date of the Settlement Agreement, Presence Health Network, or any successor Plan Sponsor, will distribute pension benefit statements in the manner described in §9.3 to all participants and beneficiaries in the form determined by each of the Plans annually.

9.3.5　*Current Benefit Values.*　For seven and one-half years after the Effective Date of the Settlement Agreement, the Plans will respond to requests from participants for current benefit values information within 30 days after receiving a written request from a participant. However, the Plans may unilaterally extend their deadlines to respond by an additional 30 days, by providing written notice to the participant.

9.3.6　*Plans' Claim Review Procedure.*　The Plans' claim review procedures, which shall be included as a part of the Plans' Summary Plan Descriptions, shall state: (a) the identity of the person or entity to whom a claim should be addressed; (b) the time period for filing a claim; (c) the information that must be provided in support of a claim; (d) if a claim is denied, in

Page 12

whole or in part, the person or entity to whom an appeal should be sent; (e) the time period for filing a claim appeal; (f) the information the claimant may provide in support of an appeal; and (g) any statute of limitations periods for filing a benefits related claim.

10.     TERMINATION OF THE SETTLEMENT AGREEMENT

10.1.   *Automatic Termination.*  This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

10.1.1  If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final; provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court; and further provided that, if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

10.1.2  If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this § 10.1.2.

10.1.3  If the Seventh Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Seventh Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Seventh Circuit order referenced in this § 10.1.3.

10.1.4  If the Supreme Court of the United States reverses or remands a Seventh Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 10.1.4.

10.1.5  If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

10.2. *Consequences of Termination of the Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

10.2.1 The Action shall for all purposes with respect to the Parties revert to its status as of November 9, 2017.

10.2.2 All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in the Actions or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

11. MISCELLANEOUS PROVISIONS

11.1. *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 11.1.

11.1.1 Robert Meyer, mediator in the Action, will act as the final arbiter of any disagreements as to language and confirmatory discovery regarding the Settlement Agreement.

11.2. *No Limitation of Remedies.* In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs or the Settlement Class breach this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

11.3. *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Illinois law will apply without regard to conflict of law principles.

11.4. *Severability.* The provisions of this Settlement Agreement are not severable.

11.5. *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. The Parties acknowledge that on February 21, 2018, they jointly amended and modified their prior December 12, 2017 Settlement Agreement resulting in this operative February 21, 2018 Settlement Agreement. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by Court Order.

11.6. *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

11.7. *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

11.8. *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

    11.8.1 *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

    11.8.2 *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.

    11.8.3 *Gender.* Definitions apply to the masculine, feminine, and neuter genders of each term defined.

    11.8.4 *References to a Person.* References to a Person are also to the Person's permitted successors and assigns.

    11.8.5 *Terms of Inclusion.* Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.9. *Further Assurances.* Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

11.10. *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

11.11. *Notices.* Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

A.  IF TO NAMED PLAINTIFFS:

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Ron Kilgard
Christopher Graver
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (602) 248-2822

Karen L. Handorf
Michelle C. Yau
Julie G. Reiser
Julia Horwitz
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005
Fax: (202) 408-4699

B.  IF TO DEFENDANTS:

Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax: (504) 310-2022

Robert Rachal
HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
6415 West End Blvd.
New Orleans, LA 70124
Fax.: (865) 566-0119

B.  IF TO PRESENCE:

Kendra Allaband
Senior Associate General Counsel
Presence Health
200 S. Wacker Drive
11th Floor
Chicago, IL 60606

96300190v1

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

C.     IF TO ASCENSION HEALTH:

Christine K. McCoy
Senior Vice President, Legal Services & Deputy General Counsel
Ascension
4600 Edmundson Road
St. Louis, MO 63134
Fax: (314) 733-8013

With a copy to:

Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax:  (504) 310-2022

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

11.12.  *Entire Agreement*.  This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action.  It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

11.13.  *Counterparts*.  This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.14.  *Binding Effect*.  This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

96300190v1

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

*FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this the 21st day of February, 2018.

By: _____
Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Ron Kilgard
Christopher Graver
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (602) 248-2822

Karen L. Handorf
Michelle C. Yau
Julie G. Reiser
Julia Horwitz
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

*Class Counsel*

*Carver v. Presence Health Network*
**Revised and Final Settlement Agreement**
**February 21, 2018**

*FOR ALL DEFENDANTS*

Dated this the 21st day of February, 2018.

By: _____
Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax: (504) 310-2022

Robert Rachal
HOLIFIELD JANICH RACHAL & ASSOCIATES, PLLC
6415 West End Blvd.
New Orleans, LA 70124
Fax.: (865) 566-0119

*Attorneys for Defendants*

*FOR ASCENSION HEALTH*

Dated this the 21st day of February, 2018.

By: _____
Howard Shapiro
Stacey C.S. Cerrone
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 0130
Fax: (504) 310-2022

*Attorneys for Ascension Health*

4841-5369-9168, v. 1

Page 19

96300190v1

# EXHIBIT B

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (AFFIDAVIT OF JOSE C. FRAGA, GARDEN CITY GROUP)

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| LESLEE R. CARVER, *et al.,* | **Case No. 1:15-cv-02905** |
| Plaintiffs, | Judge Harry D. Leinenweber |
| vs. | |
| PRESENCE HEALTH NETWORK, *et al.,* | Magistrate Judge M. David Weisman |
| Defendants. | |

## <u>AFFIDAVIT OF JOSE C. FRAGA</u>

**STATE OF NEW YORK**          )
                              )  **ss.**
**NASSAU COUNTY**              )

I, JOSE C. FRAGA, hereby declare and state as follows:

1.      I am a Senior Director, Operations for Garden City Group, LLC ("GCG").  My business address is 1985 Marcus Avenue, Suite 200, Lake Success, NY 11042.  My telephone number is (631) 470-1832.  I am over twenty-one years of age, and am authorized to submit this affidavit of behalf of GCG and myself.

2.      At the request of Counsel for the Plaintiffs and Defendants, I submit this Declaration in connection with the class action settlement of *Carver v. Presence Health Network*, No. 1:15-cv-02905, pending in the United District Court for the Northern District of Illinois, Eastern Division.

3.      The following statements are based on my personal knowledge and information provided by other experienced GCG employees working under my supervision and, if called on to do so, I could and would be competent to testify thereto.

4.     Pursuant to this Court's March 8, 2018 Order Preliminarily Approving the Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hearing (the "Order"), GCG was retained by counsel for Defendants in the above-captioned action (the "Action") to issue the Notice of Proposed Settlement of Class Action, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Class Notice") in accordance with the Order and the Settlement Agreement dated February 21, 2018 (the "Agreement").[1]  A copy of the Class Notice is attached hereto as Exhibit A.

## CLASS DATA TRANSFER

5.     On January 23, 2018, Defendants' Counsel provided GCG with electronic files containing the names and last known addresses for plan participants and beneficiaries reasonably believed to be Settlement Class Members (the "Class Member Files").  GCG loaded the Class Member Files into a database created specifically for this settlement (the "Settlement Database"). GCG assigned unique identifiers to all records to maintain the ability to track them throughout the Settlement administration process.

6.     After analyzing the data, GCG determined that there were 50,710 Settlement Class Member records contained in the Class Member Files.  Of the 50,710 Settlement Class Member records, 807 records did not contain a mailing address.  Prior to mailing the Class Notice to Settlement Class Members, GCG used standard skip tracing devices to attempt to obtain a mailing address for those 807 Settlement Class Members.  GCG was able to obtain a mailing address for 507 Settlement Class Members and updated the Settlement Database to include those mailing addresses.  There were 300 Settlement Class Member for whom GCG did not have a mailing address and who were excluded from the mailing of the Class Notice.

---

[1] All capitalized terms not otherwise defined in this document shall have the meaning ascribed to them in the Agreement.

7.      In addition, GCG ran the remaining 49,903 Class Member Files through the U.S. Postal Service National Change of Address ("NCOA")[2] database in an attempt to obtain an updated address for each Settlement Class Member.  Any new addresses obtained through this process were updated in the Settlement Database.  A total of 3,576 Settlement Class Member records were updated with a new address.

## MAILING OF THE CLASS NOTICE

8.      On March 23, 2018, GCG mailed 50,410 Class Notices by first-class mail, postage prepaid to the Settlement Class Members included in the Class Member Files for whom GCG was provided with or was able to obtain a mailing address.

9.      As of May 22, 2018, GCG has mailed a total of 52,918 Class Notices. This includes 2,508 Class Notices that were re-mailed upon receipt of an updated address provided by the U.S. Postal Service or through the use of standard skip tracing devices.

## OBJECTIONS

10.      Settlement Class Members had the opportunity to object to the Settlement by filing a written notice of intent to object as outlined in the Class Notice.  The written notice of intent to object was to be filed with the Court and either postmarked and mailed or faxed to Class Counsel and Defendants' Counsel on or before June 12, 2018.  To date, one document titled "Written Objection" from one class member, and four letters from three other class members, have been filed with the Court.  GCG has not received any objections.

---

[2] The NCOA database is an official U.S. Postal Service ("USPS") technology product, which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mailstream. This product is an effective tool to update address changes when a person has completed a change of address form with the Post Office.  The U.S. Postal Service maintains address information on the database for 48 months.

I declare, under penalty of perjury, under the laws of the State of New York, that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of May, 2018 in Lake Success, New York.

Jose C. Fraga

Subscribed and sworn to me this 23rd day of May, 2018.

Notary Public

**ROSE MARIE HARDINA**
Notary Public State of New York
No. 01HA5067940
Qualified in Nassau County
Commission Expires January 7, 20_19_

4

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| LESLEE R. CARVER, *et al.*, | |
| Plaintiffs, | Case No. 1:15-cv-02905 |
| v. | Judge Harry D. Leinenweber |
| PRESENCE HEALTH NETWORK, *et al.*, | Magistrate Judge M. David Weisman |
| Defendants. | |

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION, FINAL APPROVAL HEARING, AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

This notice ("Notice") advises you of a proposed settlement (the "Settlement") of a class action lawsuit brought by Plaintiffs Leslee Carver, Diane Eslinger, Lisa Jenkins, and Susan Phillips (the "Named Plaintiffs") on behalf of themselves, and participants and beneficiaries of the Resurrection Health Care Retirement Plan (the "RHC Plan") and the Provena Health Employees' Pension Plan (the "Provena Plan") (together, the "Plans"), and as representatives of the Settlement Class against Defendants (defined below). Plaintiffs allege that the non-profit healthcare system Presence Health Network breached its fiduciary duties and violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with respect to the Plans. You are receiving this Notice because you may be a participant, or a beneficiary of a participant, in one or both of the Plans.

**PLEASE READ THIS NOTICE CAREFULLY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION. YOU HAVE NOT BEEN SUED.**

As described in more detail below, this Settlement is made in compromise of claims made by Plaintiffs, for themselves and on behalf of all others similarly situated, against Defendants in the litigation (the "Action"). Plaintiffs claim that the Plans were improperly operated by Presence Health Network as "church plans" exempt from the requirements imposed by ERISA. Plaintiffs claim that, among other violations, Presence Health Network underfunded the Plans, in the aggregate, by over $175 million, and failed to furnish Plaintiffs or any member of the class with a Pension Benefit Statement, Summary Annual Reports, Notification of Failure to Meet Minimum Funding, or Funding Notices.

Defendants deny all of these claims and have claimed these Plans are "church plans" that are exempt from ERISA requirements.

Named Plaintiffs, on behalf of themselves and the Class, have agreed to settle all Released Claims (as defined in the Settlement Agreement) against Defendants and other Releasees (as defined in the Settlement Agreement) in exchange for, among other terms, a guarantee of payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits. The guarantee is given by Ascension Health, an entity that is not a Defendant in this litigation; Ascension Health is a Releasee as defined in the Settlement Agreement. On Thursday, March 1, 2018, Ascension Health acquired Presence Care Transformation Corporation. Presence Care Transformation Corporation ("Presence") is the statutory employer of the Presence Health hospitals' employees and is the sole corporate member of the Presence Health hospital corporations and other business interests. In addition to acquiring Presence Care Transformation Corporation, Ascension Health also acquired all Presence entities other than Presence Health Network and Resurrection University. After March 1, 2018, the Plans will be sponsored by Ascension Health or a subsidiary thereof. The Settlement also provides that Ascension Health, or any of the Releasees, may buy out this guarantee obligation at any time by making contributions to the Plans' trusts in an aggregate total of $15,000,000 (fifteen million dollars). Upon the Plans' trusts' timely receipt of aggregate contributions in the amount of $15,000,000 (fifteen million dollars), any guarantee obligation will be satisfied and extinguished. Because the Plans are defined benefit pension plans and not defined contribution plans with individual accounts, like a 403(b) plan or 401(k) plan, *the cash amount, if any, will be contributed to the Plans as a whole, rather than to individual Plan participants and beneficiaries.* <u>**Your pension benefit will not increase as a result of the Settlement.**</u> Additionally, the Settlement provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like financial and administrative protections for the next seven and one-half years.

**This Settlement applies to all persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.**

The Court in charge of the case still has to decide whether to approve the Settlement. The payments and other settlement terms described above will be made only if the Court approves the Settlement and that approval is upheld if there are any appeals. This process is explained in greater detail below.

**Your legal rights are affected if you are a member of the Settlement Class whether or not you act. "Settlement Class" means:** All persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.

**Identification of Key Terms:** This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Revised and Final Class Action Settlement Agreement ("the Settlement Agreement"). The Settlement

**Questions? Visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement Or Call: (888) 684-6642**
**DO NOT CALL THE COURT as they cannot answer your questions.**

Agreement, and additional information with respect to this lawsuit and the Settlement, are available at www.kellersettlements.com and www.cohenmilstein.com/presence-settlement.

**Reasons for the Settlement:** The Settlement resolves all claims in the Action against Defendants regarding the Plans. The Parties agree that the Settlement is not, and should not be construed as, an admission of any fault, liability or wrongdoing whatsoever by any of the Defendants, who continue to deny any and all of the allegations of the Complaint. The Named Plaintiffs and Class Counsel (identified below) believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. The Named Plaintiffs and Class Counsel believe that the Settlement provides greater protection for the benefits to be paid to all Settlement Class members under the Plans as compared to the risks, costs and delays of proceeding with this litigation against Defendants.

**Identification of Claims Administrator and Class Counsel:** Garden City Group, LLC is the Claims Administrator and will mail you this Class Notice. However, they are unable to answer questions about the Settlement.

Any questions about the Settlement should be directed to Class Counsel. Please contact: attorney Christopher Graver or paralegal Jennifer Tuato'o at, Keller Rohrback, L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101-3052. Class Counsel has established a toll-free number, (888) 684-6642, if you have questions or comments. Class Counsel may also be contacted via e-mail at presencesettlement@kellerrohrback.com. Please do not contact the Court. The Court personnel will not be able to answer your questions.

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU DO NOT NEED TO DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| ACTIONS YOU MAY TAKE IN THE SETTLEMENT | |
| --- | --- |
| NO ACTION IS NECESSARY. | If the Settlement is approved by the Court and you are a member of the Settlement Class, you do not need to do anything. |
| YOU CAN OBJECT NO LATER THAN **JUNE 12, 2018.** WRITTEN OBJECTIONS MUST BE FILED WITH THE COURT BY THIS DATE. | If you wish to object to any part of the Settlement, you can write to the Court and explain why you do not like the Settlement. |
| YOU CAN GO TO THE HEARING ON **JULY 10, 2018,** BY FILING A NOTICE OF INTENTION TO APPEAR NO LATER THAN **JUNE 19, 2018.** | If you have submitted a written objection to the Court, you can ask to speak in Court about the fairness of the Settlement. You may enter your appearance in Court through an attorney if you so desire. |

| WHAT THIS NOTICE CONTAINS |
| --- |

Summary of Settlement ...................................................................................................................................................... 3
Basic Information ............................................................................................................................................................... 3
    1. Why did I get this Notice package? ............................................................................................................... 3
    2. How do I know whether I am part of the Settlement? ................................................................................... 4
    3. What does the Settlement provide? ............................................................................................................... 4
    4. What is the lawsuit about? What has happened so far? ................................................................................. 5
    5. Why is this case a class action? .................................................................................................................... 5
    6. Why is there a Settlement? ............................................................................................................................ 5
    7. How will the Settlement be distributed? ....................................................................................................... 5
    8. What rights am I giving up in the Settlement? .............................................................................................. 6
    9. Can I exclude myself from the Settlement? ................................................................................................... 6
The Lawyers Representing You ......................................................................................................................................... 6
    10. Do I have a lawyer in the case? ................................................................................................................... 6
    11. How will the lawyers be paid? .................................................................................................................... 6
Objecting to the Settlement ............................................................................................................................................... 6
    12. How do I tell the Court if I don't like the Settlement? ................................................................................ 6
The Court's Fairness Hearing ........................................................................................................................................... 7
    13. When and where will the Court decide whether to approve the Settlement? .............................................. 7
    14. Do I have to come to the hearing? ............................................................................................................... 7
    15. May I speak at the hearing? ........................................................................................................................ 7
If You Do Nothing ............................................................................................................................................................ 8
    16. What happens if I do nothing at all? ........................................................................................................... 8
Getting More Information .................................................................................................................................................. 8
    17. How do I get more information? .................................................................................................................. 8

**Questions? Visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement Or Call: (888) 684-6642**
**DO NOT CALL THE COURT as they cannot answer your questions.**

This litigation (the "Action") was filed in federal district court in Illinois against Presence Health Network and the various other defendants named in the complaint (collectively, the "Defendants"). The Named Plaintiffs and Defendants collectively are referred to herein as the "Parties."

A copy of the Complaint and other documents relevant to this Settlement, including the comprehensive Settlement Agreement, are available at www.kellersettlements.com and www.cohenmilstein.com/presence-settlement.

**SUMMARY OF SETTLEMENT**

The Settlement Agreement provides that, as long as the Plans are sponsored by any of the Releasees, as defined in the Settlement Agreement, there is a guarantee of payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits. The guarantee is given by Ascension Health which, on Thursday, March 1, 2018, acquired Presence and all Presence entities other than Presence Health Network and Resurrection University. After March 1, 2018, the Plans will be sponsored by Ascension Health or a subsidiary thereof. The Settlement also provides that Ascension Health, or any of the Releasees, may buy out this guarantee obligation at any time by making contributions to the Plans' trusts in an aggregate total of $15,000,000 (fifteen million dollars). Upon the Plans' trusts' timely receipt of the $15,000,000 (fifteen million dollar) buyout amount, the guarantee obligation will be extinguished.

Additionally, the Settlement provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like reporting, disclosure, and administrative protections. For seven and one-half years, the Plans' participants will receive notice on an annual basis about the funded status of the Plans and the retirement benefits that they have accrued. This annual notice will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, information about the increase or decrease in net plan assets for the year, and summary information about the Plans' total income. The Settlement Agreement also provides that for seven and one-half years, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Likewise, for the next seven and one-half years, if the Plans are ever merged with or into another plan, participants will be entitled to the same or greater benefits than they were before the merger.

**Attorneys' Fees and Expenses:** Court-appointed Class Counsel will file a motion for an award of attorneys' fees, expenses, and incentive awards for Named Plaintiffs that will be considered by the Court at the Final Approval Hearing. Class Counsel will apply for a total award not to exceed One Million Five Hundred Fifty Thousand Dollars ($1,550,000.00) (the "Maximum Total Fee"). Any such award will be at the sole discretion of the Court. Any Court-awarded fees, expenses, and incentive awards will be paid by Presence or Ascension Health and will be paid *in addition to* the guarantee and other provisions of the Settlement.

This Settlement represents the best possible monetary result that could be achieved for the Class in light of the significant risks Plaintiffs faced in the Action. As with any litigation, the Parties would face an uncertain outcome if the case were to continue. Continued litigation of this case against the Defendants may result in a judgment or verdict greater or less than the recovery under the Settlement Agreement, or in no recovery at all. Throughout the litigation, Plaintiffs and Defendants have disagreed on both liability and damages. Defendants, among other things, maintain that the Plans have been and continue to be properly administered as Church Plans under the Plans' terms and as defined in ERISA § 3(33), and are exempt from coverage under ERISA. Defendants deny any and all liability to the Plaintiffs, members of the Settlement Class and the Plans, deny any and all allegations of wrongdoing, and believe they will prevail in this case if it is litigated to conclusion.

Named Plaintiffs and Class Counsel, among other things, (1) have conducted an extensive investigation into the facts, circumstances, and legal issues associated with the allegations made in the Action; (2) believe, based on the risks of the litigation, the time necessary to achieve a complete resolution through litigation, the complexity of the claims set forth in the Complaint, and the benefits accruing to the Plans' participants and beneficiaries under the Settlement, that the Settlement will provide a benefit to the Settlement Class, and that, when this benefit is weighed against the risks of continuing the prosecution of the Action, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class; and (3) believe that the Settlement will provide the Settlement Class with additional protections for their retirement benefits they may not have received if the cases had been litigated to a conclusion.

The Parties have taken into account the uncertainty and risks inherent in this litigation, particularly its complex nature, and have concluded that it is desirable that the Action be fully and finally settled on the terms and conditions set forth in the Settlement Agreement.

Please visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement if you have additional questions.

**BASIC INFORMATION**

| 1. | Why did I get this Notice package? |
|---|---|

Either you or someone in your family may have been a Plan participant, or a beneficiary of a participant, whether vested or non-vested, as of November 30, 2017. The Court has directed that this Notice be sent to you because, as a potential member of the Settlement Class, you have a right to know about the proposed Settlement with Defendants before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and all related objections and appeals are favorably resolved, Ascension Health will guarantee the payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from the Plans to Settlement Class Members in the event trust assets attributable to the Plans become insufficient to pay such benefits. The Settlement also provides that any Releasee may buy out this guarantee obligation by making an aggregate total of $15,000,000 (fifteen million dollars)

in contributions to the Plans' trusts. In addition, the Settlement provides non-monetary equitable consideration, including that, for seven and one-half years, the Plans' participants will receive notice on an annual basis about the funding status of the Plans and the retirement benefits that they have accrued. This annual notice will include, among other information, a summary of the Plan's funding arrangements, a summary of the Plan's expenses, a statement of the Plan's liabilities and assets, information about the increase or decrease in net plan assets for the year, and summary information about the Plan's total income. The Settlement Agreement also provides that for seven and one-half years, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Likewise, for the next seven and one-half years, if the Plans are ever merged with or into another plan, participants will be entitled to the same or greater benefits than they were before the merger.

This Notice explains the Action, the Settlement, and your legal rights. The purpose of this Notice is to inform you of a hearing (the "Fairness Hearing") to be held by the Court to consider the fairness, reasonableness and adequacy of the proposed Settlement, and to consider the application of Class Counsel for their attorneys' fees and reimbursement of litigation expenses as well as an application for an incentive fee to the Named Plaintiffs.

The Fairness Hearing will be held on July 10, 2018 at 9:00 a.m. C.D.T. before the Honorable Harry D. Leinenweber in the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, IL 60604, to determine:

   a.   Whether the Settlement should be approved as fair, reasonable, and adequate and should be approved by the Court;

   b.   Whether final judgment approving the Settlement Agreement should be entered;

   c.   Whether the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

   d.   Whether the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class;

   e.   Whether the requirements of the Class Action Fairness Act have been satisfied;

   f.   Whether to award incentive fees to the Named Plaintiffs and if so, the amount; and

   g.   Whether to award attorneys' fees and litigation expenses to Class Counsel and other attorneys who represent members of the Settlement Class and if so, the amounts.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, the Settlement provisions will become effective after all related appeals, if any, are favorably resolved. It is always uncertain whether such appeals can be favorably resolved, and resolving them can take time, perhaps more than a year. Please be patient.

| 2. | How do I know whether I am part of the Settlement? |

The Court has certified the Action as a class action preliminarily. You are a member of the Settlement Class if, as of November 30, 2017, you were a former and/or current participant in either or both of the Plans, whether vested or non-vested, or the beneficiary of such a participant.

| 3. | What does the Settlement provide? |

The Settlement provides that, as long as the Plans are sponsored by any of the Releasees, as defined in the Settlement Agreement, there is a guarantee of payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits. The guarantee is given by Ascension Health. Should a corporate transaction occur where the Plans' assets and liabilities covering Settlement Class Members transfer to a successor, Presence or Ascension Health will cause the successor to honor this commitment. The Settlement also provides that Ascension Health, or any of the Releasees, may buy out this guarantee obligation at any time by making contributions to the Plans' trusts in an aggregate total of $15,000,000 (fifteen million dollars). Upon the Plans' trusts' timely receipt of the $15,000,000 (fifteen million dollar) buyout amount, the guarantee obligation will be extinguished.

The Settlement includes equitable provisions which mimic certain provisions of ERISA concerning plan administration, summary plan descriptions, notices (annual summaries, pension benefits statements, current benefit values), and the Plans' claims review procedures. For seven and one-half years, the Plans' participants will receive notice on an annual basis about the funding status of the Plans and the retirement benefits that they have accrued. The Settlement Agreement also provides that for seven and one-half years, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Likewise, for the next seven and one-half years, if the Plans are ever merged with or into another plan, participants will be entitled to the same or greater benefits than they were before the merger.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement, which may be obtained at www.kellersettlements.com or www.cohenmilstein.com/presence-settlement.

| 4. | What is the lawsuit about? What has happened so far? |

On April 2, 2015, Plaintiff Leslee Carver, a participant in the RHC Plan, filed a putative class action complaint in this Court against Presence Health Network and various other corporate and individual defendants, alleging violations of ERISA. The complaint was later amended several times and now names as additional plaintiffs Diane Eslinger, Lisa Jenkins, and Susan Phillips, all participants in the Provena Plan. The complaint alleges that Defendants denied ERISA protections to the participants and beneficiaries of the Plans, which are defined benefit pension plans sponsored by Presence Health Network, by claiming that the Plans qualify as ERISA-exempt "church plans." The complaint further alleges that asserting this exemption caused Defendants to deny the Plans' participants the protections of ERISA. These include, among other violations: underfunding the Plans by over $175 million, failing to furnish Plaintiffs or any member of the class with a Pension Benefit Statement, Summary Annual Reports, Notification of Failure to Meet Minimum Funding, or Funding Notices, and, as to the RHC Plan, failure to provide an ERISA-compliant schedule for vesting.

Defendants answered the amended complaint, denying that Plaintiffs were entitled to relief because Defendants contend that the Plans qualify as and are maintained properly as church plans exempt from ERISA, and the Parties each served discovery requests and began document discovery. On October 13, 2016, however, the Court stayed further proceedings while the United States Supreme Court considered an appeal in three other cases involving church plans. That appeal addressed whether, as Plaintiffs alleged here, a church plan must be established by a church in order to qualify as an ERISA-exempt church plan. The Supreme Court held argument in that case on March 27, 2017, and issued its decision on June 5, 2017, holding that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans so long as other conditions necessary for church plan status are satisfied. While Plaintiffs advance other strong arguments and theories not decided by the Supreme Court's opinion, Plaintiffs' case was negatively impacted by that decision. Additionally, since the case was filed, Presence Health Network has made substantial contributions to the Plans' trust funds and the investing environment has been highly favorable.

Following the Supreme Court's decision, as the Parties prepared to resume active litigation, they agreed to attempt to settle the case with the assistance of a mediator. Shortly before the August 29, 2017 mediation, Presence Health Network and Ascension Health publicly announced the signing of a non-binding letter of intent for Ascension Health to acquire Presence Health Network and its affiliates. Although the acquisition was still pending, Ascension Health was present at the mediation, and ultimately agreed to be a party to the settlement, with the condition that it would not be bound by the settlement until its acquisition of Presence Health Network became final. The initial mediation held on August 29, 2017, was unsuccessful; however, the Parties and Ascension Health continued to discuss settlement with the mediator's assistance over the next several months, and were ultimately able agree on the terms of a settlement on November 10, 2017.

The Settlement is the product of intensive, arm's-length negotiations between Class Counsel and Defendants' Counsel, with the assistance of an experienced third-party mediator.

| 5. | Why is this case a class action? |

In a class action, one or more plaintiffs, called "named plaintiffs," sue on behalf of people who have similar claims. All of the individuals on whose behalf the Named Plaintiffs in this Action are suing are "Class Members," and they are also referred to in this Notice as members of the Settlement Class. The Honorable Harry D. Leinenweber, United States District Judge, is presiding over this case.

| 6. | Why is there a Settlement? |

Under the proposed Settlement, the Court will not decide the merits of the case in favor of either the Plaintiffs or the Defendants. By agreeing to a Settlement, both the Plaintiffs and the Defendants avoid the costs, risks, and delays of litigating the Action. In this case particularly, the risks of ongoing litigation involved the consequences of the Supreme Court's ruling that church plans need not be established by churches in order to qualify as ERISA-exempt plans.

This Settlement is the product of extensive arm's-length negotiations between Class Counsel and the Defendants' Counsel, including utilizing the services of an experienced mediator. Class Counsel believes that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

| 7. | How will the Settlement be distributed? |

Because the Plans are defined benefit pension plans and not defined contribution plans with individual accounts, like a 403(b) plan or 401(k) plan, **the guarantee, if ever paid in the future, will be contributed to the Plans' trust funds as a whole, rather than to individual Plan participants and beneficiaries. Your pension benefit will not increase as a result of the Settlement.** You will remain entitled to the benefit you have accrued pursuant to the Plan's terms, and under the Settlement, for seven and one-half years, the Plans cannot be amended to reduce your accrued benefit. The Settlement also provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like administrative protections, including certain annual notices for the next seven and one-half years.

Members of the Settlement Class do not need to do anything in order to obtain the benefits and protections provided by the Settlement in this case.

| **8.** | **What rights am I giving up in the Settlement?** |
|---|---|

If the Settlement is approved, the Court will enter a judgment. This judgment will fully, finally, and forever release, relinquish, and discharge any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs under federal or state laws arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "church plan" status of the Plans, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise.

For Settlement Class members only, Released Claims are not intended to include the release of any of the following: (a) Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement; (b) Individual claims for relief brought under state law seeking benefits under the terms of the Plan documents of the applicable Plan; (c) Claims related to any other plan that is merged or consolidated with the Plans, or either of them, after December 12, 2017; (d) Any claim arising under ERISA with respect to any event occurring after: the Internal Revenue Service issues a written ruling that the Plans, or either of them, do not qualify as a church plan; pursuant to IRC § 410(d), an election is made on behalf of the Plans, or either of them, resulting in such Plan's coverage by the ERISA provisions specified in IRC § 410(d); the Roman Catholic Church claims no association with the Plans' Sponsor; or an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption; or (e) the claims brought by the plaintiffs in the Class Action Complaint filed November 16, 2017, titled *Lauren Bence, et al. v. Presence Health Network Corporation, et al.*, U.S. District Court for the Northern District of Illinois case no. 1:17-cv-08315.

| **9.** | **Can I exclude myself from the Settlement?** |
|---|---|

You do not have the right to exclude yourself from the Settlement. For settlement purposes, the Action was certified under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) (non-opt-out class) because the Court determined the requirements of that rule were satisfied. Thus, it is not possible for any of the members of the Settlement Class to exclude themselves from the Settlement. As a member of the Settlement Class, you will be bound by any judgments or orders that are entered in the Action for all claims that were or could have been asserted in the Action against Defendants or are otherwise included in the release under the Settlement. The Court resolves the issues for all Class Members.

Although members of the Settlement Class cannot opt-out of the Settlement, they can object to the Settlement and ask the Court not to approve the Settlement.

## THE LAWYERS REPRESENTING YOU

| **10.** | **Do I have a lawyer in the case?** |
|---|---|

The law firms of Keller Rohrback L.L.P and Cohen Milstein Sellers & Toll, PLLC represent the Named Plaintiffs and the Settlement Class ("Class Counsel"). You will **not** be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **11.** | **How will the lawyers be paid?** |
|---|---|

Prior to the Fairness Hearing, Class Counsel will apply for an award of attorneys' fees and expenses, and incentive awards for the Named Plaintiffs. The total amount that Class Counsel will seek for fees, expenses, and incentive awards will not exceed $1.55 million. This amount will be paid entirely by Presence or Ascension Health. Any payment of attorneys' fees, expenses, and incentive awards to Named Plaintiffs will not reduce the amount of the guarantee or the amount of the buy-out.

To date, Class Counsel has not received any payment for their services in prosecuting this Action on behalf of the Settlement Class, nor have Class Counsel been reimbursed for their out-of-pocket expenses. The fee requested by Class Counsel would compensate all of Plaintiffs' counsel for their efforts in achieving the Settlement for the benefit of the Settlement Class and for their risk in undertaking this representation on a contingency basis. The Court will determine the actual amount of the award.

## OBJECTING TO THE SETTLEMENT

| **12.** | **How do I tell the Court if I don't like the Settlement?** |
|---|---|

Any member of the Settlement Class who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to any term of the Settlement Agreement, to the application for payment of attorneys' fees and expenses, or to the application for an incentive fee for the Named Plaintiffs, may file an Objection in writing. All written objections and supporting papers must: (1) clearly identify the case name and number "*Carver v. Presence Health Network,* Case No. 15-cv-02905;" (2) be filed with the Court and either postmarked or mailed or faxed to Class Counsel and Defendants' Counsel at the addresses below on or before June 12, 2018; (3) set forth your full name, current address, and telephone number; (4) set forth a statement of the position you wish to assert, including the factual and legal grounds for the position; (5) set forth the names and a summary of testimony of any witnesses that you might want to call in connection with the Objection; (6) provide copies of all documents that you wish to submit in support of your position; (7) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; (8) state the name, court, and docket number of any class action litigation in which you and/or your attorney(s) has previously appeared as an objector or provided legal assistance with respect to an objection; and (9) include your signature.

The addresses for filing objections with the Court and service on counsel are listed below. **Your written objection must be filed with the Court, and mailed or faxed to the counsel listed below by no later than June 12, 2018:**

**File with the Clerk of the Court:**

Clerk of the Court
United States District Court
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

**And, by the same date, serve copies of all such papers by mail or fax to each of the following:**

**CLASS COUNSEL:**

| | | |
|---|---|---|
| Lynn Lincoln Sarko | Michelle C. Yau | Ron Kilgard |
| Laura R. Gerber | Mary J. Bortscheller, ARDC #6304457 | Chris Graver |
| KELLER ROHRBACK L.L.P. | Scott M. Lempert | KELLER ROHRBACK L.L.P. |
| 1201 Third Avenue, Suite 3200 | COHEN MILSTEIN SELLERS | 3101 North Central Avenue, Suite 1400 |
| Seattle, WA 98101 | & TOLL, PLLC | Phoenix, AZ 85012 |
| Fax: (206) 623-3384 | 1100 New York Avenue, N.W. | Fax: (602) 248-2822 |
| | Suite 500, West Tower | |
| | Washington, DC 20005 | |
| | Fax: (202) 408-4699 | |

**DEFENDANTS' COUNSEL:**

| | |
|---|---|
| Howard Shapiro | Robert Rachal |
| Stacey C.S. Cerrone | HOLIFIELD JANICH RACHAL & |
| PROSKAUER ROSE, LLP | ASSOCIATES, PLLC |
| 650 Poydras Street, Suite 1800 | 6415 West End Blvd. |
| New Orleans, LA 70130 | New Orleans, LA 70124 |
| Fax: (504) 310-2022 | Fax: (865) 566-0119 |

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY MEMBER OF THE SETTLEMENT CLASS WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND AN INCENTIVE FEE TO THE NAMED PLAINTIFFS.**

### THE COURT'S FAIRNESS HEARING

| | |
|---|---|
| **13.** | **When and where will the Court decide whether to approve the Settlement?** |

The Court will hold a Fairness Hearing on July 10, 2018 at 9:00 a.m. C.D.T., at the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, IL 60604, Courtroom 1941.

**IF YOU DO NOT WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE FEES TO THE NAMED PLAINTIFFS, YOU NEED NOT ATTEND THE FAIRNESS HEARING.**

At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement. The Court will also rule on the motions for attorneys' fees and expenses and an incentive fee to the Named Plaintiffs. We do not know how long these decisions will take.

| | |
|---|---|
| **14.** | **Do I have to come to the hearing?** |

Class Counsel will answer questions Judge Leinenweber may have. You are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable and adequate. You may also have your own lawyer attend the Fairness Hearing at your expense, but such attendance is not necessary.

| | |
|---|---|
| **15.** | **May I speak at the hearing?** |

If you are a member of the Settlement Class and you have filed a timely objection, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in *Carver v. Presence Health Network,* Case No. 15-cv-02905." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be served on the attorneys listed above, postmarked and mailed or sent via facsimile no later than June 19, 2018, and must be filed with the Clerk of the Court, postmarked no later than June 19, 2018.

**Questions? Visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement Or Call: (888) 684-6642**
**DO NOT CALL THE COURT as they cannot answer your questions.**

The Fairness Hearing may be delayed by the Court without further notice to the Class. If you wish to attend the Fairness Hearing, you should confirm the date and time with a member of Class Counsel.

## IF YOU DO NOTHING

| 16. | What happens if I do nothing at all? |
|-----|--------------------------------------|

If you do nothing and you are a Class Member, you will participate in the Settlement as described above in this Notice if the Settlement is approved.

## GETTING MORE INFORMATION

| 17. | How do I get more information? |
|-----|--------------------------------|

This Notice summarizes the proposed Settlement. Full details of the Settlement are set forth in the Settlement Agreement. You may obtain a paper copy of the Settlement Agreement by making a written request to a member of Class Counsel listed above under item 12. Copies of the Settlement Agreement, as well as the motion seeking approval of the Revised and Final Settlement Agreement and the Preliminary Approval Order approving the Revised and Final Settlement Agreement may also be viewed at www.kellersettlements.com or www.cohenmilstein.com/presence-settlement.


DATED: March 8, 2018

By Order of the Court
Hon. Harry D. Leinenweber
United State District Judge
Northern District of Illinois

# EXHIBIT C

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (DECLARATION OF HOWARD SHAPIRO REGARDING DEFENDANTS' COMPLIANCE WITH THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1711)

IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLEE R. CARVER, *et al.*, | ) |
| | ) |
| | ) No. 15-CV-2905 |
| Plaintiffs, | ) |
| | ) Judge Harry D. Leinenweber |
| v. | ) |
| | ) Magistrate Judge M. David Weisman |
| PRESENCE HEALTH NETWORK, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>DECLARATION OF HOWARD SHAPIRO</u>

Howard Shapiro, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a Partner in the law firm of Proskauer Rose LLP, counsel to Defendants in the above-captioned matter.

2.      I submit this Declaration describing Defendants' compliance with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.* ("CAFA").

3.      Attached hereto as Exhibit 1 is a true and correct copy of the letter sent pursuant to CAFA on January 11, 2018 ("Jan. 11, 2018 CAFA Notice"), to the Attorney General of the United States of America, the Honorable Jefferson Beauregard Sessions, III.  *See* 28 U.S.C. § 1715(a)(1). A substantially similar letter was sent to the Attorneys General for all States and Territories of the United States of America where a class member resided.  See 28 U.S.C. § 1715(b).[1]

---

[1] Specifically, notices were sent to the Attorneys General for Alabama; Alaska; Arizona; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Georgia; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Kentucky; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Rhode Island; South Carolina; South Dakota; Tennessee;

4.     The Jan. 11, 2018 CAFA Notice provided the definition of the Settlement Class. Enclosed with the CAFA Notice were copies of: (i) the Third Amended Class Action Complaint; (ii) Plaintiffs' Motion for Preliminary Approval of the Settlement, containing as an exhibit the proposed preliminary order; (iii) the Notice of Motion; (iv) Plaintiffs' Unopposed Motion for Leave to File Memorandum in Support of Motion for Preliminary Approval of Settlement Agreement Exceeding the Page Limitation, containing all attachments to Plaintiffs' Memorandum, which are: the Settlement Agreement; the Proposed Order Preliminarily Approving the Settlement, Certifying the Class, Approving the Notice to the Class, and Scheduling Final Approval Hearing; the proposed notices to the class members; and the Proposed Order and Final Judgment; (v) the Notice of Motion for Presentment of Motion for Leave to File Excess Pages; and (vi) the Declaration of Lynn Sarko in Support of the Motion for Preliminary Approval, and the exhibits thereto, which include copies of Plaintiffs' Counsel's firm résumés and the Proposed Order and Final Judgment.  Also enclosed was a table providing a reasonable estimate of the number of class members residing in each State or Territory.  (*See* Exhibit 1).

5.     On January 16, 2018, the United States District Court for the Northern District of Illinois granted preliminary approval of the settlement.  Thereafter, on February 21, 2018, Plaintiffs and Defendants (the "Parties") executed a Revised and Final Class Action Settlement Agreement ("Revised Settlement Agreement") and revised the proposed class notice in order to address revisions to the Settlement Agreement that were finalized on February 21, 2018.  These Settlement Agreement changes did not impact the relief provided to Plaintiffs and Settlement Class

---

Texas; Utah; Vermont; Virginia; Washington; West Virginia; Wisconsin; Wyoming, Puerto Rico, Guam, and American Samoa.  Upon request, Defendants will make available for the Court's review all sent CAFA Notices.

Members in the original settlement agreement. The Parties sought the same relief that the Court granted in its previous Order preliminarily approving the settlement, along with revised deadlines, and a new date for the Final Fairness Hearing.

6.    On February 28, 2018, Plaintiffs' Counsel filed a revised Motion for Preliminary Approval of Revised and Final Settlement Agreement ("Motion for Preliminary Approval") notifying the Court of the Revised Settlement Agreement. The Revised Settlement Agreement contemplated that the Court would certify a class, for settlement purposes only, defined as: All persons who, as of November 30, 2017, are former and/or current participants in either or both of the relevant Plans, whether vested or non-vested, and their beneficiaries. It did so on March 8, 2018.

7.    Attached hereto as Exhibit 2 is a true and correct copy of a second letter sent pursuant to CAFA on March 8, 2018 ("March 8, 2018 CAFA Notice") , to the Attorney General of the United States of America, the Honorable Jefferson Beauregard Sessions, III. *See* 28 U.S.C. § 1715(a)(1). A substantially similar letter was sent to the Attorneys General for all States and Territories of the United States of America where a class member resided. *See* 28 U.S.C. § 1715(b) and footnote 1.

8.    The March 8, 2018 CAFA Notice provided the definition of the Settlement Class. Enclosed with the CAFA Notice were copies of: (i) the Third Amended Class Action Complaint; and revised pleadings, including (ii) the Motion for Preliminary Approval; (iii) the Notice of Motion; (iv) Plaintiffs' Unopposed Motion for Leave to File Memorandum in Support of Unopposed Motion for Preliminary Approval of Revised and Final Settlement Agreement Exceeding the Page Limitation; (v) the Memorandum in Support of the Motion for Preliminary Approval, which has as exhibits the Revised Settlement Agreement; the Proposed Order

3

Preliminarily Approving the Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hearing; the proposed notice to the class members, and the Proposed Order and Final Judgment; and (vi) the Notice of Motion for Presentment of Motion for Leave to File Memorandum in Support of Unopposed Motion for Preliminary Approval of Revised and Final Settlement Agreement Exceeding the Page Limitation. Also enclosed was a table providing a reasonable estimate of the number of class members residing in each State or Territory. (*See* Exhibit 2).

9.     In response to the March 8, 2018 CAFA Notice, the Office of the Attorney General of the State of Washington sent an email dated March 29, 2018, to counsel for Defendants acknowledging receipt of the CAFA Notice. Attached hereto as Exhibit 3 is a true and correct copy of that email.

10.     Other than the communication described in this Declaration, counsel for Defendants has not received any communications from the recipients of the CAFA Notices.

11.     To the best of my knowledge, Defendants have fully complied with CAFA and have satisfied all their obligations thereunder.

I declare under penalty of perjury that the foregoing statements are true and correct.


*Howard Shapiro*
HOWARD SHAPIRO


Dated:  May 24, 2018
          New Orleans, Louisiana


4

# EXHIBIT 1



Proskauer Rose LLP   650 Poydras Street, Suite 1800   New Orleans, LA 70130-6146

Howard Shapiro
Member of the Firm
d 504.310.4085
f 504.310.2022
howshapiro@proskauer.com
www.proskauer.com

January 11, 2018

**By First Class Mail; Return Receipt Requested**

The Honorable Jefferson Beauregard Sessions, III
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001


Re:  *Carver v. Presence Health Network,* No. 1:15-cv-02905,
     United States District Court for the Northern District of Illinois

Dear Attorney General Sessions:

Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Defendants Presence Health Network, Presence Chicago Hospitals Network, formerly known as Presence RHC Corporation, Presence PRV Health, the Presence Health Network Board of Directors, the Presence RHC Corporation Board of Directors, the Presence PRV Health Board of Directors, the Church Plan Administrative Committee for the Provena Health Employees' Pension Plan, the Investment Committee for the Provena Health Employees' Pension Plan, the Plan Administrator of the Resurrection Health Care Retirement Plan, and the Presence Health Finance Committee ("Defendants"), through undersigned counsel, write to give notice of a proposed settlement in the above-referenced matter.

Less than ten days ago, on January 5, 2018, Plaintiffs' Counsel filed a Motion for Preliminary Approval of the Settlement Agreement ("Motion for Preliminary Approval") notifying the Court of a proposed settlement of the above captioned matter.  The Settlement Agreement contemplates that the Court will certify a class, for settlement purposes only, defined as:  All present and former participants (vested or nonvested) or beneficiaries of Presence Health Network Retirement Plan as of the Effective Date of Settlement.

Enclosed with this letter are copies of: (i) the Third Amended Class Action Complaint; (ii) the Motion for Preliminary Approval, which contains as an exhibit the proposed preliminary order; (iii) the Notice of Motion; (iv) Plaintiffs' Unopposed Motion for Leave to File Memorandum in Support of Motion for Preliminary Approval of Settlement Agreement Exceeding the Page Limitation, which contains as exhibits the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement, copies of the

Beijing | Boca Raton | Boston | Chicago | Hong Kong | London | Los Angeles | New Orleans | New York | Newark | Paris | São Paulo | Washington, DC



The Honorable Jefferson Beauregard Sessions, III
Attorney General of the United States
January 11, 2018
Page 2

Settlement Agreement, the Proposed Order Preliminarily Approving the Settlement, Certifying the Class, Approving the Notice to the Class, and Scheduling Final Approval Hearing, the proposed notices to the class members, the Proposed Order and Final Judgment; (v) the Notice of Motion for Presentment of Motion for Leave to File Excess Pages; and (vi) the Declaration of Lynn Sarko in Support of the Motion for Preliminary Approval, copies of Plaintiffs' Counsel's firm résumés, and the Proposed Order and Final Judgment.  I enclose also a table providing a reasonable estimate of the number of class members residing in each state.

The Settlement Agreement calls for Defendants to guarantee the payment of the aggregate amount of the first $20,000,000 of benefits that are distributable from either or both of the Plans to Settlement Class Members in the event trust assets attributable to either of the Plans become insufficient to pay such benefits.  The settlement also requires that the Plans implement certain agreed-upon provisions for the benefit of the Class Members.  Because defined benefit plan trust funds hold assets collectively in trust for the benefit of all plan participants and beneficiaries, no specific portions of the settlement guaranteed payments are allocable to any single settlement class member.

The Settlement Agreement also provides for the payment of up to $1,550,000, to be awarded in the Court's sole discretion, for Plaintiffs' Counsel's fees, Plaintiffs' expenses and/or incentive fees for the Named Plaintiffs.

There is a judicial Status Conference set for Tuesday, January 30, 2018, where the district court is expected to hear Plaintiffs' Motion for Preliminary Approval.  No other deadlines have been scheduled at this time.  There are no other agreements between class counsel and counsel for Defendants, there are no final judgments or notices of dismissal in this matter, and there are no written judicial opinions relating to the materials described under 28 U.S.C. §§ 1715(b)(3)-(6).

We appreciate your time and attention to this matter.  Please contact me with any questions or concerns.

Sincerely yours,

Howard Shapiro

cc, via e-mail:
        All Counsel Of Record

# EXHIBIT 2



Proskauer Rose LLP   650 Poydras Street, Suite 1800   New Orleans, LA 70130-6146

Howard Shapiro
Member of the Firm
d 504.310.4085
f 504.310.2022
howshapiro@proskauer.com
www.proskauer.com

March 8, 2018

**By First Class Mail; Return Receipt Requested**

The Honorable Jefferson Beauregard Sessions, III
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Re:     *Carver v. Presence Health Network,* No. 1:15-cv-02905,
        United States District Court for the Northern District of Illinois

Dear Attorney General Sessions:

Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Defendants Presence Health Network, Presence Care Transformation Corporation, Presence Chicago Hospitals Network, formerly known as Presence RHC Corporation, Presence PRV Health, the Presence Health Network Board of Directors, the Presence RHC Corporation Board of Directors, the Presence PRV Health Board of Directors, the Church Plan Administrative Committee for the Provena Health Employees' Pension Plan, the Investment Committee for the Provena Health Employees' Pension Plan, the Plan Administrator of the Resurrection Health Care Retirement Plan, the Presence Health Finance Committee, Haven Cockerham, Bruce Hamory, Mark Hanson, Thomas R. Huberty, Patricia Ann Koschalke, Marsha Ladenburger, Laurie Lafontaine, Terry Maltby, Susan McDonough, Victor Orler, Kent Russell, Jose Santiago, Thomas Settles, Mary Shinnick, Guy Wiebking, Evelyn Varboncoeur, James Winikates, Clara Frances Kusek, Sandra Bruce, Michael Engelhart, and John and Jane Does 1-20 ("Defendants"), through undersigned counsel, write to give notice of a proposed revised and final settlement in the above-referenced matter.

A CAFA notice related to this litigation was sent to you on January 8, 2018. The United States District Court for the Northern District of Illinois granted preliminary approval of the settlement on January 16, 2018.  Thereafter, on February 21, 2018, Plaintiffs and Defendants (the "Parties") executed a Revised and Final Class Action Settlement Agreement ("Revised Settlement Agreement") and revised the proposed class notice in order to address revisions to the Settlement Agreement that were finalized on February 21, 2018.  These Settlement Agreement changes do not impact the relief provided to Plaintiffs and Settlement Class Members in the original settlement agreement.  The Parties thus seek the same relief that the Court granted in its



The Honorable Jefferson Beauregard Sessions, III
Attorney General of the United States
March 8, 2018
Page 2

previous Order preliminarily approving the settlement, along with revised deadlines, and a new date for the Final Fairness Hearing.

Less than ten days ago, on February 28, 2018, Plaintiffs' Counsel filed a Motion for Preliminary Approval of Revised and Final Settlement Agreement ("Motion for Preliminary Approval") notifying the Court of the Revised Settlement Agreement. The Revised Settlement Agreement contemplates that the Court will certify a class, for settlement purposes only, defined as: All persons who, as of November 30, 2017, are former and/or current participants in either or both of the relevant Plans, whether vested or non-vested, and their beneficiaries.

Enclosed with this letter are copies of: (i) the Third Amended Class Action Complaint; and revised pleadings, including (ii) the Motion for Preliminary Approval; (iii) the Notice of Motion; (iv) Plaintiffs' Unopposed Motion for Leave to File Memorandum in Support of Unopposed Motion for Preliminary Approval of Revised and Final Settlement Agreement Exceeding the Page Limitation; (v) the Memorandum in Support of the Motion for Preliminary Approval, which has as exhibits the Revised Settlement Agreement; the Proposed Order Preliminarily Approving the Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hearing; the proposed notice to the class members, and the Proposed Order and Final Judgment; and (vi) the Notice of Motion for Presentment of Motion for Leave to File Memorandum in Support of Unopposed Motion for Preliminary Approval of Revised and Final Settlement Agreement Exceeding the Page Limitation. I enclose also a table providing a reasonable estimate of the number of class members residing in each state.

The Settlement Agreement calls for Defendants to guarantee the payment of the aggregate amount of the first $20,000,000 of benefits that are distributable from either or both of the Plans to Settlement Class Members in the event trust assets attributable to either of the Plans become insufficient to pay such benefits. The settlement also requires that the Plans implement certain agreed-upon provisions for the benefit of the Class Members. Because defined benefit plan trust funds hold assets collectively in trust for the benefit of all plan participants and beneficiaries, no specific portions of the settlement guaranteed payments are allocable to any single settlement class member.

The Settlement Agreement also provides for the payment of up to $1,550,000, to be awarded in the Court's sole discretion, for Plaintiffs' Counsel's fees, Plaintiffs' expenses and/or incentive fees for the Named Plaintiffs.

Once the Motion for Preliminary Approval has been approved by the Court, the current settlement deadlines will be revised. There are no other agreements between class counsel and counsel for Defendants, there are no final judgments or notices of dismissal in this matter, and



The Honorable Jefferson Beauregard Sessions, III
Attorney General of the United States
March 8, 2018
Page 3

there are no written judicial opinions relating to the materials described under 28 U.S.C. §§ 1715(b)(3)-(6).

We appreciate your time and attention to this matter. Please contact me with any questions or concerns.

Sincerely yours,

Howard Shapiro

cc, via e-mail:

    All Counsel Of Record

# EXHIBIT 3

**From:** ATG MI WA CAFA-PrivateCP Lawsuits [mailto:privatecpa@ATG.WA.GOV]
**Sent:** Thursday, March 29, 2018 5:32 PM
**To:** Shapiro, Howard
**Subject:** RE: Matter # 10796139, Carver v. Presence Health Network

**Sent on behalf of Assistant Attorney General Amy Teng:**

Dear Mr. Shapiro:

This message acknowledges that we have received notice from you regarding the above mentioned case pursuant to the Class Action Fairness Act of 2005, 28 U.S.C § 1715 (CAFA).

Thank you for bringing this matter to the attention of the Washington State Attorney General's Office, Consumer Protection Division.

Sincerely,

*Donnelle Brooke*
Paralegal
Office of the Attorney General
Consumer Protection Division
Phone-206-464-6562

# EXHIBIT D

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (DECLARATION OF HOWARD SHAPIRO REGARDING THE ACQUISITION OF PRESENCE CARE TRANSFORMATION CORPORATION)

IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLEE R. CARVER, *et al.*, | ) |
| | ) |
| | ) No. 15-CV-2905 |
| Plaintiffs, | ) |
| | ) Judge Harry D. Leinenweber |
| v. | ) |
| | ) Magistrate Judge M. David Weisman |
| PRESENCE HEALTH NETWORK, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>DECLARATION OF HOWARD SHAPIRO</u>

Howard Shapiro, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a Partner in the law firm of Proskauer Rose LLP, counsel to Defendants in the above-captioned matter.

2.      I submit this Declaration describing, to the best of my knowledge, the affiliation of Presence Care Transformation Corporation ("Presence CTC") with Ascension Health.

3.      The statements in this Declaration are based upon information provided by my client, Ascension Health, as to its acquisition of Presence Care Transformation Corporation and related entities.

4.      On information and belief, effective March 1, 2018, Alexian Brothers Health System, d/b/a Presence Alexian Brothers Health System, a subsidiary of Ascension Health, became the sole corporate member of Presence CTC.

5.      On information and belief, Presence CTC is the statutory employer of the Presence Health hospitals' employees and is the sole corporate member of the Presence Health hospital corporations and other business interests.

1

6. On information and belief, in addition to acquiring Presence CTC, Ascension Health also acquired other Presence entities but did not acquire Presence Health Network and its subsidiary, Resurrection University. Therefore, as of March 1, 2018, Presence Health Network no longer has any legal affiliation with Presence CTC. As of that same date, Presence Alexian Brothers Health System replaced Presence Health Network as the sponsor of the Resurrection Health Care Retirement Plan and the Provena Health Employees' Pension Plan, the Church Plans at issue in this litigation.

7. I declare under penalty of perjury that the foregoing statements are true and correct.

_s/ Howard Shapiro_
HOWARD SHAPIRO

Dated: May 25, 2018
     New Orleans, Louisiana

2

# EXHIBIT E

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (JOINT DECLARATION OF LYNN LINCOLN SARKO AND MARY J. BORTSCHELLER IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; AND (2) PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LESLEE R. CARVER, *et al.*,

                              Plaintiffs,

    v.

PRESENCE HEALTH NETWORK, *et al.*,

                              Defendants.

Case No. 1:15-cv-02905

Judge Harry D. Leinenweber

Magistrate Judge M. David Weisman

---

### JOINT DECLARATION OF LYNN LINCOLN SARKO AND MARY J. BORTSCHELLER IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; AND (2) PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR <u>INCENTIVE AWARDS TO NAMED PLAINTIFFS</u>

Lynn Lincoln Sarko and Mary J. Bortscheller respectfully submit this Joint Declaration in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class; and (2) Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and for Incentive Awards to Named Plaintiffs. This Settlement,[1] if approved by the Court, will resolve this class action in its entirety.

Pursuant to 28 U.S.C. § 1746, we declare as follows:

1.    Lynn Lincoln Sarko is the Managing Partner of Keller Rohrback L.L.P. ("Keller Rohrback"), one of the two firms preliminarily approved as Class Counsel for Leslee R. Carver,

---

[1] Capitalized terms not otherwise defined in this Joint Declaration shall have the same meaning ascribed to them in the Revised and Final Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"). A copy of the Settlement Agreement is attached as Exhibit A to the Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Final Approval Memorandum"), filed contemporaneously herewith. Referenced Exhibits B–L are also attached to the Final Approval Memorandum.

Diane Eslinger, Lisa Jenkins, and Susan L. Phillips ("Named Plaintiffs") by the Court,[2] is one of the attorneys personally involved in this Action, and is responsible for its prosecution. Mr. Sarko has personal knowledge of the facts set forth below (except as to those exclusively within the knowledge of the other declarant herein) and, if called as a witness, could and would testify competently thereto.

2.     Mary J. Bortscheller is an attorney at Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), also one of the two firms preliminarily approved as Class Counsel. Ms. Bortscheller is also one of the attorneys personally involved in the litigation of the Action, and is responsible, together with Michelle C. Yau, a Partner at Cohen Milstein, for its prosecution. Ms. Bortscheller has personal knowledge of the facts set forth below (except as to those exclusively within the knowledge of the other declarant herein) and, if called as a witness, could and would testify competently thereto.

3.     Class Counsel have been primarily responsible for the prosecution of this Action and negotiation of the Settlement Agreement and Stephan Zouras LLP has served as local counsel (collectively, "Plaintiffs' Counsel").

4.     The Settlement Agreement, preliminarily approved by the Court's Preliminary Approval Order of March 8, 2018, provides substantial relief to the Settlement Class Members.

5.     Under the Settlement, Ascension Health, which has acquired the Presence Health hospitals,[3] guarantees to the Settlement Class, who are or were participants and/or beneficiaries

---

[2] Order Prelim. Approving Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hr'g ("Preliminary Approval Order" or "Prelim. Approval Order") ¶¶ 1(G), 2, ECF No. 118.

[3] Effective March 1, 2018, Ascension Health, through its subsidiary Alexian Brothers Health System, doing business as Presence Alexian Brothers Health System, became the sole corporate member of Presence Care Transformation Corporation. Declaration of Howard Shapiro ("Presence Declaration") ¶ 4, Exhibit D. Presence Care Transformation Corporation is the

of the RHC Plan and/or the Provena Plan (collectively, the "Plans"), payment of the first $20,000,000 of benefits that are distributable from either or both of the Plans' Trusts to Settlement Class Members if either of the Plans' Trusts are unable to pay such benefits (the "Plan Benefits Guarantee").[4] Exhibit A § 8.1.2. The Plan Benefits Guarantee will continue for as long as the Plans are sponsored by any of the Releasees identified in the Settlement Agreement, and should a corporate transaction occur where the Plans' assets and liabilities covering Settlement Class Members transfer to a Successor, Ascension Health will cause the Successor to honor this commitment. *Id.* §§ 8.1.2, 8.1.3. For a period of seven and one-half years, the Plans' participants' Accrued Benefits will not be reduced on account of merger, consolidation, amendment, or termination of the Plans. *Id.* §§ 9.1, 9.2.

6.     The Settlement also enhances the retirement security of the Settlement Class Members through a commitment during that seven and one-half year period to provide information to Settlement Class Members, providing, among other things, that the Plans' participants will receive annual notices concerning the Plans' funded status and their accrued retirement benefits. *Id.* §§ 9.3.3, 9.3.4. The notice will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, and summary information about the Plans' total income. *Id.* § 9.3.3. The Plans will designate a named fiduciary; provide a procedure for establishing and carrying out the current funding policy and method; describe a procedure for allocation of

---

statutory employer of Presence Health's employees and is the sole corporate member of the Presence Health hospital corporations and other business interests. *Id.* ¶ 5. As of March 1, 2018, Alexian Brothers Health System replaced Presence Health as the sponsor of the Plans. *Id.* ¶ 6.

[4] This guarantee obligation may be earlier satisfied by making contributions that aggregate $15,000,000. Exhibit A § 8.1.4.1.

administrative responsibilities; provide a procedure for Plan amendments and identify persons with authority to make such amendments; specify the basis on which payments are made to and from the Plans; provide a joint and survivor annuity, if this form of benefit is provided currently by the relevant Plan; and provide a claims review procedure. *Id.* §§ 9.3.1, 9.3.6. These protections are comparable to some of ERISA's key provisions and will ensure the Plans' participants and beneficiaries receive important notices and disclosures concerning the Plans and their benefits.

7. Ascension Health and Presence have agreed to cause the payment of up to $1,550,000 for Plaintiffs' Counsel's attorneys' fees and expenses, and potential Incentive Awards to the four Named Plaintiffs, subject to Court approval. *Id.* § 8.1.5. These amounts are separate from the consideration provided to the Settlement Class under the Settlement and will not reduce that recovery or any other monetary and equitable relief for the Settlement Class. The parties negotiated this provision after agreement was reached on the key Settlement provisions for the Settlement Class, and these negotiations were overseen by a neutral third-party mediator, Robert Meyer, Esq., who came up with a mediator's proposal to which the parties ultimately agreed, subject to the Court's discretion.

8. As discussed below, this Settlement was reached after extensive research to develop the legal theories and factual bases for the Third Amended Class Action Complaint ("Complaint"), ECF No. 75-1; litigation of the Action, including developing a case management plan, appearing in Court, analyzing and developing strategy for responding to Defendants' motion to dismiss, filing multiple amendments to the Complaint, propounding and responding to discovery, and arm's-length negotiations with a third-party JAMS mediator, Mr. Meyer. Named

Plaintiffs and Class Counsel are pleased to present this Settlement to the Court for its consideration and believe strongly that it should be approved.

## I.    PROCEDURAL & FACTUAL BACKGROUND

**A.    Initial Investigation into the ERISA Church Plan Exemption.**

9.    Class Counsel committed considerable time and resources to develop and prosecute this Action without any guarantee of payment.  As detailed below, this litigation was hard fought and involved extensive investigation, review of documents, discovery practice, and legal research, all of which were necessary to achieve a positive result for the Settlement Class.

10.    This case is one of a number of cases pending around the country that challenge whether hospital systems with a history of religious affiliation like Presence Health are entitled to claim that their pension plans are exempt from ERISA as "church plans," defined in 29 U.S.C. § 1002(33).

11.    Class Counsel discovered and developed this area of the law with the assistance of the main public interest organization concerned with pension rights, the Pension Rights Center ("PRC").  Through the PRC, Class Counsel learned that thousands of hospital employees were being denied the rights and protections of ERISA, including funding, insurance, vesting rights, and disclosure rules, because hospitals claimed their pension plans were exempt church plans.

12.    Class Counsel devoted many hours to researching the definition of a "church plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33); 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the United States Code, the legislative history of the statute, and agency and court interpretations of the statute.  Class Counsel concluded, based upon their investigation, that this was a narrow exemption intended for ***churches***, and that health systems like Presence Health were improperly claiming the exemption.

13.     Class Counsel concluded, based upon their investigation, that there were three independent and alternative statutory prerequisites for a plan to be a church plan—that it be "established" by a church; that it be "maintained" by either a church or a so-called "principal-purpose organization"; and that the participants be employed by either a church or an entity "controlled by or associated with" a church, as those terms were defined under ERISA.  Class Counsel concluded that with respect to a typical hospital pension plan, none of these requirements were met.

14.     Class Counsel also understood, based upon their research, that filing church plan cases like this one would challenge private letter rulings from the Internal Revenue Service and informal Advisory Opinions of the United States Department of Labor.  They also knew that the defense would maintain that the small amount of church plan case law then in existence would favor a defense reading of the church plan exemption.  And they knew that once even a few of the cases were filed, the major hospitals claiming religious ties, which employ hundreds of thousands of people, would be arrayed against them.

15.     Nevertheless, Class Counsel decided to take on this high-stakes, high-risk litigation.  Initially, Class Counsel were the only lawyers to do so.[5]  The early results in the

---

[5] Additional "church plan" cases were filed by other counsel beginning in 2015.  *See Tucker v. Baptist Health Sys., Inc.*, No. 15-382 (N.D. Ala. Mar. 3, 2015).

district courts were mixed,[6] but when the first three cases reached the appellate courts, Class Counsel achieved major victories.[7] All three courts ruled unanimously in favor of the plaintiffs.

16.     The hospital system defendants in those cases then sought review in the Supreme Court. The Supreme Court granted certiorari and consolidated the three cases in December 2016. Class Counsel represented the plaintiffs in the Supreme Court. Class Counsel researched and analyzed applicable law and potential defenses as they prepared to argue before the Supreme Court; oral argument was heard March 27, 2017. The Supreme Court issued its unanimous decision on June 5, 2017, reversing the holdings of the appellate courts. *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017). After *Advocate*, Class Counsel continued to pursue, on behalf of the plaintiffs, several alternate arguments in the district court. They have continued to amend complaints in other church plan cases to reflect the *Advocate* decision and to pursue plaintiffs' arguments that the pension plans of these hospital systems are not church plans.

**B.      Class Counsel's Vigorous Prosecution of this Action and Settlement Negotiations.**

**1.      The Complaint and Course of Litigation.**

17.     Before filing the Complaint – Class Action ("Initial Complaint" or "Initial Compl."), ECF No. 1, in this Action, Class Counsel developed the legal theories outlined above and also analyzed the facts relating to Presence Health and the Plans at issue in this case. For

---

[6] *Compare, e.g.*, Order, *Chavies v. Catholic Health E.*, No. 13-1645 (E.D. Pa. Mar. 28, 2014), ECF No. 67; *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014); *Rollins v. Dignity Health*, 19 F. Supp. 3d 909 (N.D. Cal. 2013); and *Stapleton v. Advocate Health Care Network & Subsidiaries*, 76 F. Supp. 3d 796 (N.D. Ill. 2014), *with Overall v. Ascension Health*, 23 F. Supp. 3d 816 (E.D. Mich. 2014); *Medina v. Catholic Health Initiatives*, No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014); and *Lann v. Trinity Health Corp.*, No. 14-2237, 2015 WL 6468197 (D. Md. Feb. 24, 2015).

[7] *Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

example, Class Counsel reviewed Presence Health's corporate filings; delved into the business

activities of Presence Health and its subsidiaries; scoured news articles and publicly-available

information for insight into the company and its treatment of its purported church plan; reviewed

regulatory filings concerning Presence Health; pored over financial statements and bond

offerings for information relating to the Plans; researched the role and responsibilities of

Defendants and committees who were alleged to be fiduciaries and to have responsibilities

concerning the Plans; and examined documents provided by Named Plaintiff Carver.

18.     Ultimately, this research resulted in a 77-page Initial Complaint asserting ten

counts against numerous Defendants.  Initial Compl. ¶¶ 228–330.

19.     Defendants filed a motion to dismiss the Initial Complaint in this case asserting

that Plaintiff Carver, then the lone Named Plaintiff and a participant in the RHC Plan, could not

assert claims with respect to the Provena Plan.  Defs.' Rule 12(b)(1) Partial Mot. to Dismiss the

Provena Defs., ECF No. 50.  The Initial Complaint was then amended to add the claims of

additional Plaintiffs who were participants in the Provena Plan.  First Am. Class Action Compl.

("Amended Complaint") ¶¶ 15-18, 258-360, ECF No. 56.

20.     The Amended Complaint was later amended further, and now names as additional

plaintiffs Diane Eslinger, Lisa Jenkins, and Susan L. Phillips, all participants in the Provena

Plan.  Compl. ¶¶ 15-16, 18.

21.     Defendants answered the Complaint, denying that Plaintiffs were entitled to relief

based on Defendants' contention that the Plans were properly treated as church plans.  *See, e.g.*,

Answer in Resp. to Pls.' Third Am. Compl., ECF No. 79.

22.     In April 2016, pursuant to an informal production agreement, Defendants

produced 383 pages of documents.

23.     Following a status hearing on May 5, 2016, ECF No. 44, the Parties each served and responded to discovery requests on certain liability issues.  On May 27, 2016, Plaintiffs issued their First Requests for the Production of Documents to Defendants, Nos. 1-20.  Defendants responded and objected, and subsequently made nine productions of documents in 2016 to Plaintiffs, producing 690 documents, or 10,158 pages.  Defendants issued their First Request for Production of Documents to Plaintiffs on July 13, 2016.  Plaintiffs responded and produced 94 documents that totaled 308 pages.  On July 13, 2016 and September 9, 2016, Defendants also issued their First and Second Set of Interrogatories to Plaintiffs.  Plaintiffs submitted their objections and responses on August 22, 2016 and October 17, 2016.  On August 22, 2016 and September 22, 2016, Plaintiffs issued their First and Second Set of Interrogatories to Defendants.  On September 26, 2016 and November 3, 2016, Defendants submitted their Answers and Objections to Plaintiffs' Interrogatories.

24.     On October 13, 2016, however, pursuant to an agreement of the Parties, the Court stayed further proceedings (with the exception of completion of pending document discovery) while the United States Supreme Court considered whether to grant *certiorari* in the three other "church plan" cases, *see* ¶ 16, *supra*, involving one of the same issues present in this case.  ECF No. 78.  The Court subsequently stayed all proceedings after *certiorari* was granted in *Advocate*. ECF No. 87.

25.     On June 5, 2017, the Supreme Court issued the *Advocate* opinion, holding that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans, if they otherwise meet the requirements to be church plans.  Although Plaintiffs advanced other strong arguments and theories not reached by the Supreme Court, Plaintiffs' case was arguably negatively impacted by the Supreme Court's opinion.

C.     **Settlement Negotiations.**

26.     Following the *Advocate* decision, as the Parties prepared to resume active litigation, they agreed to attempt to settle the case with the assistance of an experienced JAMS mediator, and the Court granted their Joint Motion to Continue Status Hearing in Light of Pending Mediation.  ECF No. 93; Minute Entry, ECF No. 95.

27.     The settlement negotiations were extensive and took place over the course of several months.  The Parties attended a face-to-face mediation on August 29, 2017, in Chicago, Illinois, with the assistance of an experienced JAMS mediator, Mr. Meyer.  Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the church plan exemption.

28.     Shortly before the August 29, 2017 mediation, Presence Health and Ascension Health publicly announced the signing of a non-binding letter of intent for Ascension Health to acquire Presence Health.  Although the acquisition had not then been finalized, Ascension Health was present at and participated in the mediation.

29.     The case was not resolved at the August 29, 2017 mediation.  The Parties considered that they had made progress and agreed to continue pursuing a settlement agreement. The Parties jointly requested that a status conference scheduled for September 13, 2017, be postponed so that the Parties could attempt to bring the matter to a final resolution, and the Court continued the status conference to November 16, 2017.  *See* ECF No. 98.

30.     At Mr. Meyer's urging the Parties continued to negotiate over several months with Mr. Meyer's continued assistance, and the Parties finally accepted a mediator's proposal and reached an agreement in principle to settle the Action.  On November 10, 2017, the Parties signed a Term Sheet containing the preliminary terms resolving this matter.

31.     The Parties only negotiated attorneys' fees and reimbursement of expenses after reaching agreement on the key provisions for the Settlement Class—including the substantial financial guarantees and non-monetary equitable relief identified above.  Mr. Meyer oversaw the negotiations and came up with a mediator's proposal for attorneys' fees, expenses, and Incentive Awards to Named Plaintiffs, to which the Parties ultimately agreed (subject to the Court's approval).  *See* Exhibit A § 8.1.5.  The requested amounts for attorneys' fees, expenses, and Incentive Awards for Named Plaintiffs do not reduce in any way the relief for the Settlement Class.

32.     A settlement agreement based on the November 10, 2017 Term Sheet was executed by all Parties on December 12, 2017.  Class Action Settlement Agreement ("Initial Settlement Agreement"), ECF No. 106-2.  The Initial Settlement Agreement was the result of protracted, lengthy arm's-length negotiations between the Parties.  The process was thorough, adversarial, and professional.

33.     Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement, ECF No. 104, was filed on January 5, 2018.  The Court granted preliminary approval of the Initial Settlement Agreement on January 16, 2018.  ECF No. 110.  As part of this process, Class Counsel took the lead on drafting the Class Notice to be sent to current and former participants in the Plans.

34.     In February 2018, before notice of the Initial Settlement Agreement had been mailed to Settlement Class Members, Defendants advised Plaintiffs that the structure of the acquisition of Presence by Ascension Health had changed.  Ascension Health, Presence Health Network and Presence Care Transformation Corporation, which is the statutory employer of Presence Health employees, and is the sole corporate member of the Presence Health hospital

corporations and other business interests, had agreed that Ascension Health would acquire most Presence entities except for Presence Health and its subsidiary, Resurrection University. *See* Exhibit D ¶¶ 4-6.

35.     Defendants further advised Plaintiffs that Ascension Health and Presence Health Network agreed that the Plans would become sponsored by Ascension Health or its subsidiary. Presence Alexian Brothers Health System replaced Presence Health Network as the sponsor of the Plans after the closing of the acquisition transaction. *See id.* ¶ 6.

36.     Because of this change in the structure of the acquisition, the Initial Settlement Agreement was jointly amended and modified to reflect those changes, and was renamed the Revised and Final Class Action Settlement Agreement. *See* Exhibit A. The changes to the Initial Settlement Agreement did not affect the substantive terms of relief granted to the Settlement Class.

37.     The Parties executed the Settlement Agreement on February 21, 2018. *Id.*

38.     Ascension Health is a party to the Term Sheet, the Initial Settlement Agreement, and the Settlement Agreement. Because of Ascension Health's acquisition of Presence on March 1, 2018, Ascension Health is bound by the Settlement Agreement. *Id.* § 2.3.

39.     The Settlement provides that Named Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle all Released Claims, *id.* § 4.2, against Defendants and other Releasees, *id.* § 1.28, in exchange for, among other terms, Ascension Health's guarantee of the payment of the first $20,000,000 of benefits that are distributable from the Plans to Settlement Class Members in the event trust assets attributable to the Plans become insufficient to pay such benefits (the "Plan Benefit Guarantee"). *Id.* § 8.1.2. The obligation of Ascension Health under the Plan Benefit Guarantee shall continue for as long as the Plans are sponsored by

any of the Releasees.[8]  *Id.*  Should a corporate transaction occur where the Plans' assets and liabilities covering Settlement Class Members transfer to a Successor, Ascension Health shall cause the successor to honor Ascension Health's commitments under the Plan Benefit Guarantee. *Id.* § 8.1.3.  Any of the Releasees may satisfy the Plan Benefit Guarantee obligation by making contributions to the Plans' Trusts that in the aggregate total $15,000,000.  *Id.* § 8.1.4.1.  However, any of the Releasees may make additional contributions to the Plans at any time.  *Id.*

40.    The Settlement establishes equitable provisions that are comparable to certain provisions of ERISA concerning plan administration, summary plan descriptions, notices, and the Plans' claim review procedure.  *Id.* §§ 9.3–9.3.4, 9.3.6.  As a result of these provisions, for seven and one-half years after the Effective Date of Settlement, the Plans' participants will receive notice on an annual basis about the funded status of the Plans and the retirement benefits that they have accrued.  *Id.* §§ 9.3.3, 9.3.4.  This annual notice will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, information about the increase or decrease in net plan assets for the year, and summary information about the Plans' total incomes.  *Id.* § 9.3.3.

41.    Ascension Health also guarantees that, for a period of seven and one-half years after the Effective Date, if the Plans are merged or consolidated with another plan, participants and beneficiaries who are Settlement Class members will be entitled to the same or a greater Accrued Benefit post-merger or after a consolidation event as they enjoyed before the merger or consolidation.  *Id.* § 9.1.  Likewise, for the next seven and one-half years, the Plans' sponsor

---

[8] The "Releasees," as defined in the Settlement Agreement, include Ascension Health and its affiliates.  Exhibit A § 1.28.

guarantees that no amendment or termination of the Plans will result in a reduction of a Settlement Class Member's Accrued Benefit. *Id.* § 9.2.

42.     In negotiating the Settlement, Class Counsel was concerned with the Plans' funding levels. Ascension Heath's guarantee provides assurance of up to $20,000,000 in funding if the Plans' funding levels drops to where the Plans would not be able to fund accrued liabilities. The Plan Benefit Guarantee functions as a type of insurance that may not otherwise be available.

43.     In Class Counsel's opinion, especially given the Supreme Court's decision in *Advocate*, the Tenth Circuit's decision after this settlement was reached in *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017), *see* ¶ 76, *infra*, and the time and expense necessary to litigate the ancillary issues surrounding whether these particular plans are properly maintained as ERISA-exempt church plans, this Settlement represents a particularly strong and near-term resolution for the Settlement Class.

44.     Prior to instigating suit, and throughout the course of the litigation and the parties' negotiations, Class Counsel worked with the Named Plaintiffs to investigate the facts, circumstances, and legal issues associated with the allegations and defenses in the Action.

45.     Class Counsel's investigation and work in this matter included, *inter alia*, (a) inspecting, reviewing, and analyzing financial statements, corporate records, bond offerings and other documents publicly available and/or produced by Defendants or otherwise relating to Defendants, the Plans, and the administration and funding of the Plans; (b) attending hearings relating to case management and settlement issues; (c) drafting and propounding document requests and interrogatories; (d) reviewing documents produced by Defendants; (e) reviewing interrogatory responses prepared by Defendants; (f) researching and analyzing the applicable law

with respect to the claims asserted in this case and the possible defenses thereto; and (g)

exploring potential remedies.

46.     Throughout the course of the litigation and during the Parties' negotiations, the

Named Plaintiffs collected and produced documents, reviewed and approved the complaint(s),

and other major filings in this Action, maintained contact with Class Counsel, stayed abreast of

settlement negotiations, and advised on the settlement of this Action.  *See* Declaration of Leslee

R. Carver in Support of Class Action Settlement ¶¶ 3-10, Exhibit G; Declaration of Diane M.

Eslinger in Support of Approval of Class Action Settlement ¶¶ 3-11, Exhibit H; Declaration of

Lisa A. Jenkins in Support of Approval of Class Action Settlement ¶¶ 3-11, Exhibit I;

Declaration of Susan Phillips in Support of Approval of Class Action Settlement ¶¶ 3-11, Exhibit

J.

**D.     Preliminary Approval.**

47.     Although Class Counsel had successfully moved for preliminary approval of the

Initial Settlement Agreement in January 2018, *see* ¶ 33, *supra*, in light of the changes required

due to the structure of Ascension Health's acquisition of Presence as discussed above, Class

Counsel drafted and filed a second Plaintiffs' Unopposed Motion for Preliminary Approval of

Revised and Final Settlement Agreement, ECF No. 111, on February 28, 2018, including a

revised Class Notice, ECF No. 113-4.

48.     The Court preliminary approved the Settlement, as revised, on March 8, 2018.

*See* Prelim. Approval Order.

49.     In accordance with the Preliminary Approval Order, the Settlement Class has

been provided with ample and sufficient notice of this Settlement, including an appropriate

opportunity to voice objections.  The Class Notice, Exhibit K, contains detailed information

about the Settlement, including: (1) a comprehensive summary of the Settlement's terms; (2)

notice of Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and Incentive Awards to Named Plaintiffs for the services performed in this Action; and (3) detailed information about the Released Claims. In addition, the Class Notice provided information about the Fairness Hearing date, rights of Settlement Class Members to object (and deadlines and procedures for objecting), and the procedure to receive additional information. The mailed Class Notice provided Settlement Class Members with contact information for Class Counsel, information on the toll-free phone number for inquiries, and two website addresses for further information (www.kellersettlements.com and www.cohenmilstein.com/presence-settlement). Thus, the Class Notice fully informed Settlement Class Members of the Action and proposed Settlement, and enabled them to make an informed decision about their rights.

50.      By March 26, 2018, Class Counsel Keller Rohrback posted the Settlement Agreement, the Class Notice, the Preliminary Approval Motion, the Preliminary Approval Order, and other case documents on a website identified in the Class Notice: www.kellersettlements.com.

51.      By March 26, 2018, Class Counsel Cohen Milstein posted the Settlement Agreement, the Class Notice, the Preliminary Approval Motion, the Preliminary Approval Order, and other case documents on the second website identified in the Class Notice: www.cohenmilstein.com/presence-settlement.

52.      Pursuant to the Preliminary Approval Order, Class Notice was mailed on March 23, 2018, to 50,410 Settlement Class Members. *See* Affidavit of Jose C. Fraga ¶ 8, Exhibit B.

53.      As of May 22, 2018, Class Notice had been mailed to a total of 52,918 Settlement Class Members. This number includes 2,508 Class Notices that were re-mailed upon receipt of an updated address. *Id.* ¶ 9.

54.     As of May 21, 2018, Class Counsel had received and responded to over 530 e-mails and phone inquiries from Settlement Class Members.

55.     As of May 21, 2018, one document styled as a "Written Objection" and four inquiry letters have been filed with the Court.  Class Counsel has contacted or attempted to contact the authors of these documents and believes they do not substantively state objections to the Settlement.  *See* Declaration of Christopher Graver in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Graver Decl."), Exhibit F.  If there are any objections, Class Counsel will address them in their reply in support of Final Approval.

## II.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

56.     With respect to the statements in this Section, and Section III, *infra*, the declarants each make their declarations with respect to the attorneys' fees and expenses incurred by their respective law firms only, and not as to those of each other's law firms.  A true and correct copy of the firm résumé detailing the experience of Keller Rohrback in ERISA cases and church plan cases is attached hereto as Exhibit E-1.  A true and correct copy of the firm résumé detailing the experience of Cohen Milstein in ERISA cases and church plan cases is attached hereto as Exhibit E-2.

57.     Pursuant to the Settlement Agreement, the Parties have agreed that Plaintiffs will seek no more than $1,550,000 in a petition for attorneys' fees and reimbursement of expenses. Exhibit A § 8.1.5.  The Parties have also agreed that Plaintiffs will seek Incentive Awards of $8,000 each for Named Plaintiffs Carver, Eslinger, Jenkins, and Phillips, to be paid out of the $1,550,000 award request.  Payment will be made by Ascension Health in addition to the guarantee and other provisions of the Settlement.  *Id.*

58.     In total, Plaintiffs' Counsel expended 3129.65 professional hours litigating and settling this Action.  This includes time spent on the following: (1) researching the law bearing on the church plan exemption and concluding large hospital systems were not entitled to the exemption, and investigating the non-profit hospital business as it bore on liability and defenses; (2) investigating the facts of this case and drafting and filing the Complaint; (3) reviewing thousands of pages of documents, including publicly available information about the Plans and documents provided by Defendants in discovery; (4) conducting factual and legal research; (5) drafting and filing amended complaints; (6) conducting and responding to document requests and interrogatories; (7) negotiating and crafting a comprehensive Settlement Agreement after arm's-length negotiations overseen by a third-party mediator; (8) successfully moving for preliminary approval of the Settlement, both initially and as revised; (9) drafting the Class Notice materials and posting them on two dedicated settlement websites; and (10) individually responding to over 530 inquiries of Settlement Class Members concerning the Class Notice, the Settlement, and this Action.

59.     As this Action moves ahead through final approval proceedings, Class Counsel expects that they will continue to devote at least another 100 hours to this matter.  Indeed, Class Counsel still needs to: (1) prepare for and attend the final approval hearing; (2) research, draft, and prepare any additional submissions requested by the Court; (3) assist Settlement Class Members with their inquiries; (4) respond to any objections that may arise; and (5) handle any resulting appeal.

60.     The work already completed in this matter represents 2534.35 hours from professionals at Keller Rohrback, 483 hours from professionals at Cohen Milstein, and 112.30 hours from professionals at Stephan Zouras.  These time and expense reports for our respective

firms are summarized herein and attached hereto as Exhibits E-3 (Keller Rohrback fees and expenses); E-4 (Cohen Milstein fees and expenses); and E-5 (Declaration of James B. Zouras in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Zouras Declaration")).

61.     All Plaintiffs' Counsel kept files contemporaneously and documented all time spent developing, investigating, and prosecuting the claims in this case. *See* Exhibits E-3, E-4, E-5.

62.     The 3129.65 hours Plaintiffs' Counsel collectively expended on this Action were reasonably spent, especially given the high-stakes, high-risk nature of this litigation.

63.     At Plaintiffs' Counsel's standard hourly rates, which are comparable to those of other class action attorneys, Plaintiffs' Counsel's total lodestar for this case comes to $1,987,387.25.

64.     The $1,473,268.25 that Plaintiffs request in attorneys' fees for Plaintiffs' Counsel therefore represents a significant discount of 26% from their standard hourly rates, resulting in a multiplier of 0.74.

65.     Work was allocated across the firms to maximize efficiency.  Class Counsel distributed work to minimize the fees in this Action; thus, to the extent practicable, senior attorneys did not do the work that could be accomplished by more junior attorneys, and attorneys did not do the work that could be completed by paralegals.  Class Counsel assigned tasks depending on a number of considerations, with the goal of minimizing duplication of effort.  If Class Counsel had not undertaken these efforts, the lodestar for this case would have been higher.

66.     Presenting an ERISA case of this type on the merits invites substantial risks, expense, and delay.  Defendants have defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do so through trial and on further appeal if necessary.  Defendants' counsel is highly experienced in defending complex ERISA class actions, which further required sufficient devotion of time and resources to this case.

67.     Class Counsel have served in leadership positions in the past, and the hours spent on this Action are consistent with Class Counsel's experience in those cases.

68.     The schedule attached hereto as Exhibit E-3 is a summary of time spent by Keller Rohrback attorneys and other professional support staff in this case and the lodestar calculation based on the firm's current billing rates from the inception of the case through May 21, 2018.

69.     The hourly rates charged by Keller Rohrback in this case have been reflected in fee awards in other judicial settlement hearings and are consistent with rates approved in this Circuit and others in recent class action cases.

70.     The schedule attached hereto as Exhibit E-4 is a summary of time spent by Cohen Milstein attorneys and other professional support staff in this litigation and the lodestar calculation based on the firm's current billing rates from the development and inception of this case through May 21, 2018.

71.     The hourly rates charged by Cohen Milstein in this case have been reflected in fee awards in other judicial settlement hearings and are consistent with rates approved in this Circuit and others in recent class action cases.

72.     The Zouras Declaration, Exhibit E-5, contains a summary of time spent by Stephan Zouras attorneys and the lodestar calculation based on the firm's average billing rates from the development and inception of this case through May 21, 2018.  The hourly rates

charged by Stephan Zouras in this case are commensurate with rates approved in other judicial settlement hearings and are consistent with rates approved in this Circuit and others in recent class action cases.

73.     The lodestar figures provided above are based on each given firm's current billing rates and contemporaneous time records regularly prepared and maintained by the respective firms.  Expense items are billed separately without markup, and such charges are not duplicated in a firm's billing rates.

74.     Keller Rohrback's rates range from $205 to $995 per hour for 2534.5 hours performed; Cohen Milstein's rates range from $290 to $910 per hour for 483 hours performed; and Stephan Zouras' rates range from $175 to $675 per hour for 112.30 hours performed.  *See* Exhibits E-3, E-4, E-5 ¶ 4.  The lower end represents rates charged by support staff such as paralegals, while the higher end represents rates charged by the senior partners.

75.     These rates are reasonable given the complexity of this litigation, which, as described above, involved nuanced factual and legal issues against the backdrop of a fast-developing and hotly disputed area of the law.

76.     The rates are justified when considering the host of risks presented to Plaintiffs in this contingent litigation.  While this case was progressing, the threshold issue of whether a church plan must be established by a church reached, and was decided by, the Supreme Court. The first settlement negotiation in this case took place after the Supreme Court decided the appeal.  Plaintiffs recognize both that the Supreme Court's *Advocate* ruling had a negative impact on Plaintiffs' case, and also that post-*Advocate*, additional factual and legal issues remain in this litigation, including how the Supreme Court's ruling will apply to the specific facts of this case; class certification; liability; and damages. Continued litigation of this matter would

necessitate additional formal document discovery (including document discovery and many depositions), and extensive motion practice. Further, the Tenth Circuit issued an opinion in a separate but similar church plan case, *Medina*, holding that the plan at issue qualified as a church plan because it met the requirements of 29 U.S.C. § 1002(33)(C)(i). While *Medina* is not binding on the Court, it nevertheless demonstrates the risks present in litigation that this Settlement avoids. Additionally, trial preparation would require great effort, both by the Parties and the Court.

77. Class Counsel have been awarded fees based upon similar hourly rates in other church plan cases. Recently, Keller Rohrback and Cohen Milstein submitted fee petitions in cases in which they reported hourly rates at amounts comparable to those sought herein, and the courts approved the fee awards reflecting those rates. *See* Order and Final Judgment ¶ 21, *Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*, No. 16-02740 (D.N.J. Mar. 6, 2018), ECF No. 116; Order and Final Judgment ¶ 21, *In re Wheaton Franciscan ERISA Litig.*, No. 16-04232 (N.D. Ill. Jan. 16, 2018), ECF No. 107; Order and Final Judgment ¶ 9, *Hodges v. Bon Secours Health Sys., Inc.*, No. 16-01079 (D. Md. Dec. 21, 2017), ECF No. 117; Order and Final Judgment ¶ 21, *Butler v. Holy Cross Hosp.*, No. 16-05907 (N.D. Ill. June 29, 2017), ECF No. 52; Order and Final Judgment ¶ 10, *Lann v. Trinity Health Corp.*, No. 14-02237 (D. Md. May 31, 2017), ECF No. 111; Order Finally Approving Class Settlement ¶ 10, *Griffith v. Providence Health & Servs.*, No. 14-01720 (W.D. Wash. Mar. 21, 2017), ECF No. 69; Order and Final Judgment ¶ 8, *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich. Sept. 17, 2015), ECF No. 115.

78. District courts have also granted final approval and awarded fees to Keller Rohrback based on the firm's then-current rates in other ERISA cases. *See, e.g.*, Order

Awarding Attorneys' Fees, Service Awards, and Reimbursement of Litigation Expenses ¶ 5, *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig*., MDL No. 2335 (S.D.N.Y. Sept. 24, 2015), ECF No. 637 (awarding then-current attorneys' rates between $475 and $895); Order Approving Attorney's Fees, Expenses and Incentive Awards ¶ 5, *Diebold v. N. Tr. Invs., N.A.*, No. 09-01934 (N.D. Ill. Aug. 10, 2015), ECF No. 285 (awarding then-current attorneys' rates between $395 and $895); Order and Final Judgment ¶ 8, *In re Bear Stearns Cos. ERISA Litig*., No. 08-02804 (S.D.N.Y. Sept. 20, 2012), ECF No. 163 (awarding then-current attorneys' rates between $295 and $785); Order Granting Plaintiffs' Motion for Final Approval ¶ 10, *In re Ford Motor Co. ERISA Litig.,* No. 06-11718 (E.D. Mich. Feb. 15, 2011), ECF No. 291 (awarding then-current attorneys' rates between $331 and $740); Order Granting Lead ERISA Counsel's Motion for Award of Attorneys' Fees and Expenses at 2, *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-01725 (E.D. Mich. May 12, 2010), ECF No. 493 (awarding then-current attorneys' rates between $300 and $675*)*; Order Granting Lead Counsel's Application for Attorney's Fees and Reimbursement of Litigation Expenses ¶ 6, *In re State St. Bank & Tr. Co. ERISA Litig*., No. 07-08488 (S.D.N.Y. Feb. 19, 2010), ECF No. 191 (awarding then-current attorneys' rates between $300 and $740); Order and Final Judgment ¶ 9, *In re CMS Energy ERISA Litig*., No. 02-72834 (E.D. Mich. June 27, 2006), ECF No. 226 (awarding then-current rates between $300 and $640).

79.    District courts have also granted final approval and awarded fees to Cohen Milstein based on the firm's then-current rates in many ERISA and other class actions. *See, e.g.*, Order on Lead Counsel's Motion for an Award of Attorney's Fees ¶ 6, *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13-02111 (N.D. Ill. Nov. 1, 2016), ECF No. 183 (approving then-current attorneys' rates between $475 and $945 on a lodestar cross-check); Memorandum

Opinion and Order at 6-7, 10, *Severstal Wheeling, Inc. Ret. Comm. v. WPN Corp.*, No. 10-00954 (S.D.N.Y. Apr. 21, 2016), ECF No. 300 (awarding then-current attorneys' rates between $450 and $665); Order Granting Plaintiffs' Motion for Final Approval ¶ 24, *Dooley v. Saxton*, No. 12-01207 (D. Or. Oct. 19, 2015), ECF No. 187 (awarding then-current attorneys' rates between $375 and $790); *Chesemore v. All. Holdings, Inc.*, No. 09-cv-413-wmc, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014) (awarding then-current attorneys' rates between $395 and $895); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008-09 (D. Colo. 2014) (awarding then-current attorneys' rates between $395 and $570); Order Granting Final Approval of Class Action Settlement at 29-32, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 12-05125 (C.D. Cal. Dec. 5, 2013), ECF No. 320 (awarding attorneys' rates between $330 to $835); Order and Final Judgment Granting Private Plaintiffs' Counsels' Motion for Award of Attorneys' Fees ¶ 4, *In re Beacon Assocs. Litig.*, No. 09-00777 (S.D.N.Y. May 29, 2013), ECF No. 485 (awarding attorneys' rates between $295 and $895); Order Granting Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ¶ 3, *Hughes v. Huron Consulting Grp. Inc.*, No. 09-04734 (N.D. Ill. May 6, 2011), ECF No. 145-1 (awarding then-current attorneys' rates between $475 and $795); Order, *Redington v. Goodyear Tire & Rubber Co.*, No. 07-01999 (N.D. Ohio Sept. 22, 2008), ECF No. 113 (awarding then-current attorneys' rates between $575 and $625).

80.     Additionally, Class Counsel's rates are on a par with, or even below, other plaintiffs' firms performing similar work. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding a lodestar cross-check supports the reasonableness of Class Counsel's requested fees and approving partner billing rates ranging from $275 to $1600); Order

Awarding Attorneys' Fees and Litigation Expenses at 2-3, *La. Firefighters Ret. Sys. v. N. Tr. Invs., N.A.*, No. 09-07203 (N.D. Ill. Aug. 5, 2015), ECF No. 499 (approving fee award, including rates for attorneys ranging from $340 to $975 per hour); Order Awarding Attorneys' Fees and Expenses ¶ 3, *In re Fannie Mae 2008 Sec. Litig.*, No. 08-07831 (S.D.N.Y. Mar. 3, 2015), ECF No. 552 (approving rates for attorneys ranging from $300 to $975 per hour); Order Awarding Attorneys' Fees and Expenses ¶ 3, *In re Massey Energy Co. Sec. Litig.*, No. 10-00689 (S.D. W.Va. June 4, 2014), ECF No. 203 (approving fees for attorneys ranging from $275 to $975 per hour).

81.     Class Counsel's rates are also comparable to those of defense firms that are defending church plan cases.  The National Law Journal's annual survey of law firm billing rates in 2014 shows that the 2014 billing rates for attorneys at Proskauer Rose LLP, defense counsel in this case, ranged from $295 to $950.[9]  Similarly, the 2014 billing rates for attorneys at Arnold & Porter LLP, defense counsel in the *Advocate* case at the Supreme Court, ranged from $345 to $950.[10]

82.     The fee agreements entered into between Class Counsel and Named Plaintiffs Eslinger, Jenkins, and Phillips provide that no fee requested by Class Counsel will exceed one-third of the value of the recovery.  The fee agreement entered into with Named Plaintiff Carver and Stephan Zouras provides that no fee request will exceed a reasonable percentage of the recovery or its lodestar (plus a multiplier if permitted).

---

[9] *See Billing Rates Across the Country: The National Law Journal's Annual Survey of Law Firm Billing Rates for Partners & Associates*, Nat'l L. J. (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?slreturn=20150704133227.
[10] *See Billing Rates at the Nation's Priciest Law Firms*, Nat'l L. J. (Jan. 5, 2015), http://www.nationallawjournal.com/id=1202713889426?slreturn=20150703191412.

83. At this time, no Settlement Class Members have objected to the request for attorneys' fees and reimbursement of expenses.

### III. PLAINTIFFS' COUNSEL'S EXPENSES

84. Plaintiffs' Counsel have advanced or incurred a total of $44,731.75 in expenses to date. Summaries of each firms' expenses are attached hereto as Exhibits E-3 (Keller Rohrback's fees and expenses), E-4 (Cohen Milstein's fees and expenses), and E-5 (Stephan Zouras' fees and expenses). The expenses incurred in developing and prosecuting this litigation are commercially reasonable and are reflected on the books and records of each firm. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred.

85. The categories of expenses for which Plaintiffs' Counsel seek reimbursement are the type of expenses routinely charged to hourly clients and should therefore be reimbursed here. These costs included, *inter alia*: filing fees; printing costs; travel expenses for court appearances and mediation; copying, delivery and telecommunications charges; computer-based research and database services; mediator's charges; and similar litigation expenses. These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Plaintiffs' Counsel maintains appropriate back-up documentation for each expense. These expenses incurred were necessary to secure the resolution of this litigation.

86. On a firm-by-firm basis, the expenses incurred are as follows:

| Firm | Expenses |
|---|---|
| Keller Rohrback L.L.P. | $ 33,531.61 |
| Cohen Milstein Sellers & Toll PLLC | $ 10,131.12 |
| Stephan Zouras LLP | $ 1,069.02 |
| **TOTAL** | **$ 44,731.75** |

87. These expenses were advanced with no guarantee of recovery. As a result, Plaintiffs' Counsel had a strong incentive to keep costs to a reasonable level and did so.

## IV. INCENTIVE AWARDS TO NAMED PLAINTIFFS

88. Class Counsel also wish to note the efforts made on behalf of the Settlement Class by the four Named Plaintiffs—Leslee R. Carver, Diane Eslinger, Lisa Jenkins, and Susan L. Phillips.

89. The Named Plaintiffs have actively worked with Class Counsel throughout the litigation. They collected documents relating to their employment at Presence and their participation in the Plans; reviewed drafts of the pleadings and approved the filing of the final version; stayed abreast of the filings and settlement negotiations; and were involved in the mediation and ultimate settlement of this litigation. The Named Plaintiffs communicated with Class Counsel throughout this lawsuit. They contributed time that could otherwise have been devoted to work and family obligations, and did so in order to help the members of the Settlement Class secure relief.

90. The Class Notice sent to the Settlement Class Members disclosed that Class Counsel would seek Incentive Awards for these Plaintiffs, to be taken from the $1,550,000 award described in the Settlement Agreement. Exhibit A § 8.1.5. To date, no objections to the Incentive Awards have been received.

91. Class Counsel believe that payment of Incentive Awards to these Plaintiffs is justified in this Action, and that the amounts are fair and reasonable in light of the burdens Plaintiffs undertook and the benefits that Plaintiffs helped achieve for the Settlement Class. Class Counsel accordingly asks the Court to recognize the efforts of Named Plaintiffs by awarding Incentive Awards in the amount of $8,000 each.

## V.    CONCLUSION

92.    For the reasons discussed herein, Class Counsel has concluded that the Settlement is a fair, reasonable, and adequate resolution of the claims against Defendants in this ERISA class action.  The requested attorneys' fees, reimbursement of expenses, and Incentive Awards to the Named Plaintiffs are warranted as well.  Named Plaintiffs and Class Counsel respectfully request that the Court approve: (1) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class; and (2) Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and for Incentive Awards to the Named Plaintiffs, and enter the Final Order and Judgment, Exhibit L, in its entirety.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of May, 2018, in Seattle, Washington.

By: */s/ Lynn Lincoln Sarko*
    Lynn Lincoln Sarko
    **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3200
    Seattle, WA  98101-3052
    Tel.: (206) 623-1900
    Fax: (206) 623-3384
    lsarko@kellerrohrback.com

Executed this 25th day of May, 2018, in Washington, D.C.

By: */s/ Mary J. Bortscheller*
    Mary J. Bortscheller, ARDC #6304457
    **COHEN MILSTEIN SELLERS
     & TOLL PLLC**
    1100 New York Avenue, N.W.
    Suite 500, West Tower
    Washington, D.C.  20005
    Tel: (202) 408-4600
    Fax: (202) 408-4699
    mbortscheller@cohenmilstein.com

    *Class Counsel*

# EXHIBIT E-1

**TO**

**JOINT DECLARATION OF LYNN LINCOLN SARKO
AND MARY J. BORTSCHELLER IN SUPPORT OF (1)
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS; AND (2)
PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES, AND FOR INCENTIVE AWARDS TO
NAMED PLAINTIFFS**

**(KELLER ROHRBACK L.L.P. RÉSUMÉ)**



ERISA LITIGATION

# ABOUT KELLER ROHRBACK



## Devoted to Justice

*"[Keller Rohrback] has performed an important public service in this action and has done so efficiently and with integrity…[Keller Rohrback] has also worked creatively and diligently to obtain a settlement from WorldCom in the context of complex and difficult legal questions…" In re WorldCom, Inc. ERISA Litigation,* No. 02-4816 (S.D.N.Y.) (Cote, J.).

**Keller Rohrback's lawyers excel by being prepared and persuasive.** It's a simple formula that combines our strengths: outstanding writing and courtroom skills, together with unparalleled passion and integrity. We have recovered billions of dollars for our clients, and have served as lead counsel in many prominent cases. Our lawyers are widely recognized as leaders in their fields who have dedicated their careers to combating corporate fraud and misconduct. We have the talent as well as the financial resources to litigate against Fortune 500 companies—and do so every day.



## Who We Are

Keller Rohrback's Complex Litigation Group has a national reputation as the go-to plaintiff's firm for large-scale, complex individual and class action cases. We represent employees and retirees, public and private investors, businesses, governments, and individuals in a wide range of actions, including fiduciary breach, securities fraud, manipulation, and other illegal practices relating to financial services and products, ERISA, antitrust, whistleblower, environmental, and product liability cases. Our approach is straightforward—we represent clients who have been harmed by conduct that is wrong, and we litigate with passion and integrity to obtain the best results possible. Every case is different, but we win for the same reason: we are persuasive. When you hire us, you hire smart, creative lawyers who are skilled in the courtroom and in negotiations.

Founded in 1919, Keller Rohrback's seventy-three attorneys and 100 staff members are based in six offices across the country in Seattle, Oakland, Santa Barbara, Phoenix, and New York. Over the past century, our firm has built a distinguished reputation by providing top-notch representation. We offer exceptional service and a comprehensive understanding of federal and state law nationwide. We also are well known for our abilities to collaborate with co-counsel to achieve outstanding results— essential skills in large-scale cases in which several firms represent plaintiffs. We pride ourselves on our reputation for working smartly with opposing counsel, and we are comfortable and experienced in coordinating high-stakes cases with simultaneous state and federal government investigations.

We have won verdicts in state and federal courts throughout the nation and have obtained judgments and settlements on behalf of clients in excess of $23.25 billion. Courts around the country have praised our work, and we are regularly appointed lead counsel in nationally prominent class action cases. Our work has had far-reaching impacts for our clients in a variety of settings and industries, creating a better, more accountable society.

# EMPLOYEE BENEFITS



## ATTORNEYS

Lynn Lincoln Sarko
Laurie Ashton
Gretchen Freeman Cappio
T. David Copley
Alison Gaffney
Laura R. Gerber
Matthew Gerend
Gary Gotto
Benjamin Gould
Christopher Graver
Dean N. Kawamoto
Ron Kilgard
David Ko
Tanya Korkhov
Cari Campen Laufenberg
Elizabeth A. Leland
Jeffrey Lewis
Derek Loeser
Ian Mensher
Rachel Morowitz
Gretchen Obrist
David Preminger
Erin Riley
Karin B. Swope
Havila C. Unrein
Amy Williams-Derry
Laura Zanzig-Wong

**Keller Rohrback L.L.P. is a pioneer in litigation under the Employee Retirement Income Security Act of 1974 (ERISA), recovering to date over two billion dollars of retirement and other benefits for our clients.** And this is not merely a matter of money, as important as that is. Keller Rohrback's lawyers have worked tirelessly to shape ERISA law, so that the statute protects the interests of participants and beneficiaries, rather than their employers and service providers. We have seen time and again fiduciaries attempt to use ERISA to thwart participants' interests, whether in the design of 401(k) plans, the structuring of Employee Stock Ownership Plans (ESOPs), the investments in defined benefit plans, or the attempt to read ERISA's exceptions broadly to favor the employers' and service providers' interests, not the participants' interests. We have successfully opposed all these efforts in scores of cases.

Keller Rohrback attorneys have done this since the statute was enacted in 1974. In that year, David Preminger, of our New York office, wrote two of the first scholarly articles on ERISA. Jeff Lewis, across the country and now in our Oakland office, began practice the year after ERISA was adopted and has been representing plaintiffs in pension and other benefit matters ever since. He is also the co-chair of the Board of Senior Editors of Employee Benefits Law, the major ERISA practitioner's treatise, used daily by benefits lawyers throughout the country. David and Jeff are only two of our ERISA lawyers, albeit the most senior. We have a very deep bench in ERISA matters. Lawyers at Keller Rohrback have testified before Congress, served as editors of numerous employee benefits books and manuals, and written scholarly ERISA articles, amicus briefs, and comments to regulatory agencies overseeing ERISA plans. We frequently are invited to make presentations at national legal education seminars regarding employee benefit class actions and ERISA. We have also served as fiduciaries and mediators.

 We are involved in all aspects of ERISA litigation, from administrative reviews to district court trials to circuit court appeals to handling cases and filing amicus briefs in the U.S. Supreme Court. We are proud of our history, but we don't rest on our laurels, we listen carefully to employees' stories and craft cases that enforce ERISA's longstanding duties—which are the highest known to the law.

Attorneys at Keller Rohrback have pioneered application of ERISA to the evolving manifestations of waste and abuse affecting retirement savings nationwide. For example, Gary Gotto and Ron Kilgard brought the first successful defined contribution company stock case, *Whetman v. IKON Office Solutions*, spawning an entire area of litigation that resulted in billions of dollars being recovered around the country for employees and their retirement plans. Keller Rohrback's Managing Partner and Complex Litigation Group Leader, Lynn Sarko, along with Derek Loeser, Erin Riley, and many others, pushed this area of the law forward with the *WorldCom* and *Enron* ERISA class actions—the latter of which resulted in the largest settlement in such a case, at over $264 million. More recently, we have led the charge with private ESOP, church plan, and our 401k plan cases challenging excessive and conflicted fees. We have even represented public employees in successfully striking down as unconstitutional cut-backs to their retirement benefits.

# EMPLOYEE BENEFITS



Keller Rohrback is routinely appointed lead or co-lead counsel in major employee benefit class actions. Our work in this complex and rapidly developing area has been praised by our clients, our co-counsel, and federal courts throughout the country. Keller Rohrback has excelled in managing complex employee benefits cases by developing a deep understanding of employee benefits law and by drawing on our attorneys' experience in numerous related practice areas, including securities, accounting, corporate, insurance coverage, bankruptcy, financial institution regulation, mergers and acquisitions, contracts, employment law, executive compensation, professional malpractice, constitutional law, and class action law.

We are proud to represent employees in connection with their retirement and other benefits. The following pages summarize the breadth of our expertise and experience in these areas.



# EMPLOYEE BENEFITS



## *PENSION PLANS*

**Congress enacted ERISA in light of several highly publicized failures of private pension plans which left long-term employees at the end of their careers without their promised benefits.** ERISA "seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). Attorneys at Keller Rohrback have filed numerous cases on behalf of ERISA plan participants in order to make sure that the fiduciaries manage the plans' assets prudently and that pensioners and their beneficiaries receive the benefits that they were promised. Keller Rohrback further supports ERISA pension plan participants and beneficiaries through writing



amicus briefs related to pension issues. *E.g.*, Brief for The Pension Rights Center as Amicus Curiae in Support of Respondent, *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.); Brief for the Pension Rights Center as Amicus Curiae in Support of Petitioner, *Pundt v. Verizon Communications, Inc.*, No. 15-785 (U.S.).

## REPRESENTATIVE CASES

### *Mertens v. Kaiser Steel Retirement Plan,* 829 F. Supp. 1158 (N.D. Cal.)

A firm attorney served as co-counsel for a putative class of retirees of Kaiser Steel whose benefits were drastically reduced when the plan was terminated in an underfunded position. Plaintiff alleged that following an outside takeover of Kaiser, the company systematically underfunded the company's pension plan so that the new owners could instead take profits from the company. The lawsuit also alleged that the Kaiser retirement plan's actuaries also contributed to the underfunding by committing malpractice. The court held that the malpractice claims against the actuaries were not preempted by ERISA. The case ultimately settled, resulting in the payments of millions of dollars to the class members.

### *Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600 (9th Cir.)

A firm attorney served as co-counsel for a class of pension plan retirees in a case challenging the plan's failure to pay retroactive benefits to retirees who were eligible for full benefits under the plan, but did not immediately apply for their benefits. The U.S. court of appeals' opinion reversed the district court's judgment for defendants and resulted in the payment of millions of dollars in retroactive benefits to class members. The case also established the principle that it is an abuse of discretion for a plan fiduciary to interpret a plan contrary to its plain meaning.

### *McDaniel v. National Shopmen Pension Fund,* 889 F.2d 804 (9th Cir.)

A firm attorney served as co-counsel for a class of pension plan participants in a case challenging the plan's reduction in vested benefits based on the fact that their employer had withdrawn from the plan. The Ninth Circuit held that the reduction was improper and benefits were restored to the participants.

### *Cleary v. Retirement Plan for Employees of Northern Montana Hospital*, No. 16-00061 (D. Mont.)

Keller Rohrback brought this class action on behalf of the participants in, and/or beneficiaries of, the Retirement Plan for Employees of Northern Montana Hospital. The complaint alleges that the members of these classes have been, or will be denied, certain retirement benefits to which they are entitled under the terms of the Plan and/or ERISA with respect to vesting and accrual of benefits. The complaint also alleges that Defendants failed to comply with ERISA's rules for claims procedures.

# EMPLOYEE BENEFITS



## PENSION PLANS

### *Judy Hunter v. Berkshire Hathaway, Inc.,* No. 14-663 (N.D. Tex.)

Keller Rohrback serves as Co-Lead Counsel in this class action filed on behalf of the participants and beneficiaries of two ERISA plans: a pension plan and a 401(k) plan. The complaint alleges that despite explicit plan language prohibiting the reduction of future benefits, the corporate parent company caused its subsidiary to reduce those benefits. The trial court initially granted Berkshire Hathaway's motion to dismiss, but on appeal Keller Rohrback persuaded the United States Court of Appeals for the Fifth Circuit to reverse and remand. The case is currently headed towards trial.

### *Fletcher v. ConvergEx,* No. 13-9150 (S.D.N.Y.)

Keller Rohrback serves as co-counsel in this lawsuit filed in the Southern District of New York that alleges Defendants violated ERISA by "double-charging" for transition management and brokerage services. Defendants funneled trade orders to an offshore subsidiary broker located in Bermuda, which created a "spread" between the actual price and the reported price by adding mark-ups/mark downs. While the reported price was confirmed with customers, the actual prices were undisclosed and unauthorized additional compensation. After the trial court mistakenly dismissed the case, the United States Court of Appeals for the Second Circuit reversed and reinstated plaintiffs' claims. Defendant's Petition for Certiorari to the United States Supreme Court, which we opposed, was denied. The case is back in front of the district court.

### *Monper v. Boeing,* No. 13-1569 (W.D. Wash.)

Keller Rohrback served as Counsel in this lawsuit that alleged Defendants violated ERISA by misrepresenting to plaintiffs that their pension benefit accruals would not change if they transferred their work locations from California to Washington.

### *In re Bakery & Confectionery Union & Industry Int'l Pension Fund Pension Plan,* No. 11-1471 (S.D.N.Y.)

Keller Rohrback and co-counsel filed this action alleging that an amendment to the Bakery & Confectionery Union & Industrial Pension Fund Pension Plan violated ERISA's anti-cutback provisions. Plaintiffs prevailed at both the district court and appellate levels, and Defendants implemented adjustments to reinstate the benefits due to eligible employees.

### *Palmason v. Weyerhaeuser,* No. 11-695 (W.D. Wash.)

Keller Rohrback and co-counsel filed this action alleging that Weyerhaeuser and other fiduciaries caused its pension plan to engage in a risky investment strategy involving alternative investments and derivatives, causing the Plans' master trust to become underfunded. A settlement was reached for injunctive relief on behalf of the Plans' participants and beneficiaries.

### *Buus v. WaMu Pension Plan,* No. 07-903 (W.D. Wash.)

Keller Rohrback served as Lead Counsel in this class action on behalf of participants and beneficiaries of Washington Mutual's defined benefit pension plan whose benefit accrual was frozen under the existing pension formula and replaced with a new "cash balance plan" accrual system that reduced the rate of future benefit accrual. The complaint alleged that participants were not given proper notice of these reductions. In conjunction with Washington Mutual's bankruptcy proceedings, a settlement of $20 million was approved.

# EMPLOYEE BENEFITS



## PENSION PLANS: CHURCH PLANS

**For certain employees participating in pension plans, ERISA does not apply.** If a plan is not subject to ERISA, there is no federal law requiring a sponsor to keep funding the plan or requiring participants to get timely and accurate information about the plan, and there is no pension benefit insurance through the Pension Benefit Guaranty Corporation (PBGC) if the plan can't make payments. One of the few kinds of plans exempt from ERISA is the "church plan." For years, Keller Rohrback has been representing employees in federal lawsuits against large healthcare companies that claim their pension plans are "church plans." The employees in the plans all work for large healthcare organizations, hospital systems, and their affiliates.



These healthcare organizations are non-profit corporations, but they often have assets on par with Fortune 100 companies. The lawsuits ask the courts to determine that these pension plans are not "church plans" at all, force the employers to properly fund the plans, and give their employees the safety and security of ERISA protections.

## REPRESENTATIVE CASES

### Griffith v. Providence Health & Services, No. 14-01720 (W.D. Wash.)

Keller Rohrback served as Class Counsel in this lawsuit that alleged Defendants' claim that the Providence Health & Services Cash Balance Retirement Plan (the "Plan") was exempt from ERISA's protections because it was a "church plan" was improper. In 2017, the Court granted final approval of a class settlement in the amount of $351.9 million, which includes a payment of $350 million to the Plan and a guarantee that the Plan's trust will have sufficient assets to pay benefits as they come due; and additional administrative protections and other equitable relief for Plan participants.

### Hodges v. Bon Secours Health System, Inc., No. 16-01079 (D. Md.)

Keller Rohrback served as co-counsel in this lawsuit that alleged that Defendants' claim that the seven defined benefit pension plans of Bon Secours Health System, Inc. were exempt from ERISA's protections because they were "church plan(s)" was improper. In 2017, the Court granted final approval of a settlement providing for equitable relief, plus payment of over $98 million to the Plans.

### Lann v. Trinity Health Corporation, No. 14-02237 (D. Md.)

Keller Rohrback served as Class Counsel in this lawsuit that alleged that Defendants Trinity Health Corporation and Catholic Health East improperly claimed that their defined benefit pension plans were exempt from ERISA's protections because they were "church plans." In 2017, the Court granted final approval of a settlement providing for equitable relief, plus payment of over $76 million to the Plan.

# EMPLOYEE BENEFITS



## *PENSION PLANS: CHURCH PLANS*

### *Garbaccio v. St. Joseph's Hospital & Medical Center & Subsidiaries,* No. 16-02740 (D.N.J.)

Keller Rohrback served as Class Counsel in this lawsuit that alleged Defendants' claim that the St. Joseph's Hospital and Medical Center Plan ("the Plan") was exempt from ERISA's protections because it was a "church plan" was improper. On March 6, 2018, the Court granted final approval of a settlement providing for equitable relief, plus payment of over $42.5 million to the Plan.

### *In re Wheaton Franciscan ERISA Litigation,* No. 16-04232 (N.D. Ill.)

Keller Rohrback served as Class Counsel in this lawsuit that alleged Defendants' claim that the Wheaton Franciscan System Retirement Plan (the "Plan") was exempt from ERISA's protections because it was a "church plan" was improper. On January 16, 2018, the Court granted final approval of a settlement providing for equitable relief, plus a guarantee payment of the first $29.5 million of benefits that are distributable from the Plan to Class Members in the event trust assets attributable to the Plan become insufficient to pay such benefits.

### *Carver v. Presence Health Network,* No. 15-02905 (N.D. Ill.)

Keller Rohrback serves as Class Counsel in this lawsuit. Plaintiffs allege that Defendants breached its fiduciary duties and violated ERISA, with respect to the Plans. Plaintiffs claim that the Plans were improperly operated as "church plans" exempt from the requirements imposed by ERISA. On March 8, 2018, the Court granted preliminary approval of a settlement providing for equitable relief, plus a guarantee of payment of the first $20 million of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits.

### *Stapleton v. Advocate Health Care Network,* No. 14-01873 (N.D. Ill.)

Keller Rohrback serves as Class Counsel in this lawsuit that alleges that Defendants' claim that the Advocate Health Care Network Pension Plan (the "Plan") is exempt from ERISA's protections because it was a "church plan" is improper. On February 26, 2018, the Court granted preliminary approval of a settlement providing for equitable relief, plus a guarantee that the Plan trust will have sufficient funds to pay the level of accrued benefits stated in the Plan for the period of ten (10) years.

## OTHER CURRENT CHURCH PLAN CASES

*Rollins v. Dignity Health*, No. 13-01450 (N.D. Cal.)

*Kaplan v. Saint Peter's Healthcare, System,* No. 13-02941 (D.N.J.)

*Owens v. Saint Anthony Medical Center,* Inc., No. 14-04068 (N.D. Ill.)

*Cappello v. Franciscan Alliance, Inc.*, No. 16-00290 (N.D. Ind.)

*Feather v. SSM Health,* No. 16-00393 (S.D. Ill.)

*In re Mercy Health ERISA Litigation*, No. 16-00441 (S.D. Ohio)

*Smith v. OSF Healthcare System*, No. 16-00467 (S.D. Ill.)

*Sanzone v. Mercy Health,* No. 16-00923 (E.D. Mo.)

*Holcomb v. Hospital Sisters Health System*, No. 16-03282 (C.D. Ill.)

# EMPLOYEE BENEFITS



## 401(K) & SAVINGS PLANS: COMPANY STOCK & PUBLIC ESOPs

**ERISA sets minimum standards for the management of employer-sponsored retirement and health benefit plans.** Workers and retirees across America depend on their company-sponsored benefit plans to provide them with health insurance and financial security after retirement. Keller Rohrback is a pioneer in ensuring that ERISA's fiduciary duties of prudence and loyalty apply to all plan investment options, including company stock. Ensuring fiduciary responsibility over company stock funds is of paramount importance, given that an employee's livelihood is also tied to the well-being of their employer—thus, if an employer's stock collapses, employees can lose their jobs at the same time that their retirement savings is decimated.

Keller Rohrback's work in this area resulted in numerous pivotal judicial opinions. *E.g., In re WorldCom, Inc*., 263 F. Supp. 2d 745 (S.D.N.Y.); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511 (S.D. Tex.); and *In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir.). Additionally, Keller Rohrback has further supported this area of law through presentations at ERISA conferences, as well as amicus briefs. *E.g.*, Brief for Law Professors as Amici Curiae in Support of the Respondents, *Fifth Third Bancorp v. Dudenhoeffer*, No. 12-751 (U.S.).

## REPRESENTATIVE CASES

### *Whetman v. IKON Office Solutions, Inc.,* MDL No. 1318 (E.D. Pa.).

The wave of 401(k) company stock cases began with *Whetman v. IKON Office Solutions, Inc.* In a first-of-its-kind complaint, we alleged that company stock was an imprudent investment for the plan, that the fiduciaries of the plan failed to provide complete and accurate information concerning company stock to the participants, and that they failed to address their conflicts of interest. This case resulted in ground-breaking opinions in the ERISA 401(k) area of law on motions to dismiss, class certification, approval of securities settlements with a carve-out for ERISA claims, and approval of ERISA settlements providing a total recovery to the Plans of $111 million.

### *In re Enron Corp. ERISA Litigation,* MDL No. 02-1446 (S.D. Tex.)

Keller Rohrback served as Co-Lead Counsel in this class action. After groundbreaking motions to dismiss decisions, and several years of discovery, Keller Rohrback negotiated five separate settlements with different groups of defendants, resulting in recoveries of over $264 million for the class.

### *In re WorldCom, Inc. ERISA Litigation,* No. 02-4816 (S.D.N.Y.)

Keller Rohrback served as Lead Counsel in this class action on behalf of participants and beneficiaries of the WorldCom 401(k) Salary Savings Plan who invested in WorldCom stock. Settlements providing for injunctive relief and payments of over $48 million to the plan were approved by Judge Denise Cote.

### *In re Lucent Technologies, Inc. ERISA Litigation,* No. 01-3491 (D.N.J.)

Keller Rohrback served as Co-Lead Counsel in this class action brought on behalf of participants and beneficiaries of the Lucent defined contribution plans who invested in Lucent stock. A settlement providing injunctive relief and the payment of $69 million to the plan was approved by Judge Joel Pisano.

# EMPLOYEE BENEFITS



## *401(K) & SAVINGS PLANS: COMPANY STOCK & PUBLIC ESOPs*

### *In re AIG ERISA Litigation,* No. 04-09387 (S.D.N.Y.) and *In re AIG ERISA Litigation II,* No. 08-05722 (S.D.N.Y.)

Keller Rohrback served as Co-Lead Counsel in these two class actions on behalf of participants and beneficiaries of the AIG 401(k) retirement plans who invested in AIG stock. A settlement providing for the payment of $25 million to the plans was approved by Judge Kevin T. Duffy in *AIG I,* and a settlement providing for the payment of $40 million to the plans was approved by Judge Laura Swain in *AIG II.*

### *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation,* No. 07-10268 (S.D.N.Y.)

Keller Rohrback served as Co-Lead Counsel in this class action on behalf of participants and beneficiaries of Merrill Lynch's defined contribution plans who invested in Merrill Lynch stock. A settlement providing injunctive relief and a payment of $75 million to the plans was approved by Judge Jed S. Rakoff.

### *Alvidres v. Countrywide Financial Corp.,* No. 07-5810 (C.D. Cal.)

Keller Rohrback served as Lead Counsel in this class action on behalf of participants and beneficiaries of the Countrywide 401(k) plan who invested in Countrywide stock. A settlement providing for injunctive relief and the payment of $55 million to the plan was approved by Judge John F. Walter.

### *In re Washington Mutual, Inc. ERISA Litigation,* No. 07-1874 (W.D. Wash.)

Keller Rohrback served as Co-Lead Counsel in this ERISA breach of fiduciary duty class action brought on behalf of participants and beneficiaries in the company's retirement plans who invested in Washington Mutual stock. Judge Marsha J. Pechman granted final approval of a $49 million settlement in the ERISA action.

### *In re Global Crossing, Ltd. ERISA Litigation,* No. 02-7453 (S.D.N.Y.)

Keller Rohrback served as Co-Lead Counsel in this class action on behalf of participants and beneficiaries of the Global Crossing defined contribution plans who invested in Global Crossing stock. A settlement providing injunctive relief and a payment of $79 million to the plan was approved by Judge Gerard Lynch.



# EMPLOYEE BENEFITS



## 401(K) & SAVINGS PLANS: PRIVATE ESOPs

**An ESOP is a tax-qualified defined contribution employee benefit plan governed by ERISA.** ESOPs are intended to invest primarily in the stock of the ESOP participant's employer. Keller Rohrback is a national leader in ESOP cases, and has substantial experience representing ESOPs in breach of fiduciary actions against trustees who approve or permit transactions that favor corporate interests to the detriment of the ESOP despite having a fiduciary duty to act in the ESOP's best interests. Keller Rohrback's attorneys have achieved many notable successes for their ESOP clients, including obtaining seven-figure judgments at trial, and recovering millions of dollars in settlements.

## REPRESENTATIVE CASES

### *Schwartz v. Cook,* No. 15-3347 (N.D. Cal.)

Keller Rohrback represented a participant in the Buckles-Smith Electric Company ESOP in this lawsuit that alleged that the ESOP's fiduciaries caused Buckles-Smith to redeem the ESOP's shares in that company for less than they were worth, thereby benefitting the remaining shareholders (including the ESOP's fiduciaries) at the expense of the ESOP. The case settled and final approval was granted on June 15, 2017.

### *Rader v. Bruister,* No. 13-1081 (S.D. Miss.)

This case alleged breach of fiduciary duty and prohibited transactions in connection with the purchase by the Bruister Company ESOP of shares from its founder. We obtained a judgment for approximately $6.5 million after a lengthy bench trial. Defendants appealed the judgment, and the Fifth Circuit affirmed. The Fifth Circuit also affirmed the award of attorneys' fees.

### *Wagner v. Stiefel Labs., Inc.,* No. 12-3234 (N.D. Ga.)

Keller Rohrback served as counsel for several ESOP plan participants in this lawsuit that alleged Defendants directed and approved the repurchase of Stiefel Labs., Inc. stock from ESOP participants and the ESOP at a fraction of the actual fair market value of Stiefel stock, allowing Defendants to reap a substantially higher portion of the proceeds in a subsequent $3.6 billion sale of the company to GlaxoSmithKline. The case was resolved pursuant to a confidential settlement prior to trial.

### *Wool v. Sitrick,* No. 10-2741 (C.D. Cal.)

Keller Rohrback served as Lead Counsel in this ESOP valuation action brought on behalf of participants and beneficiaries in the company's ESOP against Defendants who repurchased shares from the ESOP at a price significantly below fair market value. A settlement providing a payment $6.25 million settlement was approved by Judge Jacqueline Nguyen.

### *Johnson v. Couturier,* No. 05-2046 (E.D. Cal.)

Keller Rohrback obtained a major victory for participants of the Noll Manufacturing Co. ESOP against Defendants who awarded themselves grossly excessive compensation at the expense of the ESOP. In a seminal case frequently cited in ESOP litigation by courts across the country, the Ninth Circuit affirmed a preliminary injunction by the district court which prohibited an ESOP plan sponsor from paying litigation costs to indemnify the ESOP's trustees. *Johnson v. Couturier,* 572 F.3d 1067 (9th Cir.).

### *Hans v. Tharaldson,* No. 05-115 (D.N.D.)

Keller Rohrback served as Lead Counsel for the then-current employees in an ESOP valuation action that alleged the ESOP paid an excessive price for their shares in a transaction approved by Defendants. A settlement providing for a $15 million settlement fund, including a $4 million cash payment to all current and former participants and beneficiaries of the ESOP, and an $11 million credit against the principal owed by the ESOP to the company was approved by Chief Judge Ralph Erikson.

# EMPLOYEE BENEFITS



---

## *401(K) & SAVINGS PLANS: EXCESSIVE & IMPROPER FEES*

**Precious retirement savings—particularly in defined contribution or 401(k) plans—are vulnerable to being whittled away by fees associated with investment products.** There are as many types of fees as investment products available to retirement plans. Many fees are hidden or undisclosed. Some fees are paid directly by participants, while others are levied indirectly as kickbacks from one service provider or fiduciary to another. In many cases, these fees are charged for improper purposes—to enrich plan fiduciaries or service providers at the expense of hard-working Americans. High fees over time can slash retiree balances by a third, or more. No matter who pays or collects excessive fees or conflicted fees, ERISA provides robust protections and



remedies. Specifically, ERISA prohibits fiduciaries from self-dealing and any conduct that puts their own interests—or the interests of their affiliates or third parties—above those of the plan participants to whom they owe fiduciary duties.

Keller Rohrback has successfully litigated ERISA class actions challenging excessive and conflicted fees. Our attorneys have challenged investments that contain many layers of securities and insurance products—and many layers of fees. We have pursued on a class action basis not only claims against multiple entities responsible for the fees charged to participants in a single plan, but also uniform fees charged by service providers to thousands of plans using common investment products.

Keller Rohrback has been selected by federal courts to serve as lead or co-lead counsel in class action cases challenging excessive and self-dealing fees. We have written articles and presented on these topics, and we authored an amicus brief in the first ERISA excessive fee case to reach the U.S. Supreme Court. *See* Brief for Law Professors as Amici Curiae in Support of the Petitioners, *Tibble, et al. v. Edison International, et al.*, No. 13-550 (U.S.).

## REPRESENTATIVE CASES

### *Braden v. Wal-Mart Stores, Inc.,* No. 08-3109 (W.D. Mo.)

Keller Rohrback served as Lead Counsel in this class action on behalf of participants and beneficiaries of Wal-Mart's 401(k) plan who invested in retail class mutual funds that charged excessive fees to participants and paid hidden fees to the plan's trustee and recordkeeper, Merrill Lynch. The complaint alleged that the revenue sharing and the other fees were excessive in light of the size of the plan, and that these fees were not properly disclosed. Keller Rohrback's attorneys secured the *first appellate victory* in a fee case of this kind when they obtained an order from the Eighth Circuit reversing dismissal and articulating the pleading standard for process-based breaches of ERISA, see *Braden v. Wal-Mart,* 588 F.3d 585 (2009). A settlement that included $13.5 million along with injunctive relief was approved by Judge Gary A. Fenner.

# EMPLOYEE BENEFITS



## *401(K) & SAVINGS PLANS: EXCESSIVE & IMPROPER FEES*

### *Beach v. JPMorgan Chase Bank,* No. 17-563 (S.D.N.Y.)

Plaintiffs allege that JPMorgan Chase Bank (Chase) breached its fiduciary duties to the participants and beneficiaries of the JPMorgan Chase 401(k) Savings Plan (Plan) in violation of ERISA by, among other things, failing to prudently and loyally manage the Plan's assets by selecting and retaining unduly expensive Core Funds and Target Date Funds as investment options in the Plan and by engaging in prohibited transactions as a result of conflicts of interest. Defendants' motion to dismiss was largely denied. The case is now in the discovery phase.

### *In re Regions Morgan Keegan ERISA Litigation,* No. 08-2192 (W.D. Tenn.)

Keller Rohrback served as Co-Lead Class Counsel in this ERISA breach of fiduciary duty class action on behalf of participants and beneficiaries in the company's retirement plans as well as customer plans for which Regions served as a fiduciary. A settlement providing injunctive relief and a payment of $22.7 million was approved by Judge Samuel H. Mays, Jr.

# EMPLOYEE BENEFITS



## *401(K) & SAVINGS PLANS: IMPRUDENT INVESTMENTS*

**Many times ERISA plans end up in high-risk or other patently imprudent investments due to breaches by the plans' fiduciaries.** Depending on the structure of the investment, fiduciaries may have been incentivized by the fees that could be generated to invest plan assets in investments that are simply unacceptably risky for ERISA plans. Keller Rohrback has successfully litigated and resolved numerous cases challenging fiduciaries' imprudent investment of plan assets in high risk investment strategies.

## REPRESENTATIVE CASES

### *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir.)

A firm attorney served as co-counsel for a class of retirees and employees of Pacific Lumber Co. The complaint alleged that defendants' selection of Executive Life Insurance Company to provide annuities to pension plan participants (upon termination of the plan) violated ERISA's fiduciary standards. The Ninth Circuit decision upheld plaintiffs' standing to pursue the claims, affirmed the lower court finding that defendant corporate officers were fiduciaries, and broadly defined term "plan asset" for purposes of ERISA's prohibited transaction provisions. On remand, the case settled, resulting in the payment of approximately $7 million to the class.

### *Madoff Direct & Feeder Fund Litigation: Hartman v. Ivy Asset Management LLC*, No. 09-8278 (S.D.N.Y.)

Keller Rohrback successfully litigated this direct action on behalf of the trustees of seventeen employee benefit plans damaged by the Madoff Ponzi scheme. The action alleged that Ivy Asset Management and J.P. Jeanneret Associates, Inc. breached their fiduciary duties under ERISA by causing the plans to be invested directly or indirectly in Madoff funds. Keller Rohrback obtained a settlement of over $219 million in this case and related actions, including claims brought by the United States Secretary of Labor and the New York Attorney General.

### *In re State Street Bank and Trust Co. ERISA Litigation,* No. 07-08488 (S.D.N.Y.)

Keller Rohrback served as Co-Lead Counsel in this ERISA case brought on behalf of participants and beneficiaries in a class of retirement plans that had invested in State Street's fixed income bond funds. Plaintiffs alleged that State Street, investment manager of the bond funds, had imprudently invested the purportedly conservative funds in high-risk and/or highly leveraged financial instruments tied to mortgage-backed securities. A settlement providing a payment of $89.75 million was approved by Judge Richard J. Holwell.

# EMPLOYEE BENEFITS



## 401(K) & SAVINGS PLANS: FOREIGN CURRENCY TRADING

**Foreign exchange is a necessary component of all international investment transactions, yet the foreign exchange market is one of the least transparent and least regulated of the international markets.** The large banks and other financial institutions that make up this market act as market-makers and trade currencies amongst each other in this $5.3 trillion-a-day market. The lack of regulation in the marketplace makes it easy for the banks to manipulate transactions and the rates at which they are effected to the banks' advantage—at the expense of their clients. Keller Rohrback's practice has encompassed a range of foreign exchange trading abuses faced by both institutional investors and participants and beneficiaries of retirement plans.

## REPRESENTATIVE CASES

### *Farrell v. JPMorgan Chase & Co.,* No. 16-2627 (S.D.N.Y.) / *In re Foreign Exchange Benchmark Rates Antitrust Litigation,* No. 13-7789 (S.D.N.Y.)

The complaint alleges that JPMorgan Chase, who sponsored collective investment trusts or provided asset management in connection with foreign investments requiring securities exchange, engaged in a world-wide foreign currency manipulation scheme spanning a decade. The complaint also alleges that JPMorgan is therefore a fiduciary to hundreds of ERISA plans affected by this scheme. The multi-bank scheme is subject to antitrust and commodities act claims as well. Numerous banks, including JPMorgan, have settled the related price-fixing case for over $2 billion thus far. Keller Rohrback is currently serving as ERISA Allocation Counsel with regard to these partial settlements.

### *Andover Cos. Emp. Savings & Profit Sharing Plan v. State Street Bank & Trust Co.,* No. 12-11698 (D. Mass.)

This complaint was filed on behalf of a class of all qualified ERISA plans, and their participants, beneficiaries, and named fiduciaries, who suffered losses as a result of State Street Bank and Trust Company's alleged deceptive acts and practices concerning hidden charges for foreign currency exchange transactions between 1998 and 2009. Plaintiffs allege that State Street improperly marked up or marked down currency transactions, and engaged in ERISA prohibited transactions when it failed to disclose fully the details of the foreign currency transactions it was undertaking on behalf of the Plans. A settlement of $300 million was approved on behalf of the consumer claims and the ERISA claims by Judge Mark L. Wolf.

### *Bank of New York Mellon Corp. Forex Transactions Litigation,* No. 12-2335 (S.D.N.Y.)

Keller Rohrback served as counsel in this foreign currency exchange transaction class action, representing qualified ERISA participants and beneficiaries on behalf of their respective plans. Judge Lewis A. Kaplan granted final approval of a global resolution of the private and governmental enforcement actions against BNY Mellon in which $504 million will be paid back to BNY Mellon customers (and $335 million of which is directly attributable to the class litigation).

# EMPLOYEE BENEFITS



## *WELFARE PLANS*

**In addition to retirement plans, ERISA also governs how employee health care plans are administered.** ERISA creates fiduciary responsibilities for those who manage and control health plans, requires that plans provide participants with accurate plan information, and gives plan participants the right to sue for benefits and breaches of fiduciary duty. Therefore, health care plans must be operated in compliance with ERISA's particular standards that were designed to protect the interests of employees, retirees, and other plan beneficiaries, such as family members.

## REPRESENTATIVE CASES

### *Dobson v. Hartford Financial Services Group, Inc.,* 389 F. 3d 386 (2d Cir.)

A firm attorney served as co-counsel for a putative class of participants in ERISA-covered long-term disability plans challenging Hartford's failure to pay interest on retroactive payments it made to disabled participants after those participants were successful in using the plan's internal review procedure and obtaining reversals of claim denials. The district court granted the named plaintiff's claims on one of his legal theories, but denied class certification and rejected other claims. The court of appeals reversed in these latter respects. After remand and further proceedings in both the district and appeals court, the case settled. The settlement provided for future payment of interest on claims where appeals were favorably decided and for some retroactive payments.

### *Boss v. CVS Health Corp. et al.,* No. 17-1823 (D.N.J.)

Keller Rohrback brought a class action lawsuit against the nation's three largest pharmacy benefit managers (PBMs), Express Scripts, OptumRx, and CVS Caremark, and three major insulin manufacturers, Sanofi-Aventis, Novo Nordisk, and Eli Lilly, who produce the widely-prescribed analog insulins: Lantus, Apidra, Levemir, Humalog, and Novolog. The complaint alleges that the PBMs conspired with insulin manufacturers to artificially inflate the price of insulin through rebates and incentives for their own collective benefit. Plaintiffs seek both monetary and injunctive relief on behalf of consumers.

### *In re Express Scripts / Anthem ERISA Litigation,* No. 16-3399 (S.D.N.Y.)

Keller Rohrback serves as interim Co-Lead Counsel in this class action filed on behalf of all participants and beneficiaries of Anthem-insured ERISA plans and self-insured ERISA plans against both Anthem and Express Scripts, Inc. (ESI) for breaches of fiduciary duty and prohibited transactions under ERISA. ESI serves as the exclusive Pharmacy Benefit Manager (PBM) to Anthem-insured plans under a ten-year agreement, and the claims arise out of Defendants' practice of overcharging the class for pharmaceutical drugs. The case is pending before the Second Circuit Court of Appeals.

### *In re Cigna Corp. PBM Litigation,* No. 16-1702 (D. Conn.)

Keller Rohrback serves on the Plaintiffs' Executive Committee in this ERISA and RICO case against Cigna, its affiliates, and its primary external Pharmacy Benefit Manager (PBM) OptumRx. Plaintiffs here allege that Cigna and its PBMs engage in a "Clawback Scheme" where patients are overcharged for their prescription medications above and beyond the negotiated price of the drug or the retail cash price of the drug charged to someone without health insurance, while Defendants keep the overcharges. Plaintiffs prevailed in large part on Defendants' motion to dismiss in an order issued in March 2018.

# EMPLOYEE BENEFITS



## *WELFARE PLANS*

### *In re Humana PBM Litigation,* No. 16-0706 (W.D. Ky.)

Keller Rohrback is co-lead counsel in this case alleging Humana uses its in-house Pharmacy Benefit Manager (PBM) Humana Pharmacy Solutions, as well as Argus Health Systems, to engage in a hidden fee scheme where patients are overcharged for their prescription medications above and beyond the negotiated price of the drug, while Defendants keep the undisclosed overcharges. Given Humana's significant presence in the Medicare plan market, the claims here are pursuant to RICO and state consumer laws, as well as common law theories. Humana also provides health plans governed by ERISA.

### *Gates v. United Health,* No. 11-3487 (S.D.N.Y.)

Keller Rohrback served as counsel in this lawsuit that alleged Defendants violated ERISA through use of an "estimating policy" which caused Medicare eligible participants and beneficiaries to be paid lower benefits than required by the plan in which they participate for services provided by out-of-network providers. Following an initial dismissal, Keller Rohrback successfully appealed to the Second Circuit Court of Appeals, and the district court then agreed with Plaintiff.

### *Turpin v. Consolidated Coal Company,* No. 99-1886 (W.D. Pa.)

A firm attorney served as co-counsel for plaintiff in a case alleging that a Blue Cross entity's use of computer-generated Explanation of Benefits (EOB) forms violated ERISA regulations guaranteeing plan participants a full and fair review of their claims. The class action settlement resulted in significant changes to the forms, including detailed information as to how participants could appeal claim denials and reform of the forms' denial codes so that they were more understandable to the class members.

# ERISA APPELLATE PRACTICE



**ERISA appeals require specialized skills and experience, and Keller Rohrback has a seasoned appellate team that includes award-winning brief writers and outstanding oral advocates.** Our ERISA appellate expertise is particularly important in large cases, including complex class actions. Keller Rohrback has the experience and talent to handle any issue that arises involving interlocutory appeals and will work to ensure that any judgment or settlement is affirmed on appeal.

## REPRESENTATIVE CASES

### *Fletcher v. ConvergEx Group, L.L.C.,* No. 13-9150, 2017 WL 549025 (2d Cir.)

Keller Rohrback serves as co-counsel in this lawsuit filed in the Southern District of New York that alleges Defendants violated ERISA by "double-charging" for transition management and brokerage services. After the trial court mistakenly dismissed the case, the Second Circuit reversed and reinstated plaintiffs' claims.

### *Hunter v. Berkshire Hathaway Inc.,* 829 F.3d 357 (5th Cir.)

Keller Rohrback represented retirement plan participants against Acme Brick Company and its sole owner, Berkshire Hathaway Inc., to enforce Berkshire Hathaway's promise, when it acquired Acme, not to cause Acme to reduce retirement plan benefits. At Keller Rohrback's urging, the Fifth Circuit determined that Berkshire Hathaway could be liable for that promise and reversed the trial court's dismissal of claims against Berkshire Hathaway.

### *Rader v. Bruister,* 823 F.3d 250 (5th Cir.)

Keller Rohrback obtained a judgment for approximately $6.5 million after a lengthy bench trial on ERISA breach of fiduciary duty and prohibited transaction claims. Defendants appealed the judgment, and the Fifth Circuit affirmed. The Fifth Circuit also affirmed the award of attorneys' fees.

### *Alcantara v. Bakery & Confectionary Union,* 751 F.3d 71 (2d Cir.)

Keller Rohrback successfully defended the trial court's decision and judgment that Defendants had unlawfully reduced pension benefits.

### *Wurtz v. Rawlings Co.,* 761 F.3d 232 (2d Cir.)

Keller Rohrback filed an amicus brief on behalf of the New York State Trial Lawyers Association, arguing that ERISA did not preempt a New York state law. The Second Circuit agreed with the position advanced by Keller Rohrback and adopted the reasoning and even some of the language of its amicus brief.

### *Gates v. UnitedHealth Group Inc.,* 561 F. App'x 73 (2d Cir.)

Keller Rohrback persuaded the Second Circuit to reverse the district court's dismissal of our client's claims for medical coverage.

### *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585 (8th Cir.)

Keller Rohrback represented a class of Wal-Mart employees who alleged that Wal-Mart's 401(k) plan charged them excessive fees and convinced the Eighth Circuit to reverse the trial court and reinstate the employees' claims.

# ERISA APPELLATE PRACTICE



### Johnson v. Couturier, 572 F.3d 1067 (9th Cir.)

Keller Rohrback obtained a major victory for participants of an ESOP after Defendants awarded themselves grossly excessive compensation at the expense of the ESOP. On appeal, the Ninth Circuit affirmed a preliminary injunction by the district court which prohibited an ESOP plan sponsor from paying litigation costs to indemnify the ESOP's trustees. The opinion is frequently cited in ESOP litigation by courts across the country.

### In re Syncor ERISA Litigation, 516 F.3d 1095 (9th Cir.)

Keller Rohrback represented a group of workers who alleged that their employer had violated the law by investing their retirement savings in the employer's stock. Keller Rohrback convinced the Ninth Circuit to reverse the dismissal of the trial court and reinstate the workers' claims.

### Tatum v. RJR Pension Investment Committee, 392 F.3d 636 (4th Cir.) and 761 F.3d 346 (4th Cir.)

Attorney Jeff Lewis persuaded the Fourth Circuit to affirm the trial court's decisions that fiduciaries of the R.J. Reynolds 401(k) plan breached their fiduciary duties and that the breaching fiduciaries bore the burden of proof with respect to loss causation. Mr. Lewis further successfully persuaded the Fourth Circuit that the trial court applied an incorrect legal standard in concluding that the breach did not cause the plan's losses.







# LYNN LINCOLN SARKO

## CONTACT INFO

1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900
lsarko@kellerrohrback.com

## PRACTICE EMPHASIS

- Antitrust & Trade Regulation
- Appeals
- Class Actions
- Constitutional Law
- Commodities & Futures Contracts
- Consumer Protection
- Data Breach
- Employment Law
- Environmental Litigation
- Employee Benefits & Retirement Security
- Financial Products & Services
- Government & Municipalities
- Institutional Investors
- Intellectual Property
- International Law
- Mass Personal Injury
- Securities & Financial Fraud
- Whistleblower

**Lynn Lincoln Sarko is a master strategist and litigator who leads Keller Rohrback's nationally-recognized Complex Litigation Group.** One of the nation's top attorneys in complex litigation, Lynn does not just help clients win—he helps them win what they want. Through smart, efficient strategy and tailored, creative problem solving, Lynn and his team accomplish the best outcomes while minimizing costs and maximizing value.

Lynn's diverse experience enables him to think outside the box to resolve complex cases. He regularly interacts with international business interests, representing sovereign nations and institutional clients seeking to recover investment losses caused by financial fraud and other malfeasance. He is currently involved in several matters involving complex derivatives and specialty investment products. Lynn is the driving force behind Keller Rohrback's membership with the Sovereign Wealth Fund Institute, a global organization of leading asset managers and service providers engaged in the public investor community. He represents clients with regard to regulatory investigations and issues involving state and federal supervisory agencies and has litigated actions involving several of the nation's largest accounting and investment firms. Lynn is part of the team representing the City of Tacoma in its fight to hold opioid manufacturers accountable.

Lynn has led the firm's securities and retirement fund practice for over 25 years and regularly serves as lead counsel in multiparty individual and class action cases involving ERISA, antitrust, securities, breach of fiduciary duty and other investment fraud issues. Other law firms often hire him as settlement counsel in these and other complex cases because of his reputation as a skilled negotiator. His successes in this area include multimillion dollar settlements in the IKON, Anicom, United Companies Financial Corp., and the Enron, WorldCom, Global Crossing, Health South, Delphi, Washington Mutual, Countrywide, Lucent, Merrill Lynch, and Xerox consolidated pension and retirement plan cases.

In addition, Lynn was appointed to the Plaintiffs' Steering Committee for *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*. Previously, Lynn served as one of the negotiators in the $15 billion Volkswagen Diesel Emissions Fraud class action settlement for 2.0-liter vehicles, the largest auto-related consumer class action settlement in U.S. history, as well as the 3.0-liter settlement.

Courts and professional organizations have honored Lynn for his work on financial, fiduciary duty, consumer and numerous other high-profile public cases. After serving as trial counsel in the Exxon Valdez Oil Spill case, which resulted in a $5 billion punitive damages verdict, Lynn was appointed by the court as Administrator for all funds recovered. He prosecuted the Microsoft civil antitrust case, Vitamin price-fixing cases, the MDL Fen/Phen Diet Drug Litigation, and notable public service lawsuits such as *Erickson v. Bartell Drug Co.*, which established a woman's right to prescription contraceptive health coverage.

Before joining Keller Rohrback, Lynn was an Assistant United States Attorney



for the District of Columbia, Criminal Division, an associate at the Washington, D.C. office of Arnold & Porter, and law clerk to the Honorable Jerome Farris, United States Court of Appeals for the Ninth Circuit, in Seattle. He has been the managing partner of Keller Rohrback since 1991.

Lynn appears in federal courts from coast to coast, maintaining an active national litigation practice. He counsels and represents consumers, employees and businesses who have suffered harm resulting from the improper disclosure of proprietary, personal, health and other protected information.

## EDUCATION

**University of Wisconsin**

B.B.A., 1977

**University of Wisconsin**

M.B.A., 1978, *Beta Alpha Psi*

**University of Wisconsin**

J.D., 1981, *Order of the Coif*; Editor-in-Chief, *Wisconsin Law Review;* Salmon Dalberg Award (outstanding graduate)

## BAR & COURT ADMISSIONS

1981, Wisconsin

1981, U.S. Court of Appeals for the Ninth Circuit

1983, District of Columbia

1983, District of Columbia Appellate Court

1984, United States Supreme Court

1984, U.S. Court of Appeals for the Seventh Circuit

1984, U.S. Court of Appeals for the Fourth Circuit

1984, U.S. Court of Appeals for the Tenth Circuit

1985, U.S. Tax Court

1986, U.S. District Court for the Western District of Washington

1986, U.S. District Court for the Eastern District of Washington

1986, Washington

1986, U.S. Court of Appeals for the First Circuit

1988, U.S. District Court for the Eastern District of Wisconsin

1996, U.S. District Court for the Western District of Wisconsin

2001, U.S. Court of Appeals for the Third Circuit

2002, U.S. District Court for the Eastern District of Michigan

2003, U.S. Court of Appeals for the Fifth Circuit

2003, U.S. Court of Appeals for the Eleventh Circuit

2004, U.S. District Court for the Northern District of Illinois

2008, U.S. Court of Appeals for the Eighth Circuit

2009, U.S. Court of Appeals for the Sixth Circuit

2010, U.S. District Court for North Dakota

2013, U.S. Court of Appeals for the Second Circuit

2016, U.S. District Court for the Central District of Illinois

2016, U.S. District Court for the Southern District of Illinois

## HONORS & AWARDS

Listed as Lawdragon 500 Leading Lawyers in America 2018

Super Lawyers List, Washington Law & Politics

Avvo Top Tax Lawyer, Washington CEO Magazine

Trial Lawyer of the Year, Trial Lawyers for Public Justice

Salmon Dalberg Award



## PROFESSIONAL & CIVIC INVOLVEMENT

American Bar Association, *Member*

Bar Association of The District of Columbia, *Member*

Federal Bar Association, *Member*

King County Bar Association, *Member*

State Bar of Wisconsin, *Member*

Trial Lawyers for Public Justice, *Member*

Washington State Bar Association, *Member*

Washington State Trial Lawyers Association, *Member*

American Association for Justice, *Member*

Social Venture Partners of Santa Barbara, *Founding Partner*

The Association of Trial Lawyers of America, *Member*

American Academy of Trial Counsel, *Fellow*

Editorial Board, *Washington State Securities Law Deskbook*

## SELECTED PUBLICATIONS

Thomson/West Webinar, "Stock Drop and Roll: Key Supreme Court Rulings and New Standards in ERISA 'Stock Drop' Cases," July 24, 2014

14th Annual Pension Law, Governance and Solvency Conference, 2013

Canadian Institute's 14th Annual Advanced Forum on Pension Law, Governance and Solvency, 2013

ERISA Litigation & Regulatory Compliance Congress, 2013

American Conference Institute's 6th National Forum on ERISA Litigation, 2013

25th Annual ERISA Litigation Conference, 2012

American Conference Institute's 5th National Forum on ERISA Litigation, 2012

# KELLER ROHRBACK
## L A W   O F F I C E S   ◆   L . L . P .



## LAURIE ASHTON

### CONTACT INFO

3101 North Central Avenue, Suite 1400

Phoenix, AZ 85012

(602) 248-0088

lashton@kellerrohrback.com

### PRACTICE EMPHASIS

- Business Reorganizations
- Class Action & Consumer Litigation
- Constitutional Law
- Employee Benefits and Retirement Security
- Fiduciary Breach
- International Law

### EDUCATION

**University of California, San Diego**

B.A., 1987, Economics

**Arizona State University College of Law**

J.D., 1990, Order of the Coif; *Member, Arizona State Law Journal*, 1988-1990; Note and Comment Editor, *Arizona State Law Journal*, 1989-1990; Student Instructor, Legal Research and Writing, 1989-1990.

**Laurie Ashton is Of Counsel to Keller Rohrback.** Prior to becoming Of Counsel, she was a partner in the Phoenix affiliate of Keller Rohrback. Early in her career, as an Adjunct Professor, she taught semester courses in Lawyering Theory and Practice and Advanced Business Reorganizations. She also served as a law clerk for the Honorable Charles G. Case, U.S. Bankruptcy Court, for the District of Arizona for two years.

In complex litigation, Laurie was the lead attorney for Keller Rohrback in a series of successful groundwater contamination suits brought in 1996 against multiple international defendants concerning chemical releases spanning over 60 years. She was also the lead attorney for Keller Rohrback in an ERISA class action suit on behalf of over 21,000 employees who lost a material percentage of their retirement assets at the hands of fiduciaries who maintained the investment of those assets in their own declining company stock—a case that was, at its time, amongst the largest of its kind in the nation. Laurie has led or been a member of the team leading numerous high profile business reorganizations, including a case in which the Court confirmed a reorganization plan over the objection of the international life insurance company's feasibility expert, based on Laurie's cross examination.

Laurie has been active in the State Bar of Arizona where she served on the Ethics Committee for six years. She was also the coauthor of a textbook on limited liability companies and partnerships, published by West, and is AV rated by Martindale.

An important part of Laurie's international work involves the domestic and international legal implications of treaty obligations and breaches. She is lead counsel for The Republic of the Marshall Islands in its federal court treaty breach suit against the United States, and a member of the international legal team representing the Marshall Islands in three cases pending at the International Court of Justice in The Hague, against the United Kingdom, India and Pakistan. For this work, Laurie is part of the legal team that the International Peace Bureau has nominated, along with the former Foreign Minister of the Marshall Islands, for the 2016 Nobel Peace Prize.

Laurie is frequently interviewed and has been cited by Reuters, Newsweek, Fox News, Huffington Post, Slate Magazine, Radio New Zealand, Radio Australia, and others. She currently serves as a Trustee of the Santa Barbara Foundation, a member of the Human Rights Watch Committee in Santa Barbara, and as a Director of the Global Justice Center in New York, which advances human rights pursuit to various international laws, including the Geneva and Genocide Conventions, as well as customary international law.



## BAR & COURT ADMISSIONS

1990, Arizona

1999, Colorado

2007, Washington, D.C.

2013, Eastern District of Michigan

U.S. Court of Appeals for the Sixth Circuit

U.S. Court of Appeals for the Ninth Circuit s

U.S. Court of Appeals for the Tenth Circuit

U.S. Supreme Court

## PROFESSIONAL & CIVIC INVOLVEMENT

State Bar of Arizona, *Member*

Colorado Bar Association, *Member*

Washington, D.C. Bar Association, *Member*

Adjunct Professor of Law, *Advanced Chapter 11*, Arizona State University, 1996

Adjunct Professor of Law, *Lawyering Theory & Practice,* Arizona State University, 1997

Committee on the Rules of Professional Conduct ("Ethics Committee"), State Bar of Arizona, *Member,* 1997-2003

Court Appointed Special Advocate, King County, 2007-2009

Santa Barbara Foundation, *Trustee*

Global Justice Center, New York, *Director*

Human Rights Watch Committee, Santa Barbara, *Member*

## PUBLICATIONS & PRESENTATIONS

Author, Case Note, *Arizona Mortgage and Deed of Trust Anti-Deficiency Statutes: The Underlying Obligation on a Note Secured By Residential Real Property After Baker v. Gardner*, 21 Ariz. St. L.J. 465, 470 (1989).

Co-Author, *Arizona Legal Forms: Limited Liability Companies and Partnerships* (1996-2004).

Guest Lecturer, Harvard Law School, 1997, 1999, 2001-2002.

Guest Lecturer, Stanford Law School, 2003.

Speaker, United Nations 2015 Review Conference of the Parties to the Treaty on the  Non-Proliferation of Nuclear Weapons; Panel, *Marshall Islands Nuclear Zero Lawsuits*

Speaker, Humanity House, The Hague, *"Legal Obligations for Nuclear Disarmament,"* March 2016.

Speaker, Bertha Von-Suttner Master Class, The Peace Palace, The Hague, *"Forward Into Light, The Barbarization of the Sky."*



# KELLER ROHRBACK
L A W   O F F I C E S   ◆   L. L. P.



## ALISON GAFFNEY

### CONTACT INFO

1201 Third Avenue, Suite 3200

Seattle, WA 98101

(206) 623-1900

agaffney@kellerrohrback.com

### PRACTICE EMPHASIS

- Class Actions
- Consumer & Data Privacy Protection
- Employee Benefits & Retirement Security

### EDUCATION

**Swarthmore College**

B.A., 2002, Linguistics and Languages (Spanish & Mandarin Chinese); McCabe Scholar

**University of California, San Diego**

M.A., 2007, Latin American Studies (International Migration)

**University of Washington School of Law**

J.D., 2012

**Alison Gaffney is a fighter. Once she takes on a client—as a member of Keller Rohrback's nationally recognized Complex Litigation Group or as a cooperating attorney with the ACLU—she commits to doing everything she can to fight for justice for her client.**

That tenacity was evident in her pursuit to reunite Somali refugee Joseph Doe with his family after their separation was prolonged because of the Muslim Travel Ban. Alison is a member of the team that sued the Trump Administration on behalf of Doe and other individuals and organizations harmed by the bans in *Doe, et al. v. Donald Trump, et al.* (W.D. Washington). Recently, she was honored to witness Doe's joyous reunion with his wife and three sons in Seattle.

Alison is passionate about using litigation to combat complex world problems. At Keller Rohrback, she is representing city and county governments, including King, Pierce, and Skagit counties, in their fight to hold prescription opioid manufacturers accountable for the devastating effects these drugs have had on their communities. Not only is Alison committed to stopping the spread of addiction, but she's also fighting to make sure that local governments get all the resources they need to provide their citizens recovering from opioid addiction a meaningful second chance.

Alison is a thorough researcher who leaves no stone unturned when investigating possible outcomes for the employees and consumers she represents in a variety of claims. She litigated both individual and class action claims on behalf of consumers harmed by drug manufacturer Eli Lilly's failure to accurately represent the risk of severe withdrawal from the drug Cymbalta, and she is currently fighting to help patients who've suffered an amputation after taking the prescription drug Invokana. Alison also represents a proposed class of employees alleging ERISA violations in *Dolins v. Continental Casualty Company* (N.D. Illinois) and a proposed class of consumers with defective smartphones in *Kessler v. Samsung Electronics America, Inc.* (E.D. Wisconsin). She connects with her clients as people, not case numbers.

Both before and during law school, Alison's passion for justice and human rights drew her to immigration law and policy. She completed a master's degree focused on international migration, and as a law student, she interned with the Seattle Immigration Court and the Northwest Immigrant Rights Project (NWIRP) in Tacoma, where she gave "Know Your Rights" presentations at the Northwest Detention Center. She represented clients in deportation proceedings through NWIRP as well as the law school's Immigration Law Clinic, and she continues to volunteer as a pro bono attorney for NWIRP.

When she is not fighting for her clients, Alison is busy keeping up with her two young sons, scrambling with The Mountaineers, and generally enjoying the beauty of the Pacific Northwest.



## BAR & COURT ADMISSIONS

2012, Washington

2013, U.S. District Court for the Western District of Washington

2015, U.S. District Court for the Eastern District of Washington

2016, U.S. District Court for the Central District of Illinois

2013, U.S. Court of Appeals for the Second Circuit

2014, U.S. Court of Appeals for the Ninth Circuit

2016, U.S. District Court for the Eastern District of Wisconsin

## PROFESSIONAL & CIVIC INVOLVEMENT

ACLU Cooperating Attorney

Washington State Bar Association, *Member*

King County Bar Association, *Member*

Mother Attorneys Mentoring Association of Seattle (MAMAS), *Member*

Northwest Immigrant Rights Project, *Pro Bono Attorney*

## LANGUAGES

Spanish





## LAURA R. GERBER

### CONTACT INFO

1201 Third Avenue, Suite 3200

Seattle, WA 98101

(206) 623-1900

lgerber@kellerrohrback.com

### PRACTICE EMPHASIS

- Consumer Protection
- Employee Benefits & Retirement Security
- Fiduciary Breach
- Financial Products & Services
- Institutional Investors
- Whistleblower

### EDUCATION

**Goshen College**

B.A., 1994, History, Economics

**University of Washington School of Law**

J.D., 2003

**Evans School of Public Affairs, University of Washington**

M.P.A., 2003

**Laura R. Gerber is a strong advocate for her clients.** From her early years in a whistleblower protection organization, to her current practice litigating against some of America's largest corporations, Laura has built her career as an advocate on behalf of both employees and customers of large corporations. Laura represents her clients with skill, tact and diplomacy. As a result, Laura's clients trust her to listen carefully, keep them informed, provide excellent legal advice, and to diligently pursue their interests in litigation against powerful defendants.

For over a decade, Laura has practiced in Keller Rohrback's Complex Litigation Group where she has developed a diverse practice with a focus on holding banks and other institutions accountable to their customers and employees. She has experience litigating mutual fund excessive fee cases, Ponzi scheme cases, breach of contract and breach of fiduciary duty cases, Employee Retirement Income Security Act ("ERISA") cases, and consumer protection class actions. Laura's strategic persistence in complex cases has led to impressive results with certain of her clients receiving substantial individual recoveries.

While in law school, Laura concurrently received a Master's degree in Public Administration and was a member of the Moot Court Honor Board.

## BAR & COURT ADMISSIONS

2004, Washington

2006, U.S. District Court for the Eastern District of Washington

2006, U.S. District Court for the Western District of Washington

2010, U.S. District Court for the Northern District of Illinois

2013, U.S. District Court for the District of Colorado

2016, U.S. District Court for the Southern District of Illinois

2016, U.S. District Court for the Eastern District of Missouri

2016, U.S. District Court for the Northern District of Ohio

2016, U.S. District Court for the Western District of Oklahoma

2006, U.S. Court of Appeals for the Ninth Circuit Court

2014, U.S. Court of Appeals for the Sixth Circuit Court

2015, U.S. Court of Appeals for the Tenth Circuit Court

## HONORS & AWARDS

Selected to Rising Stars list in *Super Lawyers - Washington,* 2009, 2013.



## PROFESSIONAL & CIVIC INVOLVEMENT

Washington Appleseed, Board of Directors, *2012-present*

King County Bar Association, *Member*

Washington State Bar Association, *Member*

American Bar Association, *Member*

Mother Attorney Mentoring Association (MAMAS), *Member*

## PUBLICATIONS & PRESENTATIONS

Speaker, American Conference Institute's 8th National Forum on ERISA Litigation, October 2014, (New Trends in Church Plan Litigation).

L. Gerber and R. Giovarelli, *Land Reform and Land Markets in Eastern Europe*, Food and Agriculture Organization of the United Nations (2005).

David Weissbrodt, Penny Parker, Laura Gerber, Muria Kruger, Joe W. (Chip) Pitts III, *A Review of the Fifty-Fourth Session of the Sub-Commission on the Promotion and Protection of Human Rights*, 21 NETH Q. HUM. RTS. 291 (2003)





## MATTHEW GEREND

### CONTACT INFO

1201 Third Avenue, Suite 3200

Seattle, WA 98101

(206) 623-1900

mgerend@kellerrohrback.com

### PRACTICE EMPHASIS

• Class Action

• Employee Benefits and
Retirement Security

• Fiduciary Breach

• Securities

### EDUCATION

**University of Wisconsin**

B.A., with distinction, 2005,
Political Science, Phi Beta Kappa

**Georgetown University Law
Center**

J.D., *cum laude*, 2010; Executive
Articles Editor, *Georgetown Journal
on Poverty Law and Policy*

**Matthew Gerend practices in the firm's nationally recognized Complex Litigation Group**, representing employees and other investors in litigation to enforce securities laws and the Employee Income Retirement Security Act ("ERISA"). Matt has represented plaintiffs in federal courts across the country to redress harms stemming from breaches of fiduciary duties, investment fraud, and other misconduct that threatens employees' retirement security.

Matt became interested in the laws protecting retirement and pension benefits as a clerk with AARP Foundation Litigation, where he helped draft a number of amicus curiae briefs filed in the U.S. Supreme Court and U.S. Courts of Appeals regarding the proper interpretation and implementation of ERISA. During law school, Matt also worked as an intern with the Community Development Project at the Lawyers' Committee for Civil Rights Under Law. Matt believes that lawyers have a unique ability to effect social change, an ethic that has guided his work representing individuals and investors against those engaged in divisive and fraudulent practices.

## BAR & COURT ADMISSIONS

2010, Washington

2011, U.S. District Court for the Western District of Washington

2012, U.S. Court of Appeals for the Third Circuit

2013, U.S. District Court for the Eastern District of Michigan

2014, U.S. Court of Appeals for the Sixth Circuit

2014, U.S. Court of Appeals for the Ninth Circuit

2015, U.S. Court of Appeals for the Seventh Circuit

2015, U.S. District Court for the District of Colorado

## PROFESSIONAL & CIVIC INVOLVEMENT

Washington State Bar Association, *Member*

## HONORS & AWARDS

Selected to Rising Stars list in *Super Lawyers – Washington,* 2014-2017

## PUBLICATIONS & PRESENTATIONS

Contributing Author, *Zanglein et. al., ERISA Litigation* (Bloomberg BNA 2015).

Deborah M. Austin and Matthew M. Gerend, *The Scope and Potential of Section 3 as Currently Implemented,* 19 J. Affordable Housing & Commun. Dev. L. 89 (2009).





**Chris is a member of Keller Rohrback's Complex Litigation and Bankruptcy Groups**, representing debtors, creditors, Court-appointed committees, and asset purchasers in Chapter 11 reorganization proceedings and out-of-court workouts. Chris also has wide-ranging experience in complex commercial litigation from corporate restructuring to matters of breach of fiduciary duty, commercial bankruptcy, commercial real estate, contracts, patent infringement, and environmental insurance coverage.

Together with colleagues he has represented clients as diverse as the committee of victims of clergy sexual abuse in the Chapter 11 reorganization of a Catholic diocese, a developer restructuring a portfolio of real property interests nationwide, and a national company acquiring a competitor's assets in a bankruptcy-court-approved sale in California.

A graduate of the great books liberal arts program at St. Johns' College in Santa Fe, Chris earned his law degree from the University of New Mexico Law School magna cum laude in 1990. While his practice is centered in the Southwest, Chris represents clients in federal courts coast to coast.

## CHRISTOPHER GRAVER

### CONTACT INFO

3101  North Central Avenue

Suite 1400

Phoenix, Arizona 85012-2600

(602) 248-0088

cgraver@kellerrohrback.com

### PRACTICE EMPHASIS

- Business Litigation
- Bankruptcy and Creditors' Rights

### EDUCATION

**St. John's College**

B.A., 1976

**University of New Mexico**

J.D., *magna cum laude,* 1990
Order of the Coif

## BAR & COURT ADMISSIONS

Arizona, 1990

United States District Court  for the District of Arizona, 1990

United States Bankruptcy Appellate Panel of the Ninth Circuit

United States Court of Appeals for the Ninth Circuit

## PROFESSIONAL & CIVIC INVOLVEMENT

American Bankruptcy Institute, *Member*

Arizona State Bar Association, *Member*

Maricopa County Bar Association, *Member*

## PUBLICATIONS & PRESENTATIONS

"Confirming the Catholics: The Diocese of Tucson Experience, Norton Bankruptcy Law Advisor," 2005.

"Representing the Tort Claimants' Committee in the Chapter 11 Case Filed by the Roman Catholic Diocese of Tucson, prepared for the National Conference of Bankruptcy Judges," 2005.

"Decoding the Code," *AzBusiness Magazine*, 2005.

Speaker, Maricopa County Bar Association presentation, *New Bankruptcy Code: Changing the Way Creditors are Treated*, 2006.





## RON KILGARD

### CONTACT INFO

3101 North Central Avenue,
Suite 1400

Phoenix, AZ 85012

(602) 248-0088

RKilgard@kellerrohrback.com

### PRACTICE EMPHASIS

- Appeals
- Antitrust & Trade Regulation
- Class Action
- Constitutional Law
- Employee Benefits & Retirement Security
- Fiduciary Breach
- Financial Products & Services

### EDUCATION

**Harvard College** B.A., 1973, History

**Harvard Divinity School** M.T.S., 1975, Old Testament

**Arizona State University College of Law** J.D., 1979, Editor-in-Chief, *Arizona State Law Journal*, Armstrong Award (outstanding graduate)

**Ron Kilgard is a seasoned lawyer who understands that yesterday's rule changes are just as important as the landmark cases decided decades ago.** Ron has 35 years of experience in civil litigation. He knows that the substantive law changes slowly (at least most of the time!). However, the relevant rules and judges' individual practices change almost daily, and they vary enormously from jurisdiction to jurisdiction and judge to judge. Balancing all of this is, for Ron, one of the many challenges and pleasures of law practice.

Ron's practice is focused primarily on commercial and financial matters. For the last 17 years, he has extensively litigated pension plan class actions, involving both plans regulated by the Employee Retirement Income Security Act ("ERISA") and non-ERISA plans such as public plans and so-called "church plans." Ron helped Keller Rohrback pioneer company stock ERISA litigation in the late 1990s and early 2000s, and he was part of the team that obtained settlements of over $265 million (in cash) in the Enron 401(k) litigation. In 2017, after six years of litigation, Ron prevailed in an action challenging as unconstitutional the cutbacks to the pensions of Arizona state court judges.

Ron is a Phoenix native. He clerked for the Honorable Mary M. Schroeder, U. S. Court of Appeals for the Ninth Circuit, in 1979-80 and has practiced in Phoenix ever since. He was one of the lawyers who formed the Phoenix affiliate of Keller Rohrback L.L.P. in November 2002. When not practicing law, he enjoys reading on the porch of his 1915 house with his Golden Retriever.

### HONORS & AWARDS

Best Lawyers in America, 2017, ERISA practice.

### PROFESSIONAL & CIVIC INVOLVEMENT

State Bar of Arizona, *Member*

District of Columbia Bar, *Member*

New York State Bar Association, *Member*

National Immigrant Justice Center, *Pro Bono Counsel*



## BAR & COURT ADMISSIONS

1979, Arizona Supreme Court

1979, U.S. District Court for the District of Arizona

1982, U.S. Court of Appeals for the Ninth Circuit

1995, U.S. Supreme Court

2005, U.S. Court of Appeals for the Second Circuit

2005, U.S. Court of Appeals for the Fifth Circuit

2007, U.S. District Court for the Eastern District of Michigan

2009, District of Columbia Court of Appeals

2010, U.S. Court of Appeals for the Fourth Circuit

2010, U.S. District Court for the District of North Dakota

2011, New York Supreme Court, Appellate Division

2012, U.S. District Court for the Southern District of New York

2013, U.S. District Court for the District of Colorado

2013, U.S. Court of Appeals for the Eighth Circuit

2014, U.S. Court of Appeals for the Sixth Circuit

2014, U.S. Court of Appeals for the Third Circuit

2015, U.S. Court of Appeals for the Seventh Circuit

2015, U.S. Court of Appeals for the Tenth Circuit

2016, U.S. District Court for the Southern District of Illinois

2016, U.S. District Court for the Western District of Oklahoma

2016, U.S. District Court for the Eastern District of Missouri

2016, U.S. District Court of the Central District of Illinois

2016, U.S. District Court of the Northern District of Indiana

## PUBLICATIONS & PRESENTATIONS

Speaker, ABA Seminar, After Enron, 2006

Speaker, Chicago Bar Association, Company Stock Litigation, 2006

Speaker, West LegalWorks ERISA Litigation Conference, 2007

Speaker, National Center for Employee Ownership, *Fiduciary Implications of Company Stock Lawsuits*, 2012 and 2013

Speaker, American Conference Institute, *New Developments in Church Plan Litigation*, 2015-2017





## ERIN RILEY

### CONTACT INFO

1201 Third Avenue, Suite 3200

Seattle, WA 98101

(206) 623-1900

eriley@kellerrohrback.com

### PRACTICE EMPHASIS

- Appeals
- Class Actions
- Employee Benefits & Retirement Security
- Fiduciary Breach
- Financial Products and Services
- Securities

### EDUCATION

**Gonzaga University**

B.A., *cum laude,* 1992, French & History

**University of Wisconsin Law School**

J.D., *cum laude*, 2000, Wisconsin Law Review

**Erin Riley knows that strong relationships are key in complex cases.**
Erin was a summer associate at Keller Rohrback in 1999, and joined Keller Rohrback's complex litigation group in 2000.

Since the Fall of 2001, her practice has focused on representing employees and retirees in ERISA actions involving defined contribution, defined benefit, and health benefit plans. She has successfully litigated a number of ERISA breach of fiduciary duty cases including cases filed against Washington Mutual, Merrill Lynch and WorldCom. Erin has worked on ERISA-related articles and amicus briefs, and has spoken at ERISA-related conferences. She is a former Plaintiffs' Co-Chair of the Civil Procedure Subcommittee for the ABA Employee Benefits Committee, and is currently a senior editor of the Employee Benefits Law (BNA) treatise.

She earned her J.D. from the University of Wisconsin, where she served as an editor of the Wisconsin Law Review. She received her undergraduate degree from Gonzaga University.

When not at work, Erin enjoys spending time with her family and friends.

## BAR & COURT ADMISSIONS

2000, Wisconsin

2000, Washington

## PROFESSIONAL & CIVIC INVOLVEMENT

Wisconsin State Bar Association, *Member*

King County Bar Association, *Member*

Washington State Bar Association, *Member*

Civil Procedure Sub-Committee for the ABA Employee Benefits Committee, *Plaintiffs' Co-Chair, 2012 – 2016*

*Employee Benefits Law* (BNA), Chapter Editor, 2012 – 2016

*Employee Benefits Law* (BNA), Senior Editor, 2016 - present

## HONORS & AWARDS

Selected to Rising Stars list in *Super Lawyers – Washington*, 2009



## PUBLICATIONS & PRESENTATIONS

Panelist, ABA Section of Labor and Employment Law, Employee Benefits Committee – Mid-Winter Meeting, Austin, TX, 2017 (How to Get the Class Action Settlement Your Client Needs).

Quoted in Jacklyn Wille, "Ninth Circuit Adopts Pro-Worker Pension Framework," *Pension & Benefits Daily*, Bloomberg BNA (Apr. 22, 2016) (www.bna.com).

"*Amgen Inc. v. Harris*: What is the Status of ERISA Company Stock Cases Post-*Amgen*," ABA Employee Benefits Committee Newsletter, Spring, 2016.

Speaker, ACI ERISA Litigation, Chicago, IL, 2016 (Supreme Court Roundup).

Panelist, ABA Section of Labor and Employment Law, Employee Benefits Committee – Mid-Winter Meeting, Las Vegas, NV, 2016 (mock mediation).

Quoted in Andrea L. Ben-Yosef, "Class Action Suits on Plan Fees Steam Ahead," *Pension & Benefits Blog*, Bloomberg BNA (Feb. 10, 2016) (www.bna.com).

Br. of Amicus Curiae of Pension Rights Center in Supp. of Petition, *Pundt v. Verizon Communications*, No. 15-785 (U.S. 2016).

Br. of Amicus Curiae AARP and National Employment Lawyers Association in Supp. of Pls.-Appellees, *Whitley v. BP, P.L.C.*, No. 15-20282 (5th Cir. Oct. 28, 2015).

Br. of The Pension Rights Center as Amicus Curiae in Supp. of Resp't, *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. Sept. 4, 2015).

Lynn L. Sarko, Erin M. Riley, and Gretchen S. Obrist, Brief for Law Professors as Amici Curiae in Support of the Petitioners, *Tibble, et al. v. Edison International, et al.*, No. 13-550 (U.S. 2014).

Quoted in Jacklyn Wille, "High Court to Address Statute of Limitations for Suits Challenging Retirement Plan Fees," *Pension & Benefits Daily*, Bloomberg BNA (Oct. 3, 2014) (www.bna.com).

Speaker, Western Pension & Benefits Council – 2014 Spring Seminar, Seattle, WA, 2014 (What's New in Fiduciary Litigation?).

Erin M. Riley and Gretchen S. Obrist, Contributors, "Attorneys Reflect on 40 Years of ERISA's Biggest Court Rulings" Pension & Benefits Daily, Bloomberg BNA, discussing CIGNA Corp. v. Amara, 131 S.Ct. 1866, 50 EBC 2569 (U.S. 2011) (95 PBD, 5/17/11; 38 BPR 990, 5/24/11) (http://www.bna.com)

Erin M. Riley and Gretchen S. Obrist, "The Impact of Fifth Third Bancorp v. Dudenhoeffer: Finally, a Court Gets it Right!" Pension & Benefits Daily, Bloomberg BNA (154 PBD, 8/11/2014) (http://www.bna.com).

Lynn L. Sarko and Erin M. Riley, Brief for Law Professors as Amici Curiae in Support of the Respondents, *Fifth Third Bancorp v. Dudenhoeffer*, No. 12-751 (U.S. March 5, 2014).

"Erin M. Riley Explores the Pro-Plaintiff Aspects of the Citigroup Ruling", ERISA Litigation Tracker: Litigator Q&A, Bloomberg BNA (Dec. 1, 2011). Reproduced with permission from ERISA Litigation Tracker Litigator Q & A (Dec. 5, 2011). Copyright 2011 by The Bureau of National Affairs, Inc. (800-372-1033)

Sarah H. Kimberly, Erin M. Riley, "Court Declines to Limit Damages in Neil v. Zell", ABA Employee Benefits Committee Newsletter (Spring, 2011).

Derek W. Loeser, Erin M. Riley and Benjamin Gould, "2010 ERISA Employer Stock Cases: The Good, the Bad, and the In-Between Plaintiffs' Perspective", Bureau of National Affairs, Inc. (Jan. 28, 2011).

Derek W. Loeser and Erin M. Riley, "The Case Against the Presumption of Prudence", Bureau of National Affairs, Inc. (Sept. 10, 2010).



# KELLER ROHRBACK
L A W   O F F I C E S   ◆   L . L . P .



## HAVILA C. UNREIN

### CONTACT INFO

1201 Third Avenue, Suite 3200

Seattle, WA 98101

(206) 623-1900

hunrein@kellerrohrback.com

### PRACTICE EMPHASIS

- Class Actions
- Consumer Protection
- Employee Benefits and Retirement Security
- Environmental Contamination
- Fiduciary Breach
- Financial Products and Services
- Mass Personal Injury
- Securities
- Whistleblower

### EDUCATION

**Dartmouth College**

B.A., *magna cum laude,* 2003, Russian Area Studies

**University of Washington School of Law**

J.D./LL.M. (Tax), *with honors,* 2008

---

**Havila Unrein gives her clients a voice in the legal system.** Havila practices in Keller Rohrback's nationally recognized Complex Litigation Group, where she is dedicated to helping clients who have been harmed by others engaged in fraud, cutting corners, and abuses of power.

Havila made significant contributions to Hartman et al. v. Ivy Asset Management et al., a case involving fiduciary breach related to Madoff investments that resulted in a $219 million settlement with consolidated cases. She currently represents plaintiffs in multiple cases alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") by healthcare institutions attempting to claim exempt "church plan" status under ERISA.

During law school, Havila provided tax and business advice to low-income entrepreneurs and high-tech start-ups as a student in the Entrepreneurial Law Clinic. She also served as an extern to the Honorable Stephanie Joannides of the Anchorage Superior Court. Prior to law school, Havila worked and studied abroad in Russia, Azerbaijan, and the Czech Republic.

## BAR & COURT ADMISSIONS

2008, Washington

2009, U.S. District Court for the Western District of Washington

2012, Montana

2012, U.S. Court of Appeals for the Ninth Circuit

2012, U.S. District Court for the District of Montana

2013, California

2013, U.S. District Court for the District of Colorado

2013, U.S. District Court for the Central District of California

2013, U.S. District Court for the Eastern District of California

2013, U.S. District Court for the Northern District of California

2013, U.S. District Court for the Southern District of California

2014, U.S. Court of Appeals for the Sixth Circuit

## PROFESSIONAL & CIVIC INVOLVEMENT

California State Bar Association, *Member*

Santa Barbara County Bar Association, *Member*

Washington State Bar Association, *Member*

King County Bar Association, *Member*

Montana State Bar Association, *Member*

---

# EXHIBIT E-2

## TO

## JOINT DECLARATION OF LYNN LINCOLN SARKO AND MARY J. BORTSCHELLER IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; AND (2) PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS

## (COHEN MILSTEIN SELLERS & TOLL RÉSUMÉ)

# COHENMILSTEIN

## COHEN MILSTEIN SELLERS & TOLL PLLC

For decades, Cohen Milstein Sellers & Toll PLLC has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, consumer protection, civil rights/discrimination, ERISA, employment, and human rights laws. Cohen Milstein is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international.  Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad. The firm's most significant past and present cases include:

- HEMT MBS Litigation, (No. 1:08-cv-05653, U.S. District Court for the Southern District of New York). On May 10, 2016, U.S. District Judge Paul A. Crotty finally approved a $110 million settlement in the mortgage-backed securities class action brought by investors against Credit Suisse AG and its affiliates. This settlement ends claims brought by the New Jersey Carpenters Health Fund and other investors who claimed that the offering documents for the mortgage-backed securities at issue violated the Securities Act as they contained false and misleading misstatements concerning compliance with underwriting standards.

- In re Urethane Antitrust Litigation (Polyether Polyol Cases) (D. Kan.). Cohen Milstein serves as co-lead counsel on behalf of a class of direct purchasers of chemicals used to make many everyday products, from mattress foam to carpet cushion, who were overcharged as a result of a nationwide price-fixing conspiracy. On February 25, 2016, Cohen Milstein reached an agreement with The Dow Chemical Company to settle the case against Dow for $835 million. Combined with earlier settlements obtained from Bayer, Huntsman, and BASF, the Dow settlement pushed the total settlements in the case to $974 million.  The settlement was approved on July 29, 2016.

- RALI MBS Litigation, (Civ. No. 08-8781, U.S. District Court for the Southern District of New York). In July 2015 On July 31, 2015, Judge Katherine Failla gave final approval to a $235 million settlement with underwriters Citigroup Global Markets Inc., Goldman Sachs & Co., and UBS Securities LLC. She also approved a plan for distribution to investors of those funds as well as the previously approved $100 million settlement with RALI, its affiliates, and the individual Defendants that was reached in 2013. This global settlement marks an end to a long and complicated class action over MBS offerings that RALI and certain of its affiliates issued and sold to the New Jersey Carpenters Health Fund and other investors from 2006 through 2007. The case took seven years of intense litigation to resolve.

- In re: Bear Stearns Mortgage Pass-Through Certificates Litigation (No. 08-08093, U.S. District Court for the Southern District of New York). On May 27, 2015, U.S. District Judge Laura Taylor Swain finally approved a class action settlement with JPMorgan Chase & Co., which agreed to pay $500 million and up to an additional $5 million in litigation-related expenses to resolve claims arising from the sale of $27.2 billion of mortgage-backed securities issued by Bear Stearns & Co. during 2006 and 2007 in 22 separate public offerings.

- Harborview MBS Litigation, (No. 08-5093, U.S. District Court for the Southern District of New York). In February 2014, Cohen Milstein reached a settlement with the Royal Bank of Scotland (RBS) in the Harborview MBS Litigation, resolving claims that RBS duped investors into buying securities backed by shoddy home loans. The $275 million settlement is the fifth largest class action settlement in a federal MBS case. This case is one of eight significant MBS actions that Cohen Milstein has been named lead or co-lead counsel by courts and one of three that were nearly thrown out by the court, only to be revived in 2012.

- In Re Electronic Books Antitrust Litigation, (No. 11-md-02293, U.S. District Court for the Southern District of New York). In August 2014, a New York federal judge approved a $400 million antitrust settlement in the hotly contested ebooks price-fixing suit against Apple Inc. Combined with $166 million in previous settlements with five defendant publishing companies, consumers could receive more than $560 million. The settlement resolves damages claims brought by a class of ebook purchasers and attorneys general from 33 U.S. states and territories.

- Countrywide MBS Litigation, (2:10-cv-00302, U.S. District Court in the Central District of California). In April 2013, Plaintiffs in the landmark mortgage-backed securities (MBS) class action litigation against Countrywide Financial Corporation and others, led by Lead Plaintiff, the Iowa Public Employees' Retirement System (IPERS), agreed to a $500 million settlement. It is the nation's largest MBS-federal securities class action settlement. The settlement was approved in December 2013 and brings to a close the consolidated class action lawsuit brought in 2010 by multiple retirement funds against Countrywide and other defendants for securities violations involving the packaging and sale of MBS. The settlement is also one of the largest (top 20) class action securities settlements of all time.

- In re Beacon Associates Litigation (No. 09-cv-0777, United States District Court for the Southern District of New York). Class action settlement of $219 million for trustees and participants in ERISA-covered employee benefit plans whose assets were lost through investments made on their behalf by Beacon Associates LLC I & II in the investment schemes of Bernard Madoff.

- In re Plasma-Derivative Protein Therapies Antitrust Litigation (No. 09 C 7666, United States District Court for the Northern District of Illinois). After four years of litigation, in October of 2013, CSL Limited, CSL Behring LLC, CSL Plasma, Inc. (collectively, "CSL"), and the Plasma Protein Therapeutics Association ("PPTA") agreed to pay $64 million dollars to settle a lawsuit brought by the University of Utah Hospital and other health care providers alleging that CSL, the PPTA, and Baxter agreed between 2003-2009 to restrict the supply of immunoglobulin and albumin, and thereby increase the prices of those therapies. Two months later, Baxter International Inc. and Baxter Healthcare Corp. (collectively "Baxter") agreed to pay an additional $64 million to settle these claims – bringing the total recovery to the class to $128 million.

- Keepseagle v. Vilsack, Civil Action No. 1:99CV03119 (D.D.C.). A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA. A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision. On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan debt.

- <u>In re Parmalat Securities Litigation,</u> No. 04 MD 1653 (S.D.N.Y.). In this securities litigation case, Cohen Milstein has successfully negotiated two partial settlements totaling approximately $90 million. At the second partial settlement hearing, Judge Lewis A. Kaplan remarked that plaintiffs counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared. I wish I had counsel this good in front of me in every case." Our clients, four large European institutional investors, were appointed as co-lead plaintiffs and we were appointed as co-lead counsel. Most notably, this case allowed us the opportunity to demonstrate our expertise in the bankruptcy area. During the litigation, the company subsequently emerged from bankruptcy and we added "New Parmalat" as a defendant because of the egregious fraud committed by the now-bankrupt old Parmalat. New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal. This innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat.

- <u>Dukes v. Wal-Mart Stores, Inc.,</u> No. C-01-2252 (N.D. Cal.). Cohen Milstein is co-lead counsel in this sex discrimination case. In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores anytime after December 26, 1998. This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees. That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011. Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court. Since then, the *Dukes* action has been amended to address only the Wal-Mart regions that include stores in California, and other regional class cases have been or are soon to be filed. This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- <u>Rubin v. MF Global, Ltd.</u> (08-CV-02233, S.D.N.Y.). Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co-lead plaintiffs in the case. In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings. In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist. Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect. The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- <u>Hughes v. Huron Consulting Group</u> (09-CV-04734, N.D. Ill.). Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal. In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss <u>in their entirety</u> and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition-

related payments, which allowed plaintiffs to move forward with discovery. The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- In re Lucent Technologies Securities Litigation, Civ. Action No. 00-621 (JAP) (D.N.J.). A settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al., Civil Action No. 00-015 (Knox County Superior Court, Me.). In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The Firm served as co-lead counsel.

- In re StarLink Corn Products, Liability Litigation, MDL No. 1403. (N.D. Ill.). Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- Snyder v. Nationwide Mutual Insurance Company, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force. The action alleged consumer fraud and misrepresentations. Plaintiffs obtained a settlement valued at more than $85 million. The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al., No. 1:01CV02313 (D.D.C.). Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations

brought by the Federal Trade Commission and State Attorneys General offices.

- <u>Kruman v. Christie's International PLC, et al.,</u> Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action. Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- <u>Roberts v. Texaco, Inc.,</u> 94-Civ. 2015 (S.D.N.Y.). Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- <u>Trotter v. Perdue Farms, Inc.,</u> Case No. 99-893 (RRM) (JJF) (MPT), D. Del. This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply. The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law. In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices. In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits. Cohen Milstein was co-lead counsel.

### Awards & Recognition

- In 2017, Joel Laitman and Christopher Lometti, members of Cohen Milstein's Securities Litigation & Investor Protection practice group, and Betsy Miller and Victoria Nugent, co-chairs of the firm's Public Client practice group, have been named **The National Law Journal's "Plaintiffs' Lawyers Trailblazers."**

- In 2017, **The Best Lawyers in America 2018© recognized seven Cohen Milstein partners,** including Judge Martha A. Geer, Karen L. Handorf, Leslie M. Kroeger, Stephan A. LeClainche, Theodore J. Leopold, Joseph M. Sellers, and Christine E. Webber for their respective practices of law.

- In 2017, Law360 named Cohen Milstein partners, S. Douglas Bunch and Kalpana Kotagal as **"Rising Stars."**

- In 2017, The Legal 500 named Cohen Milstein a **Leading Firm** in "Antitrust: Civil Litigation / Class Actions" and "Dispute Resolution: Securities Litigation – Plaintiff."

- In 2017, The Legal 500 named Richard A. Koffman, Co-Chair of Cohen Milstein's Antitrust Practice to its **"Legal 500 Hall of Fame."**

- In 2017, Legal 500 named Sharon K. Robertson and Brent W. Johnson as **"Legal 500 Next Generation Lawyer"** in the area of Antitrust: Civil Litigation/Class Actions.

- In 2017, Super Lawyers named Brent W. Johnson as a "Rising Star" and a **"Top Rated Antitrust Litigation Attorney in Washington, DC."**

- In 2017, Super Lawyers named Leslie M. Kroeger, Stephan A. Le Clainche, and Theodore J. Leopold "Florida Super Lawyers" and Nicholas C. Johnson and Adam J. Langino "Florida Rising Stars."

- In 2017, Super Lawyers' names Christopher Cormier a 2017 "Rising Star" and **"Top Rated Antitrust Litigation Attorney in Denver, CO."**

- In 2017, the Coalition for Independent Living Options Inc. presented Michael Dolce a Special Acknowledgment Award for his Commitment to Ending Sex Crimes against People with Disabilities

- In 2017, Adam J. Langino was Elected American Association for Justice's Newsletter Chair for the Product Liability Section

- In 2017, Florida Trend Named Manuel J. Dominguez a **"Legal Elite."**

- In 2017, Nicholas C. Johnson was elected President of the F. Malcolm Cunningham, Sr. Bar Association.

- In 2017, Leslie M. Kroeger was elected Treasurer to the Florida Justice Association.

- In 2017, Nicholas C. Johnson was reappointed Director the Palm Beach County Bar Association's North County Section Board of Directors until June 2019.

- In 2017, Law360 selected Cohen Milstein as a **"Competition Practice Group of the Year"** and a **"Class Action Practice Group of the Year."**

- In 2017, South Florida Legal Guide Names Theodore J. Leopold as a **"Top Lawyer",** and Diana L. Martin and Adam Langino a **"Top Up and Comer".**

- In 2016, Women in Wealth Awards selects Carol V. Gilden Selected as "Best in Securities Litigation Law - Illinois & Excellence Award for Investor Protection Law"

- In 2016, Law360 named Cohen Milstein's Richard A. Koffman a Competition Law MVP.

- In 2016, Cohen Milstein Partner Martha Geer was selected as a 2016 North Carolina Leaders in the Law Honoree.

- In 2016, the Washington Lawyers' Committee for Civil Rights and Urban Affairs named Cohen Milstein Sellers & Toll a recipient of its 2016 Outstanding Achievement Award.

- In 2016, for the eighth consecutive year, Cohen Milstein was recognized by The Legal 500 as one of the leading plaintiff class action antitrust firms in the United States.

- In 2016, Agnieszka Fryszman, Joel Laitman, Chris Lometti, Kit Pierson, Joe Sellers and Steve Toll were named to the **2016 Lawdragon 500 Leading Lawyers in America.**

- In 2016, Law360 named Cohen Milstein Partner Julie Goldsmith Reiser one of the **"25 Most Influential Women in Securities Law."**

- In 2016, Cohen Milstein is named to the **National Law Journal's "Plaintiffs Hot List"** for the fifth time in six years.

- In 2016, Law360 names Cohen Milstein as one of the top firms for female attorneys.

- In 2015, Law360 selects Cohen Milstein as the sole plaintiff firm to be selected in two **"Practice Groups of the Year"** categories and one of only five class action firms recognized.

- In 2015, Cohen Milstein was named an **Elite Trial Lawyer Firm by the National Law Journal** for the second year in a row.

- In 2015, Cohen Milstein Partner Steven J. Toll named a **Law360 MVP in Securities Law.**

- In 2015, Cohen Milstein is selected as a **"Most Feared Plaintiffs Firm" by Law360** for the third year in a row.

- In 2015, Richard Koffman was named, for the fifth consecutive year, in the Legal 500 United States **"Leading Lawyers" in "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".**

- In 2015, Cohen Milstein's Denver office was named **"Antitrust Law Firm of the Year – Colorado"** by Global Law Experts.

- In 2015, Partners Theodore J. Leopold and Leslie M. Kroeger and Of Counsel Attorney Stephan A. LeClainche were selected "Florida Super Lawyers" and Adam J. Langino was selected "Florida Rising Star."

- In 2015, Cohen Milstein attorneys Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers.**

- In 2015, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Johanna Hickman, Kalpana Kotagal, Emmy Levens, and David Young were selected as **Washington DC Rising Stars** by Super Lawyers.

- In 2015, for the fourth time in five years, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**

- In 2015, Cohen Milstein Partner Carol V. Gilden was selected as **"Pension Funds Litigation Attorney of the Year in Illinois"** for the second year in a row by the Corporate INTL Legal Awards.

- In 2014, Cohen Milstein's Antitrust Practice was selected as a **Practice Group of the Year by Law360.** In

2014, Cohen Milstein Partner Kit Pierson was selected as an MVP by Law360.

- In 2014, Cohen Milstein was named a **"Most Feared Plaintiffs Firm"** by Law360 for the second year in a row. In 2014, Cohen Milstein was selected as an **Elite Trial Lawyer** firm by the National Law Journal.

- Cohen Milstein Partners Steven J. Toll, Joseph M. Sellers, Kit A. Pierson, and Agnieszka M. Fryszman Selected to the **2014 Lawdragon 500**.

- Joseph M. Sellers, Theodore J. Leopold, and Leslie M. Kroeger Make **"Best Lawyers**' List" for 2015.

- Released in 2014, the 2013 SCAS 50 Report on Total Securities Class Action Settlements once again ranked Cohen Milstein as a top firm.

- In 2014, Theodore J. Leopold, a partner at Cohen Milstein, was been selected to the Top 100 Miami Florida Super Lawyers list.  Partner Leslie M. Kroeger was selected to the **2014 Florida Super Lawyers** list and Diana L. Martin was selected to the **Florida Rising Stars** list.

- In 2014, Cohen Milstein attorneys Leslie M. Kroeger and Adam J. Langino were both recognized in the 2014 edition of **Florida Trend's Florida Legal Elite™**.  Kroeger is recognized as Legal Elite and Langino is listed as an Up-and-Comer.

- In 2014, Cohen Milstein was selected to the selected to the **National Law Journal's Midsize Hot List**.

- In 2014, Cohen Milstein was recognized as a **"Highly Recommended Washington, DC Litigation Firm"** by
- Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

- In 2014, Cohen Milstein was ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500** for the sixth year in a row.

- In 2014, Partner Richard Koffman was named, for the fourth consecutive year, in the Legal 500 United States **"Leading Lawyers"** list under the category of "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".

- In 2014, Cohen Milstein attorneys Christopher Cormier, Agnieszka Fryszman, Julie Goldsmith Reiser, Joseph Sellers, Daniel Sommers, and Steven Toll were recognized **as Local Litigation Stars** by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

- In 2014, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers**.

- In 2014, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Jeffrey Dubner, Johanna Hickman, Joshua Kolsky, Kalpana Kotagal, Emmy Levens, Michelle Yau and David Young were selected as **Washington DC Rising Stars** by Super Lawyers.

- In 2014, Cohen Milstein Partner Carol V. Gilden was selected as the Illinois Pension Fund Attorney of the Year.

- In 2014, Best Lawyers named Cohen Milstein Partner Joseph Sellers D.C. Litigation - Labor & Employment Lawyer of the Year.

- In 2013, for the third-year in a row, Cohen Milstein was selected to the *National Law Journal*

**Plaintiffs' Hot List**.

- In 2013, Cohen Milstein was named a "**Most Feared Plaintiffs Firm**" by Law360.

- In 2013, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fifth year in a row.

- In 2013, Cohen Milstein attorneys Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie G. Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll, and Christine E. Webber were selected as **Washington DC Super Lawyers**.

- In 2013, Cohen Milstein attorney Michelle Yau was selected as **Washington DC Rising Stars** by Super Lawyers. In 2013, Cohen Milstein Partner Carol V. Gilden was selected as a **2013 Illinois Super Lawyer**. She has been selected every year since 2005.

- In 2012, for the second-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

- In 2012, Cohen Milstein was the recipient of the Judith M. Conti Pro Bono Law Firm of the Year Award from the Employment Justice Center.

- In 2012, Cohen Milstein was recognized as a "Highly Recommended Washington, DC Litigation Firm" by

- Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

- In 2012, Cohen Milstein was ranked as a top firm by the 2011 SCAS Report on Total Securities Class Action Settlements.

- In 2012, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fourth year in a row.

- In 2012, Partner Joseph M. Sellers was selected as a **Washington DC Super Lawyer**.  Mr. Sellers was also selected for this prestigious award in 2007, 2008, 2009, 2010, and 2012.

- In 2012, Partner Steven J. Toll was selected as a **Washington DC Super Lawyer**.  Mr. Toll was also selected for this prestigious award in 2007, 2009, 2010, and 2011.

- In 2012, Partner Daniel S. Sommers was selected as a **Washington DC Super Lawyer**.  Mr. Sommers was also selected for this prestigious award in 2011.

- In 2012, Partner Christine E. Webber was selected as a **Washington DC Super Lawyer**.  Ms. Webber was also selected for this prestigious award in 2007.

- In 2012, Partner Agnieszka M. Fryszman was selected as a **Washington DC Super Lawyer**. In 2012, Partner Kit A. Pierson was selected as a **Washington DC Super Lawyer**.

- In 2012, Partner Carol V. Gilden was selected as an **Illinois Super Lawyer**.  Ms. Gilden was also selected for this prestigious award in 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

- In 2011, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

- In 2011, Partner Joseph M. Sellers was selected as a "**Visionary**" by The *National Law Journal*.

- In 2011,  Partner  J. Douglas Richards, Of Counsel Joel Laitman, and Of Counsel Christoper Lometti were selected as **New York - Metro Super Lawyers**.

- In 2011, Partner Joseph M. Sellers and the *Keepseagle v. Vilsack* team were selected as a finalist for the **2011**

- **Trial Lawyer of the Year Award** from the Public Justice Foundation.

- In 2011, **Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500 for the third year in a row.

- In 2011, Partners Steven Toll, Joseph Sellers, and Daniel Sommers were selected as **Washington DC Super Lawyers**. Partner J. Douglas Richards, Of Counsel Joel Laitman and Christoper Lometti were selected as **New York - Metro Super Lawyers**. Partner Carol Gilden was selected as an **Illinois Super Lawyer**.

- In 2011, Cohen Milstein was a recipient of The *National Law Journal's* **Pro Bono Award**. The Firm was named one of the "six firms that best reflect the pro bono tradition."

- In 2010, Partner Joseph M. Sellers was selected as one of "**The Decade's Most Influential Lawyers**" by *The National Law Journal*.

- In 2010, Partner Steven J. Toll was named one of Law360's "**Most Admired Attorneys**". In 2010, Partner Andrew N. Friedman was selected as a **Washington DC Super Lawyer**.

- In 2010, Partner Agnieszka M. Fryszman was selected as a finalist for the **Trial Lawyer of the Year Award** from the Public Justice Foundation.

- In 2010, Partners Joseph M. Sellers and Agnieszka M. Fryszman were both selected as one of the **Lawdragon 500 Leading Lawyers in America**.

- In 2010, Cohen Milstein was once again ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500.

- In 2009, Partner Steven J. Toll was named a **Top Attorney in Corporate Litigation for Securities Litigation** by Super Lawyers.

- In 2009, Partners Joseph M. Sellers and Christine E. Webber were named as **Top Washington Lawyers** by the Washingtonian Magazine.

- In 2009, Cohen Milstein was recognized as **one of the top 50 law offices in Washington D.C. for diversity efforts**.

- In 2009, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the third year in a row.

- Cohen Milstein ranked as a **2009 Leading Plaintiff Class Action Antitrust Firm in the United States** by *The Legal500*.

- The **2008 SCAS Report on Total Securities Class Action Settlements** ranked Cohen Milstein as a top firm for the second year in a row.

- In 2008, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the second year in a row.

- In 2008, Managing Partner Steven J. Toll was named one of Lawdragon's **100 Lawyers You Need to Know in Securities Litigation.**

## Attorney Profiles – Partners

**Steven J. Toll**

Steven J. Toll is Managing Partner at Cohen Milstein, a member of the Executive Committee, and Co-Chair of the firm's Securities Fraud & Investor Protection practice group. In this role, Mr. Toll guides the firm's mediation efforts and strategy, and has been lead or principal counsel on some of the most high-profile stock fraud lawsuits in the past 30 years, arguing important matters before the highest courts in the land.

Mr. Toll has built a distinguished career and reputation as a fierce advocate of the rights of shareholders and has guided mediation efforts on the firm's largest and most important matters (both securities fraud and other consumer type cases), a role in which he has earned the trust of mediators, as well as the respect of defense counsel. Mr. Toll has been involved in settling some of the most important mortgage-backed securities (MBS) class-action lawsuits in the aftermath of the financial crisis, including: Countrywide Financial Corp., which settled for $500 million in 2013; Residential Accredited Loans Inc. (RALI), which settled for $335 million in 2014; and the Harborview MBS suit, which settled for $275 million. He also negotiated a $90 million settlement of a suit against MF Global.

Among Mr. Toll's current matters is the Harman class action suit, where Mr. Toll argued and won an important ruling from the U.S. Court of Appeals for the District of Columbia Circuit. The Circuit Court reinstated the suit against electronics maker Harman International Industries; the ruling is significant in that it places limits on the protection allowed by the safe harbor rule for forward-looking statements.

Currently, Mr. Toll is also co-lead counsel in the BP Securities class action securities fraud lawsuit that arose from the devastating Deepwater oil spill in the Gulf of Mexico. The Fifth Circuit Court of Appeals recently affirmed the certification of the class of investors alleged to have been injured by BP's misrepresenting the amount of oil spilling into the Gulf of Mexico, and thus minimizing the extent of the cost and financial impact to BP of the clean up and resulting damages.

Mr. Toll is co-lead counsel in the consumer class action suit against Lumber Liquidators, a lawsuit that alleges the nationwide retailer sold Chinese-made laminate flooring containing hazardous levels of the carcinogen formaldehyde while falsely labeling their products as meeting or exceeding California emissions standards, a story that was profiled twice on 60 Minutes in 2015.

Mr. Toll is also leading Cohen Milstein's efforts in a $400 million derivative shareholder suit brought against the directors and officers of Bank Leumi, an Israeli bank, asserting that bank officers violated their fiduciary duties in conspiring to aid American taxpayers in hiding income from the IRS.

Mr. Toll has provided a great deal of pro bono legal work during a career at Cohen Milstein that spans more than three decades. In addition, he has been an active supporter of Children's Hospital National Medical Center for decades, setting up an endowment in his daughter's name to help the Hospital's leukemia patients and their families (his daughter passed away from leukemia in 1987), plus more recently establishing regular programs for music and laughter for the children during their hospital stays. He and his family also founded Lolly's Locks, a nonprofit organization that provides high-quality wigs to women cancer patients suffering from hair loss as a side effect of chemotherapy. Lolly's Locks was established in memory of Mr. Toll's late wife, Lolly, who passed away in 2012, after a 15-month battle with cancer.

Mr. Toll is a graduate of the Wharton School of the University of Pennsylvania, earning a B.S. cum laude, and received his J.D. from Georgetown University Law Center, where he was Special Project Editor of The Tax Lawyer. His name has appeared regularly on Law360's annual lists of MVP's, Leading Attorneys, and Most Admired Attorneys.

**Joseph M. Sellers**

Joseph M. Sellers is a Partner at Cohen Milstein, Chair of the firm's Executive Committee and Chair of the Civil Rights & Employment Practice Group, a practice he founded. In a career spanning nearly four decades, Mr. Sellers has represented victims of discrimination and other illegal employment practices individually and through class actions. He brings to his practice a deep commitment and broad background in fighting discrimination in all its forms. That experience includes decades of representing clients in litigation to enforce their civil rights, participating in drafting and efforts to pass landmark civil rights legislation, testifying before Congress on various civil rights issues, training government lawyers on the trial of civil rights cases, teaching civil rights law at various law schools and lecturing extensively on civil rights and employment matters.

Mr. Sellers, who joined the firm in 1997, has been practicing civil rights law for more than 35 years, during which time he has represented individuals and classes of people who have been victims of civil rights violations or denied other rights in the workplace. He has tried to judgment before courts and juries several civil rights class actions and a number of individual cases and has argued more than 30 appeals in the federal and state appellate courts, including the United States Supreme Court. He has served as class counsel, and typically lead counsel, in more than 75 civil rights and employment class actions.

His clients have included persons denied the rights and opportunities of employment because of race, national origin, religion, age, disability and sex, including sexual orientation and identity. He has represented victims of race discrimination in the denial of equal access to credit, in the rates charged for insurance and in the equal access to health clubs, retail stores, restaurants and other public places. He has challenged housing discrimination on the basis of race and the denial of housing and public accommodations to people with disabilities.

Some of the noteworthy matters he has handled include: *Walmart v. Dukes* (U.S. S.Ct.), delivered argument on behalf of class of women who alleged sex discrimination in pay and promotions in case establishing new rules governing class certification; *Randolph v. Greentree Financial* (U.S. S.Ct.), delivered argument on behalf of consumer challenging enforcement of arbitration agreement in case establishing rules governing the enforceability of arbitration agreements; *Beck. v. Boeing Company* (W.D. Wash.), co-lead counsel on behalf of class of more than 28,000 women employees alleging sex discrimination in pay and overtime decisions; *Conway, et al. v. Deutsch* (E.D. Va.), co-lead counsel on behalf of class of female covert case officers at the CIA alleging sex discrimination in promotions and job assignments; *Johnson, et al. v. Freeh* (D.D.C.), co-lead counsel on behalf of class of African-American FBI special agents alleging racial discrimination in promotion and job assignments; *Keepseagle v. Veneman* (D.D.C.), lead counsel on behalf of class of Native American farmers and ranchers alleging denial of equal access to credit by USDA; *Neal v. Director, D.C Dept. of Corrections* (D.D.C.), co-lead counsel in which he tried first sexual harassment class action to a jury, on behalf of a class of women correctional employees and women and men subject to retaliation;*Doe v. D.C. Fire Department* (D.D.C.), in which he established after trial that an applicant with HIV could properly serve as a firefighter; *Floyd-Mayers v. American Cab Co.* (D.D.C.), in which he represented persons who alleged they were denied taxi service because of their race and the race of the residents at the location to which they asked to

be driven; and *Trotter, et al. v. Perdue Farms* (D. Del.), lead counsel on behalf of chicken processing workers alleging violations of federal wage and hour and employee benefits law.

Prior to joining Cohen Milstein, Mr. Sellers served for over 15 years as the Director of the Employment Discrimination Project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, an organization providing pro bono representation in a broad range of civil rights and related poverty issues. He was a member of the transition teams of Obama/Biden in 2008 and Clinton/Gore in 1992 and 1993, and served as a Co-Chair of the Special Committee on Race and Ethnicity of the D.C. Circuit Task Force on Gender, Race and Ethnic Bias to which he was appointed by the judges of the D.C. Circuit Court of Appeals and the U.S. District Court for the District of Columbia.

Throughout his career, Mr. Sellers has also been active in legislative matters. He helped to draft and worked for the passage of the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990 and the Lily Ledbetter Fair Pay Restoration Act of 2009. He has testified more than 20 times before Committees of the United States Senate and House of Representatives on various civil rights and employment matters.

A teacher and mentor, Mr. Sellers has trained lawyers at the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice on the trial of civil rights cases, and was an Adjunct Professor at the Washington College of Law at American University, where he taught Employment Discrimination law, and at the Georgetown University Law Center, where he taught Professional Responsibility. In addition, he has lectured extensively throughout the country on various civil rights and employment topics.

Mr. Sellers has been recognized as one of the top lawyers in Washington and as one of the top plaintiffs' employment lawyers in the U.S. In 2010, *The National Law Journal* named him one of "The Decade's Most Influential Lawyers," in 2011 *The Legal Times* named him a "Legal Visionary," and in 2012 the Washington Lawyers' Committee for Civil Rights and Urban Affairs awarded him the Wiley Branton Award for leadership in civil rights. He is a professionally trained mediator and has served as the President of the Washington Council of Lawyers.

Mr. Sellers received his B.A. in American History and Literature from Brown University, and earned his J.D. from Case Western Reserve School of Law, where he served as Research Editor of the *Case Western Reserve Law Review*.

**Andrew N. Friedman**

Andrew N. Friedman is a Partner at Cohen Milstein, and is Co-Chair of the firm's Consumer Protection practice group. Practicing in the class action field since 1985, Mr. Friedman specializes in litigating complex, multi-state class action lawsuits against manufacturers and consumer service providers such as banks, insurers, credit card companies and others. He is widely recognized as a leader in enforcing consumer rights and known as a hands-on lawyer who is ready to take litigation all the way through trial.

Over the years, Mr. Friedman has been lead or co-lead counsel in numerous important cases, bringing relief to millions of consumers and recovering hundreds of millions of dollars in class actions. He was one of the principal counsel in cases against Nationwide and Country Life, which asserted sales marketing abuses in the marketing of so-called "vanishing premium policies," where insurance agents sold insurance policies to unsuspecting consumers promising that after a relatively short time the dividends generated from the policy would be so high as to be able to fully pay the premiums. In fact, the calculations of the policies were based on unrealistic interest rate projections and, therefore, the premiums never "vanished." The Nationwide case

resulted in a settlement valued at between $85 million and $103 million, while a settlement with Country Life made $44 million in benefits available to policyholders.

Mr. Friedman was co-lead counsel in Keithly v. Intelius, Inc. (W.D. Wash.), where he negotiated two nationwide settlements with Intelius, Inc., relating to negative option programs and improper post-transaction marketing. The combined settlements made $12 million in cash and a total of $3.5 million in vouchers available to the Class.

Mr. Friedman has also litigated important consumer product lawsuits, including one against Thomson Consumer Electronics, which resulted in a settlement that made up to $100 million available for persons who paid for unreimbursed repairs to defective televisions. In addition, Mr. Friedman was one of the principal counsel in the Dex-Cool Litigation, a nationwide lawsuit alleging that General Motors sold millions of cars with defective coolant that gummed up and caused corrosion to engines. GM settled ahead of trial, offering relief of cash payments of up to $800 per repair.

More recently, Mr. Friedman litigated a lawsuit against Symantec, Corp., and Digital River, Inc., a four-year long nationwide class action battle regarding the marketing of a re-download service in conjunction with the sale of Norton software. The case settled in a $60 million all-cash deal one month before the case was about to go to trial – one of the most significant consumer settlements in years.

Prior to his current role as Co-Chair and member of the Consumer Protection group, Mr. Friedman was a member of the Securities Litigation & Investor Protection practice, litigating many important matters, including the Globalstar Securities Litigation in which he served as one of the lead trial counsel. The case settled for $20 million during the second week of the trial. In addition, Mr. Friedman served as one of co-lead or principal counsel in Norman Frank et al. v. David L. Paul (a recovery of over $18 million); In re Jiffy Lube Securities Litigation (D. Md.) (a recovery of over $12 million); and In re Immunex Securities Litigation (W.D. Wash.) (a recovery of $14 million).

Currently, Mr. Friedman is litigating such notable matters as:

- Anthem Data Breach Litigation: Mr. Friedman is co-lead counsel in a high-profile class action lawsuit against Anthem Inc. over its massive data breach that compromised the personal identification (including social security numbers, date of birth, medical ID number, etc.) and health information of 80 million insured customers. The lawsuit alleges Anthem, the second-largest insurance company in the nation, failed to ensure its data systems were protected, failed to prevent and stop the breach from happening and failed to disclose to its customers material facts regarding the breach. Mr. Friedman is involved in all aspects of the litigation.

- Sallie Mae Litigation: Cohen Milstein is co-lead counsel in a series of cases alleging that Sallie Mae charged usurious interest rates and improper late fees to California students. Mr. Friedman is overseeing all aspects of the litigation.

- Home Depot Data Breach Litigation: Mr. Friedman is a member of the Plaintiffs' Steering Committee representing financial institutions and heads the expert committee in a class action lawsuit arising out of the Home Depot data breach, a cyber attack that affected hundreds of financial institutions and more than 40 million consumers.

Mr. Friedman is a noted speaker who has appeared on numerous panels for legal education seminars and institutional investor conferences on the issues of consumer and securities class actions. In 2011, LawDragon named him one of the Leading Plaintiffs' Lawyers. His work has been cited in the media and he was profiled in the April 14, 2000, Washington Business Journal.

Prior to joining Cohen Milstein, Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office.

Mr. Friedman attended Tufts University, graduating magna cum laude and was elected Phi Beta Kappa, with a B.A. in Psychology. He earned his J.D. from the National Law Center, George Washington University.

**Daniel S. Sommers**

Daniel S. Sommers is a Partner at Cohen Milstein, a member of the firm's Executive Committee and Co-Chair of the Securities Litigation & Investor Protection practice group. During his nearly three decade career at Cohen Milstein, Mr. Sommers has taken leadership roles in litigating large, complex and significant securities cases. He provides litigation counsel to the firm's institutional investor clients, including for example, the New York State Common Retirement Fund, the Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the Arkansas Public Employees Retirement System and numerous Taft-Hartley pension funds. Many of his cases have resulted in important rulings and legal precedents, as well as in significant recoveries for investors totaling hundreds of millions of dollars. Some of his notable matters include:

- *Bear Stearns Mortgage Pass Through Securities Litigation*: Co-lead counsel in a $505 million landmark settlement (including a $5 million expense fund) of a securities class action suit alleging that Bear Stearns violated securities laws in the sale of mortgage backed securities to investors. This case represents the largest recovery ever obtained in a securities class action on behalf of investors in mortgage-backed securities.
- *Converium/Scor Securities Litigation* (Netherlands): Co-lead counsel in a groundbreaking $58.4 million securities class action recovery, in which the Amsterdam Court of Appeal declared binding a world-wide class action settlement of claims of non-U.S. investors who purchased Converium shares outside of the United States. The ruling was a major victory for worldwide investors because it successfully implemented the Dutch Collective Settlement Statute even though the underlying transactions had limited contact with the Netherlands.
- *Fannie Mae Securities Litigation*: Played a significant role in a high profile securities class action against Fannie Mae, several of its former executives and KPMG involving allegations of falsified financial statements. The $153 million settlement amount represents the largest recovery in a securities fraud class action ever obtained in the United States District Court for the District of Columbia.
- *CP Ships Ltd. Securities Litigation*: Co-lead counsel in a class action lawsuit alleging that CP Ships, a Canadian company headquartered in England but with substantial operations in Tampa, Florida, issued false financial statements. Mr. Sommers argued an appeal in the U.S. Court of Appeals for the Eleventh Circuit, successfully opposing objections to a settlement that provided non-U.S. investors with the protections of the federal securities laws.
-

Mr. Sommers has obtained significant recoveries for investors in numerous other securities class action cases in federal courts throughout the United States including: *Steiner v. Southmark Corporation* (N.D. Tex.) (over $70 million recovery); *In re PictureTel Inc. Securities Litigation* (D. Mass.) ($12 million recovery); *In re Physician*

*Corporation of America Securities Litigation* (S.D. Fla.) ($10.2 million recovery); *In re Gilat Satellite Securities Litigation* (E.D.N.Y.) ($20 million recovery); *In re Pozen Inc. Securities Litigation* (M.D.N.C.) ($11.2 million recovery); *In re Nextel Communications Securities Litigation* (D.N.J.) (up to $27 million recovery); *In re PSINet Inc. Securities Litigation* (E.D. Va.) ($17.8 million recovery); *In re Cascade International Inc. Securities Litigation*, (S.D. Fla.) (global recovery of approximately $10 million); *In re GT Solar Securities Litigation* (D.N.H.) (recovery of $10.5 million);*Mulligan v. Impax Laboratories, Inc.* (E.D. Va.) (recovery of $8 million); *Plumbers & Pipefitters National Pension Fund v. Orthofix, N.V.* (S.D.N.Y) (recovery of $11 million) and *In re ECI Telecom Securities Ltd. Litigation* (E.D. Va.) ($21.75 million recovery). He has also handled significant appellate matters including arguing before the United States Court of Appeals for the Ninth Circuit in *Hemmer Group v. Southwest Water Company*, where he obtained a reversal of the district court's order dismissing investors' claims under the Securities Act of 1933. In addition, he was co-lead counsel for investors before the United States Supreme Court in *Broudo v. Dura Pharmaceuticals, Inc.*, 544 U.S. 336 (2005) (addressing the standards for pleading loss causation).

Mr. Sommers is also experienced in non-class action litigation. He represented TBG Inc., a multi-billion dollar privately-held overseas corporation, in a multi-party, complex action alleging fraud in a corporate acquisition and represented individuals in connection with investigations brought by the United States Securities and Exchange Commission. He also has represented publicly traded corporations in the prosecution and defense of claims. Mr. Sommers has litigated cases covering a wide-range of industries including the financial services, computer software, pharmaceutical, insurance, real estate and telecommunications industries among others. In addition, he has substantial experience in cases presenting complex accounting and auditing issues.

Mr. Sommers is recognized as a thought leader on the subjects of securities and class action litigation and is a frequent speaker on those topics both to other lawyers and institutional investors. He has been quoted on these topics in a variety of publications, such as *The Wall Street Journal*, *The Washington Post*, *BNA/Bloomberg*, and *Law360*. Mr. Sommers is a member of the advisory board of the *Bloomberg/BNA Securities Litigation & Law Report* and served on Law360's Securities Editorial Advisory Board. *Benchmark Plaintiff* has recognized him as a litigation star in multiple years. He has been named a Washington, D.C. Super Lawyer each year from 2011 through 2016, and has been awarded Martindale-Hubbell's highest rating of AV Preeminent®. He served as Chairman and Vice-Chairman of the Investor Rights Committee of the Corporation, Finance and Securities Law Section, District of Columbia Bar, and through the years has been a guest lecturer at Columbus School of Law at the Catholic University of America; Georgetown Law Center; and George Washington University Law School.

Mr. Sommers attended Union College, where he earned a B.A. *magna cum laude* in Political Science, and graduated from George Washington University Law School.

**Daniel A. Small**

Daniel A. Small has been a Partner at Cohen Milstein for more than 20 years and chaired or co-chaired the firm's Antitrust practice group from 2008 to 2014. He is a member of the firm's Executive Committee.

When he arrived at Cohen Milstein 26 years ago, Mr. Small was assigned to work on securities fraud cases. One year later, he received an assignment in an antitrust case and has worked virtually full time on antitrust cases ever since. He has represented plaintiff classes as lead or co-lead counsel numerous times and has tried cases before juries and has argued cases in several appellate courts, including the United States Supreme

Court. He also has defended unions against antitrust claims and represented a key duplication machine manufacturer on its monopolization claims against the dominant competitor.

Mr. Small has obtained favorable settlements and judgments totaling hundreds of millions of dollars and has been involved with a broad array of markets, everything from computer software and hardware to wild blueberries and hospital nurses. He has developed a sophisticated understanding of how conspiracies and monopolies operate in a range of complex markets. He has spent years studying the economic issues that underpin his cases, and the challenges of using antitrust litigation to achieve just compensation for victims, and to encourage and facilitate freer and more open markets in this country.

His work in complex civil litigation has made him one of the most respected and feared litigants in the class action antitrust space: *The Legal 500* has recognized Mr. Small and Cohen Milstein as a "Leading Plaintiffs Antitrust Class Action Lawyer/Firm" annually since 2009; *Benchmark Plaintiff* has repeatedly awarded him "National Litigation Star – Antitrust"; and in 2014, he was named a "Leading Competition Lawyer" by the *International Who's Who of Competition Lawyers & Economists*.

Currently, Mr. Small is litigating the following notable matters, among others:

- VFX/Animation Workers Litigation: Cohen Milstein is one of three court-appointed co-lead firms in litigation alleging that the major animation studios conspired to suppress the pay of special effects and animation workers. The litigation has survived a motion to dismiss and the plaintiffs recently filed a motion for class certification.
- Prime Healthcare Services Litigation: Cohen Milstein is defending the Service Employees International Union (SEIU) in an antitrust conspiracy action brought by Prime Healthcare Services, a hospital chain in Southern California, alleging that SEIU conspired with Kaiser Permanente to drive Prime and certain other hospitals out of the market. Cohen Milstein led the successful effort to have the complaint and amended complaint dismissed in the Southern District of California. The case is on appeal in the Ninth Circuit where Mr. Small recently argued on behalf of the SEIU and its local union, UHW.
- Google Wi-Fi Litigation: Cohen Milstein is co-lead counsel in a nationwide class action lawsuit alleging Google violated the Wiretap Act when its Street View vehicles collected payload data from unencrypted Wi-Fi networks, including the home networks of individuals. The litigation survived a motion to dismiss, which was affirmed on an interlocutory appeal to the Ninth Circuit. Currently, the firm is in the midst of jurisdictional discovery.
- Michigan Blue Cross Litigation: Cohen Milstein is co-lead counsel in this class action challenging Michigan Blue Cross's use of most favored nation provisions in its provider agreements with hospitals in Michigan. The class plaintiffs secured a $30 million settlement, which was approved by the United States District Court for the Eastern District of Michigan. Mr. Small defended the settlement on appeal, arguing recently before the Sixth Circuit Court of Appeals.
-

Past successes include:

- In re Buspirone Antitrust Litigation: $90 million settlement. Cohen Milstein served as co-lead counsel in a class action lawsuit alleging that Bristol Myers-Squibb Co., the manufacturer of the prescription drug Buspar, conspired to keep generic versions of the drug out of the market.
- *Pease v. Jasper Wyman & Son, et al.:* $56 million judgment. Cohen Milstein was lead counsel representing a class of wild blueberry growers in Maine who sued four blueberry processors for

conspiring to depress blueberry prices. The litigation was tried before a jury in Maine state court, where Mr. Small was co-lead trial counsel. The jury found the processors liable for 100% of the damages estimated by the plaintiffs' expert and awarded the growers $18.68 million in damages, which was trebled under Maine antitrust law.

- 

Mr. Small attended Colgate University, where he graduated with a B.A., *cum laude*, in History. He earned his J.D. at American University's Washington College of Law. Following law school, Mr. Small clerked for the Honorable Judge Roger Vinson, United States District Court for the Northern District of Florida, from 1986 to 1988. He serves on the Advisory Board of the American Antitrust Institute and is chair of the selection committee for the annual Jerry S. Cohen Memorial Writing Award for Antitrust Scholarship.

**Christine E. Webber**

Christine E. Webber is a Partner at Cohen Milstein, and a member of the Civil Rights & Employment practice group. In that role, Ms. Webber represents victims of discrimination and other illegal employment practices in class and collective actions. She has participated during her career in litigating groundbreaking sex discrimination lawsuits. Ms. Webber is a hands-on litigator, known for her ability to work closely with economic and statistical expert witnesses and to identify the types of sophisticated statistical analyses that will be most helpful to her clients' claims.

Ms. Webber is a tenacious and resourceful litigator with a fierce commitment to fighting discrimination and protecting workers. In the face of adversity she continues to find new ways to protect her clients' rights. Following the Supreme Court's ruling decertifying the class in *Dukes v. Wal-Mart*—a case brought on behalf of a nationwide class of women suing Wal-Mart for sex discrimination in pay and promotion—Ms. Webber has been counsel in several regional class cases pursuing these claims for former Dukes class members. Ms. Webber was co-lead counsel in *Rindfleisch v. Gentiva Health Services* (N.D. Ga.) in which nurses and other home health care providers were held to be non-exempt because they were not paid on a bona fide salaried or fee basis. Following this successful summary judgment ruling, the case was decertified, and Ms. Webber continues to represent individuals seeking their unpaid overtime. In *Tomkins v. Amedisys, Inc.,* a lawsuit challenging similar practices as the Gentiva litigation, Ms. Webber represented approximately 2,000 nurses, physical therapists and occupational therapists pursuing wage and hour claims against Amedisys; the case settled recently for $8 million.

Ms. Webber's past successes include *In re Tyson Foods FLSA MDL* (M.D. Ga.), a collective action involving Fair Labor Standards Act (FLSA) claims at over 40 Tyson chicken processing plants, which ultimately resolved the claims of 17,000 chicken processing workers who had been denied compensation for donning and doffing required safety and sanitary equipment. In *Hnot v. Willis Group Insurance* (S.D.N.Y.), Ms. Webber represented a class of women vice presidents in Willis' Northeast region, who complained of discrimination with respect to their salary and bonuses. This "glass ceiling" case settled in 2007 for $8.5 million plus attorneys' fees, an average payment of $50,000 per woman. A subsequent case, *Cronas v. Willis Group*, pursued similar claims for a later time period with similar success. Ms. Webber was also counsel to the plaintiff class in *Keepseagle v. Vilsack*, a historic settlement between Native American farmers and the United States Department of Agriculture (USDA). The *Keepseagle* settlement agreement required the USDA to pay $680 million in damages to thousands of Native Americans, to forgive up to $80 million in outstanding farm loan debt and to improve the farm loan services the USDA provides to Native Americans. Ms. Webber was part of the team recognized by Public Justice as finalists for their Trial Lawyer of the Year award in 2011 for the work done in *Keepseagle*.

Prior to joining Cohen Milstein in 1997, Ms. Webber received a Women's Law and Public Policy fellowship which funded the first of her four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. There, she worked on employment discrimination cases, focusing in particular on the sexual harassment class action *Neal v. Director, D.C. Department of Corrections, et al.* Ms. Webber participated in the trial of this groundbreaking sexual harassment class action in 1995. Ms. Webber also tried the race discrimination case *Cooper v. Paychex* (E.D. Va.), and successfully defended the plaintiffs' verdict before the Fourth Circuit.

Ms. Webber is co-chair of the National Employment Lawyers' Association's Class Action Committee, a position she has held since 1999. She speaks and writes frequently on employment discrimination, wage and hour issues, and class actions.

Ms. Webber attended Harvard University, graduating *magna cum laude*, with an A.B. in Government, and earned her J.D., *magna cum laude*, Order of the Coif, at the University of Michigan Law School. Following law school, she clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois.

**Richard A. Koffman**

Richard A. Koffman is a Partner at Cohen Milstein and Co-Chair of the Antitrust practice group. He litigates antitrust cases on behalf of the victims of corporations engaged in price-fixing, market monopolization, and other unlawful conduct. Mr. Koffman joined Cohen Milstein after serving as Senior Trial Attorney in the U.S. Department of Justice's Antitrust and Civil Rights Divisions. He views his role in litigating antitrust suits as an extension of the public interest work he pursued at the DOJ in promoting competition and fighting discrimination.

Mr. Koffman has served as lead or co-lead counsel in many landmark antitrust class actions, including:

- Urethanes (Polyether Polyols) Antitrust Litigation: Co-lead counsel for plaintiffs in an antitrust class action alleging a conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants settled pre-trial for a total of $139 million. After a four-week trial, the jury returned a $400 million verdict for plaintiffs against the final defendant, The Dow Chemical Co., which the district court trebled to more than $1 billion. Dow ultimately settled for $835 million while the case was on appeal, bringing the total recovery to $974 million – nearly 250% of the damages found by the jury.
- Plasma-Derivative Protein Therapies Antitrust Litigation: Co-lead counsel for plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin – life-saving therapies derived from blood plasma. Mr. Koffman and his team obtained settlements totaling $128 million to compensate customers who were overcharged for these vital therapies.
- Polyester Staple Antitrust Litigation: Co-lead counsel for plaintiffs alleging a conspiracy to fix prices for polyester staple fiber; the case settled for $46 million.

Current cases include:

- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company – the three largest dental

supply and dental equipment distributors in the United States – fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays.

- Sports Broadcasting Antitrust Litigation: Counsel for plaintiffs in class actions alleging that the system of geographical broadcasting territories employed by Major League Baseball and the National Hockey League amount to unlawful market allocation under Section 1 of the Sherman Act.

- Mixed Martial Arts (MMA) Antitrust Litigation: Co-lead counsel in a class action on behalf of elite MMA fighters alleging that Zuffa LLC – commonly known as the Ultimate Fighting Championship – has unlawfully monopolized the markets for promoting live professional MMA bouts and for purchasing the services of elite professional MMA fighters. The district court denied defendant's motion to dismiss the case in September 2015.

- *People of the State of California v. American Express:* Counsel for the City of San Francisco in litigation alleging that American Express, by prohibiting its participating merchants from encouraging consumers' use of less costly payment methods (including debit cards and cash), is responsible for unlawful overcharges borne by retailers and, indirectly, all California consumers.

*The Legal 500* has recognized Mr. Koffman as a Leading Lawyer for "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust" for five years in a row, describing him as a "strong brief writer and an excellent oral advocate." Mr. Koffman was also named as one of the world's leading competition lawyers by Global Competition Review in the U.S. Plaintiffs section of *Who's Who Legal: Competition 2016*.

Mr. Koffman attended Wesleyan University, where he received a B.A. with honors, and is a graduate of Yale Law School, where he was Senior Editor of the *Yale Law Journal*. After law school, Mr. Koffman served as a law clerk to two Federal Judges: James B. McMillan, of the U.S. District Court for the Western District of North Carolina and Anthony J. Scirica of the U.S. Court of Appeals for the Third Circuit.

**Agnieszka Fryszman**

Agnieszka Fryszman is a Partner at Cohen Milstein, and is Chair of the firm's Human Rights practice group. She has been recognized as leading one of the best private international human rights practices in the world.

Ms. Fryzman represents individuals who have been victims of torture, human trafficking, forced and slave labor and other violations of international law. A recognized expert and leader in the field of human rights law, Ms. Fryszman regularly litigates cases against corporate giants. She was a member of the legal team that successfully represented survivors of Nazi-era forced and slave labor against the German and Austrian companies that allegedly profited from their labor. These cases were resolved by international negotiations that resulted in multi-billion dollar settlements. She also represented, pro bono, Holocaust survivors suing Swiss banks that collaborated with the Nazi regime during World War II. This litigation led academics to revise their assessment of Switzerland's relationship with Nazi Germany and exposed the extent of business participation in the Holocaust.

Ms. Fryszman earned the *National Law Journal* Pro Bono Award for efforts on behalf of Nepali laborers injured or killed at U.S. military bases in Iraq and Afghanistan. Her team obtained several judgments and significant settlements on behalf of the families.

In addition, she currently represents victims of a human trafficking ring that allegedly lured men from Nepal with the promise of employment at luxury hotels, but instead took them against their will to work for U.S. military contractors in Iraq. Ms. Fryszman investigated and initiated suit against military contractor KBR, filing one of the first complaints under the Trafficking Victims Protection Act. She has also represented men and women who were trafficked by diplomats, in the fishing industry, and to work cleaning houses in Northern Virginia. In one recent case, after Ms. Fryszman obtained a full recovery for her client in a civil suit, the Department of Justice brought criminal charges, resulting in guilty pleas by the perpetrators. Her work on behalf of the former "comfort women," women and girls trafficked into sexual slavery by the government of Japan during World War II, was recognized with the "Fierce Sister" award from the National Asian Pacific American Women's Forum.

Ms. Fryszman represented, pro bono, victims of the September 11 attack on the Pentagon and obtained one of the highest awards for an injured survivor from the Victim's Compensation Fund. Ms. Fryszman also represented, pro bono, two individuals detained by the United States at Guantanamo Bay who were ultimately cleared without charge.

Prior to joining Cohen Milstein in 1998, Ms. Fryszman served as counsel to the United States House of Representatives Committee on the Judiciary, Subcommittee on Commercial and Administrative Law, and before that counsel to Representative Henry Waxman, Ranking Member on the House Government Reform and Oversight Committee. Earlier in her career, she was legislative director to U.S. Representative Jack Reed.
Ms. Fryszman has received some of the legal profession's highest honors. Since 2009, LawDragon 500 has named her perennially to its list of Leading Lawyers in America. *Benchmark Plaintiff* has named her a Leading Star Plaintiffs' Litigator and one of the Top 150 Women in Litigation. For her pro bono work, she was awarded the Beacon of Justice Award by the National Legal Aid and Defender Association and the Frederick Douglass Human Rights Award from the Southern Center for Human Rights. She was also a finalist for the Public Justice Foundation's Trial Lawyer of the Year Award for her work on *Wiwa v. Royal Dutch Shell*. Ms. Fryszman joined the legal team in that case to prepare it for trial, resulting in a multi-million dollar settlement on the morning of jury selection.

Ms. Fryszman graduated from Brown University with an A.B. in International Relations, and earned her law degree from Georgetown University, graduating *magna cum laude*, Order of the Coif. At law school, she was a Public Interest Law Scholar.

**Julie Goldsmith Reiser**

Julie Goldsmith Reiser is a Partner at Cohen Milstein, and a member of the Securities Litigation Investor Protection Practice Group. Ms. Reiser's practice focuses on representing public pension plans and other institutional investors in high-stakes securities litigation.

Known for her hands-on approach, strong advocacy and critical thinking, Ms. Reiser has led successful litigation teams in several complex actions, including a $500 million settlement related to Countrywide's issuance of mortgage-backed securities ("MBS") and the recent Fifth Circuit affirmation of an investor class in

the BP securities fraud litigation stemming from the 2010 Deepwater Horizon oil spill. In those cases, Ms. Reiser's clients have benefited from her oral and written advocacy, her judgment, and her ability to work tirelessly and collegially as a member of a litigation team. Over the years, Ms. Reiser has become a recognized leader in the securities plaintiffs' bar, demonstrating a keen understanding of complex financial and economic issues and using her intuition and strategic thinking to develop strong legal theories that align with the evidence.

Currently, Ms. Reiser is litigating the following notable matters:

In re BP Securities Litigation: Ms. Reiser represents the New York State Common Retirement Fund as co-lead plaintiff in a securities class action filed in 2010, alleging that BP injured investors by intentionally downplaying the severity of the Deepwater Horizon oil spill and preventing investors from learning the magnitude of the disaster. Ms. Reiser has taken the lead in all aspects of this litigation: case development, motion practice, oversight and implementation of discovery strategies, depositions, expert discovery and argument. After successfully arguing for class certification to the district court, Ms. Reiser presented plaintiffs' defense of that court's decision to the Fifth Circuit U.S. Court of Appeals, which affirmed the class. Trial in this matter is set for July 2016.

Countrywide Mortgage Backed Securities Litigation: Ms. Reiser represented the Iowa, Oregon and Orange County public retirement systems in class action litigation related to Countrywide's issuance of mortgage-backed securities, which culminated in a landmark $500 million settlement. Over the course of the litigation, Ms. Reiser argued on investors' behalf at the motion to dismiss stage.  She also handled various arguments related to discovery disputes, and oversaw merits and expert discovery. She took a majority of the fact depositions and was recognized for having teased a number of salient points from witnesses during the depositions. Ms. Reiser also took the lead in working with experts to maximize damages. The case is ongoing.

Ms. Reiser's successes include:

Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al.: Ms. Reiser developed and litigated this novel class action, challenging trustee inaction in preventing investor losses. She represented the Arkansas Public Employees Retirement System, IPERS and Chicago Laborers in the case, which settled for $69 million. Ms. Reiser worked with plaintiffs' statistician to develop a sampling methodology for testing whether mortgages were underwritten properly and with plaintiffs' economist in the bid for class certification and approach to damages.  At the final hearing, Judge Katherine B. Forrest commended the investors' legal team: "This is a very, very good result for the plaintiffs … [and] is something of which plaintiff counsel can be proud."

In re SCOR Holding (Switzerland) Securities Litigation: Ms. Reiser served as co-lead counsel in this landmark ruling, which was the first trans-Atlantic resolution of a U.S. securities class action in a Dutch court. The ruling made it easier for U.S. and European investors to use Dutch law in the future to protect their interests.  Ms. Reiser helped secure a $140 million settlement.

In re Parmalat Securities Litigation: Ms. Reiser acted as co-lead counsel representing investors in the largest fraud in European corporate history. Ms. Reiser secured a $90 million settlement.

In addition, Ms. Reiser has represented plaintiffs in employment cases. In Wade v. Kroger (W.D. Ky.), she represented African American employees who received a $16 million settlement to resolve claims that the retailer Kroger had discriminated against them in pay and promotions. She was also involved in Beck v. The Boeing Co. (W. D. Wash.), a case alleging sex discrimination in compensation and promotions that settled for $72.5 million.

Ms. Reiser is a noted speaker, often called on to discuss important issues such as the class standing doctrine. Ms. Reiser is the author of "Pre-Dispute Arbitration Clauses: Taking the Alternative Out of Dispute Resolution," Bloomberg BNA, Class Action Litigation Report, December 11, 2015. After its publication, Paul Bland, Executive Director of Public Justice wrote: "This is invaluable advocacy that takes industry-side advocacy and exposes its flaws and failings. I'm very glad to see this kind of very high quality advocacy and critical thinking."

Ms. Reiser also is the co-author of "Omnicare: Negligence is the New Strict Liability When Pleading Omissions Under the Securities Act," Bloomberg BNA, Corporate Law & Accountability Report, April 10, 2015; the author of "Dodd Frank's Protections for Senior Citizens: An Important, Yet Insufficient Step," University of Cincinnati Law Review, Volume 81, Issue 2, May 30, 2013; "Why Courts Should Favor Certification of MBS Actions," ABA Securities Litigation Journal, Volume 22, Number 1, Fall 2011; and the co-author of "The Misapplication of American Pipe Tolling Principles," ABA Securities Litigation Journal, Volume 21, Number 2, Winter 2011. She also co-authored Opt-Outs: Making Private Enforcement of the Securities Laws Even Better, featured in the Winter/Spring 2008 edition of the ABA's Class Action and Derivative Suit Committee Newsletter and Companies in the Cross Hairs: When Plaintiffs Lawyers Choose Their Targets, They Look for These Employment Practices, The Legal Times, February 21, 2005.

Ms. Reiser attended Vassar College, graduating with honors, and earned her J.D. at the University of Virginia School of Law. She has served as a board member at Seattle Works and the Pacific Northwest Ballet.

**Theodore J. Leopold**

Theodore J. Leopold is a Partner at Cohen Milstein, and a member of the firm's Executive Committee. Mr. Leopold, who joined the Firm in 2014, is Chair of the Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practices and Co-Chair of the Consumer Protection practice.

Mr. Leopold's practice is devoted solely to trial work, with a focus on complex product liability, managed care abuse, consumer class actions and catastrophic injury and wrongful death litigation. Mr. Leopold has tried cases throughout the country and has recovered multi-million dollar verdicts, including jury verdicts in the eight-figure and nine-figure amounts.

In his role, Mr. Leopold litigates high-stakes, complex lawsuits on behalf of consumer safety issues, particularly as it relates to product defects, automobile safety and managed care matters. In 2010, he obtained a $131 million jury verdict against the Ford Motor Company, the ninth-largest verdict against an automobile company in U.S. history.

Mr. Leopold was on the steering committee in the National Managed Care Class Action and the Plaintiffs' settlement committee for the Ford/Firestone National Class Action. Currently, he serves on the Plaintiffs' trial team in the Rail Freight Fuel Surcharge Antitrust Litigation, as lead counsel in the HCA Class Action and as co-lead counsel in the Red Light Class Action.

Currently, Mr. Leopold is litigating the following notable matters:

- HCA: Mr. Leopold is lead counsel in a class action lawsuit alleging that two Florida women and others like them were billed inflated and exorbitant fees for emergency radiology services covered in part by their Florida Personal Injury Protection (PIP) insurance. Mr. Leopold is lead attorney in the litigation charging HCA hospitals with gouging patients with PIP coverage. The case is ongoing.
- United States of America, et al. v. AIDS Healthcare Foundation, Inc.: Mr. Leopold represents relators in a Qui Tam matter involving the anti-kickback statute.   The lawsuit alleges that the AIDS Healthcare Foundation, the nation's largest provider of HIV/AIDS medical care, improperly payed illegal kickbacks for patient referrals, and then fraudulently billed government healthcare programs. The case is ongoing.
- Carrier v. Trinity: Mr. Leopold represents the Carrier family in this wrongful death matter.  The death occurred as a result of the guardrail safety device failing.  Instead of protecting the driver, the guardrail intruded into the passenger compartment of the vehicle and impaling the driver, causing her death. The case is ongoing.

Examples of some of Mr. Leopold's litigation successes are:

- Mincey v. Takata: Mr. Leopold was the lead attorney in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic when the driver's side airbag deployed too aggressively during a vehicle collision. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia. The suit charged that the Takata Corporation, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers.  Evidence uncovered by Mr. Leopold showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016.
- Caterpillar Antitrust Litigation: Mr. Leopold was co-lead counsel in a class action lawsuit alleging Caterpillar sold diesel engines with defective exhaust emissions system that resulted in power losses and shutdowns. Mr. Leopold developed the case and led all aspects of the litigation.
- Cole v. Ford Co.: Mr. Leopold was co-trial attorney for the family of former New York Mets infielder Brian Cole who was killed when the Ford Explorer he was in rolled over and he was ejected from his seat. The lawsuit charged that the defective seat belt in his Ford Explorer failed to keep him in his seat. Following a trial jury the jury found for the Cole family in the amount of  $131 million.
- Quinlan v. Toyota Motor Corporation: Mr. Leopold was lead counsel in a product liability case filed against Toyota Motor, alleging that manufacturing defects in the defendant's car caused the car being driven by the plaintiff Quinlan to suddenly accelerate and go out of control, resulting in catastrophic injuries that left him a quadriplegic. The defendant entered into a settlement, which is confidential.
- Chipps v. Humana: Mr. Leopold tried one of the first managed care cases in the country.  The case involved the wrongful denial of physical and occupational therapy for a 6 year old child with cerebral palsy.  The jury returned the largest punitive damage award on behalf of an individual in Florida history.
- Salvato v. Marion County Sheriff: Mr. Leopold represented the Salvato family in the wrongful death case of Joshua Salvato, an unarmed 21-year-old, who was shot and killed by two Marion County Sheriff's deputies in 2014. The jury verdict returned restitution in the amount of $2.3 million, charging one deputy with excess force and the other for willfully inflicting suffering on Mr. Salvato.

Mr. Leopold is the past president of Public Justice, a national organization headquartered in Washington, D.C. that fights for justice through precedent-setting and socially significant individual and class action litigation. He is consistently recognized by leading publications such as *Super Lawyers* and *The Best Lawyers in America*. In addition, he has been nominated for "Trial Lawyer of the Year" by the Public Justice Foundation for his ground breaking litigation involving the managed care industry, and his work has been featured in the National Law Journal's "Top Verdicts of the Year."

Mr. Leopold lectures frequently at professional gatherings on such issues as personal injury, product liability, class action litigation, trial tactics and consumer justice. He is also author and co-author of several legal publications, including Florida Insurance Law and Practice (Thomson/West). Additionally, Mr. Leopold has earned the Florida Bar Civil Trial Certification, the highest level of recognition by the Florida Bar for competency and experience within civil trial law.

Mr. Leopold is a graduate of University of Miami, where he received a B.A., and earned his J.D. from Cumberland School of Law, Samford University.

### Carol V. Gilden

Carol V. Gilden is a Partner in the Securities Litigation & Investor Protection Practice Group at Cohen Milstein. She represents public pension funds, Taft-Hartley pension and health and welfare funds, and other institutional investors in securities class actions, transaction and derivative litigation, and individual actions, as well as in foreign securities litigation. She also litigates other types of complex litigation matters and class action cases in state and federal courts nationwide.

Ms. Gilden began her career at the Securities and Exchange Commission (SEC), in the Enforcement Division, spending five years investigating and litigating cases involving securities fraud.  Prior to joining Cohen Milstein in 2007, Ms. Gilden served as the head of the securities class action practice at a prominent mid-sized Chicago law firm and the vice chair of its class action department.  Ms. Gilden's guiding principle is that those who commit fraud on the financial markets should be held accountable. She is a strong advocate for investors and pension funds who have been defrauded by deceptive practices that permeate the financial markets. Her special focus is on complex litigation calling for strategic thinking, tenacity and the ability to persevere through the many stages of litigation. Over the course of her 30-year career in the profession, she has successfully litigated and worked on cases that have resulted in aggregate recoveries in excess of several billion dollars for investors.

Ms. Gilden is an accomplished litigator, with extensive experience handling all phases in a case, including investigative, motion practice (lead plaintiff motions, motions to dismiss, class certification and summary judgment), discovery (fact and expert), oral argument, appeal, and settlement negotiations.  She has been lead and co-lead counsel in many notable matters, including the *MF Global* litigation ($90 million settlement), a precedent–setting case in which the U.S. Court of Appeals for the Second Circuit sided with the plaintiffs and held that companies cannot make false or misleading statements in their offering documents, and then hide behind risk disclosures related to those facts in their attempt to escape liability. The National Law Journal singled out Ms. Gilden's work on the case in connection with its selection of Cohen Milstein as a Hot Plaintiffs' Firm for that year.

Another notable case in which Ms. Gilden served as lead counsel, the *IntraLinks* Litigation, was one of the first

securities class actions to be certified following the Supreme Court's decision in Halliburton II. That case was successfully resolved for $14 million. Other recent cases that she has led and which have been successfully resolved, include the *Huron* Securities Litigation ($40 million settlement, the *ITT Securities Litigation* ($16.96 million settlement) and In re RehabCare Group, Inc. Shareholders Litigation, where Ms. Gilden was co-lead counsel and settled the case for a cash payment to shareholders and significant deal reforms including enhanced disclosures and an amended merger agreement.

Ms. Gilden has been on the Executive Committee of other high-profile cases, including the Global Crossing Securities Litigation (settlements of $448 million) and the Merrill Lynch Analyst cases ($125 million settlement), as well as on the litigation team of the Waste Management Litigation ($220 million settlement). Under her leadership, her former firm was an active member of the litigation teams in the *AOL Time Warner Securities litigation* ($2.5 billion settlement), *CMS Securities Litigation* ($200 million settlement) and the *Salomon Analyst Litigation/In re AT&T* ($75 million settlement). Further, Ms. Gilden was lead counsel in an opt-out securities litigation action in connection with the McKesson/HBOC merger, *Pacha, et al. v. McKesson Corporation, et al.*, which settled for a substantial, confidential sum.

Ms. Gilden has earned the trust of her clients who know she will go to the mat for them, from start to finish in their cases. She draws respect from colleagues as well as adversaries who perennially have placed her in the highest ranks of the profession, including being named an Illinois Super Lawyer repeatedly over the last 10 years, "Pension Fund Attorney of the Year, Illinois" by the Global Corporate International Magazine in 2014 and 2015 and being recognized for Excellence in Law by the Worldwide Registry. She has been featured on the cover of the Chicago Lawyer in connection with a feature article on securities class actions. She is a much sought-after speaker at legal and pension fund conferences and has been frequently quoted in the national media on market scandals, recent developments and trends in securities law and high profile securities fraud cases.

Ms. Gilden is currently representing the Chicago Public School Teachers' Pension Fund, along with other institutions, in a high profile lawsuit charging 12 Wall Street banks with conspiring to engineer and maintain a collusive and anti-competitive stranglehold over the market for interest rate swaps in violation of the antitrust laws—an action that harms investors in one of the world's biggest financial markets. She also is representing the Cleveland Bakers and Teamsters Pension and Health and Welfare Funds and other institutions in another, high profile antitrust action alleging that two dozen financial institutions with an inside role at the auction for United States Treasuries conspired to manipulate yields and prices to their own benefit.

In addition, Ms. Gilden serves as co-lead counsel in *City of Chicago v. Hotels.com, et al*, a high-profile and much-watched lawsuit in Cook County Circuit Court, alleging that online travel companies, Expedia, Hotels.com, Orbitz, Priceline and Travelocity failed to properly remit hotel taxes to the City of Chicago for hotel bookings. Ms. Gilden has argued and won numerous motions at the trial level on behalf of the City of Chicago, including the parties' cross motions for summary judgment, which involved six days of argument on liability and another half day of argument on damages. Settlements have been obtained from three of the four defendant groups. A judgment has been entered in the case on behalf of the City of Chicago for approximately $29 million against the remaining defendant group, Expedia. The case is currently on appeal.

Ms. Gilden served as the first (and to this day, only) woman President of the National Association of Shareholder and Consumer Attorneys, the preeminent trade association for securities class action attorneys, as well as the organization's first woman Treasurer. As President of NASCAT, Ms. Gilden made repeated visits

to Capitol Hill advocating for strong investor protection. . She also engaged in outreach to the institutional investor community on needed reforms to reverse the erosion of investor rights. Under Ms. Gilden's leadership, NASCAT also filed amicus briefs in connection with major securities cases before the Supreme Court and other courts. Prior to becoming President, she served as the President-Elect. She continues to serve on NASCAT's Executive Committee.

Ms. Gilden was selected to serve on the Corporate Governance and Markets Advisory Councils to the Board of Directors for the Council for Institutional Investors (CII) during 2013-2015. CII is a nonprofit association of pension and other employee benefits funds, endowments and foundations and a voice for effective corporate governance and strong shareholder rights.

Ms. Gilden regularly lectures at legal conferences around the country on securities litigation and class action law, and is a frequent speaker at institutional investor conferences and symposiums regarding securities law developments, shareholder rights and regulatory reform. She has authored and co-authored numerous scholarly articles and course materials on securities fraud cases, class actions, derivative litigation and related topics.

Ms. Gilden attended the University of Illinois, earning a B.S. in Business Administration, and received her J.D. from Chicago-Kent College of Law, where she graduated with honors and was a member of the *Chicago-Kent Law Review*.

**Kit A. Pierson**

Kit A. Pierson is a Partner at Cohen Milstein and Co-chair of the firm's Antitrust Practice Group, as well as Co-Chair of the Pro Bono Committee. Under his leadership, the Legal 500 has recognized Cohen Milstein as a Leading Plaintiff Class Action Firm for seven years in a row and Law360 selected the Antitrust Practice Group as a Competition Law Practice Group of the Year in 2013 and 2014.

Mr. Pierson has served as lead or co-lead counsel in many antitrust cases on behalf of the victims of corporations engaged in price-fixing, market monopolization and other unlawful conduct. Prior to joining Cohen Milstein in 2009, Mr. Pierson spent more than 20 years primarily representing defendants in a broad range of complex matters. Some of the companies he represented included Microsoft Corp., 3M Corp. and other major corporations, national associations and individuals in class actions and other antitrust litigation. As a result of his experience as a defense lawyer, Mr. Pierson possesses deep insight into defense strategies, understands the dynamics of the other side and is someone who has earned the respect and credibility of opposing counsel.

Mr. Pierson is a hands-on litigator who has litigated and tried antitrust lawsuits and other complex civil cases in many jurisdictions, helping to win settlements and judgments cumulatively totaling more than $1.5 billion in the past several years. Currently, he is lead or co-lead counsel in many antitrust cases at the firm. Some of his current cases include:

- Domestic Drywall Litigation: Cohen Milstein is co-lead counsel in an antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices. Mr. Pierson is running the case for Cohen Milstein and in 2015 took the lead for the direct purchaser plaintiffs in arguing against the defendants' summary judgment motions (which were denied by the Court for four of the five

defendants). Settlements for $45 million were also reached with two other defendants. The case is ongoing.

- Ductile Iron Pipe Fittings Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings—McWane Inc., Sigma Corporation and Star Pipe Products—and a monopolization case against McWane for excluding significant competition in the domestic ductile iron pipe fittings market. Settlements of $9 million have been reached with two of the defendants, Sigma and Star. Currently, Mr. Pierson is directing the team of attorneys that is now taking and completing fact depositions. The litigation is ongoing.

- Cast Iron Soil Pipe & Fittings Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they control (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy and other anticompetitive actions. Mr. Pierson is directing the litigation team, which is currently concluding fact discovery. The litigation is ongoing.

Mr. Pierson's successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants—Bayer, BASF, Huntsman and Lyondell— settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Mr. Pierson was one of the trial lawyers for the class, the jury returned a $400 million verdict for the plaintiffs, which is trebled under federal antitrust law to more than $1 billion, the largest verdict in the country in 2013, as reported by the National Law Journal. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment, and the case against Dow Chemical was settled for $835 while the matter was pending before the United States Supreme Court (resulting in a total recovery of $974.5 million in the case).

- Community Health Care System Litigation: Cohen Milstein is co-counsel representing an emergency room doctor and nurse in a whistleblower lawsuit alleging Community Health Care System defrauded the federal government in connection with health care bills. Cohen Milstein was co-counsel representing an emergency room doctor and nurse who brought claims against CHC under the False Claims Act. Mr. Pierson led Cohen Milstein's team in the case, which was brought under the False Claims Act. The case was resolved for $94 million.

- Electronic Books Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that Apple and five of the leading U.S. publishers conspired to raise the retail prices of e-books. Mr. Pierson led the Cohen Milstein team, which secured class certification, defeated motions to exclude the class expert, and successfully moved for exclusion of most of Apple's expert testimony. The five publishing defendants settled for $166 million and a settlement was reached with Apple shortly before trial for an additional $450 million.

- Guantanamo Litigation: Mr. Pierson represented Alla Ali Bin Ali Ahmed, a young man who had been arrested with many others while residing in a house in Pakistan and was then incarcerated in Guantanamo without a judicial hearing for more than seven years. After filing a habeas corpus petition, Mr. Pierson represented Mr. Ahmed at a multi-day evidentiary hearing before a United States District Court judge. At the conclusion of the hearing, the District Court ruled that the evidentiary record did not support Mr. Ahmed's detention and ordered that he be released from Guantanamo and

returned to his home country.

Mr. Pierson was named one of the 500 leading lawyers in the United States in 2013 and 2014 by LawDragon 500 and was one of six lawyers selected by Law360 in 2014 as an MVP in the field of competition law. A champion for civil rights, he is a member of the Board of Trustees for the Lawyers' Committee for Civil Rights Under the Law, a national organization, and a Member of the ACLU of Maryland's Committee on Litigation and Legal Priorities.Mr. Pierson attended Macalester College, earning a B.A., magna cum laude, in Economics and Political Science, and graduated from the University of Michigan Law School, magna cum laude, where he was a Note Editor of the Michigan Law Review and a member of the Order of the Coif. Following law school, he served as a Law Clerk for the Honorable Harry T. Edwards, United States Court of Appeals for the District of Columbia Circuit, from 1983-1984 and as a law clerk for the Honorable Chief Judge John Feikens, United States District Court for the Eastern District of Michigan, from 1984-1985.

## J. Douglas Richards

J. Douglas Richards is a Partner in the Antitrust practice group, having joined the firm in 2009. Mr. Richards has had a long, extensive and eclectic career, litigating on behalf of defendants for 16 years, serving as a government regulator at the Commodity Futures Trading Commission ("CFTC") and representing plaintiffs for the past 16 years. As a result, he brings a global understanding of antitrust litigation.

Mr. Richards' extensive experience litigating both Commodity Exchange Act and Sherman Act claims and his expertise in the antitrust class action field is widely recognized. He was named one of twenty-two antitrust "Litigation Stars" nationally, as one of the world's leading competition lawyers by *The International Who's Who of Competition Lawyers and Economists* (2014), and has received the highest available peer ranking for many years from *Martindale-Hubbell*. Mr. Richards has been appointed co-lead counsel in numerous large antitrust class actions in the Southern District of New York (SDNY) and nationally. Mr. Richards has argued dozens of appeals, among them a number of antitrust matters that have helped shape the landscape of antitrust law, including *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) before both the Second Circuit and the United States Supreme Court, and Second Circuit cases like *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), cert. denied, 127 S.Ct. 3001 (2007), and *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002).

Mr. Richards possesses extensive experience in the Commodity Exchange Act field, having served as Deputy General Counsel of the Commodity Futures Trading Commission ("CFTC") from 1997 to 2000. During that time, Mr. Richards assumed responsibility for all litigation by and against the CFTC (including personally arguing numerous appeals on behalf of the CFTC), and for two of those years simultaneously managed the CFTC's adjudicatory functions. In 1999, the Commission awarded Mr. Richards a Special Service Award for performing those two roles at the same time and successfully eliminating a long-standing backlog of Commission adjudicatory matters.

Mr. Richards is a leading lawyer nationwide in pharmaceutical antitrust litigation, a specialization that requires a deep understanding of the drug industry, patent law, FDA regulation and trade regulation. Starting in 2000 with the *Cipro* litigation, Mr. Richards was co-lead counsel on several antitrust lawsuits challenging the pharmaceutical industry's practice known as pay-for-delay, or reverse payments. Many of those cases hit a roadblock in the courts, when the courts adopted a scope of patent rule. Following the Supreme Court's decision in *Actavis* in 2012, the Supreme Court overruled the legal standards that had been adopted in the

lower courts of appeals and opened the door for further litigation. In the wake of *Actavis*, Mr. Richards leads a team of litigators that have filed new pay-for-delay reverse payments cases.

Mr. Richards graduated with honors from the University of Chicago, majoring in Economics, and earned his J.D. from Harvard Law School. Prior to joining Cohen Milstein, Mr. Richards served as head of the antitrust class action group at two major plaintiffs firms and, before that and his government service at the CFTC, Mr. Richards served as a litigation partner in a boutique law firm. He is a noted speaker at professional conferences, discussing the trends in commodities and pharmaceuticals antitrust law. He has written extensively about antitrust laws, including chapters for books edited by the American Antitrust Institute covering issues of class action practice, law reviews, and other scholarly publications.

### Karen L. Handorf

Karen L. Handorf is a Partner at Cohen Milstein, and chair of the Firm's Employee Benefits (ERISA) Practice Group. She joined the Firm in 2007, following a distinguished career in government service, litigating ERISA cases in federal appellate and district courts. In her role as head of the Employee Benefits Practice, Ms. Handorf represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases in the district courts and on appeal.

Ms. Handorf is involved in litigation and appeals involving a broad range of employee benefits issues including church plans. In Kaplan v. St. Peter's Healthcare System, she represents a class of 2,800 participants in an alleged church plan, a case in which the Court of Appeals upheld the rights of St. Peter's pension fund participants to a fully funded pension plan. In addition, she currently leads a team of litigators in a series of church plan lawsuits alleging that health care systems wrongfully claim their benefit plans are exempt from ERISA's protection. Ms. Handorf is overseeing and developing these cases.

Prior to joining Cohen Milstein, Ms. Handorf was an attorney for the U.S. Department of Labor (DOL), where she litigated ERISA cases in federal appellate and district courts for 25 years. While at the DOL, she played a major role in formulating the Government's position on ERISA issues expressed in amicus briefs filed by the Solicitor General in the United States Supreme Court.

She began her ERISA career as a trial attorney in the Plan Benefits Security Division (PBSD), where she litigated actions brought by the Secretary of Labor for violations of the fiduciary standards of ERISA and handled appellate matters. In 1989, she was appointed Counsel for Decentralized and Special Litigation responsible for supervising the DOL's ERISA appellate litigation, district court litigation brought by regional offices of the Solicitor of Labor and administrative litigation involving the civil penalty provisions of ERISA. At the DOL, Ms. Handorf established and supervised PBSD's amicus brief writing program, which addressed a wide range of novel and difficult ERISA issues in both state and federal court. In 2001, she was appointed Deputy Associate Solicitor of PBSD. As the Deputy Associate Solicitor, she was responsible for overseeing litigation brought by the Secretary of Labor and legal advice provided to the Employee Benefit Security Administration, which administers Title I of ERISA. In 2005, she returned to her position as supervisor of the ERISA appellate and amicus brief writing program, serving as Counsel for Appellate and Special Litigation.

Currently, Ms. Handorf is litigating a series of church plan cases, including:

- Saint Peter's Healthcare System Church Plan Litigation: Cohen Milstein is co-lead counsel in Kaplan v. St. Peter's Healthcare System alleging that the defendants wrongfully claim their pension plan is

exempt from ERISA protection. Ms. Handorf argued the case before the U.S. Court of Appeals for the Third Circuit, which unanimously ruled that St, Peter's pension plan does not qualify as a "church plan." The Third Circuit further noted that as of 2012, religiously affiliated hospitals accounted for seven of the nation's 10 largest nonprofit healthcare systems and that to construe the church plan exemption to apply to such hospitals would defeat the purpose of ERISA. The ruling is likely to set the tone for other church plan litigation.

Her past successes include:

- Goodyear Litigation: Ms. Handorf represented a class of 30,000 Goodyear union retirees in Redington v. Goodyear (N.D. Ohio), in which Cohen Milstein obtained approval of a class action settlement between the retirees, Goodyear and the United Steel Workers, resulting in the establishment of a $1 billion trust through which retiree health care benefits will be provided in the future.

Ms. Handorf is a recipient of the Department of Labor Distinguished Career Service Award, and received Exceptional Achievement Awards for her work on ERISA 401(k) plan remedies, the amicus brief in the Enron litigation, retiree health care, the amicus program in general, the appellate brief in the Department's Tower litigation, termination annuities litigation and multiple employer welfare arrangement (MEWAs) litigation.

Ms. Handorf has been recognized for her expertise by her colleagues in the ERISA bar, who named her a Fellow of the American College of Employee Benefits Counsel. She is a frequent speaker on ERISA issues for the ABA, various bar associations and private seminars, and serves as plaintiffs' co-chair of preemption subcommittee of the Employee Benefits Committee of the ABA's Labor Section. In 2016, she was named to the *Best Lawyers in America*.

Ms. Handorf attended the University of Wisconsin-River Falls, where she received a B.S. in Speech and History, and earned her law degree from the University of Wisconsin Law School.

**Martha Geer**

Judge Martha Geer is a Partner at Cohen Milstein and will be head of the firm's new Raleigh, North Carolina office. She joined the firm in May 2016 after a distinguished career on the North Carolina Court of Appeals. Judge Geer's background – almost two decades as a respected litigator and appellate advocate handling complex civil litigation followed by more than 13 years as a rarely-reversed appellate judge – is a composite of experience few attorneys have. Her combined litigation and judicial experience gives her a unique perspective and insight that will benefit her clients at the trial level and on appeal. In returning to private practice, Judge Geer will practice across all of the firm's areas of expertise, working at both the trial and the appellate levels.

Judge Geer was first elected to the North Carolina Court of Appeals in 2002, receiving more than a million votes statewide. In 2010, because of her reputation as a fair and impartial judge, she garnered bipartisan support that resulted in her winning re-election by a 20-point margin. During her tenure on the Court, Judge Geer has heard more than 3,800 appeals, authored more than 1,350 opinions, and had her opinions reversed less than 2% of the time. As one of the most experienced Court of Appeals judges, Judge Geer has been responsible for hearing and deciding appeals on a wide variety of issues involving almost every area of law. She also served on the Court's Executive Committee, which works with the Chief Judge in administration of

the Court. During her service on the Court, she was named Outstanding Appellate Judge by the North Carolina Advocates for Justice.

Judge Geer's time on the bench has enhanced her ability to understand what judges – trial and appellate – need and want to know in order for clients to prevail at both the trial and appellate levels. Because of the similarity of intermediate appellate courts across jurisdictions, her experience and knowledge gained in North Carolina is valuable in litigation and appeals pending in all jurisdictions including the federal courts, making her a unique resource for clients. In addition, Judge Geer's reputation as an intelligent, practical, fair, and unbiased judge increases her credibility when arguing before other judges whether at the trial level or on appeal.

Illustrating the diversity of practice areas involved in her opinions, in *Boyd v. Robeson County*, Judge Geer wrote an opinion holding in a case of first impression for North Carolina that the office of a county sheriff is a "person" that may be sued under 42 U.S.C. § 1983, allowing an inmate to sue for violation of her Eighth Amendment rights when a jail failed to provide medical treatment after her appendix burst. In another opinion authored by Judge Geer, *Diggs v. Novant Health Inc.*, the Court held, again in a case of first impression, that a hospital could be liable under an apparent agency theory for the negligence of independent contractor anesthesiologists. In *Mason v. Dwinnell*, Judge Geer's opinion held that a trial court had authority, under the federal constitution, to award custody of a child, including visitation, to a same-sex domestic partner who was not a legal parent of the child. Judge Geer's opinion in *Blinson v. State* upheld the constitutionality, under the federal and state constitutions, of economic tax incentives granted to corporations in order to bring jobs to the State.

Prior to going on the bench, Judge Geer was a partner with two leading North Carolina plaintiffs' firms and was one of the founders of the second firm. She was a highly respected trial and appellate litigator known for obtaining cutting-edge and precedent-setting victories in a diverse set of practice areas, including among others, securities litigation, labor and employment law, ERISA, antitrust and trade regulation, commercial litigation, consumer protection, and constitutional and civil rights litigation (including suits against the State, sheriffs, counties, and municipalities). She was selected for inclusion in *Best Lawyers in America*, and recognized by the journal *Business North Carolina* as one of North Carolina's "Legal Elite" – a list of the top 200 lawyers in the State.

Judge Geer began her legal career with Paul Weiss Rifkind Wharton & Garrison where she was taught that a bright, hardworking lawyer, willing to learn, can handle any type of litigation – a philosophy that led to her eclectic practice upon leaving Paul Weiss. While at Paul Weiss, she had the privilege of working with nationally-respected litigators, including legal icons such as Arthur Liman, on high profile cases including the litigation arising out of the attempt to corner the silver market in 1979-1980. She also gained experience defending shareholder derivative and corporate takeover litigation. Judge Geer did substantial pro bono work, including being part of a team that obtained a stay of execution on behalf of a mentally retarded man on death row who was subsequently shown to be innocent by DNA testing, once such testing finally became available. That work led to her being one of the recipients of the 2004 Dybwad Humanitarian Award, the highest honor of the American Association on Intellectual and Developmental Disabilities.

As both a judge and a lawyer, Judge Geer has worked to improve the quality of legal representation through service on the Appellate Specialization Committee of the North Carolina State Bar, the Appellate Rules Committee of the North Carolina Bar Association, the Board of Governors of the North Carolina Advocates for

Justice, and various committees of the American Bar Association and other bar association groups. She is also a highly sought after teacher of continuing education programs for both other judges and lawyers.

Judge Geer received her B.A. *summa cum laude* from Bryn Mawr College and her J.D. with high honors from the University of North Carolina School of Law where she was a Morehead Fellow and served as Managing Editor of the *North Carolina Law Review*.

### Geoffrey Graber

Geoffrey Graber is a Partner at Cohen Milstein and a member of the Consumer Protection practice group. In this role, Mr. Graber specializes in complex litigation aimed at protecting consumers deceived and harmed by consumer service providers such as banks, insurance and health care companies. In addition, he is a member of the Commercial Contingency practice and also represents whistleblowers under the False Claims Act.

Currently, Mr. Graber is litigating the high-profile lawsuit arising out of the massive data breach at Anthem Inc. that compromised the personal identification and health information of more than 80 million customers of the health care company. The lawsuit alleges the company failed to take adequate measures to ensure its data systems were protected, failed to take available steps to prevent and stop the breach from happening, and failed to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' financial accounts and personal data. Mr. Graber is involved in all aspects of the litigation.

Prior to joining the firm in 2015, Mr. Graber served as Deputy Associate Attorney General and Director of the Residential Mortgage-Backed Securities (RMBS) Working Group at the United States Department of Justice (DOJ).

As Director of the RMBS Working Group, Mr. Graber oversaw the DOJ's nationwide investigation into the packaging and sale of mortgage-backed securities leading up to the financial crisis. He supervised and coordinated the efforts of over 100 prosecutors, lawyers, investigators and analysts from the DOJ. Mr. Graber also worked closely with senior officials from the United States Securities & Exchange Commission, the Department of Housing and Urban Development, the Inspector General's Office for the Federal Finance Agency and the offices of more than 10 state attorneys general.

The investigations overseen by Mr. Graber ultimately recovered more than $36 billion. These recoveries include the record-breaking $16.65 billion settlement reached in August 2014 with Bank of America – the largest settlement with a single entity in U.S. history – as well as settlements with Citigroup ($7 billion) and JP Morgan ($13 billion).

Earlier in his tenure at the DOJ, Mr. Graber served as Counsel in the Civil Division, where he proposed and then led the three-year investigation of Standard & Poor's and its ratings of structured finance products from 2004 to 2007. As the lead lawyer overseeing the investigation, he supervised a team of over 50 prosecutors, DOJ lawyers, investigators and analysts. The investigation, which made groundbreaking use of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), resulted in the largest enforcement action filed by the United States concerning the financial crisis (United States v. Standard & Poor's).

Before joining the Department of Justice, Mr. Graber was an associate at a top-tier defense firm, where he defended Fortune 500 companies and their officers and directors in securities and derivative suits, consumer class actions and government investigations.     Mr. Graber also devoted substantial time to pro bono representation of indigent individuals and families in civil rights actions against local law enforcement.

In 2014, Mr. Graber received the Attorney General's Distinguished Service Award for his work relating to the $13 billion settlement with JP Morgan – including, at the time, the largest FIRREA penalty recovered by the Department of Justice. In October 2015, he again received the Attorney General's Distinguished Service Award for his work on the successful investigation of and litigation against S&P.

Mr. Graber received his undergraduate degree in Philosophy from Vassar College, and earned his law degree from the University of Southern California Law School, where he served as the Managing Articles Editor on Southern California Law Review.

**Leslie M. Kroeger**

Leslie M. Kroeger is a Partner at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practice groups. Ms. Kroeger joined Cohen Milstein in January 2014 and is based in the firm's Florida office.  She specializes in complex, high-profile product liability, wrongful death, and managed care abuse litigation.

Ms. Kroeger is a highly accomplished civil trial attorney who began her legal career in the courtroom as an Assistant Public Defender and later became an Assistant State Attorney in Miami-Dade County, Florida. She then moved into private practice where she continues to handle a variety of complex civil litigation matters both in the state of Florida and nationwide.

Currently, Ms. Kroeger is litigating the following notable matters:

- HCA: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that two Florida women and others like them were billed inflated and exorbitant fees for emergency radiology services covered in part by their Florida Personal Injury Protection (PIP) insurance. Ms. Kroeger is involved in all aspect of the litigation charging HCA hospitals with gouging patients with PIP coverage. The case is ongoing.
- United States of America, et al. v. AIDS Healthcare Foundation, Inc.: Cohen Milstein represents three former managers of the AHF in a Federal and Florida State Whistleblower Act claims against the nation's largest provider of HIV/AIDS medical care for illegal patient referral kickbacks. Ms. Kroeger has been involved in all aspects of the litigation. The case is ongoing.

Ms. Kroeger has successfully litigated the following lawsuits:

- *Mincey v. Takata*: Cohen Milstein was lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic in 2014 when the driver's side airbag in her Honda Civic deployed too aggressively during a collision due to a product defect. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia casued by the problematic airbag. The suit charged that Takata, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. Evidence uncovered by the firm showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016

- *Quinlan v. Toyota Motor Corporation*: Cohen Milstein was lead counsel in a product liability case filed against Toyota Motor, alleging that manufacturing defects in the defendant's car caused the car being driven by the plaintiff Quinlan to suddenly accelerate and go out of control, resulting in catastrophic injuries that left him a quadriplegic. The defendant entered into a settlement, which is confidential. Ms. Kroeger was engaged in all aspects of the litigation.
- *Love v. Walmart*: Ms. Kroeger represented individual female Walmart employees in a lawsuit alleging that the company discriminated against them on the basis of their sex. The defendant reached a confidential settlement with the plaintiffs.
- Caterpillar Antitrust Litigation: Cohen Milstein was co-lead counsel in a nationwide product liability class action lawsuit alleging Caterpillar sold diesel engines with defective exhaust emissions system that resulted in power losses and shutdowns. Ms. Kroeger was involved all aspects of the litigation.

Ms. Kroeger has achieved an AV rating from Martindale-Hubbell, and has been recognized by Best Lawyers in the field of Product Liability Litigation – Plaintiffs. She was recently named to Law360's Product Liability Editorial Advisory Board. She speaks frequently on strategies and tactics for addressing the standards for expert witness testimony in light of the Supreme Court's Daubert ruling.

Ms. Kroeger currently serves as the Secretary on the Executive Committee of the Florida Justice Association and is past Chair of the Women's Caucus. She serves on the Florida Bar Professional Ethics Committee. She is Past President of the Martin County Chapter of the Florida Association for Women Lawyers and is on the Board of Directors of Guardians for New Futures; as well as serving as an active member of The Florida Bar, the American Association for Justice, the Palm Beach County Bar Association, the Martin County Bar Association, the Palm Beach County Justice Association, and the Florida Association for Women Lawyers, Martin County Chapter.

Ms. Kroeger graduated with high honors from the University of Tennessee at Knoxville, and obtained her law degree from the Cumberland School of Law, Samford University. Following law school, she served in a trial clerkship in Miami.

**Victoria S. Nugent**

Victoria S. Nugent is a Partner at Cohen Milstein and Co-Chair of the Public Client practice group. She has been with the Firm since 2000 and her work has focused on consumer protection and public health and safety.

Ms. Nugent began at Cohen Milstein in the Firm's Consumer Protection & Unsafe Products Practice, where she focused on consumer protection and public health litigation. Past cases include In re StarLink Product Liability Litigation, in which she represented farmers suing Aventis CropScience after an unapproved variety of genetically modified corn was detected in the U.S. corn supply and drove down prices for all U.S. corn exports. More than $100 million was recovered for the class in a landmark settlement. In 2009 and 2010, Ms. Nugent filed suit on behalf of consumers challenging the post-transaction marketing practices (also sometimes called "negative option marketing") and in two significant rulings persuaded federal courts in California and Washington that these practices run afoul of state consumer protection laws. Ms. Nugent has argued cases before the high courts of Georgia, Nebraska and the District of Columbia, as well as the federal D.C. Circuit Court of Appeals.

Ms. Nugent joined the Firm's Public Client Practice Group in 2011, where she is currently, representing several states in investigations into Medicaid and consumer fraud by numerous for-profit nursing home chains that

promised, but failed to provide, basic care to their elderly residents. Ms. Nugent has been overseeing all aspects of these investigations.

Ms. Nugent has represented public clients on other matters involving consumer and financial fraud. Some of her successes include:

- Represented the states of Arizona and Nevada in litigation against Bank of America for deceptive conduct in connection with servicing approximately 500,000 mortgages; resulting in financial payments to consumers and the states, commitments to mortgage modifications and other equitable relief valued at nearly $1 billion.
- Represented the state of Nevada in investigations into the conduct of Deutsche Bank and the Royal Bank of Scotland, two of the investment banks that encouraged and enabled the predatory lending practices of retail lenders. Ms. Nugent helped develop the State's legal theories and claims and handled numerous aspects of these investigations.

Prior to joining the Firm, Ms. Nugent worked for seven years at Public Citizen, a national consumer advocacy organization. There, she worked on many legislative and regulatory campaigns addressing issues that ranged from automobile safety to international trade policy. After graduating from law school in 1998, Ms. Nugent received a two-year fellowship sponsored by the National Association for Public Interest Law (NAPIL). As a NAPIL Fellow, she worked at Trial Lawyers for Public Justice, where she helped develop and prosecute impact litigation in the areas of arbitration, banking, credit and insurance.

Ms. Nugent has served on the D.C. Bar Committee on the Rules of Professional Conduct since 2012.

**Benjamin D. Brown**

Benjamin D. Brown is a Partner at Cohen Milstein, and a member of the Antitrust Practice Group, having joined the firm in 2005. Mr. Brown, who previously served in the Antitrust Division of the United States Department of Justice, brings to his role extensive experience leading complex litigation, particularly antitrust class actions.

Mr. Brown has been appointed by federal courts to serve as co-lead counsel or on steering committees for plaintiffs in numerous important matters, such as In re Plasma-Derivative Protein Therapies Antitrust Litigation (N.D. Ill.); Allen, et al. v. Dairy Farmers of America, Inc. (D. Vt.); and In re Puerto Rican Cabotage Antitrust Litig. (E.D. Ca.). He has led cases through trial and argued appeals and stands ready to take cases through to the finish line.

Mr. Brown is also a leader in the area of takings cases, claims that are brought under the Fifth Amendment of the U.S. Constitution for the unconstitutional taking of property without compensation. He also represents individuals or groups in litigations and confidential arbitrations involving complex commercial disputes, particularly those involving regulated markets.

Currently, Mr. Brown is litigating a number of large, complex antitrust lawsuits, where he plays a prominent role and leads all aspects of the litigation, from deciding on the claims to be brought, the strategy to be pursued and charting the course of the case. Notable matters include:

- Mixed Martial Arts (MMA) Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action on behalf of elite MMA fighters alleging that Zuffa LLC – commonly known as the Ultimate Fighting

Championship or "UFC" – has unlawfully monopolized the markets for promoting live professional MMA bouts and for purchasing the services of elite professional MMA fighters. The district court denied the defendant's motion to dismiss the case in September 2015 and discovery is ongoing. Mr. Brown is co-lead in the class action lawsuit.

- Northeastern Dairy Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit on behalf of Northeast dairy farmers against Dairy Farmers of America (DFA) and Dean Foods Company charging a conspiracy to reduce competition for raw milk and that DFA monopolized the milk market in the Northeast, forcing dairy farmers to market their milk through DFA or its affiliate Dairy Marketing Services (DMS). Dean has settled its liability and the case against DFA is ongoing.

- People of the State of California v. American Express Unfair Competition Litigation: Cohen Milstein is counsel for the City of San Francisco in litigation alleging that American Express, by prohibiting merchants from steering consumers to less costly payment methods (including debit cards and cash), is responsible for unlawful overcharges borne by retailers and, indirectly, all California consumers. Mr. Brown is lead outside counsel to the city in the ongoing litigation.

Mr. Brown is also currently litigating a number of takings lawsuits, including the following notable matters:

- Ideker Farms, et al. v. the United States of America: Cohen Milstein represents Ideker Farms and more than 400 other plaintiffs located in six states along the Missouri River in a mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers without any compensation in violation of the takings clause of the Fifth Amendment. Mr. Brown has been directing and leading all aspects of the litigation for the Cohen Milstein team. The case is set to go to trial in 2017.

- Big Oak Farms, Inc., et al. v. the United States of America: Cohen Milstein represents a group of farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land without providing just compensation. Mr. Brown has been directing and leading all aspects of the litigation.

Mr. Brown also represents classes or individual corporations in the following commercial disputes:

- DairyAmerica Antitrust Litigation: Cohen Milstein is sole lead counsel of a putative class of dairy farmers who allege that defendants fraudulently misreported nonfat dry milk prices to the National Agricultural Statistics service, resulting in artificially depressed raw milk prices and unfairly depriving American dairy farmers of tens or hundreds of millions of dollars. Mr. Brown directs and leads all aspects of the litigation.

- Inmate Calling Services Provider Litigation: Cohen Milstein is on the executive committee in several nationwide class action lawsuits alleging that the providers of inmate calling services have charged inmates and their families unjust and unreasonable rates in violation of the Federal Communications Act and various state laws. Mr. Brown leads the Cohen Milstein team on these class action lawsuits. The litigation is ongoing.

- College Media Commercial Litigation: Cohen Milstein represents an e-commerce business in a breach of contract action against a former partner business. Mr. Brown leads that litigation, which is now pending in federal bankruptcy court.

The Legal 500 has recognized Mr. Brown as one of the nation's leading class action antitrust attorneys and he has been listed as one of Washington D.C.'s "Leading Star" Plaintiffs' Litigators by Benchmark Litigation,

recognizing his writing, his depositions and his arguments in court. He is a frequent panelist at legal industry gatherings and is a recognized expert on antitrust litigation whose opinions on the newest developments and trends in antitrust litigation are often quoted in the media. Mr. Brown is a contributing author of the ABA's Antitrust Class Actions Handbook, and has served as a state editor for the ABA's Survey of State Class Action Law. He authored several chapters on private antitrust recovery actions for the Global Competition Review's Antitrust Review of the Americas, and co-authored with fellow partner Douglas Richards, "Predominance of Common Questions – Common Mistakes in Applying the Class Action Standard," Rutgers Law Journal (Vol. 41).

Mr. Brown joined Cohen Milstein's Antitrust Practice following four years as a trial attorney with the Antitrust Division of the United States Department of Justice. At the Department of Justice, Mr. Brown led and assisted in numerous investigations, litigations and trials involving antitrust activity and mergers. Mr. Brown also served as a Special Assistant United States Attorney in the Eastern District of Virginia, where he prosecuted criminal cases. Prior to serving in the U.S. Department of Justice, Mr. Brown was in private practice, where he counseled defendants in antitrust litigation matters. This experience has provided him with insights into defense strategies and has earned him the respect of defendants' counsel.

Mr. Brown attended the University of Wisconsin – Madison, where he graduated Phi Beta Kappa, majoring in Philosophy, and earned his J.D, from Harvard Law School, graduating cum laude. He served as Law Clerk to the Hon. Chief Judge Juan R. Torruella, U.S. Court of Appeals for the First Circuit. The United States District Court for the District of Columbia has honored Mr. Brown for his outstanding commitment to pro bono litigation.

**Manuel J. Dominguez**

Manuel J. ("John") Dominguez is a Partner at Cohen Milstein, and a member of the Antitrust practice group. Mr. Dominguez specializes in complex, multi-district antitrust litigation, representing individuals and businesses that have been harmed by anticompetitive business practices. Mr. Dominguez, in addition, plays a significant role in the practice group identifying and investigating potential antitrust violations.

Mr. Dominguez has been litigating complex antitrust and consumer cases for more than 20 years, and has served as lead counsel and handled numerous high-profile, high-stakes cases during that time. His efforts have enabled aggrieved businesses and consumers to recover hundreds of millions of dollars. He litigated and resolved cutting-edge litigation against AOL for allegedly unlawfully collecting the Internet search data of millions of users and making their private information available for downloading by the general public. Earlier in his career, Mr. Dominguez litigated a highly significant securities matter that settled for hundreds of millions of dollars involving Symbol Technologies Inc., a barcode technology maker that intentionally overstated its revenues through premature revenue recognition, improper consignments arrangements and channel stuffing.

Mr. Dominguez, who joined Cohen Milstein in 2011, has assisted the firm in developing its investigatory and case development groups. He is a hands-on litigator who is currently representing plaintiffs in antitrust litigation involving alleged price-fixing and anticompetitive monopolistic practices in various industries including truck transmissions, medical products, auto industry and finance, among others. Although Mr. Dominguez's practice is focused on antitrust litigation, he continues to be involved in securities and consumer matters.

Mr. Dominguez is currently representing direct purchasers in a series of Auto Parts antitrust class action lawsuits being litigated in the Eastern District of Michigan in Detroit. These cases stem from the largest antitrust investigation in the history of the U.S. Department of Justice, with over $1 billion in fines and multiple criminal indictments. Two of the cases, Wire Harnesses and Bearings, are scheduled to be the first cases to be considered for certification by the court. In these cases, Mr. Dominguez has significant responsibilities, including leading discovery efforts against defendants and assisting experts.

Mr. Dominguez is also co-lead counsel in the Truck Transmissions Antitrust Litigation alleging that Eaton Corp., the largest manufacturer of truck transmissions, and the four major truck manufacturers conspired to create a monopoly for transmissions used in heavy-duty trucks. Mr. Dominguez responsibilities include arguing all the major motions and deposing and defending nearly all the expert depositions in this matter. The case is currently up on appeal in the Third Circuit.

Mr. Dominguez began his career as an Assistant Attorney General serving in the Attorney General of the State of Florida's Department of Economic Crimes. In that role, he represented the state of Florida in prosecuting corporations and business entities for alleged violations of Florida's RICO, antitrust and Unfair and Deceptive Trade Practices Act statutes. Following his service as an Assistant Attorney General, Mr. Dominguez entered private practice, litigating and trying numerous cases involving unfair trade practices and other alleged violations of state and federal consumer protection statutes. In 2000, he joined a premier class action firm focused on antitrust and securities litigation; there, he rose to the head of the firm's antitrust and consumer practice groups. Mr. Dominguez recently won a significant motion to dismiss in a non-class action antitrust action brought on behalf of Doctors and practice groups against a major insurance company and hospital in Florida in Omni Healthcare, Inc. v. Health First, Inc. The issues presented and argued were issues of first impression for the middle district of Florida.

Mr. Dominguez is also nationally recognized for his knowledge of managing the discovery process in today's increasingly technologically complex business environment. He has made presentations on topics such as the impact of the new e-discovery amendments to the Federal Rules of Civil Procedure, and has also participated in The Sedona Conference® Working Group 1, an organization at the vanguard of developing standards for electronic discovery.

Mr. Dominguez formerly served as the Chair for the Antitrust, Franchise & Trade Regulation Committee of the Florida Bar's Business Law Section. Mr. Dominguez previously served as the Vice Chair of this committee and was a member of the Executive Council of Florida Bar's Business Law Section. He is also co-author of an article that appeared in the Florida Bar Journal, "The Plausibility Standard as a Double Edge Sword: The application of Twombly and Iqbal to Affirmative Defenses" (Vol. 84, No. 6).

Mr. Dominguez received a B.A. from Florida International University, and earned his J.D. from the Florida State University Law School, graduating with honors. In law school, he was a member of the Transnational Journal of Law and Policy.

**Brent W. Johnson**

Brent W. Johnson is a Partner at Cohen Milstein and a member of the Antitrust practice group. Along with Daniel Small, Mr. Johnson leads the group's new case investigations.

Mr. Johnson has considerable expertise in complex antitrust litigation and class actions, representing businesses and individuals as plaintiffs in federal and state civil actions with a focus on multi-district class actions. His class action experience spans multiple industries, such as motion pictures, dairy, building materials, chemicals, automotive parts, processed foods, private equity, adhesives and others. His practice encompasses a broad variety of antitrust claims, including Sherman Act Section 1 restraints of trade and Section 2 monopoly and monopsony claims. He has argued before federal district courts and state trial and appellate courts and brought cases to trial.

Mr. Johnson's recent successes include the following notable antitrust class actions:

- Northeast Dairy: In *Allen vs. Dairy Farmers of America* (D. Vt.), Mr. Johnson serves as lead counsel for one of two certified subclasses of Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services who fixed the price of raw milk, allocated markets and agreed not to solicit dairy farmers to supply raw milk. Defendant Dean Foods Company settled for $30 million, and the Court has preliminarily approved a $50 million settlement with the remaining defendants, DFA and DMS.
- Bulk Bleach: In *Grand Strand v. Oltrin* (D. S.C.) Mr. Johnson was personally appointed co-lead Class Counsel and led the CMST team in representing a class of direct purchasers of bulk bleach, including municipal water authorities and others, against that product's manufacturers who engaged in an illegal market allocation agreement. The Court approved a settlement worth nearly all of the class's single damages and remarked that the case had been "skillfully handled."
- Urethanes (Polyether Polyols): Mr. Johnson serves as co-lead counsel in *In re Urethane Antitrust Litigation* (D. Kan.), on behalf of a certified class of direct purchasers of several types of chemicals who were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. In the litigation, multiple defendants collectively settled for over $130 million, and a jury verdict of $1.1 billion was secured against Dow Chemical, the final defendant, in 2013. Dow ultimately settled for $835 million while the case was on appeal before the Supreme Court, bringing the total recovery to $974 million – nearly 250% of the damages found by the jury.
- Blue Cross Blue Shield of Michigan: Mr. Johnson serves as co-lead counsel in *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan* (E.D. Mich.), representing a class of purchasers of hospital services against Blue Cross Blue Shield of Michigan for agreeing to MFN provisions in its contracts with hospitals throughout Michigan that required those hospitals to charge other insurers as much or considerably more for services provided to class members. The Court has finally approved a settlement with BCBSM for nearly $30 million.

Currently, Mr. Johnson is litigating the following antitrust class actions:

- VFX/Animation Workers: In *In re Animation Workers Antitrust Litigation* (N.D. Cal.), Mr. Johnson serves as co-lead counsel representing a class of animation and visual effects workers in a lawsuit alleging that the defendants, who include Pixar, Lucasfilm Ltd. and DreamWorks Animation, secretly agreed not to solicit class members and to coordinate on compensation.
- Drywall: Mr. Johnson serves as co-lead counsel in *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.),

representing a class of direct purchasers of drywall against drywall manufacturers for price-fixing. The Court has preliminarily approved a settlement of $40 million with a major defendant, and denied summary judgment to four defendants. The case is ongoing.

- Automotive Parts: In *In re Automotive Parts Antitrust Litigation* (E.D. Mich.), Mr. Johnson represents direct purchasers of wire harnesses, bearings and other automotive parts who were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry.

Prior to joining Cohen Milstein in 2009, Mr. Johnson practiced at one of the world's premier full-service global law firms, where he focused on antitrust litigation. Some of Mr. Johnson's matters included:

- *Feesers, Inc. v. Michael Foods, Inc. and Sodexho, Inc.* (M.D. Pa.): Mr. Johnson was a member of the successful trial team that represented Michael Foods, a manufacturer of processed egg products and refrigerated potato products, in a three week trial of a Robinson-Patman Act action brought by a broad-line distributor of food products.
- *Dahl, et al. v. Bain Capital, et al.* (D. Mass.): Mr. Johnson represented The Carlyle Group in a class action where plaintiffs alleged collusion among certain private equity firms and investment banks in specific going-private transactions in violation of Section 1 of the Sherman Act.
- *In re Aftermarket Filters Antitrust Litigation* (N.D. Ill.): Mr. Johnson represented Champion Laboratories, a manufacturer of aftermarket automotive filters, in a class action where plaintiffs alleged a conspiracy among manufacturers to fix prices in violation of Section 1 of the Sherman Act.
- *National Laser Technology, Inc. v. Biolase Technology, Inc.* (S.D. Indiana): Mr. Johnson represented Biolase, the country's largest manufacturer of lasers for dental applications, against Sherman Act claims brought by a competitor aftermarket dental laser support company. The matter resulted in a favorable settlement for the client.

Mr. Johnson also advised clients in the insurance, commodities exchange, chemical and energy industries in obtaining clearance of mergers, acquisitions and joint ventures from the Federal Trade Commission and the Antitrust Division of the Department of Justice in connection with premerger notification proceedings under the Hart-Scott-Rodino Antitrust Improvements Act.

Mr. Johnson has significant experience in other complex civil litigation, including mass torts and government contracts.

Mr. Johnson graduated *magna cum laude* from Duke University, with a B.A. in Political Science and Spanish, and attended Stanford Law School, where he earned his law degree. He is a member of the ABA Section of Antitrust Law. Along with Emmy Levens, he recently published an article on ascertainability in the Spring 2016 issue of the ABA's *Antitrust* magazine. In his pro bono work, he has represented Covenant House Washington, D.C., Habitat for Humanity International Inc. and the Cystic Fibrosis Foundation.

**Betsy A. Miller**

Betsy A. Miller is a Partner at Cohen Milstein and Co-Chair of the Public Client practice group. Ms. Miller represents state Attorneys General and municipalities in civil law enforcement investigations and enforcement actions involving consumer fraud and false claims. She joined the firm in 2009, helping to launch the Public Client practice and bringing with her a broad legal background that includes government service, private-

sector litigation, complex dispute-resolution skills and teaching experience. An accomplished litigator, the *National Law Journal* named Ms. Miller to its prestigious list of Rising Stars in 2009, an honor bestowed on only 40 attorneys under the age of 40 in Washington, D.C.

Prior to joining Cohen Milstein, Ms. Miller served as the Chief of Staff and Senior Counsel to the Attorney General for the District of Columbia. In that capacity, Ms. Miller managed high-profile legal issues and policy initiatives for the Attorney General, serving as the chief liaison to multiple agencies and members of the D.C. Council. Ms. Miller also served as the Mayor's lead labor and employment lawyer during the historic transition of the D.C. Public Schools from an independent agency to one operating under governmental supervision.

Ms. Miller previously served in the federal government as Counsel on the U.S. Senate Committee on the Judiciary, where she worked for Chairman Patrick J. Leahy (D-VT). Ms. Miller was responsible for handling presidential nominations to the federal judiciary, the Department of Justice, the Federal Bureau of Investigation and to U.S. Attorney's Offices.

Ms. Miller also spent eight years as a litigator for two premier defense firms, where she represented some of the nation's largest companies and individuals in matters including First Amendment issues, complex contract disputes, collective bargaining negotiations and arbitration, employment class actions and challenges to independent contractor classification. Her civil defense experience adds to Ms. Miller's deep and balanced litigation skillset.

Currently, Ms. Miller represents public clients in the following high-profile matters:

- The state of Mississippi's litigation against Moody's for misrepresenting its analytical services related to structured finance securities (such as CDOs, RMBS, and various mortgage-backed securities) as independent and objective. The lawsuit alleges that Moody's deceived the government and citizens of Mississippi because these analytical services were tainted by motives for increased profits and market share at the expense of independence and objectivity.
- A different state in its confidential investigation of a rating agency for misrepresenting its structured finance securities business model as independent and objective.
- The state of Hawaii in its litigation against Living Essentials, Inc., the creator of 5-Hour ENERGY, for misrepresenting the benefits of drinking its so-called "liquid energy shot."

Ms. Miller's investigation and litigation successes include matters in the financial, health care and employment law sectors. Recent examples include:

- Representing the state of Mississippi, a Lead State on the Executive Committee, in the landmark consumer fraud lawsuit against McGraw Hill Financial (a/k/a Standard & Poor's), over the misrepresentation of its structured finance securities business as independent and objective; resulting in a global resolution for 19 states, the District of Columbia and the United States Department of Justice in the amount of $1.375 billion.
- Representing the states of Arizona and Nevada in litigation against Bank of America for deceptive conduct in connection with servicing approximately 500,000 mortgages; resulting in financial payments to consumers and the states, commitments to mortgage modifications and other equitable relief valued at nearly $1 billion.
- Representing the state of Montana in an investigation of a Fortune 100 company regarding alleged

misclassification of employees as independent contractors; resulting in a multi-million dollar resolution for the state.
- Representing other state attorneys general and municipalities in numerous confidential investigations and settlements.

Earlier in her career, Ms. Miller was a full-time mediator and negotiation consultant. She also was engaged by the Kennedy School of Government to evaluate mediation and arbitration programs across Central America, after which she contributed to a book on the same subject.

Ms. Miller has been a longstanding member of Georgetown University Law Center's adjunct faculty, which she joined in 2001. There, she teaches courses on mediation advocacy and negotiation strategy. She has taught intensive negotiation courses for practitioners attending Harvard Law School's Negotiation Institute (formerly Harvard's Program of Instruction for Lawyers), as well as for a variety of federal and state government agencies, law firms, corporations and non-profit organizations.

Ms. Miller has authored several articles, including her most recent publication, "Untapped Potential: Creating a Systematic Model for Mediation Preparation," which appears as Chapter 13 in the *AAA Handbook on Mediation* – Third Edition (2016).

Ms. Miller received her undergraduate degree in Comparative Literature from Dartmouth College, graduating *magna cum laude* and Phi Beta Kappa, and earned her law degree from Harvard Law School, where she was an editor on the *Harvard Human Rights Journal* and the *Harvard Latino Law Review*. She is the recipient of Harvard Law School's post-graduate Heyman Fellowship for government service and academic excellence and Harvard Law School's Kaufman Fellowship for public service. Following law school, she clerked for the Honorable Thomas Penfield Jackson in the U.S. District Court for the District of Columbia.

**Gary L. Azorsky**

Gary L. Azorsky is a Partner at Cohen Milstein, and Co-chair of the Firm's Whistleblower/False Claims Act Practice. Mr. Azorsky joined Cohen Milstein in 2012, establishing the practice. In his role, Mr. Azorsky pursues whistleblower cases under the federal and state false claims act statutes in the health care, pharmaceutical, banking and defense contractor industries and other industries that conduct business with the government. Mr. Azorsky specializes in the complex, highly detailed process for filing and pursuing these cases. In his practice, he has helped right wrongs and to recover nearly $2.5 billion in defrauded funds for federal and state governments, including hundreds of millions of dollars for whistleblower clients.

Most recently, Mr. Azorsky served as co-lead counsel in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states joined to intervene along with the government of the United States than had ever before intervened in a qui tam action. (*United States of America et al., ex rel. Lauren Kieff, v. Wyeth*, No.1:03-CV-12366-DPW [D.Mass.].) The $784.6 million settlement was the seventh-largest False Claims Act recovery on record and the second-largest recovery in history involving a single class of drugs. Mr. Azorsky worked alongside Department of Justice attorneys and states Attorneys General throughout the 12-year pendency of the case.

Mr. Azorsky was actively involved in precedent-setting cases, such as the series of Ven-A-Care cases, which were among the first large FCA multi-state cases and laid the groundwork for much of the false claims act

litigation that goes on today. He has also represented whistleblowers in False Claims Act cases involving defense contractors, off-label marketing and misbranding by pharmaceutical companies and fraud in connection with the banking industry, for-profit colleges and student loan programs. In addition, Mr. Azorsky represents whistleblowers in tax fraud claims against large and small corporations through the IRS Whistleblower Office, as well as whistleblowers alleging violations of the Foreign Corrupt Practices Act and violations of the federal securities laws filed with the SEC Whistleblower Office.

Mr. Azorsky served as co-counsel for the whistleblower on the following representative matters:

- *United States of America ex rel. Ven-a-Care of the Florida Keys Inc. v. Dey Laboratories, et al.*, Civil Action No. 05-11084 (D. Mass) ($280 Million settlement in December 2010)
- *United States of America ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 07-10248 (D. Mass.) ($280 Million settlement in December, 2010)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($6.5 Million settlement with Dey Laboratories, Inc. in March 2010)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($9.57 Million settlement with Schering-Plough in December 2009)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($8.5 Million settlement with Boehringer Ingelheim in December 2009)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Roxane Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Ben Venue Laboratories, Inc. and Boehringer Ingelheim Corporation*, Civil Action No. GV3-03079 (Travis Cty., Tex.) ($10 Million settlement with Boehringer Ingelheim in November 2005)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Warrick Pharmaceuticals Corporation, Schering Plough Corporation, Schering Corporation*, Civil Action No. GV002327 (Travis Cty., Tex.) ($27 Million settlement with Schering-Plough in May 2004)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Dey, Inc., Dey, L.P.*, Civil Action No. GV002327 (Travis Cty., Tex.) ($18.5 Million settlement with Dey Laboratories, Inc. in June 2003)

Mr. Azorsky is recognized for his expertise. He has served as an expert witness in a legal malpractice case concerning qui tam practice. He has provided expert guidance on the False Claims Act in congressional hearings, as well as before the Vermont Senate Judiciary Committee in support of the passage of a False Claims Act for the state. In addition, he regularly speaks before professional audiences regarding the federal and state False Claims Acts.

Mr. Azorsky is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its qui tam provisions. Prior to joining Cohen Milstein, in addition to his Whistleblower/False Claims Act practice, he was actively involved in groundbreaking civil rights, commercial and intellectual property litigation, including Internet and software industry-related litigation.

Mr. Azorsky is a graduate of the University of Pennsylvania, with a B.A. in English, and received his law degree from Cornell University Law School.

**Jeanne A. Markey**

Jeanne A. Markey, is a Partner at Cohen Milstein and Co-Chair of the firm's Whistleblower/False Claims Act practice group. She has successfully represented whistleblowers in federal and state cases across the country. Ms. Markey has extensive experience in Qui Tam litigation in the health care, defense and education industries, and has represented whistleblower clients in the public housing sector.

Ms. Markey is co-lead counsel in *United States of America et al., ex rel. Lauren Kieff, v. Wyeth*, a high-profile whistleblower case against pharmaceutical giant Wyeth (recently acquired by Pfizer). The lawsuit alleges that Medicaid, the healthcare program for the poor which is jointly funded by the federal and state governments, was defrauded when Wyeth falsely inflated the price of the acid suppression drug Protonix Oral from 2001 through 2006. Thirty-six states and the District of Columbia have joined with the United States to intervene in the Wyeth case – more states than have ever intervened in any other U.S. Qui Tam case.

She also served as the primary attorney representing the putative class in *Benzman v. Whitman*, a class action in Manhattan and Brooklyn against the U.S. Environmental Protection Agency. The claims were based on class members' exposure to contaminants contained in World Trade Center interior dust resulting from the 9/11 attacks.

Ms. Markey is admitted to practice law in the Commonwealth of Pennsylvania, the Eastern District of Pennsylvania and to the First Circuit Court of Appeals, Second Circuit Court of Appeals, and Eleventh Circuit Court of Appeals. She is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its Qui Tam provisions, the Association of Qui Tam Attorneys, and frequently speaks about developments in the Qui Tam field. She received her B.A. (*cum laude*) from Colgate University and her J.D. from Cornell University Law School.

**Christopher J. Cormier**

Christopher J. Cormier is a Partner at Cohen Milstein and a member of the Antitrust practice group. In this role, he has tried cases and obtained settlements and judgments for his clients in excess of $1 billion. He is a member of the Antitrust practice group's New Case Committee as well as a member of the group's Client Committee.

Currently, Mr. Cormier is litigating the following notable matters:

- Anadarko Basin Oil and Gas Lease Antitrust Litigation: Co-lead counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies conspired to rig bids for leases of land held by private landowners in parts of Oklahoma and Kansas. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy. Plaintiffs allege that Defendants illegally conspired to stabilize and depress the price of royalty and bonus payments paid to landowners in the Anadarko Basin oil and gas province — a massive geological formation holding natural gas and oil deposits that includes large parts of Oklahoma and Kansas. Pursuant to this conspiracy, Plaintiffs allege that Defendants communicated about and agreed on prices, allocated particular geographic areas between themselves, and rigged bids for leases of land,

lowering acquisition prices across the region and thereby harming the proposed class of landowners.

- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company — the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays. Mr. Cormier is one of the members of the Cohen Milstein team co-leading this case.

- Ductile Iron Pipe Fittings Antitrust Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings — McWane Inc., Sigma Corporation, and Star Pipe Products — and a monopolization case against McWane for excluding significant competition in the domestic ductile iron pipe fittings market. Settlements of $9 million have been reached with two of the defendants, Sigma and Star. Currently, Mr. Cormier and his team are in the midst of fact discovery and taking depositions of numerous party and non-party witnesses across the country.

- Cast Iron Soil Pipe & Fittings Antitrust Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they control (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy. Mr. Cormier and his team are concluding fact discovery, and have taken a significant number of depositions of party and non-party witnesses across the country.

His successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam, a basic component of ubiquitous everyday products such as bed mattresses, car seat cushioning and furniture cushioning. Four defendants — Bayer, BASF, Huntsman, and Lyondell — settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Mr. Cormier was a member of the trial team, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion. This was the largest verdict in the country in 2013, as reported by the National Law Journal. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment, which is currently on appeal before the United States Supreme Court.

- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein was co-lead counsel for direct purchaser plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin — life-saving therapies derived from blood plasma. Mr. Cormier and his colleagues at Cohen Milstein represented named plaintiff The University of Utah Health Systems as well as the remaining class members in this matter. The defendants were CSL Ltd., CSL Behring, Baxter Healthcare and the Plasma Protein Therapeutics Association (the trade association the manufacturer defendants controlled). Mr. Cormier played an integral role in the investigation and filing of the first complaint in the country in this matter. Following numerous depositions across the globe and the filing of plaintiffs' opening class certification motion and expert report, Mr. Cormier and his team obtained settlements with all

defendants totaling $128 million.

Mr. Cormier earned a B.A. at the University of Virginia and attended American University Washington College of Law, graduating *magna cum laude*. He interned with the Hon. Judge Deborah K. Chasanow, U.S. District Court for the District of Maryland, and with the U.S. Department of Justice, National Criminal Enforcement Section, Antitrust Division. He is the author of numerous scholarly articles on antitrust law. Benchmark Plaintiff has named him an Antitrust Litigation Star three consecutive years, from 2013 to 2015 and Super Lawyers named him a "Rising Star" in 2016.

**Michael B. Eisenkraft**

Michael B. Eisenkraft is a Partner at Cohen Milstein and takes a leading role in prosecuting cases relating to the protection of commodity and financial markets for the firm and currently represents investors in the Natural Gas, KOSPI 200, LIBOR, Treasuries, and Interest Rate Swaps markets. He has also helped investors recover hundreds of millions of dollars in the Firm's mortgage-backed securities cases. Mr. Eisenkraft serves as the Administrative Partner for Cohen Milstein's New York office and chairs the firm's new business development committee.

His notable successes at Cohen Milstein include:

- HEMT MBS Litigation: $110 million settlement on behalf of investors in mortgage-backed securities issued and underwritten by Credit Suisse (final approval pending) after more than seven years of litigation, which included the first written decision certifying a Securities Act class of mortgage-backed securities in the country.
- RALI MBS Litigation: $335 million in settlements on behalf of investors in mortgage-backed securities issued by Residential Capital and underwritten by various investment banks after seven years of litigation.
- Harborview MBS Litigation: $275 million settlement on behalf of investors in mortgage-backed securities issued and underwritten by the Royal Bank of Scotland and its subsidiaries after more than six years of litigation.
- Dynex: $7.5 million settlement on eve of trial on behalf of investors in asset-backed securities. The decision certifying the class in the case was the first decision within the Second Circuit certifying a class of asset-backed bond purchasers under the 1934 Act.
- China MediaExpress: $12 million settlement with auditor defendant in case involving alleged fraud at Chinese reverse merger company China MediaExpress. One of the largest settlements with an auditor defendant in a case involving a Chinese reverse merger company.

Mr. Eisenkraft's current cases include:

- Total Gas & Power Antitrust and Commodities Litigation: Represents putative class in action against the energy company Total in case alleging antitrust violations and violations of the Commodity Exchange Act in connection with manipulation of the market for natural gas.
- NovaStar MBS Litigation: Securities Act litigation involving billions of dollars of mortgage-backed securities underwritten by the Royal Bank of Scotland, Wachovia and Deutsche Bank.
- Tower Research Capital: Commodity Exchange Act class action against a high frequency trading firm alleging manipulation of the market for KOSPI 200 futures contracts (the representative stock market

index of South Korea) using spoofing or faked trades.
- LIBOR (Exchange Traded Class): Commodity Exchange Act and antitrust class action representing investors in Eurodollar futures injured by manipulation of LIBOR by world's largest banks.
- Interest Rate Swaps: Represents Public School Teachers' Pension and Retirement Fund of Chicago and putative class in action alleging that major investment banks conspired to prevent an exchange-traded market for interest rate swaps from developing.

Mr. Eisenkraft served as a law clerk to the Honorable Judge Barrington D. Parker of the United States Court of Appeals for the Second Circuit. He is the author or co-author of numerous articles on legal issues in the securities and antitrust fields among other subjects.  Mr. Eisenkraft attended Brown University, where he received a B.A., *magna cum laud*e and Phi Beta Kappa, and graduated *cum laude* from Harvard Law School.

## Michelle C. Yau

Michelle C. Yau is a Partner at Cohen Milstein, and a member of the Firm's Employee Benefits (ERISA) Practice Group. In her role, Ms. Yau represents the interests of employees, retirees, plan participants or beneficiaries in ERISA cases. Her practice specializes in ERISA cases involving complex financial transactions or actuarial issues. Ms. Yau brings to her practice government experience enforcing labor statutes and a grasp of complex financial instruments gained from her training as a financial analyst. Drawing on those experiences, she is able to fulfill her passion for protecting pension plan participants.

Ms. Yau litigated some of the most significant ERISA lawsuits to emerge from the Madoff Ponzi scheme. In re Beacon Assoc. Litig., she represented a multi-plan class of participants, beneficiaries and fiduciaries, which settled along with other consolidated cases for $219 million in 2013, representing 70% of the Class members' out-of-pocket losses. The judge praised the settlement, describing the outcome as "extraordinary" and the praising the "hard work" done by plaintiffs' counsel, including Cohen Milstein. In re Austin Capital Mgmt. Litig., which was settled by the Department of Labor on the ERISA class on very favorable terms, Ms. Yau alleged that Madoff's returns, based on his advertised investment strategy, were mathematically impossible, a fact Austin Capital ought to have recognized well before the fraud was revealed.

Prior to joining Cohen Milstein in 2007, Ms. Yau was an Honors Program Attorney at the Department of Labor where she enforced and administered of a variety of labor statutes.  Before law school, she worked as a financial analyst at Goldman, Sachs & Co. in the Financial Institutions Group of the Investment Banking Division.

Ms. Yau is presently litigating a series of church plan lawsuits alleging that health care systems wrongfully claim their benefit plans are exempt from ERISA's protection. She oversees the day-to-day management of these cases, including coordinating all the aspects of the litigation.

Currently, Ms. Yau is representing clients in the following notable matters:

- St. Peter's Health care System Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Kaplan v. St. Peter's Healthcare System, which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections.  In district court, Cohen Milstein succeeded in showing that only a church may establish a church plan and thus St. Peter's Healthcare System is not entitled to exemption from ERISA.  Cohen Milstein then prevailed in the Third Circuit,

which affirmed the district court's holdings.

- St. Anthony Medical Center Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Owens et al. v. St. Anthony Medical Center et al., which allege that the Medical Center violated numerous provisions of ERISA by improperly operating the plan as exempt from ERISA's protections. As a result the class of participants suffered cutbacks as much as 40% of their promised benefits.

- Trinity Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Lann et al. v. Trinity Health, which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections,

- Advocate Health Care Church Plan Litigation: Cohen Milstein, along with Keller Rohrback, is counsel to a class of defined benefit participants in Stapleton et al. v. Advocate Health Care Network and Facilities et al., which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections. In district court, counsel succeeded in showing that only a church may establish a church plan and thus Advocate is not entitled to exemption from ERISA. Plaintiffs then prevailed in the Seventh Circuit, which affirmed the district court's holdings.

- U.S. Bancorp Pension Plan Litigation: Cohen Milstein is counsel to a class of pension plan participants alleging that the plan's managers engaged in a risky, imprudent investment strategy by investing 100% of its assets in stocks, thus causing the plan to lose more than $1 billion during the collapse of the equities market in 2008. Ms. Yau developed the litigation and is overseeing all aspects of the litigation.

Ms. Yau has litigated the following case successfully:

- Merrill Lynch ERISA Litigation: Cohen Milstein served as interim co-lead counsel in a class action alleging that fiduciaries of the Merrill Lynch retirement plans imprudently purchased and held inflated Merrill employer stock for the retirement accounts of the Companies' employees. The litigation was resolved for $75 million. Ms. Yau was engaged in all aspects of the litigation.

- Madoff Ponzi Scheme Litigation: Cohen Milstein represented a multi-plan class of participants, beneficiaries and fiduciaries in re Beacon Assoc. Litig. The $219 million settlement in 2013 represented 70% of the Class members' out-of-pocket losses. Ms. Yau was engaged in all aspects of the litigation.

- Weyerhauser Pension Plan Litigation: Cohen Milstein was lead counsel in a lawsuit alleging that the Weyerhaeuser Company caused its Defined Benefit Retirement Plans to engage in a risky investment strategy involving alternative investments and derivatives, causing the Plans' master trust to become underfunded. A settlement was reached for injunctive relief on behalf of Plans' participants and beneficiaries. Ms. Yau was engaged in all aspects of the litigation.

Ms. Yau received her law degree from Harvard Law School in 2003, where she was awarded several public interest fellowships, including the Heyman Fellowship for academic excellence and a demonstrated commitment to federal public service. Ms. Yau graduated Phi Beta Kappa with a B.A. in Mathematics from the University of Virginia. Ms. Yau was also selected as an Echols Scholar and awarded the Student Council Scholarship for leadership, academic achievement and community service. Law360 named Ms. Yau a Rising Star Under 40.

**George F. Farah**

George F. Farah is a Partner at Cohen Milstein, and a member of the Antitrust and Human Rights practice groups. In this role, Mr. Farah represents consumers, farmers, unions and businesses that were injured by antitrust abuses in complex multi-district class action lawsuits.

He has experience in litigating all aspects of cases, from arguing motions in court to engaging in settlement negotiations to obtaining jury trial verdicts. In addition, Mr. Farah facilitates the development of new antitrust cases by investigating potential matters and securing clients to serve as class representatives.

Since joining the Firm in 2005, Mr. Farah has represented small businesses that were overcharged due to price-fixing conspiracies; unions and consumers in actions against pharmaceutical companies that thwarted generic competition; and farmers in lawsuits against processors that artificially depressed their wages. Mr. Farah has also advocated for victims of other tortious conduct. He represented the city of Milwaukee in a public nuisance case against lead paint manufacturers; survivors of the Holocaust in actions against companies who profited from Nazi-era slave labor; and political asylum applicants who were tortured in Nepal.

In addition to litigating, Mr. Farah has worked on electoral reform and income inequality issues. He founded the nonprofit Open Debates to improve the presidential debate process. He served as general counsel of The Living Wage Campaign to raise wages in Virginia. He reported on the harms of media concentration and the IMF's austerity programs at The Center for the Study of Responsive Law.

Currently, Mr. Farah is litigating the following notable matters:

- DairyAmerica Antitrust Litigation: Cohen Milstein is co-lead counsel in in Carlin v. Dairy America, Inc.(E.D. Cal.), accusing the largest marketer of nonfat dry milk in the U.S. and the California-based milk processing firm of inflating their profits at the expense of U.S. dairy farmers by misreporting data used by the U.S. government to set the price of raw milk. Mr. Farah is managing all aspects of the case. The case is ongoing.
- Treasury Securities Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that major banks and brokerages conspired to drive up futures prices for Treasury securities ahead of announced auctions and then colluded to deflate prices at auction. Mr. Farah is involved in all aspects of the case.
- In re Nexium Antitrust Litigation (D. Mass.): Cohen Milstein is co-lead counsel in a pay-for-delay litigation alleging that AstraZeneca PLC, the brand manufacturer of Nexium, paid generics manufacturers to delay the introduction of a generic version of the drug, thus harming consumers. The case is on appeal.
- In re Lidoderm Antitrust Litigation (N.D. Cal.): Cohen Milstein is co-lead counsel in a class action lawsuit alleging that Endo and Teikoku, the manufacturers of the Lidoderm pain patch, paid Watson Pharmaceuticals to delay its generic launch. The case is ongoing.

Some of his successes include:

- OSB Antitrust Litigation: $120 million settlement. Cohen Milstein was co-lead counsel in a case alleging that the nine producers of oriented standard board conspired to reduce the supply of OSB so as to increase prices. Mr. Farah was involved in all aspects of the litigation.

- Hydrogen Peroxide Litigation: $100 million settlement. Cohen Milstein was co-lead counsel in In re Hydrogen Peroxide Antitrust Litigation (E.D. Pa.) representing a class of direct purchasers of hydrogen peroxide in alleging a price-rigging conspiracy by manufacturers. The U.S. Third Circuit Court of Appeals opinion in Hydrogen Peroxide has proved important in clarifying the role of expert testimony in Rule 23 analysis. Mr. Farah was engaged in all aspects of the litigation.
- Northeast Dairy Litigation: In Allen vs. Dairy Farmers of America (D. Vt.), Cohen Milstein serves as lead counsel for one of two certified subclasses of Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services in a raw milk price-fixing case. Defendant Dean Foods Co. settled for $30 million, and the Court has preliminarily approved a $50 million settlement with DFA and DMS.
- Nepali Nurse Political Asylum Litigation (Pro Bono): Mr. Farah acted as lead counsel in successfully securing political asylum in the U.S. for a Nepali nurse who had been persecuted and tortured for her religious beliefs in Nepal.

Mr. Farah is the author of the book "No Debate: How the Republican and Democratic Parties Secretly Control the Presidential Debates" (Seven Stories Press). His articles on legal and electoral issues have appeared in *The Washington Post, The Boston Globe, The Philadelphia Inquirer, Antitrust Magazine* and other publications.

Mr. Farah has appeared on over 50 television programs to discuss political, electoral and legal matters, including Nightline, NOW with Bill Moyers, 20/20, CBS Evening News, NBC Nightly News, FOX and Friends, Lester Holt Live and CNN's Market Call. He has been interviewed on over 100 radio shows and has hosted numerous televised press conferences. He has given several talks on the political process and electoral reform issues at colleges and universities.

Mr. Farah attended Princeton University, graduating with a B.A. from the Woodrow Wilson School of Public and International Affairs, and earned a J.D. at Harvard Law School. Mr. Farah was the recipient of a Paul and Daisy Soros Fellowship.

**Kalpana Kotagal**

Kalpana Kotagal is a Partner at Cohen Milstein, a member of the firm's Civil Rights & Employment practice group, and Chair of the firm's Hiring and Diversity Committee. Ms. Kotagal also plays an active role in the investigation and development of new potential matters for the Civil Rights & Employment practice group.

Ms. Kotagal has represented victims of discrimination in the workplace and in other settings. Ms. Kotagal also practiced as a member of the firm's Antitrust practice group. A noted speaker, Ms. Kotagal often is called on to address issues of opportunities and impediments to women's leadership, the ethics of multi-party and class cases, and class arbitration. She also speaks regularly to law students and new lawyers about their career paths.

Ms. Kotagal represents a class of approximately 44,000 female sales employees nationwide in a Title VII and Equal Pay Act case against one of the nation's largest jewelry chains in *Jock, et al. v Sterling Jewelers Inc*. Her clients have alleged a pattern of sex discrimination in compensation and promotions. This case presents cutting-edge issues regarding the certification of nationwide classes and litigating in arbitration. Ms. Kotagal also represents transgender beneficiaries of federal health insurance who have challenged the denial of transition-related care as discriminatory.

Ms. Kotagal's past successes include:

- U.S. Postal Service Disabled Veterans Litigation: Ms. Kotagal represented a class of disabled veteran applicants in *Hill, et. al v. Donohue, United States Postal Service*, alleging illegal pre-offer medical inquiries during the application process against the United States Postal Service. The case, which settled for $9.58 million, resulted in USPS's agreement implement changes in its practices to prevent similar violations in the future.
- Pilgrim's Pride Corporation: Ms. Kotagal represented 8,000 workers in 11 states in a wage and hour lawsuit in *Aaron v. Pilgrim's Pride Corp.*, seeking redress for unpaid overtime. The $10 million settlement allowed class members to recover about 85% of the back pay owed them.
- Nurse Wages Matters: Cohen Milstein represented nurses in an antitrust case in a case contending that hospitals conspired to suppress and fix wages of nurses.

Ms. Kotagal is a member of the Center for Worklife Law's Working Group on Pregnancy Accommodation of the National Employment Lawyers Association (NELA). She is also the co-author of "Innovation, Economics and the Law: The Health Care Industry's Exposure to Antitrust Liability," published by the ABA Antitrust Law Section in 2007.

Ms. Kotagal brings to her litigation practice her experience as an organizer, having previously served as field organizer with Green Corps, an Assistant National Field Director of the United States Public Interest Research Group, and as an advisor to a Congressional candidate in 2006. Ms. Kotagal also served as an honorary chair of the National Finance Committee of Young Lawyers for Obama in 2008.

While in law school, Ms. Kotagal served as law clerk in the Chambers of the Honorable J. Curtis Joyner, Eastern District of Pennsylvania. She served as an Articles Editor of the *University of Pennsylvania Law Review*.

Prior to joining Cohen Milstein, she served as a law clerk to the Honorable Betty Binns Fletcher of United States Court of Appeals for the Ninth Circuit.

Ms. Kotagal attended Stanford University, where she was a Morris K. Udall Scholar, and graduated with honors with an A.B.B.S. She earned her J.D. *cum laude* from the University of Pennsylvania, where she was a James Wilson Fellow.

**Sharon K. Robertson**

Sharon Robertson is a Partner at the firm and a member of the Antitrust practice group. Ms. Robertson Co-chairs the firm's Professional Development and Mentoring Committee and serves on the firm's Diversity Committee. Ms. Robertson also currently serves as a member of the Executive Committee for the Antitrust Section of the New York State Bar Association.

Ms. Robertson, who joined Cohen Milstein in 2006, has extensive experience in complex antitrust litigation at the pre-trial, trial and appellate levels and has been consistently recognized as a leading and highly regarded attorney. Within a span of two years, Ms. Robertson was a trial team member in two of the largest antitrust cases to be tried to verdict. In 2013, she was a member of the trial team in the Urethanes matter, where the jury returned a $400 million verdict, which was trebled by the Court, as required by antitrust law, to $1.06

billion. The judgment, one of the largest known antitrust verdicts to date, was cited by *The Legal 500* in ranking Cohen Milstein a leading class action plaintiff firm in 2015. The following year, Ms. Robertson was a member of the trial team in the Nexium matter, the first pharmaceutical antitrust case to go to trial following the Supreme Court's landmark decision in *FTC v. Actavis*, 570 U.S. 756 (2013).

Currently, Ms. Robertson leads a series of pay-for-delay pharmaceutical antitrust cases, alleging that the defendant brand manufacturer entered into non-competition agreements with generic pharmaceutical manufacturers in order to delay market entry of generic versions of certain drug products.

Ms. Robertson represents End-Payor Plaintiffs in the following pay-for-delay pharmaceutical antitrust cases in which the firm serves as Co-Lead Counsel:

- *In re Nexium Antitrust Litigation* (D. Mass.): Plaintiffs allege that AstraZeneca PLC, the brand manufacturer of Nexium, paid generics manufacturers to delay the introduction of a generic version of the drug, thus harming consumers and other end-payors. The case is on appeal.
- *In re Lipitor Antitrust Litigation* (D.N.J): Plaintiffs allege that Pfizer, the manufacturer of Lipitor, conspired with Ranbaxy, the generic manufacturer, to delay its introduction of a generic Lipitor product. The case is on appeal.
- *In re Loestrin Antitrust Litigation* (D.R.I.): Plaintiffs allege that Warner Chilcott PLC and three others entered into an agreement to delay the introduction of a generic version of the contraceptive drug Loestrin. Following a dismissal by the District Court, the First Circuit recently revived all of Plaintiffs' claims and remanded the case for further proceedings consistent with its opinion.
- *In re Lidoderm Antitrust Litigation* (N.D. Cal.): Plaintiffs allege that Endo and Teikoku, manufacturers of the Lidoderm patch, paid Watson Pharmaceuticals to delay its generic launch. The case is ongoing.

In addition, Ms. Robertson serves as a member of the executive committee in similar pay-for-delay cases in which Cohen Milstein plays a significant role, including: Niaspan (*In re Niaspan Antitrust Litigation* [E.D. Pa.]), Suboxone (*In re Suboxone Antitrust Litigation* [E.D. Pa.]), ACTOS (*In re ACTOS Antitrust Litigation* [S.D.N.Y.]), Aggrenox (*In re Aggrenox Antitrust Litigation* [D. Conn.]) and Solodyn (*In re Solodyn Antitrust Litigation* [D. Mass.]).

Ms. Robertson has successfully litigated the following notable matters:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is Co-Lead Counsel in an antitrust class action alleging a nationwide conspiracy to fix the prices of polyether polyols. Ms. Robertson played a leading role in helping obtain settlements with several defendants for $139 million and was a member of the trial team that obtained a $400 million jury verdict (trebled to more than $1 billion), which was affirmed on appeal by the 10th Circuit. The case against Dow ultimately settled for $835 million while Dow's petition for certiorari was pending before the Supreme Court.
- Albany and Detroit Nurses Litigation: Cohen Milstein represented registered nurses employed by hospitals in Albany and Detroit in class actions alleging a wage-fixing conspiracy. Ms. Robertson obtained settlements with five Albany Defendants totaling over $14 million. In the Detroit case, Ms. Robertson helped obtain $98 million in settlements with eight Defendants.
- Indonesian Villagers Litigation: Ms. Robertson represented Indonesian villagers in a lawsuit against Exxon Mobil over torture and extrajudicial killings allegedly committed by the Defendant's security forces (a unit of the Indonesian military).

Ms. Robertson attended the State University of New York at Binghamton, where she graduated *magna cum laude* with a B.A. in Philosophy, Politics and Law. She earned her J.D. from the Benjamin N. Cardozo School of Law, where she served as Notes Editor of the *Cardozo Public Law, Policy and Ethics Journal*.

Ms. Robertson has authored "Comparing the U.S. Class Action Mechanism and the Proposed U.K. System: Which Strikes the Right Balance Between Safeguards and Justice," *Competition Policy International Antitrust Chronicle*. In addition, she assisted the Trial Practice Committee of the American Bar Association in revising the 2005 Edition of the *Model Jury Instructions* handbook.

Prior to attending law school, Ms. Robertson worked on the campaign committee of Councilman John Liu, the first Asian American to be elected to New York City's City Council. During law school, she was an intern in the Litigation Bureau of the Office of the New York State Attorney General and the United States Court of Appeals for the Second Circuit. Additionally, in law school, Ms. Robertson was selected as an Alexander Fellow and spent a semester serving as a full-time Judicial Intern to the Hon. Shira A. Scheindlin, U.S. District Court for the Southern District of New York.

## S. Douglas Bunch

S. Douglas Bunch, is a Partner at Cohen Milstein and a litigator in the firm's Securities Fraud & Investor Protection Practice Group.

Mr. Bunch represents individual and institutional investors in cases brought in violation of state and federal securities laws, including the Securities Act of 1933 and the Securities Exchange Act of 1934. Currently, Mr. Bunch is part of the Cohen Milstein team litigating a class action suit against Harman International Industries, Inc., in which Cohen Milstein was successful in obtaining a ruling by the Court of Appeals for the D.C. Circuit reversing the dismissal of the case and remanding it to the U.S. District Court for further proceedings. The ruling protects investors by limiting the scope of protection afforded by the so-called "safe-harbor" for forward-looking statements in the Private Securities Litigation Reform Act of 1995. Mr. Bunch also recently played a key role in the litigation and settlement of securities class actions against ITT Educational Services, Inc. and Orthofix International N.V., in which the U.S. District Court for the Southern District of New York denied defendants' motions to dismiss.

Mr. Bunch played an important role in successfully litigating the suits that followed in the wake of the 2008 financial crisis. He was instrumental in the $90 million settlement, following an appeal to the U.S. Court of Appeals for the Second Circuit, of Rubin v. MF Global, Ltd. in 2011. The complaint asserted that although MF Global had assured investors in its IPO that the Company had a rigorous, robust system of risk controls in place capable of monitoring risk on a continuous "real time" basis, MF Global in fact had deactivated trading and margin controls on brokers' computers to speed up transaction times. He was also a member of the litigation team that persevered in the $335 million global settlement of a class action lawsuit on behalf of purchasers of mortgage-backed securities (MBS) issued by Residential Accredit Loans, Inc. (RALI), the $275 million settlement of a class action lawsuit on behalf of purchasers of MBS issued by Harborview Mortgage Loan Trusts, and the $500 million settlement of a class action lawsuit on behalf of purchasers of MBS issued by Bear Stearns & Co. Inc., among other MBS cases.

A member of Phi Beta Kappa, Mr. Bunch graduated with a B.A., *summa cum laude*, from the College of William & Mary, earned an Ed. M. from Harvard University, and received his J.D. from William & Mary Law School, where he was a recipient of the Benjamin Rush Medal in 2006. In 2011, he was awarded William & Mary's

inaugural W. Taylor Reveley III award, recognizing alumni who have demonstrated a sustained commitment to public service.  Mr. Bunch is co-founder and chairman of Global Playground, Inc., a nonprofit that builds schools in the developing world, and serves or has served on the boards of the Northeast Conference on the Teaching of Foreign Languages, Ascanius: The Youth Classics Institute, and Virginia21.

**David Young**

David A. Young is a Partner at Cohen Milstein and is a member of the Antitrust Practice Group, having joined the Firm in 2010. Mr. Young has extensive experience in complex antitrust litigation, class actions, appeals and litigating cases under the federal False Claims Act.

In his role, Mr. Young represents businesses and individuals in federal and state civil actions, with a focus on multi-district class actions and federal False Claims Act litigation. He has worked on antitrust issues in numerous industries, including pharmaceuticals, financial services, financial derivatives and PC microprocessors.  Mr. Young also represents qui tam relators in federal False Claims Act litigation.

Prior to joining Cohen Milstein, Mr. Young practiced at two other firms where his litigation practice focused on antitrust, trademark, business, and False Claims Act litigation. He represented the relator in U.S. ex rel. Loughren v. UnumProvident Corp. (D. Mass), where a jury found that UnumProvident violated the False Claims Act by causing the submission of false claims for Social Security disability benefits. Mr. Young also represented U.S. trademark holders suing to prevent the illegal importation of products bearing their marks in federal court and administrative actions.

Currently, Mr. Young is litigating the following notable matters:

- Automotive Parts Antitrust Litigation: In In re Automotive Parts Antitrust Litigation (E.D. Mich.), Cohen Milstein represents direct purchasers of wire harnesses, bearings and other automotive parts, who were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry for more than a decade. The litigation follows upon a U.S. Department of Justice price-fixing case against auto parts manufacturers.
- Domestic Drywall Antitrust Litigation: Cohen Milstein is co-lead counsel in antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices and restrain price competition. To date, settlements for $44.5 million have been reached with two of the defendants. Mr. Young has been a core member of the team, involved in all aspects of the litigation. Defendants' motions for summary judgment were recently denied for all but one defendant, and the case is ongoing.
- Google Wiretap Antitrust Litigation: Cohen Milstein is co-lead counsel in a nationwide class action lawsuit alleging Google violated the Wiretap Act when its StreetView vehicles collected data from unencrypted Wi-Fi networks, including the home networks of individuals. The litigation has survived a motion to dismiss, which Google unsuccessfully appealed on an interlocutory basis in the Ninth Circuit. Currently, the firm is in the midst of jurisdictional discovery. The case is ongoing.

His successes include:

- Community Health Care System Litigation: Cohen Milstein was co-counsel representing an emergency room doctor and nurses in a whistleblower lawsuit under the False Claims Act alleging Community

Health Care System defrauded the federal government in connection with health care bills. The case was resolved for $94 million.

- Hy-Ko Products Antitrust Litigation: Cohen Milstein represented Hy-Ko Products Co., a manufacturer of replacement keys and key replacement machines, in an antitrust litigation alleging that its competitors, the manufacturer of replacement keys and the manufacturer of key replacement machines, had acted to restrain competition and to monopolize the market. The litigation was resolved to the client's satisfaction.

Mr. Young attended Bridgewater College, where he graduated with a B.A. in Physics, and earned his J.D. from Harvard Law School, where he served as an Executive Editor for the Harvard Civil Rights-Civil Liberties Law Review. While still in law school, he represented clients in disability and discrimination cases as a member of Harvard's clinical programs, worked as a research assistant for Professor Christine Jolls and volunteered as a summer legal intern at the Whitman-Walker Clinic, a community-based center providing a range of health care services in Washington, D.C.

Mr. Young is a member of the ABA Section of Antitrust Law. He has represented pro bono clients in discrimination actions before the D.C. Circuit and D.C. District courts, including successfully arguing for reversal of the district court's dismissal of his client's case in Miller v. Hersman, 594 F.3d 8 (D.C. Cir. 2010).

**Laura Alexander**

Laura Alexander is a Partner in the Antitrust practice at Cohen Milstein. Ms. Alexander joined the firm in 2012, bringing with her extensive experience in complex antitrust litigation, class actions and appeals. Prior to joining Cohen Milstein, Ms. Alexander also was a member of the trial team that successfully represented Charter Communications in what was, at the time, the largest litigated bankruptcy in U.S. history and successfully represented several clients before the United States Supreme Court.

Currently, Ms. Alexander is litigating the following notable matters:

- *Ideker Farms, et al. v. the United States of America:* Cohen Milstein represents Ideker Farms and another 350 plaintiffs located in six states along the Missouri River in a mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers, violating the takings clause of the Fifth Amendment. Ms. Alexander has been involved in all aspects of the litigation. The case is set to go to trial in 2017.
- Sutter Health Antitrust Litigation: Cohen Milstein is co-lead in a monopolization case alleging Sutter Health, a large hospital chain in Northern California, has used anticompetitive contract terms and contracting practices to drive out competition and raise prices to insurers, self-insured employers and individual consumers to supracompetitive levels. Ms. Alexander has been involved in all aspects of the litigation.
- *Big Oak Farms, Inc. v. the United States of America:* Cohen Milstein represents a group of farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land, without providing just compensation. Ms. Alexander has been involved in all aspects of the litigation.

Ms. Alexander's past successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants—Bayer, BASF, Huntsman, and Lyondell—settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion. Ms. Alexander was a member of the trial team and had significant brief writing and witness preparation responsibilities. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment. Dow has petitioned the United States Supreme Court for review, and that petition is currently pending.

Ms. Alexander attended Reed College, earning a B.A. in Mathematics, and earned her J.D. *magna cum laude* from Georgetown University Law Center. Following law school, she served as a law clerk to the Honorable Judge M. Margaret McKeown on the United States Court of Appeals for the Ninth Circuit. She has authored or co-authored scholarly articles, including Prominent Market Definition Issues in Pharmaceutical Antitrust Cases, which recently appeared in *Antitrust*, an American Bar Association publication.

**Emmy Levens**

Emmy L. Levens, a Partner in the Firm's Washington, D.C. office, is a member of the Antitrust Practice Group. With nearly a decade of experience, Ms. Levens has particular expertise in complex antitrust litigation, class actions, and appellate litigation. Ms. Levens plays a central role in helping the antitrust group evaluate potential cases and chairs the Firm's Summer Associate Committee.

Currently, Ms. Levens is litigating the following notable matters:

- Flint Water Crisis: Ms. Levens represents a group of residents and businesses in Flint, Michigan, in a suit for damages sustained as a result of their exposure to toxic levels of lead and other bacteria. This important case is ongoing in the Eastern District of Michigan.
- Resistors Antitrust Litigation: Cohen Milstein serves as interim co-lead counsel in a proposed class action accusing the world's largest manufacturers of resistors of fixing prices. As a critical member of the team of lawyers representing the proposed class of direct purchasers, Ms. Levens has been involved in every aspect of the case from investigation to prosecution of the class's case which is currently ongoing in the Northern District of California.
- Truck Transmissions Antitrust Litigation: Cohen Milstein serves as co-lead counsel in a putative class action alleging Eaton – the largest manufacturer of Class 8 Transmissions in the United States – conspired with manufacturers of Class 8 Trucks to exclude a rival transmission manufacturer from the market. Ms. Levens has played an important role on the case from the beginning and has recently returned to the case to assist with the appeal.
- Northeast Dairy: In Allen vs. Dairy Farmers of America (D. Vt.), Cohen Milstein serves as lead counsel for one of two subclasses of dairy farmers challenging anticompetitive conduct in the Northeast which resulted in lower prices paid to farmers. Ms. Levens has served as one of the principle attorneys litigating this matter since its inception. To date, the case has recovered a historic settlement with former defendant Dean Foods Company and another settlement for $50 million in addition to industry-changing equitable relief has recently been preliminarily approved by the Court.

Some of her past successes include:

- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein served as co-lead counsel for plaintiffs alleging that the two largest manufacturers of IVIG and Albumin – life-saving therapies derived from blood plasma – conspired to reduce the supply, and increase the prices, of these therapies. Ms. Levens played an active role in the litigation, helping to obtain settlements totaling $128 million for hospitals and other direct purchasers.
- Bulk Bleach Litigation: Ms. Levens served as one of the key attorneys at Cohen Milstein representing a class of municipalities and other direct purchasers of bulk bleach in a case alleging that the two dominant manufacturers of bulk bleach in the Carolina's engaged in an illegal market allocation agreement. After successfully defeating multiple motions to dismiss, class counsel obtained a settlement that satisfied nearly all of the class's damages. In approving the settlement, Judge Gergel complimented counsel, stating that the, "whole case has been, I think, very professionally handled, skillfully handled."
- Asylum Appeal: Ms. Levens agreed to represent pro bono a Nepalese woman after her initial application for asylum was denied. The woman had previously advocated for democratic reforms in Nepal but was forced to leave her home country to escape Communist militias. Ms. Levens appealed the matter through two rounds of briefing to the Board of Immigration Appeals and up to the Fourth Circuit Court of Appeals. After successfully obtaining a new asylum hearing for her client, Ms. Levens negotiated an agreement that allowed her client to remain safely in the United States.

Ms. Levens was also a member of the Apple price-fixing litigation team recognized as "Legal Lions" by Law360. In addition to her work at the Firm, Ms. Levens has served as an adjunct Professor at Georgetown School of Law and is a Board member and Secretary of Global Playground, a nonprofit that builds schools in the developing world. She recently co-authored an article entitled, "Heightened Ascertainability Requirement Disregards Rule 23's Plain Language," which appeared in the Spring, 2016 issue of Antitrust magazine.

Prior to joining the firm, Ms. Levens worked as a staff law clerk at the U.S. Court of Appeals for the Seventh Circuit.

Ms. Levens attended the University of Kansas, graduating with honors, and earned her J.D. at UCLA Law School, graduating Order of the Coif. While at law school, Ms. Levens served as the Managing Editor for the UCLA Journal of Environmental Law and Policy, Director of the Downtown Legal Housing Clinic, and President of Moot Court.

**Laura H. Posner**

Laura H. Posner is a Partner at Cohen Milstein and a member of the firm's Securities Litigation & Investor Protection Practice Group.

Prior to joining the firm, Ms. Posner was appointed by the New Jersey Attorney General to serve as the Bureau Chief for the New Jersey Bureau of Securities – the top Securities Regulator for the State of New Jersey. In that capacity, Ms. Posner was responsible for administrating and enforcing the New Jersey Uniform Securities Law and regulations thereunder, as well as managing and overseeing the employees who staff the Bureau of Securities. Cases prosecuted under Ms. Posner's direction as Bureau Chief resulted in hundreds of millions of dollars in recoveries for New Jersey residents, as well as more than 20 criminal convictions. As Bureau Chief, Ms. Posner collaborated extensively with the Securities and Exchange Commission, the Department of Justice,

and other state Attorneys General and securities regulators.

Previous to her appointment as Bureau Chief, Ms. Posner prosecuted securities fraud class actions and derivative actions on behalf of public pension funds, institutional investors, and unions nationwide, successfully recovering billions on behalf of defrauded investors, a role that she will continue at Cohen Milstein.  Her notable successes include:

- *In re Schering-Plough Corp./ENHANCE Securities Litigation and In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*: Obtained $688 million for investors on the eve of trial, the third largest recovery ever achieved in the Third Circuit and District of New Jersey, the second largest securities fraud settlement ever against a pharmaceutical company and among the top 25 securities fraud settlements of all time.
- *In re The Mills Corporation Securities Litigation*: Obtained $202.75 million for investors, the largest recovery ever achieved in a securities class action in Virginia, and the second largest recovery ever in the Fourth Circuit.
- *In re WellCare Health Plans, Inc. Securities Litigation*: Obtained $200 million for investors, the largest recovery ever achieved in a securities class action in Florida, and the second largest recovery in the Eleventh Circuit.
-

Ms. Posner is the former Chairwoman of the North American Securities Administrators Association (NASAA) Enforcement Section Committee, and previously served on NASAA's Multi-Jurisdictional Action Committee, Technology Committee and State Legislation Committee.  She also has served as a member of multiple committees of the Association of the Bar of the City of New York, including currently serving as a member of the Securities Litigation Committee, and previously serving as a member of the Securities Regulation and Consumer Affairs Committees.

Ms. Posner has regularly been named by *Super Lawyers* as a Rising Star and a Top Woman Attorney.  She regularly speaks at conferences throughout the country, including for events sponsored by PIABA, FINRA, SIFMA, NASAA, SEC, the New York, New Jersey and Philadelphia Bar Associations and the ABA.  Ms. Posner has been quoted in *The New York Times*, *The Wall Street Journal*, the *Star-Ledger*, NewJersey.com, *Asbury Park Press*, the *New Jersey Herald*, and *The Record*, and interviews with her appear on various cable news channels and in various publications.

Ms. Posner graduated with a B.A. in Political Science, *magna cum laude*, from the University of California, Los Angeles in 2001. She received her law degree at Harvard Law School in 2004, where she served on the Executive Editorial Committee for the Harvard *Women's Law Journal*.

**Attorney Profiles – Of Counsel & Associates**

**Elizabeth Aniskevich**

Elizabeth Aniskevich is an Associate at Cohen Milstein and a member of the firm's Securities Fraud & Investor Protection practice group. Prior to joining the firm in 2012, Ms. Aniskevich served as the Pro Se Clerk at the United States District Court for the Eastern District of Virginia in Alexandria, where she managed the pro se prisoner dockets of the seven district court judges.

Ms. Aniskevich has successfully litigated the following notable matters:

- IntraLinks: $14 million settlement. Cohen Milstein was lead counsel in the class action securities fraud litigation, which asserted violations of both the Securities Act and the Exchange Act. Ms. Aniskevich was involved in the class certification briefing and played a critical role in fact discovery, which included preparing for and taking more than 20 depositions and propounding extensive written discovery.
- Ebix Derivative Litigation: Lead counsel in a derivative lawsuit alleging questionable tax schemes and breach of fiduciary duty on the part of Ebix's board of directors in misrepresenting the company's financial results, organic growth, and internal controls over financial reporting. Ms. Aniskevich's role in the Ebix litigation included drafting the operative complaint. The litigation, which recently settled, resulted in the adoption of corporate governance measures including the appointment of a Lead Independent Director, increasing the number of directors on the corporate governance committee, and creating a director of audit and director of internal tax positions to report directly to the Audit Committee.
- ITT Educational Services Securities Litigation: $16.96 million settlement. Cohen Milstein was lead counsel in a class action lawsuit against ITT Educational Services and two officers for alleged material misrepresentations and omissions concerning ITT's liabilities under certain risk-sharing agreements it had entered into with third-party student lenders of ITT student loans. Ms. Aniskevich wrote the complaint and opposed the motion to dismiss.

She is currently litigating:

- Intuitive Surgical Inc. Derivative Litigation: A derivative lawsuit against Intuitive Surgical's directors and officers, asserting insider trading by officers and directors of Intuitive in connection with the cover-up of safety defects in the company's flagship product, the da Vinci robotic surgery system. Ms. Aniskevich has briefed numerous procedural motions in what has been a long, hard-fought legal battle. She is currently involved in fact discovery.

Ms. Aniskevich earned her B.A. at the University of Florida, graduating valedictorian of the College of Liberal Arts and Sciences, and received her J.D from American University's Washington College of Law, graduating *magna cum laude*, Order of the Coif. She interned at Cohen Milstein while in law school and was a Senior Staff Member of the *American University Law Review* and served as a Research Assistant to her criminal law professor, Professor Ira P. Robbins. She was the recipient of the Clair A. Cripe award for outstanding performance in correctional law.

**Christopher Bateman**

Christopher Bateman is an Associate at Cohen Milstein, and a member of the firm's Antitrust practice group. In this role, Mr. Bateman represents a broad range of individuals and businesses in civil litigation, with a focus on multi-district class actions and antitrust litigation.

Before joining Cohen Milstein, Mr. Bateman was a law clerk for the Honorable Naomi Reice Buchwald, U.S. District Court for the Southern District of New York. Before that, he was a litigation attorney at a distinguished global law firm, where he worked with clients in the financial services and energy sectors.

Mr. Bateman received his B.A., cum laude, High Honors, from Dartmouth College, where he was a Rufus Choate Scholar. He received his J.D., cum laude, from Harvard Law School, where he received Dean's Scholar awards in Civil Procedure and in Federal Courts and the Federal System. While in law school, Mr. Bateman was an Article Selection Editor for the Harvard Civil Rights-Civil Liberties Law Review. He is the co-author of "Toward Greener FERC Regulation of the Power Industry," 38 Harvard Environmental Law Review 275 (2014).

While attending law school, Mr. Bateman was a legal intern at the Environmental Defense Fund.

Before law school, Mr. Bateman was an editorial associate at Vanity Fair for several years, where he wrote about politics, civil rights, culture, and environmental issues, and edited feature articles.

**Luke Bierman**

Luke Bierman is Of Counsel to Cohen Milstein, and adviser to the Firm's Ethics and Fiduciary Counseling and Securities Litigation & Investor Protection practice groups. Mr. Bierman's role is to counsel pension funds and public entities on fiduciary, ethics, governance and compliance issues. He joined Cohen Milstein in 2011, bringing with him a singular perspective and substantive experience as in-house counsel to one of the leading pension funds in the country, appointments to state task forces to review the state code of judicial ethics and professionalism, and a scholarly and academic background as the Dean and Professor of Law at a rising law school that President Bill Clinton has called "interesting and innovative." His experience provides him with a unique context for assisting public pension funds at critical and challenging times for those funds, and to offer collaborative and creative solutions.

Mr. Bierman served from 2007 to 2010 as General Counsel for the Office of the New York State Comptroller, the sole trustee of the state's then $150 billion pension fund and the state's chief fiscal officer for the state of New York's then $130 billion budget. This was during the period when the Office of the Comptroller faced unprecedented challenges including an international placement agent scandal and the Great Financial Crisis, and Mr. Bierman led the review of policies and procedures in the Office. In this role, Mr. Bierman managed a legal staff that included 55 attorneys, and was responsible for legal advice and counsel on all matters relating to the comptroller's constitutional and statutory responsibilities, including fiduciary, governance, ethics, litigation, investment, pension benefits, state and municipal finance and legislative matters. He also managed the 35 outside law firms that represented the Comptroller in litigation and transactional matters.

Mr. Bierman is a noted expert on legal ethics and professionalism, who has spoken and written widely about state courts and judicial conduct. He currently serves as a member of the North Carolina Commission on Administration of Law and Justice and on the North Carolina Chief Justice's Commission on Professionalism.

He was a member of the Massachusetts Supreme Judicial Court's Task Force on the Code of Judicial Conduct, which was assigned to review and suggest updates to the Court. He served on the ABA Presidential Task Force on Financing Legal Education and the ABA Presidential Task Force on Legal Access JobCorps. While working at the American Bar Association, Mr. Bierman initiated the project that resulted in revisions to the Model Code of Judicial Conduct (2007), which many states have since adopted.

Mr. Bierman is the Dean and Professor of Law at Elon University School of Law in Greensboro, North Carolina, an innovative law school that blends the most important traditional elements of legal education with highly experiential learning in the nation's first 2½ year JD program. Previously, Mr. Bierman was the Associate Dean for Experiential Education and Distinguished Professor of Practice of Law at Northeastern University School of Law in Boston, where he was responsible for Northeastern's Cooperative Legal Education Program.

Earlier in his career, Mr. Bierman served as a Fellow in Government Law and Policy at Albany Law School. He also has served as Director of the Institute for Emerging Issues at North Carolina State University, where he held the rank of Associate Professor of Political Science; as Founding Director of the Justice Center and Special Assistant to the President of the American Bar Association; as Visiting Specialist in Constitutional Law with the rank of Associate Professor at The Richard Stockton College of New Jersey; and as law clerk to the Presiding Justice and an Associate Justice as well as Chief Attorney of the New York Supreme Court, Appellate Division, Third Department. Mr. Bierman also has taught at Northwestern University School of Law, the University at Albany and Trinity College in Hartford.

Mr. Bierman is widely published for his legal analysis and is a frequent lecturer and commentator about corporate governance reform, fiduciary responsibility and ethics and justice reform. He was a member of the board of directors of the Council of Institutional Investors, where he co-chaired the policies committee.

Mr. Bierman earned his Ph.D. and M.A. in Political Science from the University at Albany; his J.D. from the Marshall Wythe School of Law of the College of William and Mary, where he was a member of the Law Review; and his B.A. in American Political History magna cum laude with High Honors from Colgate University, where he was elected to Phi Beta Kappa. He is an elected member of the American Law Institute.

**Mary J. Bortscheller**

Mary J. Bortscheller is an Associate at Cohen Milstein, and a member of the Firm's Employee Benefits Practice Group. In that role, Ms. Bortscheller represents the interests of employees, retirees, and plan participants and beneficiaries in ERISA cases in the district court and on appeal. Ms. Bortscheller is a strong, hands-on, strategic litigator, thoroughly versed in the complexities of ERISA law.

At present, Ms. Bortscheller is engaged in litigating a number of so-called "church plan" lawsuits. These cutting-edge legal cases assert that many non-profit health care systems in the United States wrongfully claim their benefit plans are exempt from ERISA regulation under the church plan exemption. Currently, Cohen Milstein serves as lead or co-lead counsel in 12 separate cases in various jurisdictions throughout the U.S.

Ms. Bortscheller is currently litigating the following matters:

- Trinity Health Corporation Church Plan Litigation: Cohen Milstein is co-lead counsel in Lann v. Trinity Health Corp., a lawsuit alleging that Trinity is violating numerous provisions of ERISA while wrongfully

claiming that its defined benefit pension plan is exempt from ERISA because it is a church plan. Ms. Bortscheller is Lead Associate in the case, engaged in all aspects of the litigation including motions practice, discovery, the mediation process and finalizing the settlement. The case is ongoing.

- Catholic Health East Church Plan Litigation: Cohen Milstein is co-counsel in Chavies v. Catholic Health East, alleging that the health care system wrongfully claims its defined benefit pension plan is exempt from ERISA as a church plan.  As the Lead Associate on this case, Ms. Bortscheller works on all aspects of the lawsuit, including fact and expert discovery, the mediation process and in finalizing the settlement. The case is ongoing.
- U.S. Bancorp Pension Plan Litigation: Cohen Milstein is co-lead counsel to an interim class of pension plan participants alleging that the plan's managers engaged in a risky, imprudent investment strategy by investing almost 100% of its assets in stocks, thus causing the plan to lose more than $1 billion during the collapse of the equities market in 2008. As Lead Associate on the case, Ms. Bortscheller is involved in all aspects of the litigation, including the initial case investigation and drafting of the complaint, motions practice, discovery and the appellate process.  The case is ongoing.

In addition to her ERISA case work, Ms. Bortscheller represents, pro bono, unaccompanied minor clients in immigration proceedings. Prior to joining Cohen Milstein in 2013, Ms. Bortscheller practiced at a boutique commercial litigation firm based in Chicago, where she represented plaintiffs in antitrust and qui tam matters, as well as defendants in general commercial litigation.

Ms. Bortscheller graduated from Gustavus Adolphus College with a B.A., cum laude, in Political Science, and received her J.D., cum laude, from American University, Washington College of Law.  During law school, she served as Features Editor and Senior Editor of Sustainable Development Law & Policy and was a staff member of the American University International Law Review.  Ms. Bortscheller served as a judicial intern with the United States District Court for the District of Minnesota.

Before attending law school, Ms. Bortscheller served in the United States Peace Corps teaching English as a foreign language in Sichuan Province, China. Following law school, she was a volunteer for the Chicago Legal Clinic, Inc.'s Foreclosure Defense Project.

**Brian E. Bowcut**

Brian E. Bowcut is Of Counsel at Cohen Milstein, and a member of the firm's Public Client Practice Group.  Mr. Bowcut represents state Attorneys General and other public-sector clients as outside counsel in investigations and lawsuits involving fraudulent and deceptive trade practices. Mr. Bowcut, who joined the firm in 2015, brings with him deep experience representing the federal government in complex litigation and in enforcement investigations. In his role as a senior lawyer in the Public Client Practice, he brings this experience to bear in false claims and consumer fraud enforcement at the state and local levels.

Mr. Bowcut formerly was a Trial Attorney in the Civil Division of the U.S. Department of Justice for nine years. Most recently, as a member of the Fraud Section, he investigated and litigated fraud across an array of government programs, from Medicare fraud by nursing facilities, hospices and medical device makers to schemes involving federal mortgage, foreign aid, and TARP funds.  Before that, as a member of the Environmental Torts Section, he defended the United States as lead counsel in large-scale toxic tort litigation. Prior to joining DOJ, Mr. Bowcut was at a preeminent national law firm, where he specialized in pharmaceutical product liability and commercial litigation.

Currently, Mr. Bowcut is representing public clients in the following high-profile matters:

- Prescription Painkillers: Represents the City of Chicago and other clients in litigation and investigations concerning deceptive marketing of highly addictive prescription opioid. Overprescribing of these drugs for chronic pain has fueled a dramatic rise in addiction, overdose, and death in communities across the nation. Mr. Bowcut manages and oversees the day-to-day litigation and investigations of these matters, which are ongoing.
- Nursing Homes: Represents the New Mexico Attorney General in Medicaid and consumer fraud litigation over inadequate staffing and deficient care at a chain of nursing homes. Mr. Bowcut briefed and successfully argued the recent motion to dismiss. The case is ongoing.

While at DOJ, Mr. Bowcut successfully handled various matters, including:

- Investigating reckless origination of FHA mortgage loans by multiple large lenders, and obtaining $200 million settlement from U.S. Bank.
- Investigating fraudulent diversion of TARP funds by Arkansas bank official and negotiating settlement with his estate.
- Serving as lead counsel for the federal government in long-running herbicide drift litigation by more than 100 farms in southern Idaho and securing dismissal of all claims against the government.
- Representing the interests of the EPA and other United States agencies in consolidated litigation over thousands of first responders' toxic exposures at the World Trade Center disaster site.

Mr. Bowcut attended Utah State University, graduating summa cum laude with a B.A. in Journalism and Political Science. He earned his J.D. from Duke Law School, graduating cum laude and Order of the Coif, and also earned an M.A. in Public Policy from Duke. During law school, Mr. Bowcut was an Articles Editor for the Duke Law Journal. After law school, he clerked for the Honorable Stanley S. Brotman of the United States District Court for the District of New Jersey.

**Molly J. Bowen**

Molly J. Bowen is an Associate at Cohen Milstein and a member of the Public Client practice group. Ms. Bowen's practice focuses on the representation of state Attorneys General and other public-sector clients in investigations and lawsuits involving health care fraud as well as other fraudulent and deceptive trade practices.

Prior to joining Cohen Milstein, Ms. Bowen practiced at a leading firm in Miami, litigating False Claims Act claims, antitrust and securities class actions, and legal malpractice claims. She also was a law clerk to the Honorable Karen Nelson Moore of the United States Court of Appeals for the Sixth Circuit.

Ms. Bowen graduated *magna cum laude* from Macalester College with a B.A. in Geography in 2007. She earned her J.D., *summa cum laude*, from Washington University School of Law in 2013, where she was a member of the Appellate Clinic and served as the Articles Editor for the *Washington University Law Review*. Additionally, during law school, Ms. Bowen externed at the Service Employees International Union (SEIU) legal department and at the American Civil Liberties Union of Eastern Missouri.

**Jamie Bowers**

Jamie Bowers is an Associate at Cohen Milstein and a member of the Firm's Employee Benefits Practice Group. In her role, Ms. Bowers represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases across the country.

Prior to joining Cohen Milstein, Ms. Bowers served as a judicial law clerk for the Honorable Gary R. Jones at the United States District Court for the Northern District of Florida, Gainesville Division. In this role she dealt with a variety of issues arising under federal law, including initial criminal appearances, plea changes, writs of habeas corpus, prisoner litigation, employment litigation, personal injury litigation, civil rights litigation, mass torts litigation, social security disability, and various matters under the Federal Rules of Civil and Criminal Procedure.

Ms. Bowers attended Duke University, graduating with a B.A. in Environmental Science in 2011. She earned her J.D. from Georgetown University Law Center in 2014. During law school, Ms. Bowers served on the Executive Board as the Administrative Editor of the *Georgetown Environmental Law Review*.

Ms. Bowers is the author of *Environmental Justice Implications of the Current Hydraulic Fracturing Regulatory Regime*, 32 Mich. Env. L. Jour. 93 (2013).

**Robert A. Braun**

Robert A. Braun is an Associate in the Antitrust practice group, having joined Cohen Milstein in 2014. In this role, he represents businesses and individuals in federal civil actions with a focus on class actions and antitrust litigation. Mr. Braun also has experience in international claims litigation, including representing the victims of state-sponsored terrorism.

Currently, Mr. Braun is litigating the following notable matters:

- *Anadarko Basin Oil and Gas Lease Antitrust Litigation*: Counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies conspired to rig bids for leases of land held by private landowners in parts of Oklahoma, Kansas, Texas and Colorado. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy.
- *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation* (E.D. Tenn.): Cohen Milstein is co-lead in a class action lawsuit alleging price-fixing in the cast iron soil pipe and fittings market and challenging the defendants' efforts to maintain a duopoly and restrain competition from foreign competitors. The plaintiffs have defeated the defendants' motions to dismiss.
- *In re Ductile Iron Pipe Fittings Antitrust Litigation* (D.N.J.): Cohen Milstein is co-lead in a class action litigation alleging price-fixing of ductile iron pipe fittings and monopolization of the American-made ductile iron pipe fittings market. The court denied defendants' motions to dismiss and the plaintiffs have settled with two of the defendants.
- Iran Beirut Bombing Litigation: Cohen Milstein is representing the victims and family members of victims in the 1983 Beirut Marine Barracks bombing, the deadliest act of terrorism against Americans prior to September 11, 2001.
- Iraq Hostage Spouses Litigation: Cohen Milstein is representing the spouses of 30 Americans held hostage by former Iraq President Saddam Hussein during the Gulf War in 1990. After toppling Saddam

Hussein's regime, the United States settled the hostage spouses' legal claims with Iraq, but has refused to compensate the hostage spouses out of the resulting settlement fund. Cohen Milstein alleges that these actions by the United States are a taking without just compensation in violation of the Fifth Amendment of the U.S. Constitution.

- Inmate Calling Services Provider Litigation: Cohen Milstein is on the executive committee in several nationwide class action lawsuits alleging that the providers of inmate calling services have charged inmates and their families unjust and unreasonable rates in violation of the Federal Communications Act and various state laws.

Prior to joining Cohen Milstein, Mr. Braun served as a law clerk for the Honorable Carolyn Dineen King of the U.S. Court of Appeals for the Fifth Circuit from 2013-2014, and for the Honorable Lee H. Rosenthal of the U.S. District Court for the Southern District of Texas. He was also an Arthur Liman Fellow at Southeast Louisiana Legal Services, where he worked on public interest housing litigation.

Mr. Braun earned his J.D. at Yale Law School and attended Princeton University, graduating *summa cum laude* with a B.A. in Sociology. During law school, Mr. Braun was an editor of the *Yale Journal of International Law* and a member of the mock trial team.

Admitted only in New York and Louisiana. Practice limited to matters and proceedings before federal courts and agencies.

**Stephen Buckingham**

Stephen Buckingham is Of Counsel at Cohen Milstein and a member of the firm's Public Client practice group. Mr. Buckingham's practice focuses on the representation of state Attorneys General and other public-sector clients in investigations and lawsuits involving fraudulent and deceptive trade practices.

Prior to joining Cohen Milstein, Mr. Buckingham had a distinguished career at the U.S. Department of Justice, where he was a Trial Attorney and Special Counsel for Complex Litigation for the Department's Civil Division, Federal Programs Branch. In these roles, Mr. Buckingham represented the United States as lead counsel in dozens of civil matters in federal district court in cases involving constitutional and statutory challenges to federal statutes and regulations. He also provided advice and assistance to Executive Branch agencies on a variety of federal programs, including the creation and imposition of U.S. economic and trade sanctions. Mr. Buckingham has represented cabinet officials in subpoena enforcement matters, has handled all aspects of civil discovery, and has defended the Executive Office of the President and a variety of Executive agencies in lawsuits involving access to records related to the CIA's rendition program and the disposition of detainees held at Guantanamo Bay.

Mr. Buckingham also worked with the U.S. Department of Justice, Criminal Division, as counsel in the Office of the Deputy Assistant Attorney General and Counselor for International Affairs.

He is a Graduate of the U.S. Department of Justice's Leadership Excellence and Achievement Program, a recipient of four U.S. Department of Justice Civil Division special commendations, and recipient of the Treasury Department's 2014 Office of Foreign Assets Control (OFAC) Director's Award.

Following law school, Mr. Buckingham served as a Law Clerk for the Honorable William M. Nickerson, U.S.

District Court for the District of Maryland Baltimore, MD.

While attending law school, Mr. Buckingham served as a Judicial Extern for the Honorable Dolores K. Sloviter, U.S. Court of Appeals for the Third Circuit.

Mr. Buckingham received his B.A. from Georgetown University, and he earned his J.D. cum laude, from Temple University, James E. Beasley School of Law, where he was also the Managing Editor of the Temple Law Review.

Prior to law school, Mr. Buckingham worked with the Philadelphia Volunteers for the Indigent Program in Philadelphia, PA, where he directed legal outreach services for indigent individuals, coordinated a low income tax clinic, and created a program to amend the immigration status of unaccompanied Sudanese refugee minors.

## Jay Chaudhuri

Jay Chaudhuri is Of Counsel at Cohen Milstein and joined the firm in 2016. He is based in Cohen Milstein's Raleigh, NC office.

Mr. Chaudhuri, who currently serves in the North Carolina State Senate representing parts of Raleigh, Cary and Morrisville, joins former North Carolina Court of Appeals Judge Martha Geer, who launched Cohen Milstein's Raleigh office in early 2016. Together, Mr. Chaudhuri and Ms. Geer will partner with law firms across the state to protect the rights of North Carolina's citizens and small businesses.

Mr. Chaudhuri has spent his career fighting and working on behalf of the people of North Carolina. As one of the newest state senators, he serves on the Commerce, Pensions & Retirements and Aging, Judiciary II, State and Local Government, and Appropriations on General Government and Information Technology committees. During his first legislative session, Mr. Chaudhuri co-sponsored a bill to repeal House Bill 2, a bill critics have referred to as the most anti-LGBT legislation in the country.

Prior to his appointment to the State Senate, Mr. Chaudhuri served as General Counsel & Senior Policy Advisor to State Treasurer Janet Cowell, where he helped recover more than $100 million for the pension and unclaimed property funds, including settlements from an investment manager and custodian bank. He also played a key role in uncovering alleged wrongdoings that involved eight investment managers, leading to a reimbursement of $15 million back into the pension fund and tougher, cutting edge ethical standards. Mr. Chaudhuri also served as Chair of the Council of Institutional Investors, an association of pension funds with combined assets of more than $3 trillion, which serves as the leading voice for effective corporate governance and strong shareholder rights.

Before joining the Department of State Treasurer, Mr. Chaudhuri served as Special Counsel to Attorney General Roy Cooper, where he helped lead an investigation by all 50 Attorneys General that resulted in a landmark agreement with two leading networking sites to better protect children from Internet predators. For his efforts, the National Association of Attorneys General honored him with the Marvin Award, given to an individual who furthers that association's goals.

The North Carolina Bar Association has awarded Mr. Chaudhuri its Citizen Lawyer Award, given to lawyers who provide exemplary service to their communities. *Lawyers Weekly* has also honored him with its Leaders in the Law award. In addition, he has been awarded the William C. Friday Fellowship, Henry Toll Fellowship, and

American Marshall Memorial Fellowship.

Mr. Chaudhuri graduated from Davidson College, Columbia University School of International and Public Affairs, and North Carolina Central University School of Law (*cum laude*).

**Robert W. Cobbs**

Robert W. Cobbs is an Associate at Cohen Milstein, and a member of the Antitrust practice group.

Currently, Mr. Cobbs is litigating the following notable matters:

- Anadarko Basin Oil and Gas Lease Antitrust Litigation: Co-lead counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies conspired to rig bids for leases of land held by private landowners in parts of Oklahoma and Kansas. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy. Plaintiffs allege that Defendants illegally conspired to stabilize and depress the price of royalty and bonus payments paid to landowners in the Anadarko Basin oil and gas province — a massive geological formation holding natural gas and oil deposits that includes large parts of Oklahoma and Kansas. Pursuant to this conspiracy, Plaintiffs allege that Defendants communicated about and agreed on prices, allocated particular geographic areas between themselves, and rigged bids for leases of land, lowering acquisition prices across the region and thereby harming the proposed class of landowners.
- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company — the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays.

Prior to joining Cohen Milstein, Mr. Cobbs clerked for the Hon. Pierre N. Leval, United States Court of Appeals for the Second Circuit; and for the Hon. J. Rodney Gilstrap, United States District Court for the Eastern District of Texas.

Mr. Cobbs graduated from Amherst College with a B.A. in English and Russian, *magna cum laude* with distinction, and received his J.D. from Yale Law School. During law school, he served as a Notes Editor of the *Yale Law Journal* and as a Submissions Editor of the *Yale Journal on Regulation*.

**Shaylyn Cochran**

Shaylyn Cochran is an Associate at Cohen Milstein and a member of the firm's Civil Rights & Employment Practice Group. Prior to joining Cohen Milstein, Ms. Cochran was a Relman Civil Rights Fellow, litigating federal fair housing and employment discrimination matters.

Ms. Cochran represents female employees alleging sexual discrimination against one of the nation's largest

jewelry chains in Jock, et al. v. Sterling Jewelers Inc., a nationwide Title VII gender discrimination and Equal Pay Act case currently being litigated in arbitration.  In Jock, the arbitrator recently certified a class estimated to include 44,000 current and former female retail sales associates, working at Sterling stores throughout the country, who have pay and promotions discrimination claims against the company. Ms. Cochran also is involved in a series of cases in Chicago alleging a pattern of race discrimination against African-American laborers, in which temporary staffing agencies and the client companies that they service have engaged in a practice of excluding African Americans from temporary laborer positions throughout the metropolitan area.

In addition to litigating several employment discrimination cases, Ms. Cochran also is part of the team representing the Equal Rights Center in Equal Rights Center v. Equity Residential, a federal fair housing lawsuit challenging Equity Residential's nationwide pattern or practice of designing and constructing multi-family housing complexes in violation of the accessibility requirements of the federal Fair Housing Act.  The action challenges FHA violations at 300 Equity Residential properties and seeks relief to ensure that Equity Residential's properties are accessible to people with disabilities and to enforce the standards of the FHA.

Ms. Cochran earned her B.S. and B.A. from Ohio University, graduating summa cum laude and Phi Beta Kappa, and her J.D. from Harvard Law School, where she received the Dean's Award for Community Leadership. While a law student, Ms. Cochran served as a litigation intern at the NAACP Legal Defense and Education Fund, and the Disability Rights Section at the U.S. Department of Justice, Civil Rights Division. For two years during law school, Ms. Cochran also was a student attorney at the Harvard Legal Aid Bureau, where she represented indigent clients on family law matters. She also served as president of the Harvard Black Law Students Association.

## Brian Corman

Brian Corman is an Associate at Cohen Milstein and a member of the Civil Rights & Employment practice group. Mr. Corman's practice focuses on litigating civil rights, employment discrimination, and wage and hours cases. Prior to joining Cohen Milstein in 2015, Mr. Corman was an Associate in the Litigation group at a top-tier defendants' firm. There, he focused on Foreign Corrupt Practices Act internal investigations for Fortune 500 clients, as well as pro bono cases in federal district court and before the Supreme Court.

Currently, Mr. Corman is litigating a number of notable matters. He is involved in all aspects of litigation, including fact discovery, depositions and motions practice, on behalf of hundreds of Gentiva health care workers filing suit for unpaid overtime under the Fair Labor Standards Act. He represents Walmart workers in multiple federal district and appellate court cases alleging discriminatory pay and promotions practices in violation of Title VII of the Civil Rights Act. He also represents low-income minority renters in the Village of Mastic Beach who were evicted from their homes in violation of federal, state and local fair housing and civil rights laws.

Following law school, Mr. Corman clerked for the Honorable Harry Pregerson of the Ninth Circuit Court of Appeals. He then participated in a D.C. Bar Association Pro Bono Fellowship at the Lawyers' Committee for Civil Rights Under Law, working on education, voting rights and fair housing cases.

Mr. Corman earned his law degree from the University of California, Berkeley, School of Law, where he was an editor of the *California Law Review*, a member of the Jessup International Law Moot Court Team, co-chaired the Berkeley Law Expulsion Clinic, and externed for the Honorable William Alsup of the U.S. District Court for

the Northern District of California. Mr. Corman received his B.A., *summa cum laude*, Phi Beta Kappa, in Political Science from Columbia University School of General Studies. Mr. Corman was a professional ballet dancer for eight years, performing with the Houston Ballet and Washington Ballet, among other companies.

## Alison Deich

Alison Deich is an Associate at Cohen Milstein, and a member of the firm's Antitrust practice group. In this role, Ms. Deich represents a broad range of individuals and businesses in civil litigation, with a focus on multi-district class actions and antitrust litigation.

Prior to joining Cohen Milstein, Ms. Deich clerked for the Honorable Cornelia Pillard of the United States Court of Appeals for the D.C. Circuit. She also clerked for the Honorable Katherine Polk Failla of the U.S. District Court for the Southern District of New York, as well as the Honorable Goodwin Liu of the California Supreme Court.

Ms. Deich received her B.A. from the University of Virginia, where she graduated with highest distinction, Phi Beta Kappa, and received several honors, including the Lewis M. Hammond Award. Ms. Deich received her J.D. from Harvard Law School, where she graduated magna cum laude and won the Ames moot court competition.

Prior to law school, Ms. Deich helped draft research papers for various non-profit organizations.

## Michael Dolce

Michael Dolce is Of Counsel at Cohen Milstein, and a member of the firm's Catastrophic Injury practice group. Mr. Dolce, who joined the firm in 2015, is a highly regarded trial lawyer and political activist who has dedicated his career to seeking justice for the victims of abuse. His practice focuses specifically on the victims of sexual abuse, sex crimes and domestic violence. He is a champion of children, representing child victims as well as adult survivors of child sex abuse who bear scars and injuries into adulthood. It is an experience he understands on a personal and visceral level: Having himself been the victim of sexual abuse as a young boy at the hands of a sadistic predator, he arose from the trauma determined to be a voice for others and secure justice for them.

Mr. Dolce brings to his work the insight of a survivor who is determined to use his understanding and ability to communicate exactly what crime and injury victims go through, and what they need in their difficult and courageous healing processes. Among his noted work, in 2009, he achieved a jury verdict on behalf of a child abuse victim, totaling over $19.2 million, that was named by "Verdict Search" one of the top 100 verdicts nationwide that year.

In 2010, Mr. Dolce's six-year crusade in Florida's legislature culminated in the passage of sweeping legislation that repealed all statutes of limitation for civil and criminal prosecution of child sexual battery, overcoming a powerful and well-financed opposition. That victory was fueled by Mr. Dolce's testimony numerous times before legislative committees, which one major newspaper reported left senators "captivated" and "spellbound." His effort was supported by a grassroots organization of some 200 survivors that he led as the chair of the political committee, Protect Our Kids First, Inc., a campaign he formed to amend the state's Constitution on Election Day. His precedent-setting strategy worked to compel the Legislature to ensure that never again will a child in Florida be turned away from any civil or criminal court due to the passage of time. And no predator can ever again take comfort in the ticking of a clock after threatening a child into silence.

Mr. Dolce's work has gained him national recognition with awards from both fellow attorneys and crime victim advocates, including the National Center for Victims of Crime, the Florida Council Against Sexual Violence and the Florida Justice Association. Mr. Dolce is a sought-after speaker, having addressed conferences of many of the largest child abuse survivor organizations in the world, including the Survivors Network for those Abused by Priests. Recently, he was invited to join the Sexual Violence Focus Group of the Office of the Florida State Courts Administrator; the group will work over the next year on several sexual violence projects, including updating the Florida Sexual Violence Bench Book and developing a strategic plan for sexual violence projects. His work has been cited across the nation by law professors and judges, including the North Carolina Supreme Court.

Mr. Dolce graduated with a Bachelor of Arts, *summa cum laude*, from Lynn University and received his J.D. from Stetson University.

Currently, Mr. Dolce is litigating the following notable matters:

- *Jane Doe v. Florida Sheriffs Youth Ranches*: Mr. Dolce represents a teenaged sex abuse victim who was abused in a residential childcare facility by an adult resident of the facility. This civil suit against the facility follows a successful criminal prosecution of the abuser, asserting that the facility failed to maintain proper child safety procedures and policies.
- *Rose, Fitzsimons and Davis v. The Devereux Foundation, Inc.*: Mr. Dolce represents adult survivors in three related lawsuits, asserting child physical and sexual abuse at a licensed therapeutic group home perpetrated by several staff members.
- *Jane Doe v. Seagate Hotel and Spa*: Mr. Dolce represents an adult in this action against a resort hotel asserting that she was sexually assaulted by a massage therapist. The suit alleges that the hotel negligently hired the therapist who had been discharged just two months earlier by his prior employer for similarly sexually assaulting a guest.
- *Harris v. William Degray*: Mr. Dolce represents an adult survivor of domestic violence who suffered substantial physical and mental health injuries, including Battered Woman Syndrome.

Some of his past successes include:

- *Jane Doe vs. Tim Crowe*: Mr. Dolce represented a child sex abuse survivor in a direct action against the perpetrator, resulting in a $19.2 million compensatory damage verdict, named one of the Top 100 verdicts nationwide in 2009 by *The National Law Journal*/Verdict Search.
- *Hollins v. Watchtower Bible and Tract Society of New York, Inc.*: Mr. Dolce represented an adult survivor of child sexual abuse against his former church (Jehovah's Witnesses), resulting in a confidential settlement.
- *A.S.W. v. Happy House, Inc.*: Mr. Dolce represented a pre-school child against a day care center in a child-on-child sex abuse case, resulting in a confidential settlement.
- *Jane Doe v. James Byrne and Linda Byrne*: Mr. Dolce represented a mentally disabled child in an action against a neighbor who sexually abused her over a two-year period and against the abuser's wife, on a theory that she failed to protect the child after finding evidence of ongoing abuse. The jury awarded damages of $3.5 million, ordering both defendants to pay.

**Suzanne Dugan**

Suzanne M. Dugan is Special Counsel to Cohen Milstein and leads the firm's Ethics & Fiduciary Counseling practice, a practice she helped found within the Securities Litigation & Investor Protection practice group.

Ms. Dugan joined Cohen Milstein in 2011, following more than 20 years of service in government, first as counsel to and acting director of the New York State Ethics Commission and then as Special Counsel for Ethics for the Office of the New York State Comptroller. Her service in government and experience as an in-house counsel offer the broad and unique perspective of a regulator and the understanding of an in-house counsel.

From this unique vantage, Ms. Dugan counsels pension funds on fiduciary responsibility, ethical duties, strategic governance and compliance issues. She consults with governmental entities and other clients on design, implementation, management and assessment of comprehensive ethics programs. She also assists in conducting investigations and structuring recommendations, and provides expert legal and consulting services to law firms retained to conduct special reviews, providing an additional layer of oversight and accountability.

Ms. Dugan brings her experience gained from having served as ethics counsel to the third largest public pension fund in the country to advise and counsel pension fund trustees and senior managers on issues and challenges, providing collaborative and creative solutions for pension funds as they navigate changing economic challenges and organizational requirements.

At Cohen Milstein, Ms. Dugan has provided ethics counsel to some of the largest public pension funds, and serves as compliance counsel to another top 10 fund, among others. She has also conducted ethics and fiduciary training for the boards of trustees of some of the country's largest public pension funds. In addition, she serves as counsel to a number of large municipalities across the country, where she evaluates and investigates complaints of unethical conduct, provides objective and independent guidance and works to ensure a culture of ethical leadership.

Ms. Dugan is a frequent lecturer and panelist at conferences and forums addressing ethics and fiduciary issues in the public and nonprofit sectors, including pension funds, bringing with her an understanding of ethical issues born out of practical experience as well as scholarly pursuits. She has served as an adjunct professor, teaching a course on Government Ethics, and writes frequently on ethics, fiduciary responsibilities of pension trustees and the role of pension fund attorneys.

She serves on the Fiduciary and Plan Governance Steering Committee of the National Association of Public Pension Attorneys, a professional organization dedicated to providing legal educational opportunities and informational resources to its member attorneys. Ms. Dugan also is an active member of the Council on Government Ethics Laws, an international organization dedicated to issues involving governmental ethics, elections, campaign finance, lobby laws and freedom of information.

Ms. Dugan began her career as a judicial clerk with the Appellate Division, Third Department, of the New York State Supreme Court. She also served as an administrator at Albany Law School, as well as the pro bono Legal Director of a not-for-profit in the Albany area. She currently is a member of the Board of Directors of her local Planned Parenthood affiliate and an elected Trustee of the Clifton Park-Halfmoon Public Library.

Ms. Dugan attended Siena College, graduating *magna cum laude*, and earned her J.D. *cum laude* from Albany

Law School of Union University. In 2014, she received the distinguished Burton Award for Legal Writing. She is an elected member of the American Law Institute, where she is a member of the Consultative Group on Government Ethics, among others.

**Adam Farra**

Adam Farra is an Associate at Cohen Milstein and a litigator in the firm's Securities Fraud & Investor Protection practice group. His practice primarily involves representing investor clients who have been injured by corporate fraud perpetrated by publicly-traded companies. He also frequently represents individuals in civil rights and constitutional cases.

Representative examples of Mr. Farra's experience include the following:

- *Scinto v. Stansberry.* As lead counsel, Mr. Farra argued before a federal appeals court on behalf of a client alleging that federal prison officials violated the Eighth Amendment's prohibition on cruel and unusual punishment when they failed to provide him adequate medical care.
- *Fontanez v. O'Brien.* As lead counsel, Mr. Farra successfully argued before a federal appeals court on behalf of a client whose habeas petition was initially dismissed by the district court on jurisdictional grounds. In a unanimous, published opinion, the Fourth Circuit reversed and remanded the dismissal.
- *Richards v. Maryland.* As lead counsel, Mr. Farra argued before a Maryland appeals court on behalf of a client who challenged his criminal conviction on the grounds that the officers who arrested him violated the Fourth Amendment in a traffic stop-and-frisk case.
- *In re Ability, Inc. Securities Litigation.* Mr. Farra represents shareholders in a class action in federal court in Manhattan against Ability, Inc. and its directors and officers. The shareholders allege that the company and its officers violated federal securities fraud laws.

After law school, Mr. Farra clerked for Judge Andre M. Davis on the U.S. Court of Appeals for the Fourth Circuit and Judge Peter J. Messitte on the U.S. District Court for the District of Maryland. Prior to joining Cohen Milstein, Mr. Farra was a commercial litigator at a major law firm in Washington, D.C.

Mr. Farra also serves as an adjunct professor at the University of Maryland School of Law, where he teaches a seminar in constitutional law.

Mr. Farra is a graduate of the University of Michigan. He received his J.D. from the University of Maryland School of Law, from which he graduated *magna cum laude* and Order of the Coif.

**Susan M. Greenwood**

As an attorney in the New York office, Susan M. Greenwood is a member of Cohen Milstein's Securities Litigation & Investor Protection Practice Group. With extensive experience in the area of securities law and class action litigation, Ms. Greenwood analyzes and evaluates securities litigation case opportunities.

Prior to joining Cohen Milstein, Ms. Greenwood was a Securities Law Specialist at Bloomberg Law, providing analysis of trends and developments in securities litigation, regulation and enforcement and serving as the editor of the Bloomberg Law Securities Litigation and Enforcement Report. She also has served as counsel at a prominent insurance company and two large litigation firms.

Ms. Greenwood attended Cornell University, graduating cum laude with Distinction, and earned her J.D. at the University of Pennsylvania School of Law.

**Elizabeth C. Guarnieri**

Elizabeth C. Guarnieri is a Senior Attorney in Cohen Milstein's Securities Fraud & Investor Protection Practice Group, and a member of the Ethics and Fiduciary Counseling Practice. Ms. Guarnieri serves as the Firm's Director of Investor Services. In the role of Director of Investor Services, she leads the Firm's portfolio monitoring and damage calculation process and oversees client reports. She is an integral member of the Securities Case Evaluation Team, which analyzes new and potential securities actions.

In addition, Ms. Guarnieri led the Cohen Milstein team in developing the Firm's proprietary portfolio monitoring and damage calculation system, COMPAS (Cohen Milstein Portfolio Assessment System). She also oversaw the rollout of the COMPAS client self-service portal which provides clients with web access to monitoring information as well as historical portfolio monitoring reports. She coordinates with our IT department and analysts to ensure the security of clients' transactional information.

Prior to joining Cohen Milstein, Ms. Guarnieri spent nearly 10 years as a securities and antitrust litigator. Working at two prominent plaintiffs' class action law firms in San Francisco, she represented individual and institutional investor clients in individual, class action and shareholder derivative securities litigation. Her decade of working on behalf of institutional investors has provided her with an experience and insight that she brings to her fiduciary and ethics counseling practice. Working with clients who have hired Cohen Milstein for fiduciary or ethics counseling, Ms. Guarnieri has undertaken a variety of projects — from researching and preparing presentations on fiduciary and ethics issues to assisting with the revision of an ethics code for a large county client.

In addition to her litigation experience, Ms. Guarnieri also worked as a legal analyst with Bloomberg L.P., regularly contributing articles to Bloomberg's Antitrust and Trade Law Reporter. She is the co-author of The Misapplication of American Pipe Tolling Principles, ABA Securities Litigation Journal, (Volume 21, Number 2, Winter 2011).

In her pro bono work, Ms. Guarnieri was one of a coalition of counsel that represented plaintiffs who sued Chevron for egregious injuries related to the company's oil production in Nigeria. She also served on the Board at the Meiklejohn Institute for Civil Liberties, an organization dedicated to developing innovative ways of using human rights law to promote equality and protect the disadvantaged.

Ms. Guarnieri attended Rider University, graduating magna cum laude with a B.A. in Political Science, and earned her J.D. at Rutgers School of Law.

**Sally M. Handmaker**

Sally M. Handmaker is an Associate at Cohen Milstein and a member of the firm's Consumer Protection practice group. In that role, Ms. Handmaker litigates actions to enforce consumer rights under federal and state laws.

Prior to joining Cohen Milstein in 2014, Ms. Handmaker was a Litigation Associate at a top-tier defense firm,

working on complex commercial and general litigation matters in federal and state courts covering a variety of subject matters, including antitrust, securities litigation, sports, intellectual property and employment. She also maintained an active pro bono practice and, in particular, was recognized for her work with the Lawyers Committee for Civil Rights Under Law's Voting Rights Project.

Ms. Handmaker is currently litigating the following notable matters:

- *Parker, et al. v. America Traffic Solutions, et al.*: Ms. Handmaker is Lead Associate on the case team that is litigating claims against Florida municipalities and red light camera vendors alleging improper delegation power to enforce red light camera violations and improper collection of fines regarding same.
- *In re: Lumber Liquidators Chinese-Manufactured Flooring Products, Sales Practice and Product Liabilities Litigation:* Ms. Handmaker is Lead Associate on the case team litigating claims against Lumber Liquidators alleging fraudulent sale of composite flooring that contains excessive and unlawful levels of formaldehyde, a carcinogen.
- *Ubaldi v. SLM Corporation:* Ms. Handmaker is Lead Associate on case team litigating claims against Sallie Mae Inc. alleging usurious loan practices.

Some of her past successes include:

- Symantec Corp. Litigation: Ms. Handmaker was Lead Associate on the case team that succeeded in gaining final approval of a $60 million settlement. The case against Symantec and Digital River alleged misrepresentations regarding the companies' Extended Download Service. Ms. Handmaker was heavily engaged in the trial preparation for the lawsuit, which settled on the eve of the trial.
- Caterpillar Litigation: Ms. Handmaker was Lead Associate in a nationwide product liability class action against Caterpillar, Inc. alleging that engine exhaust system defects resulted in power losses and shutdowns that prevented or impeded their vehicles from transporting goods or passengers.

Ms. Handmaker attended the University of Southern California, graduating *summa cum laude* with a B.A. in Psychology and a B.A. in Political Science.  Her undergraduate honors thesis was published in the American Psychological Association journal *Law and Human Behavior* under the title "'How Did You Feel?': Increasing Child Sexual Abuse Witnesses' Production of Evaluative Information."

Ms. Handmaker received her J.D. from the University of Virginia School of Law. While in law school, Ms. Handmaker served as an intern at the U.S. Department of Justice's Criminal Division focusing on cases involving child sexual abuse. She also served on the board of The Virginia Innocence Project, the University of Virginia's arm of the national litigation and public policy organization dedicated to exonerating wrongfully convicted people through DNA testing and reforming the criminal justice system. Ms. Handmaker also participated in the University of Virginia School of Law's Moot Court program and served on the Editorial Board of the *Journal of Law & Politics*.

**Johanna M. Hickman**

Johanna M. Hickman is an Associate at the firm, and is a member of the Public Client practice group.  In this position, Ms. Hickman represents state Attorneys General and other public-sector clients in investigations and lawsuits involving health care fraud and other fraudulent and deceptive trade practices. Previously, she

assisted in litigation by a state attorney general regarding the robo-signing of mortgage foreclosure documents. In addition, she has worked on a number of confidential investigations.

Currently Ms. Hickman is representing public clients in the following high-profile matters:

- Nursing Homes: Representing attorneys general in investigations and litigation related to deceptive marketing by several nursing home chains that promised, but failed to provide, basic care to their elderly residents. She is involved in all aspects of the investigations and litigation, including conducting and analyzing the results of investigations, developing legal theories, conducting fact and expert discovery and writing briefs.
-

Ms. Hickman serves on the adjunct faculty of the Georgetown University Law Center, where she teaches a course in advanced legal writing and practice. Prior to joining Cohen Milstein in 2013, Ms. Hickman practiced at a leading defendants' firm, where she advised clients regarding environmental and toxic tort liability, negotiated the environmental aspects of corporate transactions, and represented clients in complex insurance coverage litigation.  Prior to that, Ms. Hickman clerked for two years for the Honorable James I. Cohn of the United States District Court for the Southern District of Florida.

Ms. Hickman graduated with Highest Honors from the University of North Carolina at Chapel Hill with a B.A. in Journalism and Mass Communication.  Ms. Hickman earned her J.D., *cum laude*, from the Georgetown University Law Center.  She served as a Law Fellow, a Global Teaching Fellow, and a Staff Member and Symposium Editor of the *Georgetown Journal of Legal Ethics*.  As a member of Georgetown's Barristers' Council, she was a finalist in Georgetown's 35th Annual Leahy Moot Court Competition, and her team won the Award for Best Brief Overall at the 2005 Pace National Environmental Law Moot Court Competition.

**Anita F. Hill**

Anita F. Hill is Of Counsel at Cohen Milstein, and a member of the Firm's Civil Rights & Employment Practice Group. In that role, she advises on class action workplace discrimination cases. Ms. Hill, who joined the Firm in 2011, has played a leading role in furthering equal opportunity and ending discrimination in the United States, and brings with her more than three decades of legal, governmental, policymaking and academic experience to the Civil Rights Practice. She is a noted speaker, thinker, commentator and author who has contributed to a broad range of important civil rights and social issues, including race, gender discrimination, media and the law. She has appeared on numerous television and news programs, and her writings and opinions regularly are published in leading newspapers and magazines in the United States and the world.

Ms. Hill began her career as an associate with a boutique defendants' firm based in Washington, D.C., which specialized in antitrust, federal agency and environmental work for corporate clients; in that role, she researched and wrote appellate and agency briefs on questions concerning environmental, corporate, antitrust and administrative law. She then served as special counsel to the assistant secretary of the Department of Education's Office for Civil Rights, where she advised on legal and policy matters related to individual and systemic claims of educational discrimination, reviewed legal and policy positions for government-wide enforcement efforts and wrote position papers on various civil rights education issues including race and gender discrimination claims and with a specific focus on issues facing historically black colleges and universities.

Later, Ms. Hill became adviser to the Chairman of the Equal Employment Opportunity Commission (EEOC), reviewing and analyzing Commission policy, writing legal policy and position papers for the Chairman and advising him on the effectiveness of the program and the functions of the Commission.

For more than three decades, Ms. Hill has taught law and public policy. She began her teaching career as an assistant professor at Oral Roberts University and later joined the faculty at the University of Oklahoma College of Law. In 1989, Ms. Hill became the first African American to be tenured at the University of Oklahoma, College of Law, where she taught contracts and commercial law. Since 1999, Ms. Hill has been on the faculty of Brandeis University where she holds the title of University Professor, the highest academic rank awarded by Brandeis. Hill is one of only seven University Professors in the school's history. She teaches in the areas of civil rights, legal history and race and gender law and policy.

Ms. Hill is the author of numerous academic articles on international commercial law, contracts, bankruptcy and civil rights—all areas in which she has taught. She has given presentations on commercial law as well as race and gender equality to hundreds of business, professional, academic and civic organizations in the United States and abroad. In addition, she has appeared on several television programs, such as *Face the Nation* and *Meet the Press*, and has written for leading newspapers and magazines including *Newsweek*, *The New York Times* and *Boston Globe and Time.com*. Ms. Hill is the author of *Speaking Truth to Power* and served as the co-editor of *Race, Gender, and Power in America: The Legacy of the Hill-Thomas Hearings*. Her latest book is *Reimagining Equality: Stories of Gender, Race and Finding Home* (Beacon Press, 2011), an analysis of the housing market collapse of 2008 and its impact on gender and racial equality.

She is the recipient of numerous awards, grants and honorary degrees. Hill's professional and civic contributions include chairing the Human Rights Law Committee of the International Bar Association, and membership on the Board of Governors of the Tufts Medical Center and the Board of Directors of the National Women's Law Center and the Boston Area Lawyers Committee for Civil Rights. Ms. Hill was the subject of the documentary, *Anita: Speaking Truth to Power*, which premiered at the Sundance Film festival in January 2013. Ms. Hill attended Oklahoma State University, where she majored in Psychology, and earned her J.D. at Yale University Law School.

**Julia Horwitz**

Julia Horwitz is an Associate at Cohen Milstein and a member of the Firm's Employee Benefits Practice Group. In her role, Ms. Horwitz represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases across the country.

Prior to joining Cohen Milstein, Ms. Horwitz served as a law clerk for the Honorable Mary Ellen Coster Williams at the United States Court of Federal Claims. She worked at the Electronic Privacy Information Center in DC from 2012-2015, first as an Open Government Coordinator and Counsel, and then as the Director of the Consumer Privacy Project. Ms. Horwitz also was an Adjunct Professor at Georgetown Law School for a semester in 2013.

Ms. Horwitz attended Brown University, graduating with a B.A. in English, magna cum laude, in 2008. She earned her J.D. from the University of Chicago Law School in 2012. During law school, Ms. Horwitz was a staff member on the Edwin F. Mandel Legal Aid Clinic Employment Discrimination Project.

**Nicholas Johnson**

Nicholas C. Johnson is an Associate at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death practice area. In that role, Mr. Johnson's practice focuses on medical malpractice, nursing home abuse, and personal injury cases.

Prior to joining Cohen Milstein in 2014, Mr. Johnson worked for two South Florida defense firms, gaining valuable experience representing Fortune 500 insurance companies in the defense of claims and lawsuits. Earlier in his career, Mr. Johnson practiced as an Assistant Public Defender in Palm Beach County, where he represented indigent clients charged with misdemeanors and felonies, ranging from DUI to crimes punishable by life in prison. He was awarded the Best Advocate Award at the Florida Public Defender College in November 2008. Mr. Johnson tried approximately 30 jury trials to verdict as an Assistant Public Defender. Eager to resume his representation of individuals, Mr. Johnson joined Cohen Milstein in 2014.

Mr. Johnson has litigated the following notable matters:

- *Pavlov v. PBSO:* Mr. Johnson was a member of a team of attorneys representing the mother of a 28-year-old mentally disturbed man who was shot and killed by a Deputy Sheriff of the Palm Beach County Sheriff's Office. Mr. Johnson was instrumental in litigating this case, which resulted in the largest settlement paid out by the Palm Beach County Sheriff's Office.
- *McCool v. Woodstream and Home Depot:* Mr. Johnson represents the family of Mary Jo McCool, a 46-year-old woman who was found drowned in her pool as a result of becoming overcome by the fumes from a propane mosquito trap. The matter currently is being litigated in Federal Court.
- Nursing Home Neglect Litigation: Mr. Johnson represented the spouse of an 85-year-old man who experienced a series of falls in a nursing home before finally fracturing his hip, which required hip replacement surgery. Mr. Johnson reached a confidential settlement in this case that alleged neglect on the part of the nursing home.

Mr. Johnson was selected to serve as a member of the 2015 class of The Florida Bar Leadership Academy, and was recently selected to the American Association for Justice's 2016 Leadership Academy. Mr. Johnson serves on the Board of Directors for the Palm Beach County Bar Association North County Section, and currently serves on the Board of the Florida Justice Association's Young Lawyer Section and the Membership Diversity Committee, and is an active member of the Palm Beach County Bar and the Palm Beach County Justice Association. He is also actively involved in the American Association for Justice's Minority Caucus. He writes on various legal topics in such publications as the *Florida Justice Association Journal*.

Mr. Johnson graduated from Boston University with a B.A. in Economics, and completed his Master's in Sports Management at the University of Florida. He graduated *cum laude* from St. Thomas University School of Law in 2007. Mr. Johnson, who was born and raised in Kingston, Jamaica, has represented Jamaica at several international swimming competitions.

**Eric Kafka**

Eric A. Kafka is an Associate at Cohen Milstein, and a member of the firm's Consumer Protection practice group. Mr. Kafka's practice focuses on litigating class actions on behalf of consumers who have been deceived and harmed by large corporations.

Currently, Mr. Kafka is litigating the following notable matters:

- *In re Anthem, Inc. Data Breach Litigation:* Mr. Kafka represents consumers who were affected by the Anthem data breach. Plaintiffs allege that their confidential information, including their Social Security numbers, was compromised in the data breach.
- *Hankinson, et al. v. R.T.G. Furniture Corp., d/b/a Rooms to Go:* Mr. Kafka represents furniture consumers who allege that Rooms to Go misrepresented that it would professionally treat their furniture with stain-resistant chemicals.
- 

Prior to attending law school, Mr. Kafka worked on multiple poliltical campaigns, including President Obama's 2008 presidential campaign.

Mr. Kafka earned his J.D. from Columbia Law School, where he was a Harlan Fiske Stone Scholar. He received his B.A. from Yale University.

**Adam Langino**

Adam J. Langino is an Associate at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practice groups. In his role, Mr. Langino represents clients who have been seriously or catastrophically injured, those who have suffered from managed care abuses and people who have been injured as a result of faulty products—and holding those responsible accountable for those injuries. Mr. Langino is an experienced, hands-on attorney, who has tried more than 20 jury trial cases in his career. Presently, he is litigating a number of product safety cases involving child booster seats.

Prior to joining Cohen Milstein in 2014, Mr. Langino was an Associate at Leopold Law and also served for three years as an Assistant Public Defender in West Palm Beach, FL. As an Assistant Public Defender, Mr. Langino handled complex felony criminal cases, including first-degree felonies and crimes punishable by life in prison. He gained valuable trial experience and secured freedom for the wrongly accused. Before his service as an Assistant Public Defender, Mr. Langino clerked for the Federal Public Defender in Minneapolis. Currently, Mr. Langino is litigating the following notable matters:

- *Back-Cruz v. Evenflo, Inc.:* Mr. Langino represents the family of a child plaintiff in a product liability case. The lawsuit alleges that the poorly designed Evenflo booster car seat that the child was in failed to keep her safe in a car crash, resulting in catastrophic injuries. Mr. Langino is the primary attorney on the case and is managing all aspects of the litigation.

Some of his past successes include:

- *Mincey v. Takata:* Cohen Milstein was lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her paralyzed from the neck down in 2014 when the driver's side airbag deployed too aggressively during a vehicle collision. Patricia Mincey passed away in early 2016 due to complications from the quadriplegia caused by the problematic airbag. The suit charged that the Takata Corporation, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. Evidence uncovered by the firm showed that Takata concealed the defective nature of the airbag system for more than a

decade. The case was resolved in July 2016. Mr. Langino had been involved in all aspects of the litigation, including discovery, taking depositions and directing motions.

- *Fuse v. Palm Tran:* Mr. Langino represented the family of a 5-year-old disabled child in a catastrophic injury case alleging that the disabled child suffered permanent brain damage during transport on the Palm Tran Connection service, a transportation service for elderly and disabled patrons, when the vehicle's driver ignored her calls for help, failed to provide first aid, and delayed access to emergency medical aid. The case was resolved in a settlement in excess of $1 million.

- *Hauser v. Rice Insulation:* Mr. Langino represented the Hauser family in a product liability lawsuit alleging that Rice Insulation, an insulation contractor, installed foam insulation incorrectly in the plaintiff's house, resulting in the house burning to the ground. The lawsuit included the contractor as well as the manufacturer for not providing sufficient warnings that the product might ignite under certain conditions. The matter was resolved confidentially. Mr. Langino managed all aspects of the litigation.

- *Palmer v. Baylines Inc.:* Mr. Langino represented the Palmer family in catastrophic injury and product safety lawsuit in which a truck driver fell asleep at the wheel and crashed into a vehicle carrying the Palmers, resulting in the death of Mrs. Palmer. Mr. Langino brought a catastrophic injury case against the trucking company Baylines Inc., and a product safety case against the carmaker of the vehicle that the Palmers were driving alleging that the airbags did not deploy properly, leading to Mrs. Palmer's death. The case was resolved in a confidential settlement. Mr. Langino managed all aspects of the litigation, including expert witnesses.

Mr. Langino was selected to the 2015 class of the American Association for Justice Leadership Academy, which is comprised of a select group of plaintiff trial lawyers chosen from across the country for national leadership training. The National Trial Lawyers has named Mr. Langino one of the Top 100 Trial Lawyers, Florida, for three years running, beginning in 2013. He is also an active member in the Palm Beach County Bar Association, the Board of the Florida Justice Association Young Lawyer Section, and the AAJ Membership Oversight Committee.

Mr. Langino attended the University of Maryland, graduating *magna cum laude* with Honors in Government and Politics, and earned his J.D., *cum laude*, from the University of Minnesota School of Law, where he received an award for Best Oral Argument and participated in the Wagner Labor Law Moot Court program.

A former amateur boxer, Adam volunteers as boxing coach for local youths for the Police Athletic League located in Palm Beach Gardens. He is the Past-President of Club 100 Charities and a board member of Cops Helping Kids, charities that are dedicated to improving Palm Beach County by focusing on the needs of the youth and elderly.

**Joel P. Laitman**

Joel P. Laitman is Of Counsel at Cohen Milstein and a member of the Securities Litigation & Investor Protection Practice Group. Mr. Laitman has served as lead counsel in five of the firm's major mortgage-backed securities class actions brought on behalf of pension funds and other institutional investors against major investment banks. These cases alleged that the underlying mortgages failed to comply with the underwriting standards described in the Offering Documents.

Besides initiating these cases and directing and leading discovery with his partner Chris Lometti, Mr. Laitman argued all motions and conducted all hearings both before the District Court and the Second Circuit. In just

three of these cases that have settled to date, recoveries totaling $720 million were achieved for the benefit of injured investors: $335 million in the RALI MBS case brought against Goldman Sachs, UBS and Citigroup; $275 million in the Harborview MBS case brought against RBS; and $110 million in the HEMT MBS case brought against Credit Suisse.

The settlements achieved in these cases have been commended by Courts and by legal publications. Commenting on the Harborview litigation, Judge Loretta A. Preska, of the U.S. District Court, Southern District of New York, noted that the case brought on behalf of the plaintiffs was "interesting and different" and that settlement on their behalf "was a job well done." Judge Fallia, in approving the RALI Settlement, commended the firm for prosecuting the case for seven years and "never giving up" despite substantial obstacles.

The litigations and settlements have garnered awards from the leading legal publications. In 2014 and 2015, the National Law Journal cited the Harborview and RALI MBS in designating the firm an Elite Trial Law Firm and placing the firm on the Hot List; Law360 cited the RALI and Harborview cases in designating the firm one of "The Most Feared Plaintiffs Firms" in 2015, the third year in a row that Cohen Milstein received the designation; and in 2015, Law360 selected Cohen Milstein as the sole plaintiff firm to be chosen in two "Practice Groups of the Year" categories and one of only five class action law firms to be recognized, singling out the RALI and Harborview cases in the award.

In addition, Mr. Laitman has argued a number of seminal cases before the Second Circuit in the securities field including: Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190 (2d Cir. 2008) (addressing corporate scienter under Section 10 (b)); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196 (2d Cir. 2008) (addressing standard for establishing market efficiency in certification of Section 10(b) claims); N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC, 709 F.3d 109 (2d Cir. 2013) ("NovaStar") (reversing dismissal of Securities Act claims); Wyo. State Treasurer v. Moody's Investors Serv. (In re Lehman Bros. Mortgage-Backed Sec. Litig.) ("Lehman"), 650 F.3d 167 (2d Cir. 2011) (addressing rating agency liability under the Securities Act); and N.J. Carpenters Health Fund v. RALI Series 2006-QO1, 477 Fed. Appx. 809 (2d Cir. 2012) ("Harborview/RALI", addressing class member knowledge as grounds for denial of class certification).

A member of Phi Beta Kappa, Mr. Laitman is a graduate of Columbia University, with a B.A., magna cum laude, and earned his law degree at Georgetown University Law Center.

**Stephan A. LeClainche**

Stephan A. LeClainche is Of Counsel at Cohen Milstein, and head of the firm's Medical Malpractice group. In his role, Mr. LeClainche represents victims and the families of victims of all types of medical negligence. His practice specializes in medical malpractice, but also includes medical device litigation, automobile negligence, sexual abuse and other serious injury and wrongful death cases.

Mr. LeClainche is an experienced trial attorney, whose recent admission to the prestigious American College of Trial Lawyers attests to his reputation among peers as an outstanding trial lawyer. He understands, however, that legal skill in a courtroom is only a part of the qualifications that a good attorney brings to the practice in representing the victims of negligence. Equally important is the empathy an attorney must possess in counseling and guiding these victims and their families. The best attorneys are advisers and advocates, compassionate yet aggressive—a partner to clients, making them part of the team. These are traits that Mr. LeClainche brings to each of his cases.

Prior to joining Cohen Milstein in 2015, Mr. LeClainche was a name partner in a boutique trial law firm based in West Palm Beach. A Florida Board-Certified Civil Trial Lawyer since 1996 with more than three decades of experience litigating civil lawsuits, Mr. LeClainche is both a veteran attorney and a seasoned investigator, investing the time necessary to unearth and analyze every potentially relevant facet of a case. Many of his cases represent the cutting edge of both medicine and law, and grow out of the evolution of medicine and its practice. The cases may be different, but the complexities, challenges and stakes are always high, requiring attention to detail – and dedication to a client's needs and concerns.

Some of Mr. LeClainche's litigation and trial successes include the following notable matters:

- A confidential settlement reached in a medical malpractice case against an interventional cardiologist regarding his controversial practice of using a stent in the mid-popliteal artery to treat arterial occlusion. The case involved the off-label use of a medical device and a surgeon acting outside the scope of his practice.
- A $40 million verdict recovered for a child in a wrongful death case.
- A $5 million settlement reached during trial in a medical malpractice case.
- Verdicts of $1.7 million and $10 million in two separate cases involving sexual abuse of minors.
- A $2.3 million verdict for personal injuries suffered during a fall at an amusement park.
- A $2.8 million verdict for a death and personal injuries suffered by husband and wife in a motor vehicle accident.
- Co-lead of the trial team of lawyers who, after years of costly litigation, successfully recovered $27 million on behalf of 10 victims of child abuse in a case brought in Federal Court in New York.

Mr. LeClainche currently represents clients in a diverse variety of medical malpractice cases, including:

- Several lawsuits involving injuries arising from laparoscopic and open gall bladder surgery.
- A case involving a military reservist suffering from deep vein thrombosis (a clot in the veins of the leg), who was misdiagnosed and as a result suffered a pulmonary embolus and died just as he was being discharged from the hospital.
- A routine colonoscopy that resulted in a perforated colon and the subsequent death of the client.
- Misdiagnosis on colonoscopy resulting in the client being given a clean bill of health only to be subsequently diagnosed with Stage 4 colon cancer.

In addition to his recent admission to the American College of Trial Lawyers, Mr. LeClainche's accomplishments over the years have enabled him to achieve an AV-Preeminent rating from Martindale-Hubbell, the highest rating available for ethics and legal ability from the nation's oldest guide to lawyers and law firms.

Mr. LeClainche attended Florida International University, graduating *magna cum laude* with a B.A. in Political Science, and earned his J.D. from the University of Florida College of Law. Mr. LeClainche was born and raised in Kingston, Jamaica.

## Scott Lempert

Scott M. Lempert is Of Counsel at Cohen Milstein and a member of the firm's Employee Benefits (ERISA) Practice Group. He joined the firm in 2016 and represents the interests of employees, retirees, and plan

participants and beneficiaries in ERISA cases in the district court and on appeal.

Mr. Lempert is currently engaged in litigating a number of so-called "church plan" lawsuits. These cutting-edge legal cases assert that many non-profit health care systems in the United States wrongfully claim their benefit plans are exempt from ERISA regulation under the church plan exemption. Currently, Cohen Milstein serves as lead or co-lead counsel in 12 separate cases in various jurisdictions throughout the U.S.

Mr. Lempert has over 20 years of experience litigating complex commercial class actions on behalf of employees, retirees and consumers in retiree benefits, employment, consumer protection and antitrust matters. Prior to joining Cohen Milstein he worked on many high-profile matters, including:

- *In re: Unisys Corp. Retiree Medical Benefits ERISA Litig.* – a series of cases involving representation of thousands of retirees, both as class actions and individually, seeking restoration of lifetime retiree medical benefits unlawfully terminated after retirement. These cases successfully achieved multiple settlements and court judgments providing lifetime retiree medical benefits for some and a continuing stream of payments to pay for medical benefits for other retirees.
- *Raetsch v. Lucent Technologies* – 36 million dollar settlement involving unlawful transfer of excess defined benefit pension funds to an account to pay for retiree medical benefits.
- *Mehling v. New York Life Insurance Co*. -- 14 million dollar settlement challenging excessive fees charged to New York Life employees and the company's pension plan for Plan assets invested in New York Life owned mutual funds.
- *Stagi v. National R.R. Passenger Corp*. – Gender discrimination class action alleging unlawful disparate impact on female union employees resulting from enforcement of an Amtrak employee policy that blocked union employees from promotion to management. Settlement provided Amtrak employees compensation for denial of opportunities for promotion and the striking of the unlawful employment policy.

Mr. Lempert graduated Phi Beta Kappa from the University of Delaware with a B.A., magna cum laude, in Psychology, and received his J.D., from the University of Pennsylvania Law School. During law school, he served as Vice President of the Law School Government and was a Morris Fellow.

### Christopher Lometti

Christopher Lometti is Of Counsel in the Securities Litigation & Investor Protection Practice Group, having joined Cohen Milstein in 2009. In this role, Mr. Lometti has litigated some of the most significant mortgage-backed securities (MBS) class action lawsuits to emerge from the financial crisis.

Mr. Lometti, together with Joel Laitman, his fellow Partner in the Securities Litigation Practice, initiated the Bear Stearns, Harborview, RALI, Lehman and HEMT MBS litigation at their named firm prior to joining Cohen Milstein. The lawsuits were high-risk matters involving novel claims on behalf of their Taft-Hartley pension fund clients injured by the dramatic downgrades of their MBS holdings from AAA to junk status. The MBS litigations have earned Cohen Milstein's Securities Litigation Practice numerous accolades from the *National Law Journal, Law360* and *American Lawyer.*

Mr. Lometti's successes include the following notable matters:

- Bear Stearns MBS Litigation: $500 million settlement with JPMorgan Chase. Cohen Milstein was lead

counsel in a class action lawsuit alleging Bear Stearns violated securities laws in selling toxic mortgage-backed securities that failed to meet the bank's own underwriting standards and that contained false and misleading information as to the appraised values of the underlying mortgages. Mr. Lometti was one of the key litigators in the case, developing strategy and conducting extensive fact discovery into the 22 offerings backed by approximately 71,000 largely Alt-A mortgages that Bear Stearns sold to investors from May 2006 to April 2007.

- RALI MBS Litigation: $335 million settlement with Citigroup, Goldman Sachs and UBS. Cohen Milstein was lead counsel in a class action litigation alleging RALI and its affiliates sold shoddy MBS securities that did not meet the standards of their underwriters. Mr. Lometti was one of the senior litigators on the class action, conducting fact discovery, deposing economic experts and preparing witnesses.

- Harborview MBS Litigation: $275 million settlement with Royal Bank of Scotland. Cohen Milstein was lead counsel in a complex case, in which presiding Judge Loretta A. Preska, of the U.S. District Court, Southern District of New York, commented on the "job well done" by the Cohen Milstein team of which Mr. Lometti was a senior litigator.

- HEMT MBS Litigation: $110 million settlement with Credit Suisse. Cohen Milstein was lead counsel in a case alleging Credit Suisse and its affiliates sold toxic securities to pension fund investors. The suit, filed in 2008, was one of the first class action cases involving mortgage-backed securities to be filed.

- Lehman Litigation: $40 million settlement. Cohen Milstein was lead counsel in a class action lawsuit against individuals affiliated with the bankrupt firm, the largest bankruptcy in U.S. history. Mr. Lometti was a senior litigator on the lawsuit, developing strategy.

- Dynex Litigation: $7.5 million settlement. Cohen Milstein was lead counsel in class action lawsuit involving the asset-backed securities. Mr. Lometti was a central member of the team to litigate this seminal lawsuit involving hybrid securities. In the litigation, the U.S. District judge issued one of the first decisions certifying an investor class pursuing fraud claims in connection with the sale of asset-backed securities. The Dynex litigation laid out a road map that could be followed in litigating an asset-backed security.

Currently, Mr. Lometti is litigating the following matters:

- NovaStar MBS: Cohen Milstein is lead counsel in litigation alleging that RBS, Wells Fargo (formerly Wachovia) and Deutsche Bank sold toxic mortgage-backed securities in investors. The litigation is one of the last outstanding class action MBS lawsuits. The Second Circuit Court of Appeals reversed an earlier dismissal of the lawsuit, paving the way for prosecution of the case.

- Volaris Litigation: Cohen Milstein is lead counsel in a class action lawsuit alleging that the Mexican airline Volaris Aviation Holding Co. withheld financial information regarding revenue recognition from investors before the company's $235 million initial public offering. Soon after the IPO, the news came to light and the stock fell roughly 15%. The case is ongoing.

- Braskem Litigation: Cohen Milstein represents shareholders in a class action suit alleging that the Brazilian petrochemical company lied to investors in its American Depository Receipts about its role in a bribery scheme involving Petrobras, Brazil's giant oil producer. The case is ongoing.

Mr. Lometti received a Bachelor of Arts from Fordham College in 1983, and his J.D. from Fordham Law School in 1986.

Prior to his arrival at Cohen Milstein, Mr. Lometti played a substantive role in litigating and settling the massive class action suit against WorldCom, one of the largest bankruptcies in history, representing significant stakeholders in the telecom's bond offerings. The lawsuit resulted in a settlement of $6.15 billion.

He has served as a non-industry arbitrator for the New York Stock Exchange and National Association of Securities Dealers helping to resolve disputes, and as a mediator for the New York State Court System.

**Diana L. Martin**

Diana L. Martin is Of Counsel at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Consumer Protection, Managed Care Abuse, and Unsafe & Defective Products practice groups. She concentrates her practice on appellate litigation involving complex product liability, consumer class, mass tort and managed care litigation by not only handling appeals for the firm in these areas, but also by providing appellate support at the trial stage. In that role, she drafts and argues complex and case dispositive motions, handles jury instruction charge conferences and assists trial counsel in preserving and protecting the record in the event of an appeal.

Of notable interest is Ms. Martin's success in achieving justice for injured workers who have been wrongfully denied medical care and treatment by their employer or their employer's workers' compensation carrier, resulting in the employee suffering injuries in addition to those suffered in the workplace accident. While many attorneys refuse to litigate such cases given the difficulty of navigating around the legal immunity afforded to defendants by Florida law, Ms. Martin has gotten many of these cases past the motion to dismiss and summary judgment stages, resulting in settlement of the workers' claims prior to trial.

Currently, Ms. Martin is helping the firm litigate the following matters:

- *United States of America, et al. v. AIDS Healthcare Foundation, Inc.*: Cohen Milstein represents three former managers of the AHF in a Federal and Florida State Whistleblower Act claims against the nation's largest provider of HIV/AIDS medical care for illegal patient referral kickbacks. Ms. Martin has been involved in all aspects of the litigation. The case is ongoing.
- HCA: Cohen Milstein is lead counsel in a class action lawsuit alleging that four Florida plaintiffs and others like them were billed inflated and exorbitant fees for emergency radiology services, in excess of the amount allowed by law, covered in part by their mandatory Florida Personal Injury Protection insurance. When the district court struck plaintiffs' class claims, Ms. Martin successfully petitioned the Eleventh Circuit Court of Appeals to accept immediate appellate review.
- Wal-Mart Employment Discrimination Litigation: Ms. Martin assisted the firm's Civil Rights and Employment practice group in a regional gender bias case in the Southern District of Florida alleging that Wal-Mart discriminates against women in pay and promotion decisions. After settlement agreements were reached on behalf of the individual plaintiffs, Ms. Martin has taken the lead role in appealing to the Eleventh Circuit Court of Appeals the district court's order dismissing as time-barred the plaintiffs' class claims, which originated from the seminal case of *Dukes v. Wal-Mart*.
- *Adams v. Palm Beach County Sheriff's Office:* Cohen Milstein is lead counsel in an excessive force and wrongful death action against the Palm Beach County Sheriff's Office and one of its detectives, who shot and killed the unarmed Seth Adams while he was on family property. Having provided legal

support throughout the district court proceedings, Ms. Martin is currently handling the appellate proceedings in which the officer has appealed to the Eleventh Circuit Court of Appeals the district court's denial of his motion for summary judgment based on qualified immunity.

Some of her past successes include:

- *Mincey v. Takata:* Cohen Milstein was is lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic in 2014 when the driver's side airbag in her Honda Civic deployed too aggressively during a collision due to a product defect. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia. The suit charged that Takata, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. When the defendants removed Ms. Mincey's case to federal court in an attempt to have it bogged down in multi-district litigation, Ms. Martin successfully had the case remanded to Florida state court, where it is was resolved in July 2016.

Prior to joining the firm in 2014, Ms. Martin served as appellate counsel to Leopold Law, P.A., in Palm Beach Gardens, FL.  Before that, she clerked for three years for the Honorable Martha C. Warner in Florida's Fourth District Court of Appeal. Ms. Martin attended Flagler College, graduating *summa cum laude* and being awarded Departmental Honors in Philosophy/Religion. She earned her J.D. from the University of Florida Levin College of Law, graduating with High Honors and achieving admission to the Order of the Coif.

Ms. Martin currently serves as President of Florida Legal Services, serves as Audit Committee Chair of Families First of Palm Beach County, and sits on the board of the Florida Bar Foundation.  She has written numerous legal articles, which have been published in a variety of journals, including *Trial Magazine*, *The Florida Bar Journal*, and the *Florida Justice Association Journal*. Ms. Martin also co-authors *Florida Insurance Law and Practice*, an annual publication by Thomson/West.

**David M. Maser**

David M. Maser is an Of Counsel at Cohen Milstein, and a member of the firm's Securities Litigation & Investor Protection practice group.

Prior to joining Cohen Milstein, Mr. Maser worked with a nationally recognized securities class action plaintiffs law firm for more than a decade, where he helped create the firm's securities monitoring program and cultivated important relationships with the firm's growing portfolio of institutional investor clients, nationally and globally.

As a result of his work, Mr. Maser successfully engaged over 25 public fund and union clients with well over $200 billion in assets under management. Clients he has represented have been involved in more than 60 actions, generating more than $4.6 billion in case recoveries.
Mr. Maser has worked extensively in both the public and private sectors and brings more than 25 years of experience and insight to pension funds and other institutional clients, specifically at the intersection of law, business and government.

Through his extensive experience in the public and private sectors, Mr. Maser has established bipartisan relationships in the political arena on the federal, state and local levels. His ability to see the big picture and

create bipartisan collaborations has earned him a reputation as an exceptional diplomat and strategic consensus builder.

In additional to his professional work, Mr. Maser is very active in the community and currently serves the following boards and organizations:

• Pennsylvania State System of Higher Education(PASSHE), Vice Chairman of Board of Governors (Gubernatorial Appointment)
• Philadelphia 3.0, Founding Member & Chair of the Board
• Graces Foundation, Founding Member & Chair of the Board
• Pennsylvania Society, Member
• Union League of Philadelphia, Member


**Douglas J. McNamara**

Douglas J. McNamara is Of Counsel at Cohen Milstein, and a member of the firm's Consumer Protection practice group. In that role, Mr. McNamara specializes in litigating complex, multi-state class action lawsuits against manufacturers and consumer service providers such as banks, insurers, credit card companies and others. He has helped litigate precedent-setting cases, including *Salud Services, Inc. v. Caterpillar, Inc.* He is a hands-on litigator who takes pleasure in the details, facts, and documents of each case. Mr. McNamara is a highly regarded speaker who has presented at several forums on such topics as federal preemption, class certification and civil litigation, and is the author of scholarly articles focusing on emerging legal issues.
Mr. McNamara has worked on numerous cases involving dangerous pharmaceuticals and medical devices, light cigarettes, defective consumer products, and environmental torts. He litigated and resolved the class action lawsuit against Philips Electronics North America Corp., which alleged that certain Philips and Magnavox flat-panel TVs suffer from a defect that causes their capacitors to fail prematurely and renders the TVs inoperable.

Mr. McNamara is currently litigating the following notable matters:

• Lumber Liquidators Litigation: Cohen Milstein is co-lead counsel in the consumer class action lawsuit *In re: Lumber Liquidators Chinese-Manufactured Flooring Products, Sales Practice and Product Liabilities Litigation*, alleging the nationwide retailer sold Chinese-made laminate flooring containing hazardous levels of the carcinogen formaldehyde while falsely labeling their products as meeting or exceeding California emissions standards, a story that was profiled twice on 60 Minutes in 2015.
• Symantec Litigation: Cohen Milstein is lead counsel in *Khoday et al. v. Symantec Corp. et al.,* a nationwide class action battle involving the marketing to consumers of a re-download service in conjunction with the sale of Norton software. The case settled in a $60 million all-cash deal a month before the case was to go to trial – one of the most significant consumer settlements in years. Mr. McNamara was involved in all aspects of the case, from managing the litigation to overseeing a staff of contract attorneys to settlement discussions.
• Rooms to Go Litigation: Cohen Milstein represents a putative class in *Hankinson et al. v. R.T.G. Furniture Corp., d/b/a Rooms to Go,* alleging that the furniture retailer misled consumers as to the application of its ForceField stain protection plan. Mr. McNamara is engaged in all aspects of the litigation, including discovery and working with expert witnesses.
• Caterpillar Litigation: Cohen Milstein is lead counsel in *Salud Services, Inc. v. Caterpillar, Inc.*, a class

action lawsuit against Caterpillar alleging that bus engines designed to meet 2002 federal emissions standards are failing, leaving passengers stranded and bus companies eating the costs of countless repairs and towing fees. The Firm succeeded in beating back the defendant's argument that the Clean Air Act preempted the plaintiff's claims since the claims related to emissions standards. Mr. McNamara was the architect of that opposition and is involved in all aspects of the product liability litigation.

Prior to joining Cohen Milstein in 2001, Mr. McNamara was a litigation associate at an international law firm, specializing in pharmaceutical and product liability cases. He started his career at New York City's Legal Aid Society, defending indigent criminal defendants at trial and on appeal.

He has been the lead author on three law review articles: "Buckley, Imbler and Stare Decisis: The Present Predicament of Prosecutorial Immunity and An End to Its Absolute Means,: 59 *Albany Law Review*, 1135 (1996); "Sexual Discrimination and Sexual Misconduct: Applying New York's Gender-Specific Sexual Misconduct Law to Minors," 14 *Touro Law Review*, 477 (Winter 1998), and most recently, Douglas McNamara, et al, "Reexamining the Seventh Amendment Argument Against Issue Certification," 34 *Pace Law Review*, 1041 (2014). He is presently teaching a course on environmental and toxic torts as an adjunct at George Washington University School of Law.

Mr. McNamara graduated *summa cum laude* from SUNY Albany with a major in Political Science, and earned his J.D. from New York University School of Law.

## Miriam Nemeth

Miriam R. Nemeth is an Associate in Cohen Milstein's Civil Rights & Employment practice group. Ms. Nemeth's practice focuses on civil rights, employment discrimination, and wage and hour cases. In addition, she has experience litigating cases involving police misconduct, government abuse of power, and prisoners' rights.
Prior to joining Cohen Milstein in 2015, Ms. Nemeth practiced at a civil rights litigation boutique in Detroit. Among the cases she litigated there was a race discrimination lawsuit against a police department on behalf of five African-American men who were the victims of gang violence, as well as a racial profiling claim on behalf of a woman who was removed from an airplane based on her race. She also represented a jail inmate who suffered lasting damages from a corrections officer's assault, and a family who received false information about the death of their son during his employment with a private security contractor.

Following law school, Ms. Nemeth served as a law clerk for the Honorable Ronald Lee Gilman on the Sixth Circuit Court of Appeals and the Honorable David M. Lawson on the Eastern District of Michigan.

Currently, Ms. Nemeth is involved in the following notable matters:

- McDonald's Litigation: Cohen Milstein represents McDonald's crew members in several wage and hour lawsuits asserting that McDonald's regularly fails to pay workers for all the hours they work by denying them legally mandated meal and rest breaks, payments for missed breaks, and assistance with uniform maintenance, amongst other claims.
- Temporary Employment Staffing Agency Litigation: Cohen Milstein represents African American workers in a series of class actions against employment staffing agencies in Chicago. The suits allege a pattern of race discrimination against African American laborers in the staffing and assignment of

workers by temporary staffing agencies to their client companies.

- Transgender Health Care Coverage Cases: Cohen Milstein represents LGBT individuals in their claims of sex discrimination in the denial of access to health care coverage for transition-related care.
- Pro Bono: Ms. Nemeth has a strong commitment to pro bono work and currently represents a Washington, D.C., resident in her application for disability benefits for a debilitating genetic condition.

Ms. Nemeth is a graduate *cum laude* of the University of Pennsylvania Law School. There, she served as a Comments Editor on the *University of Pennsylvania Law Review* and co-directed the Prisoners' Legal Education Project, a student-run clinic that worked with inmates. She also received the 2009 Benjamin R. Jones Memorial Award for Contributions to the Public Interest. During law school, Ms. Nemeth interned with the Capital Habeas Unit of the Federal Community Defender Office in the Eastern District of Pennsylvania, the Bazelon Center for Mental Health Law and the D.C. Public Defender Service's Mental Health Division. Before attending law school, Ms. Nemeth graduated *summa cum laude* from the George Washington University's Honors Program with a double-major in English and Psychology.

Ms. Nemeth is an active member of the American Constitution Society and has been named a Next Generation Leader and a Public Interest Fellow by that organization.

**Casey M. Preston**

Casey M. Preston is a member of Cohen Milstein's Whistleblower/False Claims Act Practice Group. Mr. Preston represents whistleblowers nationwide in qui tam litigation, involving numerous industries, such as health care, defense, financial services, and government procurement. He also represents individuals who report tax fraud, securities fraud, and customs fraud through federal whistleblower programs. In addition, Mr. Preston has significant experience handling complex commercial cases and securities litigation in courts across the U.S. Some of Mr. Preston's current representations include:

- A sealed qui tam action related to a drug manufacturer's alleged use of illegal marketing practices to increase usage of its drug by Medicare beneficiaries.
- A sealed qui tam action against importers alleged to have engaged in tariff fraud.
- A sealed qui tam action involving claims that hospitals overcharged the government health care programs by misclassifying outpatient services as inpatient services.
- A sealed qui tam action against a chain of medical practices that allegedly performed unnecessary tests on patients covered by the government health care programs and billed the government for services that were not performed.
- A sealed qui tam action alleging that a medical equipment supplier is selling unnecessary equipment and supplies to Medicare beneficiaries.
- A sealed qui tam action involving claims that a provider of mental health rehabilitative services up-coded services provided to Medicaid beneficiaries.

Mr. Preston has played a key role in a number of successful cases, including:

- A qui tam action alleging that drug manufacturer Wyeth overcharged the state Medicaid programs by not providing them the statutorily required "best price" for a widely prescribed drug. This action resulted in a recovery of more than $780 million by the government.
- A qui tam action against a chain of urgent care centers that allegedly billed the government for

unnecessary testing performed on beneficiaries of the government health care programs. There was a $10 million recovery by the government.

- A sealed qui tam action against a dental group for performing unnecessary dental procedures on Medicaid beneficiaries.
- Represented the limited partner of several commercial real estate partnerships in a fraud and breach of fiduciary duty action against the partnerships' general partner.
- Represented stock and bondholders in a class action against a food distributor and its outside accounting firm that resulted in a $90+ million recovery for the investors.
- Represented stockholders in a securities class action against a software company that resulted in a $5+ million recovery for the investors.
- Represented a hedge fund in a securities fraud action against a marketing company through which the hedge fund secured a $4 million recovery.
- Represented a state pension fund in a securities class action against an insurance company that resulted in a $90+ million recovery for stockholders.

In addition, Mr. Preston has provided pro bono services to the Legal Clinic for the Disabled and the Brady Center to Prevent Gun Violence.

Mr. Preston served as law clerk for the Hon. William J. Nealon, U.S. District Court for the Middle District of Pennsylvania and the Hon. Terrence R. Nealon, Court of Common Pleas, Lackawanna County, Pennsylvania. Mr. Preston received his B.S. from The Citadel and his J.D. from the Villanova University School of Law.

### Poorad Razavi

Poorad Razavi is an Associate at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death and Unsafe & Defective Products practice areas. Mr. Razavi's practice focuses on products liability, vehicle defects, roadway design and maintenance defects, trucking and car accidents, negligent security, and multi-million dollar wrongful death and catastrophic injury suits.

Mr. Razavi began his practice as an insurance defense attorney working side-by-side with insurance adjusters, which provides his clients the benefit of an advocate with a unique perspective into the mindset of insurance companies and corporate defendants, and with a distinct understanding about how to maximize the value of a claim in order to ensure that his clients receive maximum compensation for their injuries.

Thereafter prior to joining Cohen Milstein, Mr. Razavi was a senior associate at another prestigious personal injury products liability firm. While there, Mr. Razavi represented clients across the nation, including in Florida, California, Indiana, Ohio, Georgia, New York, Nevada, Michigan, Alabama, and Tennessee. He has litigated claims against all of the major insurance carriers, as well as automobile, tire, and component part manufacturers, including General Motors, Honda, Chrysler, Takata, and Continental. Mr. Razavi has also handled a broad range of non-traditional personal injury and wrongful death cases throughout the country, including claims involving chemical and pesticide exposure, chlorine gas exposure, mold exposure, construction defect, boating defect, negligent vehicle repairs, and negligent tractor-trailer operation.

Mr. Razavi also has extensive experience in claims against the Department of Transportation and other private state contractors for roadway design and defect claims, and has litigated multiple roadway design and maintenance defect claims resulting in multi-million dollar settlements and subsequent installation and remediation of guardrails, re-paving, curbing, and rehabilitation of roadways in multiple counties.

Additionally, Mr. Razavi initiated the investigation and discovery of a major vehicle airbag defect resulting in the filing of a subsequent class action against the world's largest automobile manufacturers, in which he was selected to the class action discovery committee.

Mr. Razavi has been featured in multiple publications for his successful results in fighting against the automobile industry as well as for handling claims of defective roadway design both in Florida and throughout the country. He has proudly served the legal and local community, holding several prominent Bar Association leadership positions and continually being actively involved as a speaker and moderator on a variety of legal topics. He has repeatedly been selected as "Rising Star" by Florida Super Lawyers and a "Legal Elite Up and Comer" by Florida Trend Magazine.

Mr. Razavi graduated from Indiana University with a B.S. in International Business and Business Economics. He received his J.D. from the University of Cincinnati College of Law and was a Merit Scholarship recipient.

**Matthew W. Ruan**

Matthew W. Ruan is Special Counsel at Cohen Milstein and a member of the firm's Antitrust practice group. In this role, Mr. Ruan represents a broad range of individuals, businesses, and unions in civil litigation, with a focus on multi-district class actions and antitrust litigation.

Mr. Ruan is currently litigating the following matters:

- *Wallach v. Eaton Corp., et al.* (D. Del.) (represent putative class of direct purchasers of heavy duty truck transmissions alleging monopolization and conspiracy claims against Eaton Corp. and various truck manufacturers)
- *In re Automotive Parts Antitrust Litigation* (E.D. Mich.) (represent putative class of direct purchasers alleging price-fixing conspiracy against manufacturers of automotive bearings, windshield wiper systems, occupant safety systems, and various other automotive parts)

Prior to joining Cohen Milstein, Mr. Ruan was an associate attorney at Berman DeValerio. While there, he focused on antitrust, securities, and consumer class actions. He also was an associate at Heins Mills & Olson, PLC and also served as a judicial extern for the Hon. Blanch M. Manning of the U.S. District Court for the Northern District of Illinois.

Mr. Ruan graduated from the University of Chicago, with Honors, with an A.B. in Anthropology in 2000. He received his J.D. from the University of Michigan Law School in 2003. During law school, Mr. Ruan served as the Associate Editor of the Michigan Journal of International Law.

Mr. Ruan is not admitted in New York; his practice is under the supervision of partners of the firm.

**Christina Donato Saler**

Christina Donato Saler is an Of Counsel at Cohen Milstein, and a member of the firm's Securities Litigation & Investor Protection practice group.

Prior to joining Cohen Milstein, Ms. Saler was a securities class action litigator at a nationally recognized plaintiffs law firm, where she distinguished herself as a skilled litigator and trusted client counselor of public

pension funds and other institutional investors.

Ms. Saler represents her clients in a broad range of securities, shareholder rights and derivative actions, as well as consumer class actions. Ms. Saler gained substantial trial experience prosecuting First Amendment cases involving individual plaintiffs against media defendants. She has been recognized by Law & Politics and the publishers of Philadelphia Magazine as a Rising Star, as listed in the Super Lawyer's publications (2011 – 2013).

Ms. Saler is a volunteer at Philadelphia Volunteer Indigence Program (VIP), where she represents individuals in jeopardy of losing their homes in the Philadelphia Common Pleas Court's Mortgage Foreclosure Program.

In 2017, Governor Tom Wolf of Pennsylvania appointed Ms. Saler to the Board of the Pennsylvania Humanities Council. Ms. Saler is a member of the Executive Committee and Co-Chairs the Government Advocacy Committee.

Ms. Saler received her B.A. from Fairfield University. She received her J.D., with honors, from Rutgers University Law School. In addition to other academic honors, Ms. Saler was selected for the Rutgers Law Journal and served as the Lead Articles Editor. She is also the author of "Pennsylvania Law Should No Longer Allow a Parent's Right to Testamentary Freedom to Outweigh the Dependent Child's 'Absolute Right to Child Support,'" 34 Rutgers Law Journal, 235 (Fall 2002).

Ms. Saler's professional career began in advertising. She was a Senior Account Executive with the Tierney Agency where she managed various advertising campaigns and Verizon's contractual relationship with its spokesperson James Earl Jones.

### Raymond M. Sarola

Raymond M. Sarola is an Associate at Cohen Milstein, and a member of the Firm's Whistleblower/False Claims Act and the Ethics and Fiduciary Counseling practice groups. Mr. Sarola represents whistleblowers in cases brought under the federal and state false claims acts in a wide range of industries that conduct business with the government, including health care, defense and financial services. As a member of the Firm's Ethics and Fiduciary Counseling practice, Mr. Sarola calls on his experience as a trustee on the New York City pension fund boards in counseling public pension funds fiduciary issues.
Mr. Sarola's experience includes both government service and corporate litigation. Prior to joining the firm, he served as Senior Policy Advisor & Counsel in the Mayor's Office of the City of New York. While there, he represented the Mayor and Commissioner of Finance on the boards of the City's pension systems and deferred compensation plan and advised on legal issues regarding pension investments, benefit payments, securities litigation and corporate governance initiatives. Previously, Mr. Sarola was a litigation associate at a noted defendants' firm, where he represented companies and individuals in securities and other complex commercial litigation, internal investigations and antitrust matters.

Most recently, Mr. Sarola assisted in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states joined to intervene along with the government of the United States than have ever intervened in a qui tam action in history. (United States of America et al., ex rel. Lauren Kieff, v. Wyeth, No.1:03-CV-12366-DPW [D.Mass.].) The $784.6 million settlement was the seventh-largest False Claims Act recovery on record and the second-largest recovery involving a class of drugs in history.

Mr. Sarola has published articles on whistleblower issues, including the use of statistical sampling to prove

large fraud cases.  He has also published and spoken at conferences on pension fund fiduciary issues, in particular the SEC's pay-to-play rule.  He is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the False Claims Act.

Mr. Sarola received his B.A. from the University of North Carolina at Chapel Hill, and earned his J.D. from the University of Pennsylvania Law School, where he also earned a Certificate of Study in Business and Public Policy from the Wharton School.  While in law school, he was a Summer Intern for the Honorable Clarence Newcomer, United States District Court for the Eastern District of Pennsylvania.

**Maya Sequeira**

Maya Sequeira is an Associate at Cohen Milstein and a member of the Public Client practice group. Ms. Sequeira's practice focuses on the representation of state Attorneys General and other public-sector clients in investigations and lawsuits involving health care fraud, as well as other fraudulent and deceptive trade practices.

Currently, Ms. Sequeira is representing public clients in the following high-profile matters:

Opioids: Representing state Attorneys General in investigations and litigation related to deceptive marketing of highly addictive prescription opioids.
Prior to joining Cohen Milstein, Ms. Sequeira practiced at Kaplan & Company, LLP and Sanford Heisler, LLP. Her work focused on representing women in cases of gender and pregnancy discrimination and employees in cases of race discrimination. While at Sanford Heisler, Ms. Sequeira co-authored an amicus brief to the United States Supreme Court in support of reasonable accommodations for working pregnant women.

Ms. Sequeira served as Regional Voter Protection Director for Hillary For America and the Ohio Democratic Party during the 2016 presidential campaign.

During law school, Ms. Sequeira was a law clerk for the California Department of Justice, Corporate Fraud Division, and a legal intern with the San Diego County Public Defender.

Ms. Sequeira graduated Columbia University with a B.A. in Political Science in 2005.  She completed her Post Baccalaureate in Pre-medical Studies in 2007, and earned her J.D. from the University of Michigan Law School in 2013. During law school, she served as a Student Attorney for the Pediatric Advocacy Clinic and Class Representative on the Law School Senate.

**Daniel Silverman**

Daniel H. Silverman is an Associate and a member of the Antitrust Practice Group at Cohen Milstein, having joined the firm in 2012. Mr. Silverman has prosecuted class actions on behalf of both consumers and employees in a variety of industries in courts around the country. Among his successes, Mr. Silverman has helped litigate the following matters:

- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein was co-lead counsel for plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin—life-

saving therapies derived from blood plasma. The lawsuit was resolved for $128 million to compensate customers who were overcharged for these vital therapies.
- Domestic Drywall Antitrust Litigation: Cohen Milstein is co-lead counsel in an antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices. To date, settlements for $45 million have been reached with two of the defendants.
- VFX/Animation Workers: In *In re Animation Workers Antitrust Litigation* (N.D. Cal.), Mr. Silverman serves as co-lead counsel representing a class of animation and visual effects workers in a lawsuit alleging that the defendants, who include Pixar, Lucasfilm Ltd. and DreamWorks Animation, secretly agreed not to solicit class members and to coordinate on compensation.

Prior to joining the firm, Mr. Silverman served as the Executive Director of Legal Economics, LLC, a Cambridge, Massachusetts-based firm specializing in the analysis of complex economic issues related to legal issues. At Legal Economics, he supported expert economic testimony in a variety of antitrust matters involving horizontal price-fixing, mergers, and loyalty discounts in industries ranging from health care and computer hardware to live music promotion. His experience at Legal Economics provides him with unique insight into the inner workings of expert testimony in antitrust matters. In addition, Mr. Silverman has represented public sector clients before the Federal Energy Regulatory Commission, state public utility commissions, and federal appellate courts.

Mr. Silverman is a magna cum laude graduate of Brown University, with a B.S. in Physics, where he was elected to Phi Beta Kappa. He earned a J.D., magna cum laude, from Harvard Law School. In law school, he served as a Managing Editor of the Harvard Environmental Law Review. Mr. Silverman also served as a summer associate at the U.S. Department of Justice in the Environment and Natural Resources Division, Law and Policy Section.

**Julie S. Selesnick**

Julie S. Selesnick is Of Counsel at Cohen Milstein and a member of the firm's Employee Benefits (ERISA) Practice Group. She joined the firm in 2017 and represents the interests of employees, retirees, and plan participants and beneficiaries in ERISA cases in the district court and on appeal.

Ms. Selesnick has represented a wide variety of clients on both sides of the aisle, in mediation, arbitration, and in state and federal courts throughout the country. Prior to joining Cohen Milstein, Ms. Selesnick was an attorney at Zuckerman Spaeder LLP. She also was a partner and trial attorney at Jackson & Campbell P.C.

Ms. Selesnick is an accomplished writer and has written hundreds of legal articles and blog posts, as well as non-legal articles and blog posts. She has also ghost-written hundreds of pages of content on legal websites throughout the country.

Ms. Selesnick graduated Phi Beta Kappa and Pi Sigma Alpha from the San Diego State University with a B.A., cum laude, and received her J.D., from the George Washington University School of Law, Order of the Coif.

**Richard A. Speirs**

Richard A. Speirs is Of Counsel at Cohen Milstein, having joined the firm's Securities Litigation & Investor Protection practice group in 2010. He worked on many of the mortgage-backed securities fraud cases that

were successfully litigated by the firm. Currently, in addition to litigating securities fraud cases, Mr. Speirs is principally responsible for developing and litigating the firm's derivative and merger-related lawsuits.

Since joining the firm, Mr. Speirs has litigated the following notable matters:

- Bear Stearns Mortgage Pass-Through Certificates Litigation: $505 million settlement by JPMorgan Chase & Co. to settle a class action litigation arising from Bear Stearns' sale of $27.2 billion of mortgage-backed securities that proved defective during the U.S. housing and financial crises.
- RALI MBS Litigation: $335 million settlement with Citigroup, Goldman Sachs and UBS. Cohen Milstein was lead counsel in a class action litigation alleging RALI and its affiliates sold shoddy MBS securities that did not meet the standards of their underwriters. Mr. Speirs was a critical member of the team of litigators, conducting fact discovery, deposing economic experts and preparing witnesses.
- Harborview MBS Litigation: $275 million settlement with Royal Bank of Scotland. Cohen Milstein was lead counsel in a complex case, in which presiding Judge Loretta A. Preska, of the U.S. District Court, Southern District of New York, commented on the "job well done" by the Cohen Milstein team.
- Sino-Forest Corp. Securities Litigation: Cohen Milstein served as lead counsel for U.S. investors in securities fraud class action brought on behalf of investors in Sino-Forest Corp., a Canadian corporation, which achieved $150 million in settlements from numerous defendants.
- Ebix Derivative Litigation: Cohen Milstein was lead counsel in a class action lawsuit alleging that Ebix's board of directors breached their duties to shareholders in misrepresenting the company's financial results and organic growth and in internal controls over financial reporting. The settlement resulted in the adoption of significant corporate governance improvements including the appointment of a Lead Independent Director, increasing the number of directors on the corporate governance committee, and creating a director of audit and director of internal tax positions to report directly to the Audit Committee.
- Dynex Capital Securities Fraud Litigation: Cohen Milstein was lead counsel in a class action suit alleging that Dynex Capital, a real estate investment trust, lied about the quality of mobile loans used as collateral for asset-backed loans sold to investors. The $7.5 million settlement is significant in having provided a road map for future asset-backed securities class action litigation.

Mr. Speirs' current notable matters include:

- Bank Leumi Derivative Litigation: $400 million derivative suit against the directors and officers of Bank Leumi, an Israeli bank, asserting that bank officers violated their fiduciary duties in conspiring to aid American taxpayers in hiding income from the IRS.
- Intuitive Surgical Inc. Derivative Litigation: Pending derivative action against the company's directors and officers, asserting breaches of fiduciary duties and insider trading claims in connection with concealing regulatory compliance problems and safety defects in the company's flagship product, the da Vinci robotic surgery system.
- BioScrip Derivative Litigation: Derivative action alleging that BioScrip's directors and officers disregarded regulatory and compliance requirements while engaging in a scheme in which the company accepted illegal kickbacks from Novartis Pharmaceuticals Corp. on the sale of a dangerous Novartis drug resulting in government investigations, penalties and other sanctions.

In a career spanning more than 30 years, Mr. Speirs has been lead or co-lead attorney in a number of securities class actions where the court has issued an important decision under the federal securities laws. Among the issues decided were: the improper grouping of unaffiliated investors in a lead plaintiff motion;

recommendation of default sanction against auditing firm for discovery misconduct involving electronic audit work papers; and liability under Section 10(b) of a non-issuer for disclosures made by the issuer.

Mr. Speirs has appeared on numerous panels and legal events to discuss securities fraud and investor protection. He attended Brooklyn College of the City University of New York, where he received a B.A., *cum laude*, and earned his J.D. at Brooklyn Law School, where he earned the Order of the Coif.

## Catherine A. Torell

Catherine A. Torell is the Director of Securities Research and Analysis at Cohen Milstein, and is a member of the Securities Litigation & Investor Protection Practice Group. As Director of Securities Research and Analysis, Ms. Torell has the exclusive role of analyzing every securities case that is brought to the Firm.

In this role, Ms. Torell is responsible for thoroughly researching the factual and legal merits of all of the federal securities fraud class action filed in the United States. On the basis of her research, she generates written analyses to evaluate the merits of each case for the Firm's Case Evaluation Committee and assesses the potential importance of the case to the Firm's clients. Ms. Torell also prepares the written analyses that are sent to the Firm's institutional clients. Those analyses describe and evaluate the merits of the cases in which those clients have sustained substantial losses and include a recommendation regarding as to whether the Firm believes the client should pursue a lead plaintiff role in the case. Since joining Cohen Milstein in 2002, she has played an integral role in helping to significantly expand the Firm's client base.

In addition to the foregoing, Ms. Torell has played also participated in litigating some of the Firm's most important cases, including such notable matters as:

- In re Parmalat Securities: $90 million settlement. Cohen Milstein was co-lead counsel in a class action lawsuit involving Parmalat, a company often referred to as "Europe's Enron." The litigation involved the biggest fraud in European history, in which revenues were manufactured out of thin air and numerous Parmalat executives were indicted and went to prison. The litigation included settlements with the company's two outside auditors. Ms. Torell was an important member of the litigation team, helping to prepare pleadings and motions papers in the case.

Ms. Torell, joined the Firm in 2002 and has been practicing law for 25 years. Prior to joining Cohen Milstein, Ms. Torell was counsel at a number of prominent plaintiffs' class action firms, serving in co-lead and leadership positions in numerous successful class action cases that resulted in settlements collectively totaling hundreds of millions of dollar for the clients she represented. She served as a co-lead counsel in In re Providian Financial Securities Litigation, which resulted in a $38 million settlement. In approving the settlement, the Court remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work throughout the litigation.

Ms. Torell attended Stony Brook University, receiving a B.A., magna cum laude, in Political Science, and earned her J.D. from St. John's University School of Law, where she was the recipient of the Federal Jurisprudence Award.

**Times Wang**

Times Wang is an Associate at Cohen Milstein and a litigator in the firm's Securities Litigation & Investor Protection practice group. Before joining Cohen Milstein in 2014, Mr. Wang was an associate at a top-tier litigation firm in California.

Currently, Mr. Wang is litigating the following matters:

- Harman Industries International Inc. Securities Litigation: Mr. Wang is a member of the Cohen Milstein team litigating a class action suit against Harman International Industries, Inc., in which Cohen Milstein was successful in obtaining a ruling by the D.C. Court of Appeals for the D.C. Circuit reversing the dismissal of the case and remanding it to the U.S. District Court for further proceedings. The ruling represents a significant win for investors in that it limits the scope of protection afforded by the so-called "safe harbor" for forward-looking statements in the Private Securities Litigation Reform Act of 1995. Mr. Wang was the principal drafter of the briefs in the successful appeal.
- BP Securities Litigation: A class action lawsuit arising out of the disastrous Deepwater oil spill in the Gulf of Mexico. Among other things, the lawsuit alleges that BP misled investors about the severity and financial impact of the Deepwater spill. The U.S. Court of Appeals for the Fifth Circuit recently affirmed class certification for those allegations. Cohen Milstein is co-lead counsel in the litigation, which is ongoing. Mr. Wang joined the litigation team as it headed towards trial.

His successes include:

- HEMT MBS Litigation: $110 million settlement. Cohen Milstein was lead counsel in a class action lawsuit alleging that Credit Suisse sold shoddy mortgage-backed securities, which did not meet underwriting standards, to investors. Mr. Wang was a key member of the Cohen Milstein team from depositions through summary judgment and Daubert briefing. During summary judgment and Daubert briefing, Mr. Wang was particularly focused on loss causation issues, working closely with an outside economics expert.
- ITT Educational Services Inc. Securities Litigation: $16.96 million settlement. Cohen Milstein was lead counsel in a class action lawsuit alleging that ITT and two officers misrepresented and omitted ITT's liabilities under certain risk-sharing agreements it had entered into with third-party student loan lenders. Mr. Wang was responsible for the class certification briefing, working extensively with the firm's outside economics expert.
- U.S. Navy Humanist Chaplain Litigation: Mr. Wang, along with other Cohen Milstein attorneys, represented Jason Heap, a humanist who sued the U.S. Navy for rejecting his application to become a chaplain on the basis of his humanist beliefs. After hard-fought discovery, during which Mr. Wang took the depositions of several senior U.S. Navy officials, the case settled.

Mr. Wang is a graduate of McGill University in Montreal, where he earned a B.A. in East Asian Studies, with Great Distinction, in 2007. He earned his J.D., *cum laude*, from New York University School of Law in 2011, serving as Articles Editor for the *Annual Survey of American Law*. During law school, Mr. Wang interned at Human Rights in China and served as Human Rights Chair of NYU's Asia Law Society.

**Jessica Weiner**

Jessica Weiner is an Associate at Cohen Milstein, and a member of the Antitrust practice group. In this role, Ms. Weiner represents a broad range of individuals and businesses in civil litigation, with a focus on multi-district class actions and antitrust litigation.

Prior to joining the firm, Ms. Weiner clerked for the Honorable Helene N. White of the U.S. Court of Appeals for the Sixth Circuit. She also clerked for the Honorable Lawrence E. Kahn of the U.S. District Court for the Northern District of New York.

Ms. Weiner graduated from Cornell University with a B.A. in Industrial and Labor Relations in 2009. She received her J.D. from Harvard Law School, *cum laude*, in 2014. During law school, Ms. Weiner served as an Article Editor and Online Editor of the Harvard Journal of Law & Gender.

Ms. Weiner is not admitted in the District of Columbia; her practice is under the supervision of partners of the firm.

# EXHIBIT E-3

**TO**

**JOINT DECLARATION OF LYNN LINCOLN SARKO AND MARY J. BORTSCHELLER IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; AND (2) PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS**

**(KELLER ROHRBACK FEES AND EXPENSES)**

*Carver et al. v. Presence Health Network, et al., No. 1:15-cv-2905 (N.D. Ill.)*- Attorney's Fees

Firm Name: <u>Keller Rohrback L.L.P.</u>

Reporting Period: <u>Case Development & Inception - May 21, 2018</u>

| Timekeeper | Hours | Rate | | Lodestar | |
|---|---|---|---|---|---|
| **Attorneys:** | | | | | |
| Alison Gaffney | 162.60 | $ | 475.00 | $ | 77,235.00 |
| Christopher Graver | 1082.70 | $ | 870.00 | $ | 941,949.00 |
| Eric Fierro | 24.70 | $ | 500.00 | $ | 12,350.00 |
| Erin Riley | 19.50 | $ | 775.00 | $ | 15,112.50 |
| Jacob Richards | 30.40 | $ | 500.00 | $ | 15,200.00 |
| Laura Gerber | 108.00 | $ | 775.00 | $ | 83,700.00 |
| Lynn Sarko | 89.10 | $ | 995.00 | $ | 88,654.50 |
| Matthew Gerend | 33.80 | $ | 575.00 | $ | 19,435.00 |
| Ron Kilgard | 128.00 | $ | 940.00 | $ | 120,320.00 |
| Other Attorneys | 4.80 | | | $ | 4,101.50 |
| | | | | | |
| **Sub-Total:** | **1683.60** | | | **$** | **1,378,057.50** |
| | | | | | |
| **Professionals:** | | | | | |
| AJ De Vries | 236.55 | $ | 285.00 | $ | 67,416.75 |
| Alex Gotto | 25.50 | $ | 230.00 | $ | 5,865.00 |
| Amanda Gonzales | 20.80 | $ | 250.00 | $ | 5,200.00 |
| Garrett Serino | 75.25 | $ | 205.00 | $ | 15,426.25 |
| Jennifer Tuato'o | 450.70 | $ | 325.00 | $ | 146,477.50 |
| Karen Trumpower | 22.50 | $ | 241.00 | $ | 5,422.50 |
| Other Professionals | 19.45 | | | $ | 4,719.25 |
| | | | | | |
| **Sub-Total:** | **850.75** | | | **$** | **250,527.25** |
| | | | | | |
| **Total:** | **2534.35** | | | **$** | **1,628,584.75** |

*Carver et al. v. Presence Health Network, et al., No. 1:15-cv-2905 (N.D. Ill.)* - **Case Expenses**

**FIRM NAME: <u>Keller Rohrback L.L.P.</u>**

**REPORTING PERIOD: <u>Case Development & Inception - May 21, 2018</u>**

| Description | Amount |
|---|---:|
| Copies | $ 2,102.88 |
| Telephone | $ 236.84 |
| Postage/Express Delivery | $ 1,756.24 |
| Court Costs | $ 150.00 |
| Computer-Based and Other Research | $ 2,709.36 |
| Travel (Air Fare, Ground Travel, Meals and Lodging) | $ 17,394.29 |
| Relativity Database Services and Licensing | $ 9,182.00 |
| | |
| **Total** | **$ 33,531.61** |

# EXHIBIT E-4

## TO

## JOINT DECLARATION OF LYNN LINCOLN SARKO AND MARY J. BORTSCHELLER IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; AND (2) PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS

## (COHEN MILSTEIN SELLERS & TOLL FEES AND EXPENSES)

*Carver, et al. v. Presence Health Network, et al.*, No. 1:15-cv-2905 (N.D. Ill.)

**Cohen Milstein Sellers & Toll PLLC Lodestar**
Case Development and Inception – May 21, 2018

| Timekeeper | Hours | Rate | Lodestar |
|---|---|---|---|
| **Attorneys:** | | | |
| Bortscheller, Mary, J. | 46.25 | $555 | $25,668.75 |
| Handorf, Karen, L. | 34.25 | $910 | $31,167.50 |
| Horwitz, Julia | 48.50 | $505 | $24,492.50 |
| Lempert, Scott | 161.50 | $730 | $117,895.00 |
| Reiser, Julie, G. | 38.25 | $770 | $29,452.50 |
| Yau, Michelle, C. | 22.50 | $690 | $15,525.00 |
| Other Attorneys: | 63.25 | | $28,736.25 |
| Subtotal: | 414.50 | | $272,937.50 |
| | | | |
| **Professionals:** | | | |
| Dewees, Maria | 54.00 | $290 | $15,660.00 |
| Other Professionals: | 14.50 | | $3,955.00 |
| Subtotal: | 68.50 | | $19,615.00 |
| | | | |
| **TOTAL LODESTAR:** | **483.00** | | **$292,552.50** |

*Carver, et al. v. Presence Health Network, et al.*, No. 1:15-cv-2905 (N.D. Ill.)

**Cohen Milstein Sellers & Toll PLLC Expenses**
Case Development and Inception – May 21, 2018

| Description of Expense | Amount |
|---|---|
| Copies | $5.40 |
| Telephone/Facsimile | $34.95 |
| Postage/Express Delivery | $38.96 |
| Court Costs | $250.00 |
| Computer Research | $719.24 |
| Travel (Airfare, ground travel, meals, lodging) | $401.81 |
| Mediation Services | $6,430.76 |
| Other Professional Services | $2,250.00 |
| | |
| **TOTAL EXPENSES:** | **$10,131.12** |

# EXHIBIT E-5

## TO

## JOINT DECLARATION OF LYNN LINCOLN SARKO AND MARY J. BORTSCHELLER IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; AND (2) PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS

## (DECLARATION OF JAMES B. ZOURAS)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LESLEE R. CARVER, *et al.*,

                Plaintiffs,

    v.

PRESENCE HEALTH NETWORK, *et al.*,

                Defendants.

Case No. 1:15-cv-02905

Judge Harry D. Leinenweber

Magistrate Judge M. David Weisman

**DECLARATION OF JAMES B. ZOURAS IN SUPPORT OF
PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

I, James B. Zouras, declare as follows:

    1.  I am a founder and partner of Stephan Zouras LLP. My firm is counsel for the Named Plaintiffs Leslee Carver, Diane Eslinger, Lisa Jenkins, and Susan Phillips in the above-captioned action.

    2.  I have personal knowledge of the matters set forth herein and if called to do so, I could and would testify competently thereto. I submit this Fee Declaration in support of Plaintiffs' request for an award of attorneys' fees and reimbursement of expenses.

    3.  The information in this Fee Declaration regarding my firm's time and expenses is taken from contemporaneous time and expense printouts prepared and maintained by my firm in the ordinary course of business. I reviewed these printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time and expenses committed to the litigation. Based on that review, I believe that the time reflected in my firm's lodestar calculation and the expenses for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. In

1

addition I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4. The total number of hours spent on this litigation by my firm through May 21, 2018, is 112.30 hours. The total lodestar amount for attorney time based on the firm's current rates is $66,250.00. The hourly rates shown below are the usual and customary rates set by the firm for each individual. A breakdown of the lodestar is as follows:

| Attorney or Other Professional | Rate | Hours | Current Lodestar |
|---|---|---|---|
| Becvar, Teresa | $475.00 | 4.1 | $1,947.50 |
| Bowers, Kerry | $175.00 | 11.4 | $1,995.00 |
| Fernandez, Cara | $175.00 | 0.1 | $17.50 |
| Foster, Colleen | $175.00 | 1.0 | $175.00 |
| Halverson, Erica | $175.00 | 1.2 | $210.00 |
| Jenkins, Haley | $325.00 | 1.2 | $390.00 |
| Mitchell, Katie | $350.00 | 0.5 | $175.00 |
| Ortiz-Acosta, Jesica | $175.00 | 0.6 | $105.00 |
| Stephan, Christy | $175.00 | 2.0 | $350.00 |
| Stephan, Ryan | $675.00 | 9.6 | $6,480.00 |
| Zouras, James | $675.00 | 80.6 | $54,405.00 |
| | | | |
| **Totals:** | | **112.30** | **$66,250.00** |

5. My firm seeks an award of $1,069.02 in expenses in connection with the prosecution of the litigation through May 21, 2018. They are broken down as follows:

| Expense Description | Amount |
|---|---|
| Copying documents | $82.00 |
| Conference | $28.07 |
| Filing fees | $400.00 |
| Meetings | $160.75 |
| Postage | $9.77 |
| Research | $196.43 |
| Service fee | $168.00 |
| Transcript Costs | $24.00 |
| **Total Expenses:** | **$1,069.02** |

6. The expenses pertaining to this case are reflected in the books and records of this firm. These book s and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of May, 2018, in Chicago, Illinois.

James B. Zouras

# EXHIBIT F

### TO

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

### (DECLARATION OF CHRISTOPHER GRAVER)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| LESLEE R. CARVER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PRESENCE HEALTH NETWORK, *et al*.,<br><br>Defendants. | Case No. 1:15-cv-02905<br><br>Judge Harry D. Leinenweber<br><br>Magistrate Judge M. David Weisman |

**DECLARATION OF CHRISTOPHER GRAVER IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

Pursuant to 28 U.S.C. § 1746, Christopher Graver declares as follows:

1.      I am an attorney and a partner with the law firm Keller Rohrback L.L.P. ("Keller Rohrback"), one of the two firms preliminarily approved as Class Counsel for Leslee Carver, Diane Eslinger, Lisa Jenkins, and Susan Phillips ("Named Plaintiffs") by the Court.[1] I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.      In connection with the pending proposed Revised and Final Class Action Settlement Agreement in this matter ("Settlement"), I have personally responded to a number of inquiries about the Settlement.

3.      I have reviewed the six documents filed with the Court by members or purported members of the settlement class as of May 23, 2018, and have responded to them as described below.

---

[1] Order Prelim. Approving Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hr'g ("Preliminary Approval Order" or "Prelim. Approval Order") ¶¶ 1(G), 2, ECF No. 118.

4.      Tanya McDaniel filed two identical documents (one with attachments) styled as a "Written Objection," ECF Nos. 119, 120, on April 5, 2018. Ms. McDaniel did not provide an email address but did provide a telephone number and a mailing address. Upon review of the Written Objection, it appears to me that Ms. McDaniel has not stated an objection to the settlement, but simply wishes not to be involved. On April 6, 2018, I called the telephone number provided on the Written Objection and left a voicemail message and callback number, offering to discuss the Written Objection. I received no response to that message. On May 17, 2018, I wrote Ms. McDaniel a letter requesting that she contact me to discuss the Written Objection. On May 21, 2018, I received a voicemail on my office telephone number in which the caller identified herself as Tanya McDaniel, acknowledged receipt of my letter, and confirmed that she did not wish to be involved in the lawsuit, stating in part:

> I am still standing firm on that objection and I am not interested in pursuing any litigation with Carver versus Presence Health Network. And I really would appreciate if you would discontinue any communications with me regarding that matter I don't want to be involved with that at all….

In light of Ms. McDaniels' request I have not pursued further communications with her.

5.      Michael J. Vines filed a letter on April 11, 2018, ECF No. 121. Mr. Vines' letter is phrased as an inquiry rather than an objection. I communicated with Mr. Vines by email and telephone on several occasions between April 12, 2018 and April 17, 2018, and answered his questions. At the conclusion of our communications Mr. Vines confirmed to me, orally and by email, that he has no objection to the Settlement.

6.      Halina Maria Bysiek filed two handwritten letters on April 27, 2018, ECF Nos. 122, 123. Ms. Bysiek did not provide a telephone number or email address. Neither letter is identified as an objection, and it appears to me that Ms. Bysiek's letters do not raise objections to the Settlement. The first letter, ECF No. 122, appears to address a 401(K) plan that is not the

2

subject of this lawsuit.  The second letter, ECF No. 123, may contain questions that relate to the Settlement, but I was unable to respond to them without clarification.  On May 16, 2018, I wrote to Ms. Bysiek at the address in her letter, explained that the lawsuit did not involve a 401(K) plan, and asked her to contact me to clarify her position.  I have not received a response.

7.      Judith Holley filed a letter on May 15, 2018, ECF No. 124.  Ms. Holley provided a mailing address but did not provide a telephone number or email address.  From her letter, it appears to me that Ms. Holley does not object to the settlement but requests removal from the lawsuit as she does not believe she was a Plan participant.  On May 15, 2018, I wrote a letter to Ms. Holley at the address given in her letter, explaining that the Settlement would not affect her if she was not a member of the Class, and asking her to contact me with any questions.  I have not heard further from Ms. Holley.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of May, 2018, in Maricopa County, Arizona.

By: */s/ Christopher Graver*
Christopher Graver
**KELLER ROHRBACK L.L.P.**
3101 North Central, Suite 1400
Phoenix, AZ  85012
Tel.: (602) 248-0088
Fax: (602) 248-2822
cgraver@kellerrohrback.com

4813-4532-9766, v. 3

# EXHIBIT G

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (DECLARATION OF LESLEE R. CARVER)

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LESLEE R. CARVER, *et al.*,

                              Plaintiffs,

    v.

PRESENCE HEALTH NETWORK, *et al.*,

                              Defendants.

Case No. 1:15-cv-02905

Judge Harry D. Leinenweber

Magistrate Judge M. David Weisman

## DECLARATION OF LESLEE R. CARVER IN SUPPORT OF
## CLASS ACTION SETTLEMENT

I, Leslee R. Carver, declare under penalty of perjury under the laws of the United States:

1. I am one of the Named Plaintiffs and Class Representatives in the above-captioned action. As a Named Plaintiff and Class Representative, I have kept in regular contact with the lawyers in this litigation and have approved all major litigation decisions since I commenced this class action litigation in March 2014.

2. I have personal knowledge of the matters set forth herein and if called to do so, I could and would testify competently thereto. I submit this Declaration in support of Plaintiffs' Motion for Final Approval of the Settlement and Plaintiffs' Counsel's Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards. I have knowledge of the matters set forth in this Declaration based on my involvement in providing my lawyers with information relevant to the claims in this litigation concerning the Resurrection Health Care Retirement Plan (the "RHC Plan"), assisting Plaintiffs' Counsel in drafting the Complaint, and staying apprised of the litigation including the negotiations that led to the settlement. I could and would testify competently to the matters set forth herein if called upon to do so.

1

**Work Performed on Behalf of the Class**

3. I was employed by Resurrection Health Care Corporation ("Resurrection") as a Clinical Nutrition Manager when Resurrection acquired Saint Joseph Hospital in 2001, and I continued that employment after Presence Health Network ("Presence") took over Resurrection. I was a participant in the RHC Plan. I retired in December 2013 and am receiving pension benefits.

4. On January 14, 2015, I retained Stephan Zouras, LLP to investigate ERISA claims that I might have concerning the RHC Plan, which in turn entered into a co-counsel agreement with Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, P.L.L.C. (together, "Class Counsel"). During this investigation, I participated in phone calls with my lawyers to help them develop the factual information that they would eventually use in the Complaint. I also provided my lawyers with documents in my possession related to the RHC Plan.

5. After consulting with Class Counsel on several occasions and asking questions about Class Counsel's litigation strategy, I agreed to be a Named Plaintiff in this action, and to act as a class representative of any certified class. I understood that this would entail having my name in a publicly-filed complaint; ongoing engagement with my legal team; participating in discovery, including a possible deposition; participating in a potential trial; and acting at all times in the best interest of the class.

6. To this end, I authorized Stephan Zouras, LLP, Keller Rohrback and Cohen Milstein to act as my attorneys for this litigation and further authorized them to file the Complaint, which they did on April 2, 2015.

7. I thereafter met with my attorneys, telephonically and in person, to discuss motion practice, amendments to the Complaint, discovery requests and responses, and litigation strategy. After the case was stayed while the Supreme Court considered an interlocutory appeal of a

2

"church plan" issue in the *Stapleton v. Advocate Healthcare* case in this district, I continued to communicate with my lawyers to keep abreast of developments affecting my case.

**Support for the Settlement**

8.   When mediation began in September, 2017, and during subsequent negotiations, I discussed settlement strategies with my lawyers and learned about Presence's defenses.  Class Counsel and I also discussed the risks of ongoing litigation in light of the Supreme Court's reversal of the decisions of the trial court and United States Courts of Appeals in other church plan cases, including *Stapleton v. Advocate Health Care*.

9.   As the mediation negotiations progressed, I participated in calls, primarily with James B. Zouras and Christopher Graver, to discuss the progress of the mediation and settlement strategy.

10. Based on my understanding of the risks of ongoing litigation relative to accepting the mediator's proposal, I believe the settlement that was achieved provides the best outcome for the class I sought to represent because Plan participants (including participants in another Presence retirement plan that is the subject of this lawsuit, the Provena Health Employees' Pension Plan) will be protected with a $20 million guarantee from Ascension Health if there are not sufficient funds to pay out obligations; and for seven and one-half years participants will have access to information about the Plan and their benefits, their accrued benefits will not be reduced, and they will receive other ERISA-like protections.

**Support for Counsel's Fees, Litigation Expenses, and Incentive Awards**

11. I understand that Plaintiffs' Counsel seek an award of $1.55 million, which includes their fees, their litigation expenses, and incentive awards to Named Plaintiffs.

12. While I understand that this decision is left to the Court, I have taken my role as a Class Representative seriously and have carefully considered my lawyers' request.

13. I recognize that Counsel took a risk in litigating this case. In my opinion, Counsel represented the class well during this litigation. They were highly qualified to represent the class because of their work, including researching and developing the area of ERISA law on the church plan exemption and bringing and litigating this and other church plan cases. They contacted me about major decisions, discussed my questions about the risks of continued litigation, and took my concerns into account. I believe that they carefully considered what was in the class's interest when making a settlement recommendation to me.

14. I understand that Class Counsel also believe that the contributions I have made to the litigation justify an incentive award. I understand that, when asking for this award, they considered my leading role in representing my colleagues and becoming one of the names associated with this litigation, my contributions in framing the Complaint, and my attention to various settlement options in light of the risks of continued litigation. As set forth above, since April of 2015, I have diligently worked with Counsel to understand how the RHC Plan would have operated differently if it had complied with ERISA requirements. After the Supreme Court's decision in the *Stapleton v. Advocate Health Care* case, I carefully considered how to secure the greatest amount of pension protections for Plan participants before approving the settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of May, 2018.

Leslee R. Carver

4823-9080-5093, v. 3

4

# EXHIBIT H

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (DECLARATION OF DIANE M. ESLINGER)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LESLEE R. CARVER, *et al.*,

                Plaintiffs,

v.

PRESENCE HEALTH NETWORK, *et al.*,

                Defendants.

Case No. 1:15-cv-02905

Judge Harry D. Leinenweber

Magistrate Judge M. David Weisman

## DECLARATION OF DIANE M. ESLINGER IN SUPPORT OF
## APPROVAL OF CLASS ACTION SETTLEMENT

I, Diane M. Eslinger, declare under penalty of perjury under the laws of the United States:

1. I am one of the Named Plaintiffs and Class Representatives in the above-captioned action. I was first named as a plaintiff in this action in Plaintiffs' First Amended Complaint filed on July 14, 2016. As a Named Plaintiff and Class Representative, I have kept in regular contact with the lawyers in this litigation and have approved all major litigation decisions since I joined this class action litigation in July 2016.

2. I have personal knowledge of the matters set forth herein and if called to do so, I could and would testify competently thereto. I submit this Declaration in support of Plaintiffs' Motion for Final Approval of the Settlement and Plaintiffs' Counsel's Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards. I have knowledge of the matters set forth in this Declaration based on my involvement in providing my lawyers with information relevant to the claims in this litigation concerning the Provena Health Employees' Pension Plan (the "Provena Plan"), assisting Plaintiffs' Counsel in drafting the First Amended Complaint, and

1

staying apprised of the litigation including the negotiations that led to the settlement. I could and would testify competently to the matters set forth herein if called upon to do so.

**Work Performed on Behalf of the Class**

3.  I was employed by Presence PRV Health or its predecessors ("Provena") as follows:

    a.  I was employed at Saint Joseph Medical Center (i) as a Unit Clerk from July 1978 to June 1986, and (ii) as an Office Receptionist/Office Manager from June 1986 to May 1991;

    b.  I was employed at Morris Hospital as a Biller/Coder from May 1998 to July 2000;

    c.  I was employed at Provena Service Corp. as an Office Manager from July 2000 to April 2002; and

    d.  I was employed at Med 3000 Central Health Solutions as a Practice Coordinator from April 2002 to September 2003.

4.  I was a participant in the Provena Plan, and I am now receiving pension benefits under the Provena Plan.

5.  On July 8, 2016, I retained Keller Rohrback L.L.P. to investigate ERISA claims that I might have concerning the Provena Plan and, if appropriate, to add my claims to the claims already pending in the above-captioned lawsuit. Keller Rohrback associated with other counsel in the pending lawsuit, Cohen Milstein Sellers & Toll, P.L.L.C., and Stephan Zouras LLP (together, "Class Counsel"). During this investigation, I participated in phone calls with my lawyers to help them develop the factual information that they would use in the First Amended Complaint. I also provided my lawyers with documents in my possession related to the Provena Plan.

6. After consulting with Class Counsel and asking questions about Class Counsel's litigation strategy, I agreed to be a Named Plaintiff in this action, and to act as a class representative of any certified class. I understood that this would entail having my name in a publicly-filed complaint; ongoing engagement with my legal team; participating in discovery, including a possible deposition; participating in a potential trial; and acting at all times in the best interest of the class.

7. To this end, I authorized Keller Rohrback, Cohen Milstein, and Stephan Zouras to act as my attorneys for this litigation and further authorized them to file the First Amended Complaint, which they did on July 14, 2016.

8. I thereafter met with my attorneys, telephonically and in person, to discuss motion practice, amendments to the Complaint, discovery requests and responses, and litigation strategy. After the case was stayed while the Supreme Court considered an interlocutory appeal of a "church plan" issue in the *Stapleton v. Advocate Healthcare* case in this district, I continued to communicate with my lawyers to keep abreast of developments affecting my case.

**Support for the Settlement**

9. When mediation began in September, 2017, and during subsequent negotiations, I discussed settlement strategies with my lawyers and learned about Presence's defenses. Class Counsel and I also discussed the risks of ongoing litigation in light of the Supreme Court's reversal of the decisions of the trial court and United States Courts of Appeals in other church plan cases, including *Stapleton v. Advocate Health Care*.

10. As the mediation negotiations progressed, I participated in calls, primarily with Christopher Graver, to discuss the progress of the mediation and settlement strategy.

11. Based on my understanding of the risks of ongoing litigation relative to accepting the mediator's proposal, I believe the settlement that was achieved provides the best outcome for the class I sought to represent because Plan participants (including participants in another Presence retirement plan that is the subject of this lawsuit, the Resurrection Health Care Retirement Plan) will be protected with a $20 million guarantee from Ascension Health if there are not sufficient funds to pay out obligations; and for seven and one-half years participants will have access to information about the Plan and their benefits, their accrued benefits will not be reduced, and they will receive other ERISA-like protections.

**Support for Counsel's Fees, Litigation Expenses, and Incentive Awards**

12. I understand that Plaintiffs' Counsel seek an award of $1.55 million, which includes their fees, their litigation expenses, and incentive awards to Named Plaintiffs.

13. While I understand that this decision is left to the Court, I have taken my role as a Class Representative seriously and have carefully considered my lawyers' request.

14. I recognize that Counsel took a risk in litigating this case. In my opinion, Counsel represented the class well during this litigation. They were highly qualified to represent the class because of their work, including researching and developing the area of ERISA law on the church plan exemption and bringing and litigating this and other church plan cases. They contacted me about major decisions, discussed my questions about the risks of continued litigation, and took my concerns into account. I believe that they carefully considered what was in the class's interest when making a settlement recommendation to me.

15. I understand that Class Counsel also believe that the contributions I have made to the litigation justify an incentive award. I understand that, when asking for this award, they considered my leading role in representing my colleagues and becoming one of the names

associated with this litigation, my contributions in framing the First Amended Complaint, and my attention to various settlement options in light of the risks of continued litigation. As set forth above, since July of 2016, I have diligently worked with Counsel to understand how the Provena Plan would have operated differently if it had complied with ERISA requirements. After the Supreme Court's decision in the *Stapleton v. Advocate Health Care* case, I carefully considered how to secure the greatest amount of pension protections for Plan participants before approving the settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of May, 2018.

_____
Diane M. Eslinger

4821-3440-2406, v. 2

# EXHIBIT I

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (DECLARATION OF LISA A. JENKINS)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LESLEE R. CARVER, *et al.*, | Case No. 1:15-cv-02905 |
| Plaintiffs, | |
| v. | Judge Harry D. Leinenweber |
| PRESENCE HEALTH NETWORK, *et al.*, | Magistrate Judge M. David Weisman |
| Defendants. | |

### DECLARATION OF LISA A. JENKINS IN SUPPORT OF
### APPROVAL OF CLASS ACTION SETTLEMENT

I, Lisa A. Jenkins, declare under penalty of perjury under the laws of the United States:

1. I am one of the Named Plaintiffs and Class Representatives in the above-captioned action. I was first named as a plaintiff in this action in Plaintiffs' First Amended Complaint filed on July 14, 2016. As a Named Plaintiff and Class Representative, I have kept in regular contact with the lawyers in this litigation and have approved all major litigation decisions since I joined this class action litigation in July 2016.

2. I have personal knowledge of the matters set forth herein and if called to do so, I could and would testify competently thereto. I submit this Declaration in support of Plaintiffs' Motion for Final Approval of the Settlement and Plaintiffs' Counsel's Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards. I have knowledge of the matters set forth in this Declaration based on my involvement in providing my lawyers with information relevant to the claims in this litigation concerning the Provena Health Employees' Pension Plan (the "Provena Plan"), assisting Plaintiffs' Counsel in drafting the First Amended Complaint, and

1

staying apprised of the litigation including the negotiations that led to the settlement. I could and would testify competently to the matters set forth herein if called upon to do so.

**Work Performed on Behalf of the Class**

3. I was employed at Lakeview Medical Center, later known as United Samaritan Medical Center and then Provena United Samaritan Medical Center, from June 1987 until December 2004. I was initially employed as an LPN in the Medical-Surgical Unit starting in 1987. I transferred to the Intensive Care Unit in 1989. I became an RN in 1992, and continued to work in the ICU until December, 2004.

4. I am a participant in the Provena Plan. I have not yet begun receiving benefits.

5. On July 11, 2016, I retained Keller Rohrback L.L.P. to investigate ERISA claims that I might have concerning the Provena Plan and, if appropriate, to add my claims to the claims already pending in the above-captioned lawsuit. Keller Rohrback associated with other counsel in the pending lawsuit, Cohen Milstein Sellers & Toll, P.L.L.C., and Stephan Zouras LLP (together, "Class Counsel"). During this investigation, I participated in phone calls with my lawyers to help them develop the factual information that they would use in the First Amended Complaint. I also provided my lawyers with documents in my possession related to the Provena Plan.

6. After consulting with Class Counsel and asking questions about Class Counsel's litigation strategy, I agreed to be a Named Plaintiff in this action, and to act as a class representative of any certified class. I understood that this would entail having my name in a publicly-filed complaint; ongoing engagement with my legal team; participating in discovery, including a possible deposition; participating in a potential trial; and acting at all times in the best interest of the class.

7.  To this end, I authorized Keller Rohrback, Cohen Milstein, and Stephan Zouras to act as my attorneys for this litigation and further authorized them to file the First Amended Complaint, which they did on July 14, 2016.

8.  I thereafter met with my attorneys, telephonically and in person, to discuss motion practice, amendments to the Complaint, discovery requests and responses, and litigation strategy. After the case was stayed while the Supreme Court considered an interlocutory appeal of a "church plan" issue in the *Stapleton v. Advocate Healthcare* case in this district, I continued to communicate with my lawyers to keep abreast of developments affecting my case.

**Support for the Settlement**

9.  When mediation began in September, 2017, and during subsequent negotiations, I discussed settlement strategies with my lawyers and learned about Presence's defenses. Class Counsel and I also discussed the risks of ongoing litigation in light of the Supreme Court's reversal of the decisions of the trial court and United States Courts of Appeals in other church plan cases, including *Stapleton v. Advocate Health Care*.

10. As the mediation negotiations progressed, I participated in calls, primarily with Christopher Graver, to discuss the progress of the mediation and settlement strategy.

11. Based on my understanding of the risks of ongoing litigation relative to accepting the mediator's proposal, I believe the settlement that was achieved provides the best outcome for the class I sought to represent because Plan participants (including participants in another Presence retirement plan that is the subject of this lawsuit, the Resurrection Health Care Retirement Plan) will be protected with a $20 million guarantee from Ascension Health if there are not sufficient funds to pay out obligations; and for seven and one-half years participants will have access to

3

information about the Plan and their benefits, their accrued benefits will not be reduced, and they will receive other ERISA-like protections.

### Support for Counsel's Fees, Litigation Expenses, and Incentive Awards

12. I understand that Plaintiffs' Counsel seek an award of $1.55 million, which includes their fees, their litigation expenses, and incentive awards to Named Plaintiffs.

13. While I understand that this decision is left to the Court, I have taken my role as a Class Representative seriously and have carefully considered my lawyers' request.

14. I recognize that Counsel took a risk in litigating this case. In my opinion, Counsel represented the class well during this litigation. They were highly qualified to represent the class because of their work, including researching and developing the area of ERISA law on the church plan exemption and bringing and litigating this and other church plan cases. They contacted me about major decisions, discussed my questions about the risks of continued litigation, and took my concerns into account. I believe that they carefully considered what was in the class's interest when making a settlement recommendation to me.

15. I understand that Class Counsel also believe that the contributions I have made to the litigation justify an incentive award. I understand that, when asking for this award, they considered my leading role in representing my colleagues and becoming one of the names associated with this litigation, my contributions in framing the First Amended Complaint, and my attention to various settlement options in light of the risks of continued litigation. As set forth above, since July of 2016, I have diligently worked with Counsel to understand how the Provena Plan would have operated differently if it had complied with ERISA requirements. After the Supreme Court's decision in the *Stapleton v. Advocate Health Care* case, I carefully

considered how to secure the greatest amount of pension protections for Plan participants before approving the settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of May, 2018.

Lisa A. Jenkins

Lisa A. Jenkins

4839-6469-2070, v. 3

5

# EXHIBIT J

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (DECLARATION OF SUSAN PHILLIPS)



RECEIVED

MAY 24 2018

KELLER ROHRBACK L.L.P.
RECEIVED BY _____
DOCKET Y/N
DOCKETED BY _____

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LESLEE R. CARVER, *et al.*,

               Plaintiffs,

v.

PRESENCE HEALTH NETWORK, *et al.*,

               Defendants.

Case No. 1:15-cv-02905

Judge Harry D. Leinenweber

Magistrate Judge M. David Weisman

## DECLARATION OF SUSAN PHILLIPS IN SUPPORT OF
## APPROVAL OF CLASS ACTION SETTLEMENT

I, Susan Phillips, declare under penalty of perjury under the laws of the United States:

1.    I am one of the Named Plaintiffs and Class Representatives in the above-captioned action. I was first named as a plaintiff in this action in Plaintiffs' First Amended Complaint filed on July 14, 2016. As a Named Plaintiff and Class Representative, I have kept in regular contact with the lawyers in this litigation and have approved all major litigation decisions since I joined this class action litigation in July 2016.

2.    I have personal knowledge of the matters set forth herein and if called to do so, I could and would testify competently thereto. I submit this Declaration in support of Plaintiffs' Motion for Final Approval of the Settlement and Plaintiffs' Counsel's Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards. I have knowledge of the matters set forth in this Declaration based on my involvement in providing my lawyers with information relevant to the claims in this litigation concerning the Provena Health Employees' Pension Plan (the "Provena Plan"), assisting Plaintiffs' Counsel in drafting the First Amended Complaint, and

staying apprised of the litigation including the negotiations that led to the settlement. I could and would testify competently to the matters set forth herein if called upon to do so.

**Work Performed on Behalf of the Class**

3. I was employed as a Coordinator – Doctors Incomplete Area at St. Joseph Hospital, which later became St. Joseph Medical Center, from July 1966 to July 1979. I was later employed by Provena as a Coordinator – Doctors Incomplete Area from October 1994 until my retirement in October 2015.

4. I am a participant in the Provena Plan and I am currently receiving benefits.

5. On July 7, 2016, I retained Keller Rohrback L.L.P. to investigate ERISA claims that I might have concerning the Provena Plan and, if appropriate, to add my claims to the claims already pending in the above-captioned lawsuit. Keller Rohrback associated with other counsel in the pending lawsuit, Cohen Milstein Sellers & Toll, P.L.L.C., and Stephan Zouras LLP (together, "Class Counsel"). During this investigation, I participated in phone calls with my lawyers to help them develop the factual information that they would use in the First Amended Complaint. I also provided my lawyers with documents in my possession related to the Provena Plan.

6. After consulting with Class Counsel and asking questions about Class Counsel's litigation strategy, I agreed to be a Named Plaintiff in this action, and to act as a class representative of any certified class. I understood that this would entail having my name in a publicly-filed complaint; ongoing engagement with my legal team; participating in discovery, including a possible deposition; participating in a potential trial; and acting at all times in the best interest of the class.

7. To this end, I authorized Keller Rohrback, Cohen Milstein, and Stephan Zouras to act as my attorneys for this litigation and further authorized them to file the First Amended Complaint, which they did on July 14, 2016.

8. I thereafter met with my attorneys, telephonically and in person, to discuss motion practice, amendments to the Complaint, discovery requests and responses, and litigation strategy. After the case was stayed while the Supreme Court considered an interlocutory appeal of a "church plan" issue in the *Stapleton v. Advocate Healthcare* case in this district, I continued to communicate with my lawyers to keep abreast of developments affecting my case.

**Support for the Settlement**

9. When mediation began in September, 2017, and during subsequent negotiations, I discussed settlement strategies with my lawyers and learned about Presence's defenses. Class Counsel and I also discussed the risks of ongoing litigation in light of the Supreme Court's reversal of the decisions of the trial court and United States Courts of Appeals in other church plan cases, including *Stapleton v. Advocate Health Care*.

10. As the mediation negotiations progressed, I participated in calls, primarily with Christopher Graver, to discuss the progress of the mediation and settlement strategy.

11. Based on my understanding of the risks of ongoing litigation relative to accepting the mediator's proposal, I believe the settlement that was achieved provides the best outcome for the class I sought to represent because Plan participants (including participants in another Presence retirement plan that is the subject of this lawsuit, the Resurrection Health Care Retirement Plan) will be protected with a $20 million guarantee from Ascension Health if there are not sufficient funds to pay out obligations; and for seven and one-half years participants will have access to

information about the Plan and their benefits, their accrued benefits will not be reduced, and they will receive other ERISA-like protections.

**Support for Counsel's Fees, Litigation Expenses, and Incentive Awards**

12. I understand that Plaintiffs' Counsel seek an award of $1.55 million, which includes their fees, their litigation expenses, and incentive awards to Named Plaintiffs.

13. While I understand that this decision is left to the Court, I have taken my role as a Class Representative seriously and have carefully considered my lawyers' request.

14. I recognize that Counsel took a risk in litigating this case. In my opinion, Counsel represented the class well during this litigation. They were highly qualified to represent the class because of their work, including researching and developing the area of ERISA law on the church plan exemption and bringing and litigating this and other church plan cases. They contacted me about major decisions, discussed my questions about the risks of continued litigation, and took my concerns into account. I believe that they carefully considered what was in the class's interest when making a settlement recommendation to me.

15. I understand that Class Counsel also believe that the contributions I have made to the litigation justify an incentive award. I understand that, when asking for this award, they considered my leading role in representing my colleagues and becoming one of the names associated with this litigation, my contributions in framing the First Amended Complaint, and my attention to various settlement options in light of the risks of continued litigation. As set forth above, since July of 2016, I have diligently worked with Counsel to understand how the Provena Plan would have operated differently if it had complied with ERISA requirements. After the Supreme Court's decision in the *Stapleton v. Advocate Health Care* case, I carefully

4

considered how to secure the greatest amount of pension protections for Plan participants before approving the settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _17th_ day of May, 2018.

_Susan Phillips_

Susan Phillips

4813-8565-4118, v. 1

# EXHIBIT K

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (CLASS NOTICE)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| LESLEE R. CARVER, *et al.*, | |
| Plaintiffs, | Case No. 1:15-cv-02905 |
| v. | Judge Harry D. Leinenweber |
| PRESENCE HEALTH NETWORK, *et al.*, | |
| Defendants. | Magistrate Judge M. David Weisman |

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION, FINAL APPROVAL HEARING, AND MOTION FOR ATTORNEYS'**
**FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

This notice ("Notice") advises you of a proposed settlement (the "Settlement") of a class action lawsuit brought by Plaintiffs Leslee Carver, Diane Eslinger, Lisa Jenkins, and Susan Phillips (the "Named Plaintiffs") on behalf of themselves, and participants and beneficiaries of the Resurrection Health Care Retirement Plan (the "RHC Plan") and the Provena Health Employees' Pension Plan (the "Provena Plan") (together, the "Plans"), and as representatives of the Settlement Class against Defendants (defined below). Plaintiffs allege that the non-profit healthcare system Presence Health Network breached its fiduciary duties and violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with respect to the Plans. You are receiving this Notice because you may be a participant, or a beneficiary of a participant, in one or both of the Plans.

**PLEASE READ THIS NOTICE CAREFULLY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION.**
**YOU HAVE NOT BEEN SUED.**

As described in more detail below, this Settlement is made in compromise of claims made by Plaintiffs, for themselves and on behalf of all others similarly situated, against Defendants in the litigation (the "Action"). Plaintiffs claim that the Plans were improperly operated by Presence Health Network as "church plans" exempt from the requirements imposed by ERISA. Plaintiffs claim that, among other violations, Presence Health Network underfunded the Plans, in the aggregate, by over $175 million, and failed to furnish Plaintiffs or any member of the class with a Pension Benefit Statement, Summary Annual Reports, Notification of Failure to Meet Minimum Funding, or Funding Notices.

Defendants deny all of these claims and have claimed these Plans are "church plans" that are exempt from ERISA requirements.

Named Plaintiffs, on behalf of themselves and the Class, have agreed to settle all Released Claims (as defined in the Settlement Agreement) against Defendants and other Releasees (as defined in the Settlement Agreement) in exchange for, among other terms, a guarantee of payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits. The guarantee is given by Ascension Health, an entity that is not a Defendant in this litigation; Ascension Health is a Releasee as defined in the Settlement Agreement. On Thursday, March 1, 2018, Ascension Health acquired Presence Care Transformation Corporation. Presence Care Transformation Corporation ("Presence") is the statutory employer of the Presence Health hospitals' employees and is the sole corporate member of the Presence Health hospital corporations and other business interests. In addition to acquiring Presence Care Transformation Corporation, Ascension Health also acquired all Presence entities other than Presence Health Network and Resurrection University. After March 1, 2018, the Plans will be sponsored by Ascension Health or a subsidiary thereof. The Settlement also provides that Ascension Health, or any of the Releasees, may buy out this guarantee obligation at any time by making contributions to the Plans' trusts in an aggregate total of $15,000,000 (fifteen million dollars). Upon the Plans' trusts' timely receipt of aggregate contributions in the amount of $15,000,000 (fifteen million dollars), any guarantee obligation will be satisfied and extinguished. Because the Plans are defined benefit pension plans and not defined contribution plans with individual accounts, like a 403(b) plan or 401(k) plan, *the cash amount, if any, will be contributed to the Plans as a whole, rather than to individual Plan participants and beneficiaries.* <u>Your pension benefit will not increase as a result of the Settlement.</u> Additionally, the Settlement provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like financial and administrative protections for the next seven and one-half years.

**This Settlement applies to all persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.**

The Court in charge of the case still has to decide whether to approve the Settlement. The payments and other settlement terms described above will be made only if the Court approves the Settlement and that approval is upheld if there are any appeals. This process is explained in greater detail below.

**Your legal rights are affected if you are a member of the Settlement Class whether or not you act. "Settlement Class" means:** All persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.

**Identification of Key Terms:** This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Revised and Final Class Action Settlement Agreement ("the Settlement Agreement"). The Settlement

Agreement, and additional information with respect to this lawsuit and the Settlement, are available at www.kellersettlements.com and www.cohenmilstein.com/presence-settlement.

**Reasons for the Settlement:** The Settlement resolves all claims in the Action against Defendants regarding the Plans. The Parties agree that the Settlement is not, and should not be construed as, an admission of any fault, liability or wrongdoing whatsoever by any of the Defendants, who continue to deny any and all of the allegations of the Complaint. The Named Plaintiffs and Class Counsel (identified below) believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. The Named Plaintiffs and Class Counsel believe that the Settlement provides greater protection for the benefits to be paid to all Settlement Class members under the Plans as compared to the risks, costs and delays of proceeding with this litigation against Defendants.

**Identification of Claims Administrator and Class Counsel:** Garden City Group, LLC is the Claims Administrator and will mail you this Class Notice. However, they are unable to answer questions about the Settlement.

Any questions about the Settlement should be directed to Class Counsel. Please contact: attorney Christopher Graver or paralegal Jennifer Tuato'o at, Keller Rohrback, L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101-3052. Class Counsel has established a toll-free number, (888) 684-6642, if you have questions or comments. Class Counsel may also be contacted via e-mail at presencesettlement@kellerrohrback.com. Please do not contact the Court. The Court personnel will not be able to answer your questions.

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU DO NOT NEED TO DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| ACTIONS YOU MAY TAKE IN THE SETTLEMENT | |
| --- | --- |
| NO ACTION IS NECESSARY. | If the Settlement is approved by the Court and you are a member of the Settlement Class, you do not need to do anything. |
| YOU CAN OBJECT NO LATER THAN **JUNE 12, 2018.** WRITTEN OBJECTIONS MUST BE FILED WITH THE COURT BY THIS DATE. | If you wish to object to any part of the Settlement, you can write to the Court and explain why you do not like the Settlement. |
| YOU CAN GO TO THE HEARING ON **JULY 10, 2018,** BY FILING A NOTICE OF INTENTION TO APPEAR NO LATER THAN **JUNE 19, 2018.** | If you have submitted a written objection to the Court, you can ask to speak in Court about the fairness of the Settlement. You may enter your appearance in Court through an attorney if you so desire. |

| WHAT THIS NOTICE CONTAINS |
| --- |

Summary of Settlement ..................................................................................................................................... 3
Basic Information ............................................................................................................................................. 3
    1. Why did I get this Notice package? ...................................................................................................... 3
    2. How do I know whether I am part of the Settlement? ........................................................................... 4
    3. What does the Settlement provide? ...................................................................................................... 4
    4. What is the lawsuit about? What has happened so far? ....................................................................... 5
    5. Why is this case a class action? .......................................................................................................... 5
    6. Why is there a Settlement? .................................................................................................................. 5
    7. How will the Settlement be distributed? ............................................................................................... 5
    8. What rights am I giving up in the Settlement? ..................................................................................... 6
    9. Can I exclude myself from the Settlement? .......................................................................................... 6
The Lawyers Representing You ...................................................................................................................... 6
    10. Do I have a lawyer in the case? .......................................................................................................... 6
    11. How will the lawyers be paid? ............................................................................................................. 6
Objecting to the Settlement ........................................................................................................................... 6
    12. How do I tell the Court if I don't like the Settlement? ........................................................................... 6
The Court's Fairness Hearing ........................................................................................................................ 7
    13. When and where will the Court decide whether to approve the Settlement? ....................................... 7
    14. Do I have to come to the hearing? ....................................................................................................... 7
    15. May I speak at the hearing? ................................................................................................................ 7
If You Do Nothing ........................................................................................................................................... 8
    16. What happens if I do nothing at all? .................................................................................................... 8
Getting More Information ................................................................................................................................ 8
    17. How do I get more information? ........................................................................................................... 8

**Questions? Visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement Or Call: (888) 684-6642 DO NOT CALL THE COURT as they cannot answer your questions.**

This litigation (the "Action") was filed in federal district court in Illinois against Presence Health Network and the various other defendants named in the complaint (collectively, the "Defendants"). The Named Plaintiffs and Defendants collectively are referred to herein as the "Parties."

A copy of the Complaint and other documents relevant to this Settlement, including the comprehensive Settlement Agreement, are available at www.kellersettlements.com and www.cohenmilstein.com/presence-settlement.

## SUMMARY OF SETTLEMENT

The Settlement Agreement provides that, as long as the Plans are sponsored by any of the Releasees, as defined in the Settlement Agreement, there is a guarantee of payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits. The guarantee is given by Ascension Health which, on Thursday, March 1, 2018, acquired Presence and all Presence entities other than Presence Health Network and Resurrection University. After March 1, 2018, the Plans will be sponsored by Ascension Health or a subsidiary thereof. The Settlement also provides that Ascension Health, or any of the Releasees, may buy out this guarantee obligation at any time by making contributions to the Plans' trusts in an aggregate total of $15,000,000 (fifteen million dollars). Upon the Plans' trusts' timely receipt of the $15,000,000 (fifteen million dollar) buyout amount, the guarantee obligation will be extinguished.

Additionally, the Settlement provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like reporting, disclosure, and administrative protections. For seven and one-half years, the Plans' participants will receive notice on an annual basis about the funded status of the Plans and the retirement benefits that they have accrued. This annual notice will include, among other information, a summary of the Plans' funding arrangements, a summary of the Plans' expenses, a statement of the Plans' liabilities and assets, information about the increase or decrease in net plan assets for the year, and summary information about the Plans' total income. The Settlement Agreement also provides that for seven and one-half years, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Likewise, for the next seven and one-half years, if the Plans are ever merged with or into another plan, participants will be entitled to the same or greater benefits than they were before the merger.

**Attorneys' Fees and Expenses:** Court-appointed Class Counsel will file a motion for an award of attorneys' fees, expenses, and incentive awards for Named Plaintiffs that will be considered by the Court at the Final Approval Hearing. Class Counsel will apply for a total award not to exceed One Million Five Hundred Fifty Thousand Dollars ($1,550,000.00) (the "Maximum Total Fee"). Any such award will be at the sole discretion of the Court. Any Court-awarded fees, expenses, and incentive awards will be paid by Presence or Ascension Health and will be paid *in addition to* the guarantee and other provisions of the Settlement.

This Settlement represents the best possible monetary result that could be achieved for the Class in light of the significant risks Plaintiffs faced in the Action. As with any litigation, the Parties would face an uncertain outcome if the case were to continue. Continued litigation of this case against the Defendants may result in a judgment or verdict greater or less than the recovery under the Settlement Agreement, or in no recovery at all. Throughout the litigation, Plaintiffs and Defendants have disagreed on both liability and damages. Defendants, among other things, maintain that the Plans have been and continue to be properly administered as Church Plans under the Plans' terms and as defined in ERISA § 3(33), and are exempt from coverage under ERISA. Defendants deny any and all liability to the Plaintiffs, members of the Settlement Class and the Plans, deny any and all allegations of wrongdoing, and believe they will prevail in this case if it is litigated to conclusion.

Named Plaintiffs and Class Counsel, among other things, (1) have conducted an extensive investigation into the facts, circumstances, and legal issues associated with the allegations made in the Action; (2) believe, based on the risks of the litigation, the time necessary to achieve a complete resolution through litigation, the complexity of the claims set forth in the Complaint, and the benefits accruing to the Plans' participants and beneficiaries under the Settlement, that the Settlement will provide a benefit to the Settlement Class, and that, when this benefit is weighed against the risks of continuing the prosecution of the Action, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class; and (3) believe that the Settlement will provide the Settlement Class with additional protections for their retirement benefits they may not have received if the cases had been litigated to a conclusion.

The Parties have taken into account the uncertainty and risks inherent in this litigation, particularly its complex nature, and have concluded that it is desirable that the Action be fully and finally settled on the terms and conditions set forth in the Settlement Agreement.

Please visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement if you have additional questions.

## BASIC INFORMATION

| 1. | Why did I get this Notice package? |
|----|-------------------------------------|

Either you or someone in your family may have been a Plan participant, or a beneficiary of a participant, whether vested or non-vested, as of November 30, 2017. The Court has directed that this Notice be sent to you because, as a potential member of the Settlement Class, you have a right to know about the proposed Settlement with Defendants before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and all related objections and appeals are favorably resolved, Ascension Health will guarantee the payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from the Plans to Settlement Class Members in the event trust assets attributable to the Plans become insufficient to pay such benefits. The Settlement also provides that any Releasee may buy out this guarantee obligation by making an aggregate total of $15,000,000 (fifteen million dollars)

in contributions to the Plans' trusts. In addition, the Settlement provides non-monetary equitable consideration, including that, for seven and one-half years, the Plans' participants will receive notice on an annual basis about the funding status of the Plans and the retirement benefits that they have accrued. This annual notice will include, among other information, a summary of the Plan's funding arrangements, a summary of the Plan's expenses, a statement of the Plan's liabilities and assets, information about the increase or decrease in net plan assets for the year, and summary information about the Plan's total income. The Settlement Agreement also provides that for seven and one-half years, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Likewise, for the next seven and one-half years, if the Plans are ever merged with or into another plan, participants will be entitled to the same or greater benefits than they were before the merger.

This Notice explains the Action, the Settlement, and your legal rights. The purpose of this Notice is to inform you of a hearing (the "Fairness Hearing") to be held by the Court to consider the fairness, reasonableness and adequacy of the proposed Settlement, and to consider the application of Class Counsel for their attorneys' fees and reimbursement of litigation expenses as well as an application for an incentive fee to the Named Plaintiffs.

The Fairness Hearing will be held on July 10, 2018 at 9:00 a.m. C.D.T. before the Honorable Harry D. Leinenweber in the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, IL 60604, to determine:

    a.   Whether the Settlement should be approved as fair, reasonable, and adequate and should be approved by the Court;

    b.   Whether final judgment approving the Settlement Agreement should be entered;

    c.   Whether the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

    d.   Whether the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class;

    e.   Whether the requirements of the Class Action Fairness Act have been satisfied;

    f.   Whether to award incentive fees to the Named Plaintiffs and if so, the amount; and

    g.   Whether to award attorneys' fees and litigation expenses to Class Counsel and other attorneys who represent members of the Settlement Class and if so, the amounts.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, the Settlement provisions will become effective after all related appeals, if any, are favorably resolved. It is always uncertain whether such appeals can be favorably resolved, and resolving them can take time, perhaps more than a year. Please be patient.

| 2. | How do I know whether I am part of the Settlement? |
|---|---|

The Court has certified the Action as a class action preliminarily. You are a member of the Settlement Class if, as of November 30, 2017, you were a former and/or current participant in either or both of the Plans, whether vested or non-vested, or the beneficiary of such a participant.

| 3. | What does the Settlement provide? |
|---|---|

The Settlement provides that, as long as the Plans are sponsored by any of the Releasees, as defined in the Settlement Agreement, there is a guarantee of payment of the first $20,000,000 (twenty million dollars) of benefits that are distributable from either or both of the Plans' trusts to Settlement Class members if either of the Plans is unable to pay such benefits. The guarantee is given by Ascension Health. Should a corporate transaction occur where the Plans' assets and liabilities covering Settlement Class Members transfer to a successor, Presence or Ascension Health will cause the successor to honor this commitment. The Settlement also provides that Ascension Health, or any of the Releasees, may buy out this guarantee obligation at any time by making contributions to the Plans' trusts in an aggregate total of $15,000,000 (fifteen million dollars). Upon the Plans' trusts' timely receipt of the $15,000,000 (fifteen million dollar) buyout amount, the guarantee obligation will be extinguished.

The Settlement includes equitable provisions which mimic certain provisions of ERISA concerning plan administration, summary plan descriptions, notices (annual summaries, pension benefits statements, current benefit values), and the Plans' claims review procedures. For seven and one-half years, the Plans' participants will receive notice on an annual basis about the funding status of the Plans and the retirement benefits that they have accrued. The Settlement Agreement also provides that for seven and one-half years, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Likewise, for the next seven and one-half years, if the Plans are ever merged with or into another plan, participants will be entitled to the same or greater benefits than they were before the merger.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement, which may be obtained at www.kellersettlements.com or www.cohenmilstein.com/presence-settlement.

| **4.** | **What is the lawsuit about? What has happened so far?** |

On April 2, 2015, Plaintiff Leslee Carver, a participant in the RHC Plan, filed a putative class action complaint in this Court against Presence Health Network and various other corporate and individual defendants, alleging violations of ERISA. The complaint was later amended several times and now names as additional plaintiffs Diane Eslinger, Lisa Jenkins, and Susan Phillips, all participants in the Provena Plan. The complaint alleges that Defendants denied ERISA protections to the participants and beneficiaries of the Plans, which are defined benefit pension plans sponsored by Presence Health Network, by claiming that the Plans qualify as ERISA-exempt "church plans." The complaint further alleges that asserting this exemption caused Defendants to deny the Plans' participants the protections of ERISA. These include, among other violations: underfunding the Plans by over $175 million, failing to furnish Plaintiffs or any member of the class with a Pension Benefit Statement, Summary Annual Reports, Notification of Failure to Meet Minimum Funding, or Funding Notices, and, as to the RHC Plan, failure to provide an ERISA-compliant schedule for vesting.

Defendants answered the amended complaint, denying that Plaintiffs were entitled to relief because Defendants contend that the Plans qualify as and are maintained properly as church plans exempt from ERISA, and the Parties each served discovery requests and began document discovery. On October 13, 2016, however, the Court stayed further proceedings while the United States Supreme Court considered an appeal in three other cases involving church plans. That appeal addressed whether, as Plaintiffs alleged here, a church plan must be established by a church in order to qualify as an ERISA-exempt church plan. The Supreme Court held argument in that case on March 27, 2017, and issued its decision on June 5, 2017, holding that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans so long as other conditions necessary for church plan status are satisfied. While Plaintiffs advance other strong arguments and theories not decided by the Supreme Court's opinion, Plaintiffs' case was negatively impacted by that decision. Additionally, since the case was filed, Presence Health Network has made substantial contributions to the Plans' trust funds and the investing environment has been highly favorable.

Following the Supreme Court's decision, as the Parties prepared to resume active litigation, they agreed to attempt to settle the case with the assistance of a mediator. Shortly before the August 29, 2017 mediation, Presence Health Network and Ascension Health publicly announced the signing of a non-binding letter of intent for Ascension Health to acquire Presence Health Network and its affiliates. Although the acquisition was still pending, Ascension Health was present at the mediation, and ultimately agreed to be a party to the settlement, with the condition that it would not be bound by the settlement until its acquisition of Presence Health Network became final. The initial mediation held on August 29, 2017, was unsuccessful; however, the Parties and Ascension Health continued to discuss settlement with the mediator's assistance over the next several months, and were ultimately able agree on the terms of a settlement on November 10, 2017.

The Settlement is the product of intensive, arm's-length negotiations between Class Counsel and Defendants' Counsel, with the assistance of an experienced third-party mediator.

| **5.** | **Why is this case a class action?** |

In a class action, one or more plaintiffs, called "named plaintiffs," sue on behalf of people who have similar claims. All of the individuals on whose behalf the Named Plaintiffs in this Action are suing are "Class Members," and they are also referred to in this Notice as members of the Settlement Class. The Honorable Harry D. Leinenweber, United States District Judge, is presiding over this case.

| **6.** | **Why is there a Settlement?** |

Under the proposed Settlement, the Court will not decide the merits of the case in favor of either the Plaintiffs or the Defendants. By agreeing to a Settlement, both the Plaintiffs and the Defendants avoid the costs, risks, and delays of litigating the Action. In this case particularly, the risks of ongoing litigation involved the consequences of the Supreme Court's ruling that church plans need not be established by churches in order to qualify as ERISA-exempt plans.

This Settlement is the product of extensive arm's-length negotiations between Class Counsel and the Defendants' Counsel, including utilizing the services of an experienced mediator. Class Counsel believes that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

| **7.** | **How will the Settlement be distributed?** |

Because the Plans are defined benefit pension plans and not defined contribution plans with individual accounts, like a 403(b) plan or 401(k) plan, **the guarantee, if ever paid in the future, will be contributed to the Plans' trust funds as a whole**, rather than to **individual Plan participants and beneficiaries. Your pension benefit will not increase as a result of the Settlement.** You will remain entitled to the benefit you have accrued pursuant to the Plan's terms, and under the Settlement, for seven and one-half years, the Plans cannot be amended to reduce your accrued benefit. The Settlement also provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like administrative protections, including certain annual notices for the next seven and one-half years.

Members of the Settlement Class do not need to do anything in order to obtain the benefits and protections provided by the Settlement in this case.

| 8. | What rights am I giving up in the Settlement? |
|---|---|

If the Settlement is approved, the Court will enter a judgment. This judgment will fully, finally, and forever release, relinquish, and discharge any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs under federal or state laws arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "church plan" status of the Plans, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise.

For Settlement Class members only, Released Claims are not intended to include the release of any of the following: (a) Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement; (b) Individual claims for relief brought under state law seeking benefits under the terms of the Plan documents of the applicable Plan; (c) Claims related to any other plan that is merged or consolidated with the Plans, or either of them, after December 12, 2017; (d) Any claim arising under ERISA with respect to any event occurring after: the Internal Revenue Service issues a written ruling that the Plans, or either of them, do not qualify as a church plan; pursuant to IRC § 410(d), an election is made on behalf of the Plans, or either of them, resulting in such Plan's coverage by the ERISA provisions specified in IRC § 410(d); the Roman Catholic Church claims no association with the Plans' Sponsor; or an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption; or (e) the claims brought by the plaintiffs in the Class Action Complaint filed November 16, 2017, titled *Lauren Bence, et al. v. Presence Health Network Corporation, et al.*, U.S. District Court for the Northern District of Illinois case no. 1:17-cv-08315.

| 9. | Can I exclude myself from the Settlement? |
|---|---|

You do not have the right to exclude yourself from the Settlement. For settlement purposes, the Action was certified under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) (non-opt-out class) because the Court determined the requirements of that rule were satisfied. Thus, it is not possible for any of the members of the Settlement Class to exclude themselves from the Settlement. As a member of the Settlement Class, you will be bound by any judgments or orders that are entered in the Action for all claims that were or could have been asserted in the Action against Defendants or are otherwise included in the release under the Settlement. The Court resolves the issues for all Class Members.

Although members of the Settlement Class cannot opt-out of the Settlement, they can object to the Settlement and ask the Court not to approve the Settlement.

## THE LAWYERS REPRESENTING YOU

| 10. | Do I have a lawyer in the case? |
|---|---|

The law firms of Keller Rohrback L.L.P and Cohen Milstein Sellers & Toll, PLLC represent the Named Plaintiffs and the Settlement Class ("Class Counsel"). You will **not** be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 11. | How will the lawyers be paid? |
|---|---|

Prior to the Fairness Hearing, Class Counsel will apply for an award of attorneys' fees and expenses, and incentive awards for the Named Plaintiffs. The total amount that Class Counsel will seek for fees, expenses, and incentive awards will not exceed $1.55 million. This amount will be paid entirely by Presence or Ascension Health. Any payment of attorneys' fees, expenses, and incentive awards to Named Plaintiffs will not reduce the amount of the guarantee or the amount of the buy-out.

To date, Class Counsel has not received any payment for their services in prosecuting this Action on behalf of the Settlement Class, nor have Class Counsel been reimbursed for their out-of-pocket expenses. The fee requested by Class Counsel would compensate all of Plaintiffs' counsel for their efforts in achieving the Settlement for the benefit of the Settlement Class and for their risk in undertaking this representation on a contingency basis. The Court will determine the actual amount of the award.

## OBJECTING TO THE SETTLEMENT

| 12. | How do I tell the Court if I don't like the Settlement? |
|---|---|

Any member of the Settlement Class who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to any term of the Settlement Agreement, to the application for payment of attorneys' fees and expenses, or to the application for an incentive fee for the Named Plaintiffs, may file an Objection in writing. All written objections and supporting papers must: (1) clearly identify the case name and number "*Carver v. Presence Health Network,* Case No. 15-cv-02905;" (2) be filed with the Court and either postmarked or mailed or faxed to Class Counsel and Defendants' Counsel at the addresses below on or before June 12, 2018; (3) set forth your full name, current address, and telephone number; (4) set forth a statement of the position you wish to assert, including the factual and legal grounds for the position; (5) set forth the names and a summary of testimony of any witnesses that you might want to call in connection with the Objection; (6) provide copies of all documents that you wish to submit in support of your position; (7) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; (8) state the name, court, and docket number of any class action litigation in which you and/or your attorney(s) has previously appeared as an objector or provided legal assistance with respect to an objection; and (9) include your signature.

**Questions? Visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement Or Call: (888) 684-6642**
**DO NOT CALL THE COURT as they cannot answer your questions.**

The addresses for filing objections with the Court and service on counsel are listed below. **Your written objection must be filed with the Court, and mailed or faxed to the counsel listed below by no later than June 12, 2018:**

**File with the Clerk of the Court:**

Clerk of the Court
United States District Court
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

**And, by the same date, serve copies of all such papers by mail or fax to each of the following:**

**CLASS COUNSEL:**

| | | |
|---|---|---|
| Lynn Lincoln Sarko | Michelle C. Yau | Ron Kilgard |
| Laura R. Gerber | Mary J. Bortscheller, ARDC #6304457 | Chris Graver |
| KELLER ROHRBACK L.L.P. | Scott M. Lempert | KELLER ROHRBACK L.L.P. |
| 1201 Third Avenue, Suite 3200 | COHEN MILSTEIN SELLERS | 3101 North Central Avenue, Suite 1400 |
| Seattle, WA 98101 | & TOLL, PLLC | Phoenix, AZ 85012 |
| Fax: (206) 623-3384 | 1100 New York Avenue, N.W. | Fax: (602) 248-2822 |
| | Suite 500, West Tower | |
| | Washington, DC 20005 | |
| | Fax: (202) 408-4699 | |

**DEFENDANTS' COUNSEL:**

| | |
|---|---|
| Howard Shapiro | Robert Rachal |
| Stacey C.S. Cerrone | HOLIFIELD JANICH RACHAL & |
| PROSKAUER ROSE, LLP | ASSOCIATES, PLLC |
| 650 Poydras Street, Suite 1800 | 6415 West End Blvd. |
| New Orleans, LA 70130 | New Orleans, LA 70124 |
| Fax: (504) 310-2022 | Fax: (865) 566-0119 |

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY MEMBER OF THE SETTLEMENT CLASS WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND AN INCENTIVE FEE TO THE NAMED PLAINTIFFS.**

### THE COURT'S FAIRNESS HEARING

| **13.** | **When and where will the Court decide whether to approve the Settlement?** |
|---|---|

The Court will hold a Fairness Hearing on July 10, 2018 at 9:00 a.m. C.D.T., at the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, IL 60604, Courtroom 1941.

**IF YOU DO NOT WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE FEES TO THE NAMED PLAINTIFFS, YOU NEED NOT ATTEND THE FAIRNESS HEARING.**

At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement. The Court will also rule on the motions for attorneys' fees and expenses and an incentive fee to the Named Plaintiffs. We do not know how long these decisions will take.

| **14.** | **Do I have to come to the hearing?** |
|---|---|

Class Counsel will answer questions Judge Leinenweber may have. You are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable and adequate. You may also have your own lawyer attend the Fairness Hearing at your expense, but such attendance is not necessary.

| **15.** | **May I speak at the hearing?** |
|---|---|

If you are a member of the Settlement Class and you have filed a timely objection, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in *Carver v. Presence Health Network,* Case No. 15-cv-02905." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be served on the attorneys listed above, postmarked and mailed or sent via facsimile no later than June 19, 2018, and must be filed with the Clerk of the Court, postmarked no later than June 19, 2018.

**Questions? Visit www.kellersettlements.com or www.cohenmilstein.com/presence-settlement Or Call: (888) 684-6642**
**DO NOT CALL THE COURT as they cannot answer your questions.**

The Fairness Hearing may be delayed by the Court without further notice to the Class. If you wish to attend the Fairness Hearing, you should confirm the date and time with a member of Class Counsel.

### IF YOU DO NOTHING

| 16. | What happens if I do nothing at all? |
|-----|--------------------------------------|

If you do nothing and you are a Class Member, you will participate in the Settlement as described above in this Notice if the Settlement is approved.

### GETTING MORE INFORMATION

| 17. | How do I get more information? |
|-----|--------------------------------|

This Notice summarizes the proposed Settlement. Full details of the Settlement are set forth in the Settlement Agreement. You may obtain a paper copy of the Settlement Agreement by making a written request to a member of Class Counsel listed above under item 12. Copies of the Settlement Agreement, as well as the motion seeking approval of the Revised and Final Settlement Agreement and the Preliminary Approval Order approving the Revised and Final Settlement Agreement may also be viewed at www.kellersettlements.com or www.cohenmilstein.com/presence-settlement.


DATED: March 8, 2018

By Order of the Court
Hon. Harry D. Leinenweber
United State District Judge
Northern District of Illinois

# EXHIBIT L

## TO

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## (PROPOSED ORDER AND FINAL JUDGMENT)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LESLEE R. CARVER, *et al.*, | Case No. 1:15-cv-02905 |
| Plaintiffs, | |
| v. | Judge Harry D. Leinenweber |
| PRESENCE HEALTH NETWORK, *et al.*, | Magistrate Judge M. David Weisman |
| Defendants. | |

**[PROPOSED] ORDER AND FINAL JUDGMENT**

This litigation involves the claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461, set forth in Plaintiffs' Third Amended Class Action Complaint ("Complaint"), dated October 7, 2016, ECF No. 75-1, with respect to the Resurrection Health Care Retirement Plan (the "RHC Plan") and the Provena Health Employees' Pension Plan (the "Provena Plan"). Hereinafter, the RHC Plan and the Provena Plan are referred to as the "Presence Plans" or simply the "Plans." The Parties entered into a Revised and Final Class Action Settlement Agreement ("Settlement" or "Settlement Agreement")[1] dated February 21, 2018, which was filed with the Court on February 28, 2018. Settlement Agreement, ECF No. 113-2.

The Court previously entered an Order Preliminarily Approving the Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hearing ("Preliminary Approval Order") dated March 8, 2018, ECF No. 118, preliminarily certifying the

---

[1] This Order incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement unless set forth differently herein. The terms of the Settlement are fully incorporated in this Judgment and adopted as a Final Judgment as if set forth fully herein.

1

putative class in this Action for settlement purposes, ordering a Class Notice to be mailed and published on the internet, scheduling a hearing for July 10, 2018, at 9:00 a.m. C.D.T. (the "Fairness Hearing"), and providing the members of the Settlement Class with an opportunity to object to the proposed settlement.

This Court held a Fairness Hearing on July 10, 2018, at 9:00 a.m. C.D.T., to determine whether to give final approval to the proposed settlement.

Due and adequate notice having been given to the Settlement Class as required in the Order, and the Court having considered the Settlement Agreement, all papers filed and proceedings held herein, and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      The Court has jurisdiction over the subject matter of this Action and all Parties to the Action, including all members of the Settlement Class.

2.      The Class certified preliminarily in the Court's Preliminary Approval Order is hereby certified finally for settlement purposes under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2).  The Class consists of:

> All persons who, as of November 30, 2017, are former and/or current participants in either or both of the Plans, whether vested or non-vested, and their beneficiaries.

3.      The Court finds that the Settlement Class meets all requirements of Rule 23(a) for certification of the class claims alleged in the Complaint, including (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of the class representatives and Class Counsel.

4.      Additionally, the prerequisites of Rule 23(b)(1) have been satisfied, since the prosecution of separate actions by individual members of the Settlement Class would create a risk of (a) inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants; and (b) adjudications with respect to individual Settlement Class

members, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

5.     Alternatively, the prerequisites of Rule 23(b)(2) have been satisfied, since Defendants have acted or refused to act on grounds generally applicable to the Settlement Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Settlement Class as a whole.

6.     Pursuant to Rule 23(a), the Court finds that Plaintiffs Leslee R. Carver, Diane Eslinger, Lisa Jenkins, and Susan L. Phillips ("Named Plaintiffs") are members of the Settlement Class, their claims are typical of those of the Settlement Class, and they fairly and adequately protected the interests of the Settlement Class throughout the proceedings in this Action. Accordingly, the Court hereby appoints Leslee R. Carver, Diane Eslinger, Lisa Jenkins, and Susan L. Phillips as Settlement Class representatives.

7.     Having considered the factors set forth in Rule 23(g)(1), the Court finds that Class Counsel have fairly and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement, and thus, hereby appoints Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC, as Class Counsel to represent the members of the Settlement Class.

8.     The appointment of Class Counsel and the appointment of the Named Plaintiffs as Settlement Class representatives are fully and finally confirmed.

9.     The Court directed that Class Notice be given pursuant to the Notice Program proposed by the Parties and approved by the Court.  In accordance with the Court's Preliminary Approval Order and the Court-appointed Notice Program: (1) On or before March 26, 2018,

3

Class Counsel posted the Settlement Agreement and Class Notice to the Settlement websites: www.kellersettlements.com and www.cohenmilstein.com/presence-settlement; and (2) on March 23, 2018, the Settlement Administrator, Garden City Group, LLC, mailed 50,410 copies of the Class Notice to Settlement Class Members. As of May 22, 2018, Garden City Group mailed a total of 52,918 Class Notices, including 2,508 Class Notices that were re-mailed upon receipt of an updated address.

10.     The Class Notice advised members of the Settlement Class of: (a) the terms of the Settlement; (b) the Fairness Hearing and the right to appear at such Fairness Hearing; (c) the inability to opt out of the Settlement Class; (d) the right to object to the Settlement, including the right to object to the application for an award of attorneys' fees and reimbursement of expenses; (e) the procedures for exercising such rights; and (f) the binding effect of this Judgment, whether favorable or unfavorable, on the Settlement Class, including the scope of the Released Claims described in section 4.1 of the Settlement Agreement.

11.     The Notice Program met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution, 28 U.S.C. § 1715, and any other applicable law. The Court further finds that the Notice Program approved by the Court, along with the service of information on the Attorneys General of the several states and/or territories and the United States of America, complied fully with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), and that it constituted the best practicable notice under the circumstances. The Court further finds that the form of notice was concise, clear, and in plain, easily understood language, and was reasonably calculated to apprise of the pendency of the Action, the claims, issues and defenses of the Settlement Class, the definition of the Settlement Class certified, the right to object to the proposed Settlement, the right to appear at the Fairness

Hearing, through counsel if desired, and the binding effect of a judgment on members of the Settlement Class, including the scope of the Released Claims described in section 4.1 of the Settlement Agreement.

12.　　The Court finds after the Fairness Hearing, and based upon all submissions of the Parties and interested persons, that the Parties' proposed Settlement is fair, reasonable, and adequate.　The Court also finds that the proposed Settlement is consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, and the United States Constitution, and other applicable law.　In so finding, the Court has considered and found that:

a)　　The Settlement provides for significant financial benefit to the Plans and provides substantial financial and procedural protections for payment of Plans' benefits to the Settlement Class.

b)　　The terms and provisions of the Settlement were entered into by experienced counsel and only after extensive, arm's-length negotiations conducted in good faith and with the assistance of an experienced third-party mediator, Mr. Robert Meyer, Esq.　The Settlement is not the result of collusion.

c)　　The negotiations were supported by a robust investigation before commencement of the Action; formal discovery during the pendency of this action; the production and review of confidential documents protected by Rule 408 of the Federal Rules of Evidence during mediation discovery; and the United States Supreme Court's decision on statutory issues in this case.

d)　　Approval of the Settlement will result in substantial savings of time, money and effort for the Court and the Parties, and will further the interests of justice.

Defendants denied and continue to deny Plaintiffs' claims and allegations, and raised various factual and legal arguments in support of their vigorous defense in this Action. Accordingly, the Settlement shall be and it hereby is approved and is given binding effect.

13.     All members of the Settlement Class are bound by this Judgment and by the terms of the Settlement, including the scope of the Released Claims described in section 4.1 of the Settlement Agreement.

14.     This Settlement, this Judgment, and/or the fact of Settlement does not constitute an admission by any of the Parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action.  If the Settlement Agreement is not upheld on appeal, or is otherwise terminated for any reason, the Settlement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission by an party of any fact, matter, or position of law; and all Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

15.     "Releasees" shall mean: All Defendants, any and all entities that are a part of and/or affiliated with Presence Care Transformation Corporation, Presence Health Network, Ascension Health and Ascension Health Alliance (including but not limited to any current or former direct or indirect parent or subsidiary corporations of Presence or Ascension Health), and/or each of their employees, agents, directors, members, sponsors, and insurers, including the individual defendants.

16.     "Released Claims" shall mean any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs under

federal or state laws arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "church plan" status of the Plans, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise.

17.     For Settlement Class members only, Released Claims shall not include the release of any of the following:

(a) Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

(b) Individual claims for relief brought under state law seeking benefits under the terms of the Plan documents of the applicable Plan;

(c) Claims related to any other plan that is merged or consolidated with the Plans, or either of them, after the execution date of the Settlement Agreement;

(d) Any claim arising under ERISA with respect to any event occurring after: the Internal Revenue Service issues a written ruling that the Plans, or either of them, do not qualify as a church plan; pursuant to IRC § 410(d), an election is made on behalf of the Plans, or either of them, resulting in such Plan's coverage by the ERISA provisions specified in IRC § 410(d); the Roman Catholic Church claims no association with the Plans' Sponsor; or an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the church plan exemption;

(e) The claims brought by the plaintiffs in the Class Action Complaint filed November 16, 2017, titled *Lauren Bence, et al. v. Presence Health Network Corporation, et al.*, U.S. District Court for the Northern District of Illinois case No. 1:17-cv-08315.

18.     It is further ordered that as of the Effective Date of the Settlement Agreement, Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that the Plaintiffs or the Settlement Class have, as defined in the Settlement Agreement.  The

Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on, related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

19.     It is further ordered that as of the Effective Date of the Settlement Agreement, Defendants absolutely and unconditionally release and forever discharge the Plaintiffs, the Settlement Class, and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

20.     It is further ordered that as of the Effective Date of the Settlement Agreement, each of the Releasees also releases each of the other Releasees from any and all Claims which were asserted in the Complaint or any pleading which would have been required to be filed in the Action or that would be barred by principles of res judicata or collateral estoppel had the claims asserted in the Complaint or any such other pleading in the Action been fully litigated and resulted in a Final judgment or order.

21.     Class Counsel is hereby awarded attorneys' fees pursuant to Rule 23(h), in the amount of $_____ which the Court finds to be fair and reasonable, and $_____ in reimbursement of Class Counsel's reasonable expenses incurred in prosecuting the Action. The attorneys' fees and expenses so awarded shall be paid by Defendants, pursuant to the terms of the Settlement Agreement.  All fees and expenses paid to Class Counsel shall be paid pursuant to the timing requirements described in the Settlement Agreement.

22.     Named Plaintiffs Leslee R. Carver, Diane Eslinger, Lisa Jenkins, and Susan L. Phillips are hereby awarded Incentive Awards in the amount of $_____ each, which the Court finds to be fair and reasonable.  The Incentive Awards shall be paid by Presence or Ascension Health pursuant to the terms of the Settlement Agreement.

23.     The Court retains jurisdiction over the implementation, administration and enforcement of this Judgment and the Settlement, and all matters ancillary thereto.

24.     The Court hereby dismisses with prejudice the Action and all Released Claims identified in section 4.1 of the Settlement Agreement against each and all Released Parties and without costs to any of the Parties as against the others, except to the extent any costs are included in the Court's award of expenses in paragraph 21 hereof.

25.     The Court finds that no reason exists for delay in ordering final judgment, and the Clerk is hereby directed to enter this Judgment forthwith.

DATED this _____ day of _____, 2018.


_____
Hon. Harry D. Leinenweber
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF ILLINOIS